UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT J. VILA and B.V.T.V., INC., <br><br> Plaintiffs, <br><br> v. <br><br> SEARS, ROEBUCK AND CO., SEARS HOLDINGS CORPORATION and KMART HOLDING CORPORATION, <br><br> Defendants. | Civil Action No. 05-11717-REK |

## DEFENDANTS' ANSWER AND COUNTERCLAIM

Defendants Sears, Roebuck and Co. ("Sears Co."), Sears Holdings Corporation (Sears Holdings") and Kmart Holding Corporation ("Kmart Holdings") (collectively "Defendants"), neither admit nor deny the allegations contained in the unnumbered introductory paragraph of plaintiffs' Complaint as they are introductory in nature and the Complaint, the Bob Vila Spokesperson Agreement and amendments (the "Spokesperson Agreement"), and the Bob Vila Syndicated Television Program Agreement and amendments (the "Syndication Agreement") speak for themselves.

## THE PARTIES

1.      Defendants neither admit nor deny the allegations contained in the first sentence of paragraph 1 of the Complaint as they are without sufficient information or knowledge as to their truth.  With respect to the second sentence of paragraph 1 of the Complaint, Defendants admit that Vila was the spokesperson for certain products marketed and sold by Sears continuously from September 29, 1989 and deny the remaining allegations in the second sentence of paragraph 1 of the Complaint.  Defendants further state that the Spokesperson

Agreement speaks for itself.

2.      Defendants neither admit nor deny the allegations contained in the first sentence of paragraph 2 of the Complaint as they are without sufficient information or knowledge as to their truth. With respect to second sentence, Defendants admit that Since September 29, 1989 through the end of 2004, BVTV has been the producer of a nationally syndicated television home improvement series staring Bob Vila financed by Sears; Defendants further admit that that series was originally known as "Home Again With Bob Vila" and before the 1991-1992 season, changed its name to "Bob Vila's Home Again;" Defendants deny the remaining allegations contained in the second sentence of paragraph 2 of the Complaint.

3.      Defendants admit the allegations contained in the first sentence of paragraph 3. Defendants admit the allegations contained in the second sentence of paragraph 3 of the Complaint.

4.      Admitted.

5.      Admitted.

## JURISDICTION AND VENUE

6.      Neither admitted nor denied as the information contained in paragraph 6 of the complaint contains conclusions of law, and not allegations of fact and, accordingly, require no response.

7.      Neither admitted nor denied as the information contained in paragraph 7 of the complaint contains conclusions of law, and not allegations of fact and, accordingly, require no response.  Defendants further state that this Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

8.      Neither admitted nor denied as the information contained in paragraph 8 of the

complaint contains conclusions of law, and not allegations of fact and, accordingly, require no response.

### FACTS

9.    Neither admitted nor denied as the Spokesperson Agreement speaks for itself.

10.    Defendants neither admit nor deny the allegations contained in the first sentence of paragraph 10 as the amendments to the Spokesperson Agreement speak for themselves. Defendants further state that on or about August 18, 2005, Sears terminated the Spokesperson Agreement.  Defendants deny the allegations contained in the second sentence of paragraph 10.

11.    Neither admitted nor denied as the Syndication Agreement speaks for itself.

12.    Defendants neither admit nor deny the allegations contained in the first sentence of paragraph 12 as the amendments to the Syndication agreement speak for themselves.  With respect to the second sentence of paragraph 12 of the Complaint, Defendants admit that Sears and BVTV engaged in negotiations with respect to the Syndication Agreement between late 2004 and January 2005 and deny the remaining allegations contained in the second sentence of paragraph 12 of the Complaint.  Defendants deny the third and fourth sentences in paragraph 12 of the Complaint.

13.    Admitted.

14.    Admitted.

15.    Defendants expressly deny that they was a course of conduct between Sears and plaintiff B.V.T.V., Inc. ("BVTV"), and neither admit nor deny the remaining allegations contained in paragraph 15 of the Complaint as they are without sufficient knowledge and/or information as to their truth.

16.    Denied.

17.     Defendants neither admit nor deny the allegations contained in the first sentence of paragraph 17 of the Complaint as the Syndication Agreement speaks for itself.  Defendants deny the allegations contained in the second and third sentences of paragraph 17 of the Complaint.

18.     Denied.

19.     Defendants admit that in February 2005, the transaction between the Defendants had not yet been consummated or approved by shareholders of Sears and Kmart and deny the remaining allegations contained in paragraph 19 of the Complaint.

20.     Defendants deny that Sears and BVTV entered into Amendment 11 to the Syndication Agreement and that it was ever in effect; Defendants admit that Sears and BVTV engaged in additional discussions regarding another amendment to the Syndication Agreement; Defendants deny the remaining allegations contained in paragraph 20 of the Complaint.

21.     Defendants admit that Sears advised Vila that it wanted to negotiate changes to the Spokesperson Agreement and deny the remaining allegations contained in paragraph 21 of the Complaint.

22.     Defendants admit that Vila entered into discussions with Sears regarding amending the Spokesperson Agreement.  Defendants neither admit nor deny the remaining allegations contained in paragraph 22 of the Complaint as they are without sufficient knowledge and or information as to their truth.

23.     Defendants admit that Sears had not agreed with BVTV for the production of the television series Home Again With Bob Vila for the 2005-2006 season or any other future season.  Defendants deny the remaining allegations contained in paragraph 24 of the Complaint.

24.     Denied.

25.    Denied.    Defendants further state that on or about August 18, 2005, Sears cancelled the Spokesperson Agreement.

26.    Neither admitted nor denied as the Spokesperson Agreement speaks for itself.

27.    Neither admitted nor denied as the Spokesperson Agreement speaks for itself.

28.    Admitted.

29.    Denied.

### COUNT I
(Breach of Contract)

30.    Defendants restate and incorporate by reference their answers to paragraphs 1-29 of the Complaint.

31.    Defendants refer the Court to the Spokesperson Agreement for its express terms and conditions.  Further answering, Defendants admit that the spokesperson Agreement provided for a payment of $948,750 on July 1, 2005.  Sears also states that the Spokesperson Agreement further provides that in the event of cancellation or termination of the Spokesperson Agreement, Vila would be only entitled to payments pro rata through the date of cancellation.  Since the agreement was canceled on or about August 18, 2005, Vila is not entitled to the full payment, but rather only a pro rata amount which must be reduced by the damages Defendants have suffered as a result of Vila's misconduct.  Based on the Vila's breaches and trademark infringement, defendants state that the damage caused by Vila exceed any pro rata portion of monies to which Vila would otherwise be due under the Spokesperson Agreement.  Accordingly, defendants deny the allegations in paragraph 31 of the Complaint.

32.    Denied.

### COUNT II
(Repudiation of Contract)

33.     Defendants restate and incorporate by reference their answers to paragraphs 1-32 of the Complaint.

34.     Denied.    Defendants further state that Sears terminated the Spokesperson Agreement on August 18, 2005.

35.     Denied.

## COUNT III
(Breach of the Covenant of Good Faith And Fair Dealing)

36.     Defendants restate and incorporate by reference their answers to paragraphs 1-35 of the Complaint.

37.     Denied.

38.     Denied.

## COUNT IV
(Tortious Interference With Contract)

39.     Defendants restate and incorporate by reference their answers to paragraphs 1-38 of Complaint.

40.     Admitted.

41.     Denied.

42.     Denied.

## COUNT V
(Violation of MASS. GEN. L. ch. 93A)

43.     Defendants restate and incorporate by reference their answers to paragraphs 1-42 of the Complaint.

44.     Neither admitted nor denied as the information contained in paragraph 44 of the Complaint contains conclusions of law, not allegations of fact, and accordingly requires no response.

45.    Denied.

46.    Denied.

## COUNT VI
### (Breach of Contract)

47.    Defendants restate and incorporate by reference their answers to paragraphs 1-46

of the Complaint.

48.    Denied.

49.    Denied.

## COUNT VII
### (Repudiation of Contract)

50.    Defendants restate and incorporate by reference their answers to paragraphs 1-49

of the Complaint.

51.    Denied.

52.    Denied.

## COUNT VIII
### (Breach of the Covenant of Good Faith And Fair Dealing)

53.    Defendants restate and incorporate by reference their answers to paragraphs 1-52

of the Complaint.

54.    Denied.

55.    Denied.

## COUNT IX
### (Tortious Interference With Contract)

56.    Defendants restate and incorporate by reference their answers to paragraphs 1-55

of Complaint.

57.    Admitted.

58.     Denied.

59.     Denied.

## COUNT X
(Violation of MASS. GEN. L. ch. 93A)

60.     Defendants restate and incorporate by reference their answers to paragraphs 1-59 of the Complaint.

61.     Neither admitted nor denied as the information contained in paragraph 44 of the Complaint contain conclusions of law, not allegations of fact, and accordingly require no response.

62.     Denied.

63.     Denied.

### AFFIRMATIVE DEFENSES

### AFFIRMATIVE DEFENSE ONE

Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

### AFFIRMATIVE DEFENSE TWO

Plaintiffs' Complaint should be dismissed as the so-called Amendment 11 to the Syndication Agreement fails to comply with the statute of frauds.  740 ILL. COMP. STAT. 80/1; MASS. GEN L. ch. 259, §1; N.Y. GEN. OBLIG. LAWS §5-701.

### AFFIRMATIVE DEFENSE THREE

Plaintiffs' claims are barred because Defendants' actions were privileged.  Williams v. B & K Med. Syst., Inc., 49 Mass. App. Ct. 563 (2000); Restatement (Second) of Torts § 769.

### AFFIRMATIVE DEFENSE FOUR

Plaintiffs' claims are barred because Massachusetts does not recognize a claim for anticipatory repudiation.  Daniels v. Newton, 114 Mass. 530 (1874).

## AFFIRMATIVE DEFENSE FIVE

To the extend plaintiffs' were injured, which is expressly denied, Defendants are, at a minimum, entitled to a setoff against any damages allegedly incurred by plaintiff for Plaintiffs' own breach of contract.

## AFFIRMATIVE DEFENSE SIX

Plaintiffs' claims are barred by the doctrine of unclean hands.

## AFFIRMATIVE DEFENSE SEVEN

Plaintiffs' claims are barred as plaintiffs' reliance was not reasonable.

## AFFIRMATIVE DEFENSE EIGHT

Plaintiffs' claims are barred by their own breach of contract.

## COUNTERCLAIM OF SEARS, ROEBUCK AND CO.

1.      Counterclaimant Sears, Roebuck and Co. ("Sears") seeks relief against plaintiffs/counterclaim defendants Robert J. Vila ("Vila") and B.V.T.V., Inc. ("BVTV") (collectively "Counterclaim Defendants"), for breach of contract, trademark infringement and unfair competition in violation of § 43(a) of the Lanham Act, conversion, common law trademark infringement, violation of MASS. GEN. L. ch. 93A, and unjust enrichment. Counterclaim Defendants breached their contract with Sears and have infringed Sears' HOME AGAIN trademark by producing, promoting and making plans to air new episodes of a home improvement show incorporating Sears' HOME AGAIN trademark.  In addition, Counterclaim Defendants collected bonus payments far in excess of what they were due, unjustly enriching themselves to the detriment of Sears.

## PARTIES

2.      Sears is a New York corporation with a principal place of business in Hoffman

9

Estates, Illinois.  Sears is one of the most famous and long established retailers in the United

States and has become an American institution.

3.    Defendant Vila is an individual who upon information and belief is a resident of

Chilmark, Dukes County, Commonwealth of Massachusetts.

4.    Defendant BVTV is, upon information and belief a Massachusetts Corporation

with a principal place of business in Boston, Suffolk County, Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

5.    This court has subject matter jurisdiction over this action pursuant to 15 U.S.C.

§1121(a) and 28 U.S.C. §§ 1331, 1332, and 1367.

6.    Venue of this matter is appropriate in this jurisdiction pursuant to 28 U.S.C.

§1391.

## FACTUAL ALLEGATIONS

7.    On or about September 29, 1989, BVTV and Ogilvy & Mather ("Ogilvy"), as

agent for Sears, entered into the Bob Vila Syndicated Television Programs Agreement (the

"Syndication Agreement").  Pursuant to the Syndication Agreement, Sears agreed to finance a

series of home improvement television programs produced by BVTV staring Vila.

8.    Pursuant to the Syndication Agreement,

(a) . . . Producer [(BVTV)] agrees that it will not use the name "Sears" and any of
Sears trademarks, trade names or service marks without the express written
permission from Sears.  Producer expressly recognizes and acknowledges that the
use of Sears marks shall not confer upon Producer any proprietary rights to any
such Sears marks.  Upon expiration or upon termination of Producer's right to use
Sears marks for any cause, Producer shall immediately cease all use of all such
Sears marks and will not use any such Sears Marks thereafter.  Producer agrees
not to question, contest or challenge the ownership by Sears of any such right,
title or interest in any such mark, except the right to use the same pursuant to the
terms and conditions of this agreement, and will not seek to register the same.

(b) . . . Producer acknowledges that Sears may register any and all of the

10

trademarks, service marks or trade names for the Program(s) under this Agreement in its own name, and that Producer's use thereof shall inure to the benefit of Sears for such purposes, as well as for other purposes. Producer shall cooperate in any such registration by Sears or application therefore.

Syndication Agreement Section 18(a) & (b).

9.      For each year between 1989 and 2004, BVTV has been producing the home improvement television series starring Vila, which was originally entitled "Home Again with Bob Vila" and is now titled "Bob Vila's Home Again" ("HOME AGAIN") pursuant to the terms of the Syndication Agreement. The Syndication Agreement was amended 10 times. The first through ninth Amendments to the Syndication Agreement each covered one year seasons of the production of HOME AGAIN; the Tenth Amendment covered the period from 1999 through 2004 for the production of HOME AGAIN. Each of the ten amendments to the Syndication Agreement incorporated and applied the identical Section 18 "Sears Trademark, Trade Names, Services Marks" from the original September 29, 1989 Syndication Agreement. Accordingly, Sears owns all right, title and interest in the "HOME AGAIN" trademark.

10.     The most recent iteration of the Syndication Agreement (the tenth amendment) also provided for certain incentive bonuses to be paid by Sears to BVTV for the 2003-2004 season pursuant to paragraph 3 of Amendment 10 to the Syndication Agreement.

11.     The home improvement television series bearing the HOME AGAIN mark has been broadcast since 1990. The HOME AGAIN series is currently syndicated on approximately 180 stations nationwide, covering over 92% of the United States. In addition to its association with the home improvement television show, the HOME AGAIN trademark also is used on videos and DVDs containing copies of past episodes. Sears has spent millions of dollars over the past fifteen years promoting its HOME AGAIN trademark.

12.     The last Amendment to the Syndication Agreement expired in 2004 and covered

the 2004-2005 series of HOME AGAIN.   Although Sears entered into negotiations with Counterclaim Defendants regarding a subsequent extension for another season, no agreement was ever reached and the parties never executed any amendment covering an subsequent season beyond the 2004-2005 season.

13.    Counterclaim Defendants began production of a 2005-2006 season of a new television series bearing Sears' HOME AGAIN trademark in or around June 2005, and which is scheduled to begin airing on September 12, 2005.   Counterclaim Defendants were not given permission to use Sears' HOME AGAIN trademark and such use is improper and unlawful.

14.    Sears inadvertently overpaid the incentive bonus due for the 2003-2004 season pursuant to the Syndication Agreement as amended, to BVTV and Vila by approximately $75,000.

## COUNT I.
### Trademark  and Trade Name Infringement Under 15 U.S.C. §1125(a)

15.    Counterclaim Defendants' improper and unauthorized use of Sears' HOME AGAIN trademark constitutes trademark infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

16.    Counterclaim Defendants' unauthorized use of Sears' HOME AGAIN trademark in commerce, in connection with the marketing, advertising, offering for sale and/or sale of their home improvement television series, is willful and intended to cause, and is likely to cause, confusion, mistake and/or deception as to the origin, source or sponsorship of their television show and in flagrant disregard to Sears' lawful rights.  Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

17.    Counterclaim Defendants' conduct has and will continue to injure Sears by diminishing and destroying the good will Sears has squired in its HOME AGAIN trademark.

Sears has no adequate remedy at law, and, if Counterclaim Defendants are not enjoined, Sears will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT II
### Breach of Contract

18.     Counterclaimant restates and realleges the allegations contained in paragraphs 1 – 17 of the Counterclaim as if fully stated herein.

19.     Counterclaim Defendants have breached Section 18 of the Syndication Agreements by producing a 2005-2006 home improvement series bearing the Sears' HOME AGAIN mark without the permission of Sears.

20.     These breaches of contract by Vila and BVTV have directly and proximately caused Sears damages.

21.     Sears has no plain and adequate remedy at law.

## COUNT III
### Conversion

22.     Sears restates and realleges the allegations contained in paragraphs 1 – 21 of the Counterclaim as if fully stated herein.

23.     Sears is, and during all times alleged herein was, the sole owner of the trademark HOME AGAIN.

24.     Sears had possession, or the right to immediate possession, of Sears' trademark HOME AGAIN at the time of Counterclaim Defendants' unlawful conduct.

25.     Counterclaim Defendants interfered with Sears' right to possession or right to immediate possession by intentionally and willfully misappropriating and exercising dominion over Sears' HOME AGAIN trademark.

26.     As a direct and proximate consequence of Counterclaim Defendants' unlawful and

unjustified dominion over Sears' property, Sears has suffered damages.

## COUNT IV
### Common Law Trademark Infringement/Palming Off

27.    Counterclaimant restates and realleges the allegations contained in paragraphs 1 – 26 of the Counterclaim as if fully stated herein.

28.    Counterclaim Defendants have adopted and used a trademark identical to that owned by Sears.

29.    Counterclaim Defendants' unauthorized and unlawful conduct in producing and airing a home improvement television series bearing Sears' HOME AGAIN trademark will likely cause consumer confusion as to the source of the program.  Counterclaim Defendants' conduct has and will continue to injure Sears by diminishing and destroying the good will Sears has squired in its HOME AGAIN trademark.  Sears has no adequate remedy at law, and, if Counterclaim Defendants are not enjoined, Sears will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT V
### Violation of MASS. GEN. L. ch. 93A

30.    Sears restates and realleges the allegations contained in paragraphs 1 – 29 of the Counterclaim as if fully stated herein.

31.    Counterclaim Defendants are engaged in trade or commerce within the meaning of MASS. GEN. L. ch. 93A.   Counterclaim Defendants' actions occurred primarily and substantially in Massachusetts.

32.    The conduct of Counterclaim Defendants described above constitutes one or more unfair, deceptive, and/or anti-competitive acts or practices in violation of MASS. GEN. L. ch. 93A, §§2, 11.

33.　　Sears has and continues to suffer irreparable harm to its goodwill and image as a direct and proximate consequence of Counterclaim Defendants' several violations of MASS. GEN. L. ch. 93A as described above.

34.　　Counterclaim Defendants' conduct constitutes a willful and/or knowing violation of MASS. GEN. L. ch. 93A, resulting in substantial and irreparable harm to Sears unless and until their conduct is enjoined.　Accordingly, Sears is entitled to recover up to three but not less than two times the amount of its actual damages, together with interest, costs, and attorneys fees.

35.　　Sears has no plain and adequate remedy at law.

### COUNT VI
### Restitution/Unjust Enrichment/*Quantum Meruit* (trademark/trade name)

36.　　Counterclaimant restates and realleges the allegations contained in paragraphs 1 – 35 of the Counterclaim as if fully stated herein.

37.　　Counterclaim Defendants are using and profiting from Sears' HOME AGAIN trademark but have not paid Sears for such use.

38.　　As a direct and proximate result of Counterclaim Defendants' failure to compensate Sears for the use of its HOME AGAIN mark, Counterclaim Defendants have been unjustly enriched to the detriment of Sears.

39.　　Sears has no adequate remedy at law and is entitled to the disgorged benefits by which the Counterclaim Defendants were unjustly enriched.

### COUNT VII
### Restitution/Unjust Enrichment/*Quantum Meruit* (contract)

40.　　Sears restates and reallege the allegations contained in paragraphs 1 – 39 of the Counterclaim as if fully stated herein.

41.　　Counterclaim Defendants were overpaid for the 2003-2004 bonus payment

15

pursuant to the Syndication Agreement in an amount no less than $75,000 (the "Unearned Bonus

Payment"), which Counterclaim Defendants did not earn.

42.    As a direct and proximate result of Counterclaim Defendants failure to repay

Sears the Unearned Bonus, Counterclaim Defendants have been unjustly enriched to the

detriment of Sears.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimant Sears, Roebuck and Co., prays for the following relief:

1.    With respect to Counts I-VI: an order that:

    (a)    the trademark HOME AGAIN is owned by Sears, and that Sears has the exclusive right to use such trademark in the United States;

    (b)    Counterclaim Defendants have unfairly competed with Sears by unlawfully, and without authorization using Sears' HOME AGAIN trademark in connection with another television series that is likely to cause confusion as to the source, sponsorship or association of Sears;

    (c)    Counterclaim Defendants and their officers, agents, servants, employees, attorneys, and all other persons in active concert and/or participation with them who receive notice, be temporarily, preliminarily and permanently enjoined and restrained from:

        (i)    using any trademark or name or design identical, or confusingly similar, to Sears' HOME AGAIN trademark;

        (ii)    otherwise infringing Sears' HOME AGAIN trademark;

        (iii)    otherwise unfairly competing with Sears relating to the television series HOME AGAIN; and,

16

(iv)    Causing or creating a likelihood of confusion or misunderstanding as to source, association with, affiliation with, sponsorship of, approval of, or certification of or by Sears, or engaging in any other conduct which tends to pass off Counterclaim Defendants' television home improvement show as that of Sears or which tends to create a likelihood of confusion, misunderstanding, or false representation in association therewith.

(d)    Counterclaim Defendants be directed to file in Court, and to serve on Sears , within thirty (30) days after entry of the above injunction, a report in writing, under oath, setting forth in detail the manner and form in which it has complied with the injunctive relief ordered by this Court.

(e)    Counterclaim Defendants be directed to deliver up to this Court for destruction, pursuant to 15 U.S.C. § 1118, all prints, advertisements, promotional materials, electronic media or other articles in its possession bearing or exhibiting Sears' HOME AGAIN trademark, or any reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices, screens, or other means of making the same.

(f)    an accounting be held and judgment rendered for damages sustained by Sears on account of Counterclaim Defendants' trademark infringement and unfair competition, under both federal and state law, that the case be found to be exceptional and that reasonable attorneys fees be assessed against Counterclaim Defendants and awarded to Sears pursuant to 15 U.S.C. §1117(a).

(g)    this Court award reasonable attorney fees, taxable costs and such other and further relief to Sears as deemed just.

2.      With respect to Counts II-VII, an order awarding Sears damages, interest, costs,

attorney's fees and all such further relief as this Court deems appropriate.


**SEARS, ROEBUCK AND CO., SEARS HOLDINGS CORPORATION AND KMART HOLDING CORPORATION HEREBY DEMAND A TRIAL BY JURY ON ALL COUNTS SO TRIABLE IN BOTH THE COMPLAINT AND COUNTERCLAIM.**

**RESPECTFULLY SUBMITTED:**
SEARS HOLDINGS CORPORATION and
KMART HOLDING CORPORATION,
Defendants, and SEARS, ROEBUCK AND CO.,
Defendant/Counterclaimant,
By their attorneys:


/s/ Annapoorni R. Sankaran
Gary R. Greenberg, BBO #209420
A. John Pappalardo, BBO # 338760
Annapoorni R. Sankaran, BBO #631065
GREENBERG TRAURIG, LLP
One International Place, 3rd Floor
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (fax)


DATED:  August 22, 2005


CERTIFICATE OF SERVICE

I Annapoorni R. Sankaran, hereby certify that on August 22, 2005, I served a copy of the foregoing by overnight mail, postage-prepaid upon:

James F. O'Brien, Esq.
410 park Avenue, Suite 1530
New York, NY 10022

/s/ Annapoorni R. Sankaran
Annapoorni R. Sankaran