UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 OCT 17  A 11: 33

CIVIL ACTION NO.
05-11717 REK  U.S. DISTRICT COURT
DISTRICT OF MASS

ROBERT J. VILA and B.V.T.V., INC.          )
                                           )
            Plaintiffs,                    )
                                           )
                                           )
v.                                         )
                                           )
                                           )
SEARS, ROEBUCK AND CO.,                    )
SEARS HOLDINGS CORPORATION                 )
and KMART HOLDING COPORATION               )
            Defendants.                    )
                                           )

## PLAINTIFFS' MOTION TO AMEND COMPLAINT

Plaintiffs Robert J. Vila and B.V.T.V., Inc., by their attorney  and pursuant to F.R.C.P

Rule 15(a) hereby move for leave to file their First Amended Complaint in this action

As grounds therefore, Plaintiffs say as follows:

1. This action was filed in the Dukes County Superior Court, Edgartown, Massachusetts

on July 18, 2005.

2. On August 17, 2005, this action was removed to his Court.

3. On August 22, 2005, defendants filed their Answer and Counterclaim.

4. Since the initiation of this action, additional events have occurred and additional facts

have been learned which require that the Complaint be amended to incorporate those

facts and the causes of action arising therefrom..

5. This action is scheduled for an Initial Scheduling Conference on October 19, 2005.

6. Defendants will not be prejudiced by the requested amendment.

7. A copy of the proposed Plaintiffs' First Amended Complaint is attached hereto as Exhibit A.

WHEREFORE, Plaintiffs Robert J. Vila and B.V.T.V., Inc. respectfully request that they be granted leave to file Plaintiffs' First Amended Complaint

ROBERT J. VILA and B.V.T.V., INC.

By their attorney,

James F. O'Brien (BBO # 375765)
410 Park Avenue, Suite 1530
New York, New York 10022
212 813 9300

Dated: October 14, 2005                212 813 1907 (fax)

## CERTIFICATE OF CONFERENCE

I, James F. O'Brien, counsel for Plaintiffs, hereby certify, pursuant to Local Rule 7.1(A)(2), that I have conferred with Anna Sankaran, Esq., Greenberg, Traurig LLP, One International Place, Boston, MA 02110, counsel for defendants, and have attempted in good faith to resolve the issues which are the subject of the within Motion.

James F. O'Brien

## CERTIFICATE OF SERVICE

I, James F. O'Brien, counsel for Plaintiffs, hereby certify that, on October 14 , 2005, I served a true copy of the foregoing Motion To Amend Complaint upon Gary Greenberg, Esq., Greenberg, Traurig LLP, One International Place, Boston, MA 02110, counsel for defendants, by overnight mail, postage prepaid.

James F. O'Brien

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
LM'S OFFICE

CIVIL ACTION NO:   A 11: 34
05-11717 REK

DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| ROBERT J. VILA and B.V.T.V., INC. | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
|  | ) |
| v. | ) |
|  | ) |
|  | ) |
| SEARS, ROEBUCK AND CO., | ) |
| SEARS HOLDINGS CORPORATION | ) |
| and KMART HOLDING COPORATION | ) |
| Defendants. | ) |
|  | ) |

## (PROPOSED)<u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

Plaintiffs Robert J. Vila and B.V.T.V., Inc. file this First Amended Complaint seeking to recover damages and other relief from defendants Sears, Roebuck and Co., Sears Holdings Corporation and Kmart Holding Corporation in connection with the repudiation of and breaches by Sears, Roebuck and Co. of a contract with Robert J. Vila to act as spokesperson for certain products of Sears, Roebuck and Co. and of a contract with B.V.T.V., Inc. for the production of the nationally syndicated television series known as *Bob Vila's Home Again.* In particular, Robert J. Vila seeks the recovery of amounts due and to become due pursuant to his Spokesperson Agreement with Sears, Roebuck and Co., damages from Sears Holdings Corporation and Kmart Holding Corporation due to their tortious interference with the Spokesperson Agreement and an award of damages

from Sears, Roebuck and Co., Sears Holdings Corporation and Kmart Holding Corporation due to their bad faith and unfair and deceptive conduct, trebled on account of defendants' willful violations of M.G.L. c. 93A, §§2 and 11, together with interest, costs and attorneys' fees. B.V.T.V., Inc. seeks the recovery of amounts due and to become due pursuant to its Syndication Agreement with Sears, Roebuck and Co., damages from Sears Holdings Corporation and Kmart Holding Corporation due to their tortious interference with the Syndication Agreement and an award of damages from Sears, Roebuck and Co., Sears Holdings Corporation and Kmart Holding Corporation due to their bad faith and unfair and deceptive conduct, trebled on account of defendants' willful violation of M.G.L. c. 93A, §§2 and 11, together with interest, costs and attorneys' fees.

### THE PARTIES

1. Plaintiff Robert J. Vila ("Vila") is a citizen of the Commonwealth of Massachusetts with a residence in Chilmark, Massachusetts. Continuously since 1989, Vila has been the national spokesperson for certain products marketed and sold by defendant Sears, Roebuck and Co.

2. Plaintiff B.V.T.V., Inc. ("BVTV") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 115 Kingston Street, Boston, Massachusetts. Continuously since 1989, BVTV has been the producer of the nationally syndicated television series initially known as *Home Again With Bob Vila* and more recently known as *Bob Vila's Home Again* which series has been financed by Sears, Roebuck and Co.

2

3. Defendant Sears, Roebuck and Co. ("Sears") is a corporation organized and existing under the laws of the State of New York with a principal place of business at 3333 Beverly Road., Hoffman Estates, Illinois. At all times material hereto, Sears has been one of the nation's largest retailers of merchandise, including so-called home improvement products.

4. Defendant Sears Holdings Corporation ("SHLD") is a corporation organized in 2004 and existing under the laws of the State of Delaware with a principal place of business at 3333 Beverly Road., Hoffman Estates, Illinois

5. Defendant Kmart Holding Corporation ("Kmart") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 3100 West Big Beaver Road, Troy, Michigan.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction with respect to defendants Sears, SHLD and Kmart pursuant to M.G.L. c. 223A, §3 because Sears transacts business within the Commonwealth of Massachusetts and SHLD and Kmart have caused tortious injury in the Commonwealth of Massachusetts.

7. This Court has jurisdiction with respect to the subject matter of this action pursuant to 28 U.S.C. § 1332.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

9. On or about September 29, 1985, Sears entered into an agreement with Vila, whereby, for guaranteed compensation, Vila was to render professional services as a spokesperson, participant and performer in connection with the advertising of Sears' products by way of, among other things, television and radio commercials, videos, still photographs and personal appearances (the "Spokesperson Agreement"). The Spokesperson Agreement includes, at Paragraph VII, sub-paragraph 2, a "Pay or Play" provision that Sears will not be required to request Vila's services at any time or to utilize Vila's services or the product of Vila's services and that Sears' only obligation shall be to make the payments required pursuant to the Spokesperson Agreement.

10. The Spokesperson Agreement has been extended and amended by the parties ten (10) times and currently is due to expire on December 31, 2009. The "Pay or Play" provision remained in effect through all ten amendments. Since 1989, Vila has performed and continues to be ready, willing and able to perform his obligations to Sears pursuant to the Spokesperson Agreement, as amended.

11. The Spokesperson Agreement, Amendment IX, paragraph 7 provides, "If the Bob Vila Home Again television show is canceled for any reason, Sears has the right to terminate this Agreement effective the 31st day of December following the notice of cancellation."

12. At the time of the negotiations of Amendment IX to the Spokesperson Agreement in 1998, to induce Vila to enter into Amendment IX, Sears

4

represented that the language of paragraph 7 was there in the event that the television series was canceled by the syndicator of the television series, an independent third party. Sears intended that Vila rely upon that representation and Vila reasonably did rely upon that representation in entering into Amendment IX to the Spokesperson Agreement, as amended.

13. The Spokesperson Agreement, Amendment X, paragraph 4, dated December 1, 2000, provides, "Paragraph 7 of Amendment IX shall remain in effect during the current term and any extension of that certain Bob Vila Syndicated Television Program Agreement dated September 29, 1989, as amended, between Ogilvy & Mather, as agent for Sears, and B.V.T.V., Inc."

14. On or about September 29, 1989, Sears entered into an agreement with BVTV, whereby BVTV was to produce and deliver to Sears a series of home improvement television programs to be financed by Sears (the "Syndication Agreement"). The television programs produced by BVTV and financed by Sears are distributed for airing by a syndicator, an independent third party.

15. The Syndication Agreement has been extended and amended by the parties eleven (11) times. Negotiations for the most recent amendment to the Syndication Agreement (Amendment 11) took place from February 2004 to January 18, 2005. During the period of these negotiations, BVTV, relying upon the fifteen year course of conduct of the parties in amicably and non-adversarially successfully negotiating the ten (10) prior amendments to the Syndication Agreement, began performance of BVTV's obligations under Amendment 11.

5

16. Amendment 11 to the Syndication Agreement provides for the production by BVTV and financing by Sears of the television series for the 2005-2006 and 2006-2007 viewing seasons. At no time during the period of negotiations of Amendment 11 did Sears give any indication to BVTV that it would not enter into Amendment 11 with BVTV.

17. On or about November 17, 2004, when negotiations for Amendment 11 of the Syndication Agreement were nearing conclusion, Sears announced a transaction whereby, subject to, among other things, shareholder approval by the shareholders of Kmart and Sears, respectively, Kmart would acquire Sears and combine the two companies into a major new retail company.

18. In anticipation of that transaction, on November 23, 2004, Kmart formed SHLD in the State of Delaware.

19. Pursuant to the course of conduct established by Sears and BVTV over the fifteen years of their relationship, in December 2004, BVTV began preproduction activities for the 2005–2006 viewing season of the television series and submitted invoices to Sears for the initial payment of $750,000 that would be due under Amendment 11 on January 1, 2005 as it had done religiously over the prior years.

20. On January 18, 2005, Sears and BVTV concluded their negotiations and entered into Amendment 11 to the Syndication Agreement, as amended. Since 1989, BVTV has performed and continues to perform its obligations to Sears pursuant to the Syndication Agreement, as amended.

21. Pursuant to the Syndication Agreement, as amended, for the 2003-2004 viewing season, Sears is obligated, among other things, to pay BVTV certain incentive

6

bonus payments of up to a maximum of $1,250,000. Sears has not fully accounted to BVTV for or paid to BVTV the entirety of the incentive bonus payments due for the 2003-2004 viewing season. Upon information and belief, the balance of the incentive bonus payment due to BVTV for the 2003-2004 viewing season is approximately $450,000.

22. Pursuant to the Syndication Agreement, as most recently amended and in effect, for the 2005-2006 viewing season, Sears is obligated to pay to BVTV the guaranteed sums of $750,000 by January 1, 2005, $494,500 by March 1, 2005, $275,000 by August 1, 2005, plus, by August 1, 2005, a $200,000 advance against incentive bonus payments, with the balance of said incentive bonus payments to be estimated and paid by October 1, 2005. Similarly, for the 2006-2007 viewing season, Sears is obligated, among other things, to pay BVTV the guaranteed sums of $750,000 by January 1, 2006, $494,500 by March 1, 2006 , $275,000 by August 1, 2006, plus, by August 1, 2006, a $200,000 advance against incentive bonus payments, with the balance of said incentive bonus payments to be estimated and paid by October 1, 2006.

23. In February 2005, although the transaction with Kmart Holding had not been consummated or approved by shareholders of Sears and Kmart, and although Sears and BVTV had just recently entered into Amendment 11 to the Syndication Agreement, Kmart and SHLD caused Sears to advise BVTV that management of Kmart and SHLD wanted to change the Syndication Agreement, as amended and then in effect.

7

24. Although Sears and BVTV had just recently entered into Amendment 11 to the Syndication Agreement, because of the long and mutually successful relationship BVTV enjoyed with Sears, BVTV engaged in discussions with Sears for a possible further amendment to the Syndication Agreement, as amended and then in effect.

25. In the course of those discussions, Kmart and SHLD caused Sears to advise Vila that management of Kmart and SHLD also wanted to change the Spokesperson Agreement, as amended and then in effect. The most recent amendment to the Spokesperson Agreement (Amendment X) had been entered into in December 2000 and extended the term of the Spokesperson Agreement through December 31, 2009.

26. Because of the long and mutually successful relationship Vila enjoyed with Sears, Vila engaged in discussions with Sears for a possible further amendment to the Spokesperson Agreement, as amended and then in effect.

27. When those discussions did not progress as SHLD and Kmart desired, SHLD and Kmart caused Sears to claim that Sears had not agreed with BVTV for the production of the television series *Bob Vila's Home Again* for the 2005-2006 viewing season or any other future viewing season.

28. SHLD and Kmart caused Sears to breach its Syndication Agreement, as amended, with BVTV and to refuse to pay BVTV (i) the balance of the incentive bonus payments for the 2003-2004 viewing season, believed to be $450,000 (ii) the payments due BVTV pursuant to the Syndication Agreement, as amended, by January 1, 2005, March 1, 2005 and August 1, 2005 in the total amount of

8

$1,719,500 and (iii) by October 1, 2005, an amount to be determined, as incentive bonus payments for the 2004-2005 viewing season.

29. SHLD also caused Sears totally to repudiate the Syndication Agreement, as amended, and stated that Sears will not make any payments due BVTV or to become due to BVTV in the future under the Syndication Agreement, as amended. For the 2006-2007 viewing season, Sears is obligated, among other things, to pay BVTV the guaranteed sums of $750,000 by January 1, 2006, $494,500 by March 1, 2006 , $275,000 by August 1, 2006, plus, by August 1, 2006, a $200,000 advance against incentive bonus payments, with the balance of said incentive bonus payments to be estimated and paid by October 1, 2006.

30. Further, SHLD and Kmart also caused Sears to take the position that Sears' repudiation of the Syndication Agreement, as amended, constituted a "cancellation" of the television series, entitling Sears to terminate the Spokesperson Agreement with Vila.

31. Pursuant to the Spokesperson Agreement, as amended, Sears is obligated to pay to Vila each year through December 31, 2009, one half of the guaranteed compensation for that year on January 1 and the other half on July 1.

32. The guaranteed compensation owed to Vila for the year 2005 is $1,897,500. The guaranteed compensation to be paid to Vila for the years 2006-2009 is $9,686,926.

33. Sears made the payment due Vila on January 1, 2005 in the amount of $948,750, which was 50% of the monies contractually due for that year.

9

34. SHLD and Kmart, without color of justification or any explanation, caused Sears to refuse to pay to Vila the balance of the guaranteed compensation due July 1, 2005 in the amount of $948,750. Sears had neither received a notification of cancellation of the television series by the syndicator, nor had it sent Vila a notice of termination of the Spokesperson Agreement. In fact, the television series has not been canceled and is currently airing nationwide.

35. On July 18, 2005, plaintiffs filed this action in the Dukes County Superior Court, Edgartown, Massachusetts.

36. Defendants requested that plaintiffs grant defendants an extension of time to August 22, 2005 for defendants to file a responsive pleading to plaintiffs' Complaint. Plaintiffs granted the requested extension of time.

37. During the period from August 1, 2005 through and including August 17, 2005, plaintiffs and defendants engaged in discussions regarding the facts of the case and attempts to resolve their issues. On several occasions during those discussions, plaintiffs were informed in response to their direct questions that defendants were not contesting plaintiffs' rights to be paid the $948,750 due Vila on July 1, 2005 (Complaint, Count I) or the balance of the incentive bonus payments overdue BVTV for the 2003-2004 viewing season (Complaint, Count VI). Also in response to direct questions, defendants did not state any factual or legal basis for not making those payments.

38. Efforts to reach a resolution were unsuccessful and on August 17, 2005, defendants removed this action to this Court.

10

39. On August 17, 2005, counsel for plaintiffs conferred, pursuant to Local Rule 7.1, with counsel for defendants concerning plaintiffs' intent to move for partial summary judgment with respect to Counts I and VI of plaintiffs' Complaint, since there was no genuine material issue of fact in dispute as to those Counts of the Complaint.

40. On August 19, 2005, by fax letter of that date addressed to Vila, defendant SHLD stated, among other things, and for the very first time and without any prior notice, that defendant Sears "has learned that you have engaged in substantial misconduct under the [Spokesperson] agreement including your violation of Sears' trademark in the Home Again name"; that Sears was, therefore, under no obligation to make the July 1, 2005 payment under the Spokesperson Agreement; and that Sears was terminating the Spokesperson Agreement effective August 19, 2005. In that letter, SHLD, further stated that, since Vila had alleged in the Complaint that Sears "knowingly and intentionally deceived" Vila, Vila was "involved in [a] situation" that "reflects unfavorably upon [Sears'] reputation" and that Sears was terminating the Spokesperson Agreement on that ground as well. SHLD further stated that Sears "hereby cancels the Bob Vila Home Again television show".

41. On August 22, 2005, defendants filed their Answer to the Complaint and defendant Sears filed a counterclaim alleging trademark infringement and overpayment of the incentive bonus for the 2003-2004 viewing season.

42. On August 23, 2005, counsel for defendants faxed a letter to counsel for plaintiffs claiming that Sears had a trademark in the words HOME AGAIN, that

11

that trademark is the exclusive property of Sears, that defendants were infringing on the alleged trademark and demanding that defendants cease and desist from the alleged infringement.

43. On August 24, 2005, by letter of the same date, counsel for plaintiffs advised counsel for defendants that the words HOME AGAIN were not a trademark, that the alleged trademark was not the exclusive property of Sears, that Sears' position had no merit, but that it was a non-issue for plaintiffs. Defendants were advised that BVTV had intended to use the phrase "Home Again" in its production of the television series for the 2005-2006 season, anticipating that defendant Sears and plaintiff BVTV would settle their issues regarding Sears' obligation to finance that production. Defendants were further advised that, since such a resolution now appeared unlikely, "BVTV's production, advertising and airing of its home improvement television series for the 2005-2006 [viewing] season and thereafter will not bear the phrase 'Home Again'".

44. On August 25, 2005, at the inception of a meeting among counsel and representatives of both plaintiffs and defendants, defendants were advised by plaintiffs that, although defendants' position regarding the alleged trademark had no merit, plaintiffs would not use the phrase "Home Again" in the name of the television series for the 2005-2006 viewing season or thereafter. Defendants were further advised that BVTV was taking immediate action to remove the phrase "Home Again" from the title of the television series and from any advertising or promotions for the series for the 2005-2006 viewing season. Plaintiffs requested that, if defendants became aware of any continuing use of the phrase "Home

Again" in advertising or promotions, defendants notify plaintiffs or their counsel of the same and plaintiffs would attempt to have such phrase removed from such advertising or promotion.

## COUNT I
### (Breach of Contract)

45. Vila repeats the allegations contained in paragraphs 1 through 44, as though fully set forth herein.

46. By its failure and refusal to pay Vila the guaranteed compensation in the amount of $948,750 due Vila on July 1, 2005, Sears has breached its obligations to Vila pursuant to the Spokesperson Agreement.

47. As a direct and proximate result of Sears' breach of the Spokesperson Agreement, Vila has been damaged in an amount to be determined at trial, but, in no event less than $948,750, plus interest, costs and his attorneys' fees.

## COUNT II
### (Repudiation of Contract)

48. Vila repeats the allegations contained in paragraphs 1 through 47, as though fully set forth herein.

49. Sears has repudiated its future obligations to Vila pursuant to the Spokesperson Agreement.

50. As a direct and proximate result of Sears' repudiation of the Spokesperson Agreement, as amended to run through December 31, 2009, Vila has been

13

damaged in an amount to be determined at trial, but, in no event less than
$948,750 and will be damaged in a further amount to be determined at trial, but,
in no event less than $9,686,926, plus interest, costs and his attorneys' fees.

## COUNT III
(Breach of Implied Covenant of Good Faith and Fair Dealing)

51. Vila repeats the allegations contained in paragraphs 1 through 50, as though fully
set forth herein.

52. By its actions and conduct, Sears has breached the implied covenant of good
faith and fair dealing inherent in the Spokesperson Agreement, as amended.

53. As a direct and proximate result of Sears' breach of the implied covenant of good
faith and fair dealing inherent in the Spokesperson Agreement, as amended, Vila
has been damaged in an amount to be determined at trial, but, in no event less
than $948,750, and will be damaged in a further amount to be determined at trial,
but, in no event less than $9,686,926, plus interest, costs and his attorneys' fees.

## COUNT IV
(Equitable Estoppel)

54. Vila repeats the allegations contained in paragraphs 1 through 53, as though fully
set forth herein.

55. In the negotiation of Amendment IX to the Spokesperson Agreement, Sears
represented that paragraph 7 of the proposed Amendment IX was there in the

14

event that the television series was canceled by the syndicator of the television series, an independent third party.

56.  Sears intended that Vila rely upon that representation and Vila reasonably did rely upon that representation in entering into Amendment IX to the Spokesperson Agreement, as amended.

57.  SHLD have now caused Sears to take the position and Sears has taken the position that Sears, itself, rather than the syndicator, is entitled to cancel the television series and, thereby, is entitled to terminate the Spokesperson Agreement.

58.  By letter dated August 19, 2005, SHLD asserted that Sears cancelled the television series, effective that date.

59.  In fact, the television series has not been canceled and is currently airing nationwide.

60.  As the result of the foregoing, Vila has been damaged in an amount to be determined at trial, but, in no event less than $948,750, and will be damaged in a further amount to be determined at trial, but, in no event less than $9,686,926, plus interest, costs and his attorneys' fees.

61.  Defendants' conduct is inequitable and defendants should be estopped from asserting that Sears, itself, has the right to cancel the television series in order to escape Sears' substantial obligations to Vila through December 31, 2009 under the Spokesperson Agreement, as amended.

15

## COUNT V
### (Tortious Intereference)

62. Vila repeats the allegations contained in paragraphs 1 through 61, as though fully set forth herein.

63. SHLD and Kmart knew of the Spokesperson Agreement, as amended, between Sears and Vila.

64. SHLD and Kmart, without any right or privilege to do so, intentionally and tortiously interfered with the Spokesperson Agreement with improper purpose or by improper means, causing Sears to breach its obligations to Vila under the Spokesperson Agreement, as amended, to breach the implied covenant of good faith and fair dealing in the Spokesperson Agreement and to repudiate its future obligations to Vila under the Spokesperson Agreement.

65. As a direct and proximate result of SHLD's and Kmart's tortious interference with the Spokesperson Agreement between Sears and Vila, Vila has been damaged in an amount to be determined at trial, but, in no event less than $948,750 and will be damaged in a further amount to be determined at trial, but, in no event less than $9,686,926, plus interest, costs and his attorneys' fees.

## COUNT VI
### (Violation of M.G.L. 93A)

66. Vila repeats the allegations contained in paragraphs 1 through 65, as though fully set forth herein.

16

67. Vila, Sears, SHLD and Kmart are engaged in trade or commerce in the Commonwealth of Massachusetts, within the meaning of M.G.L. c. 93A.

68. By their actions and conduct, Sears, SHLD and Kmart have knowingly and intentionally engaged in unfair and deceptive acts or practices in violation of M.G.L. c. 93A, §§2 and 11.

69. As a direct and proximate result of Sears', SHLD's and Kmart's violations of M.G.L. c. 93A, Vila has been damaged in an amount to be determined at trial, but, in no event less than $948,750, trebled, but in no event, less than doubled, plus interest, costs and his attorneys' fees. Further, Vila will be damaged in a further amount to be determined at trial, but, in no event less than $9,686,926, trebled, but in no event, less than doubled, plus interest, costs and his attorneys' fees.

## COUNT VII
### (Breach of Contract)

70. BVTV repeats the allegations contained in paragraphs 1 through 69, as though fully set forth herein.

71. By its failure and refusal to pay BVTV the full incentive bonus due for the 2003-2004 and the 2004-2005 viewing seasons and the guaranteed compensation past due BVTV for the 2005-2006 viewing season, Sears has breached its obligations to BVTV pursuant to the Syndication Agreement, as amended.

72. As a direct and proximate result of Sears' breach of the Syndication Agreement, BVTV has been damaged in an amount to be determined at trial, but, in no event less than $2,169,500, plus interest, costs and its attorneys' fees.

17

## COUNT VIII
### (Repudiation of Contract)

73. BVTV repeats the allegations contained in paragraphs 1 through 72, as though fully set forth herein.

74. Sears has repudiated its future obligations to BVTV pursuant to the Syndication Agreement.

75. As a direct and proximate result of Sears' repudiation of the Syndication Agreement, BVTV has been damaged in an amount to be determined at trial, but, in no event less than $2,169,500, plus interest, costs and its attorneys' fees, and will be damaged in a further amount to be determined at trial, but, in no event less than $1,719,500, plus interest, costs and its attorneys' fees.

## COUNT IX
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

76. BVTV repeats the allegations contained in paragraphs 1 through 75, as though fully set forth herein.

77. By its actions and conduct, Sears has breached the implied covenant of good faith and fair dealing inherent in the Syndication Agreement, as amended.

78. As a direct and proximate result of Sears' breach of the implied covenant of good faith and fair dealing inherent in the Syndication Agreement, as amended, BVTV has been damaged in an amount to be determined at trial, but, in no event less than $2,169,500, plus interest, costs and its attorneys' fees. and will be damaged

18

in a further amount to be determined at trial, but, in no event less than $1,719,500, plus interest, costs and its attorneys' fees.

## COUNT X
### (Tortious Interference With Contract)

79. BVTV repeats the allegations contained in paragraphs 1 through 78, as though fully set forth herein.

80. SHLD and Kmart knew of the Syndication Agreement, as amended, between Sears and BVTV.

81. SHLD and Kmart, without any right or privilege to do so, intentionally and tortiously interfered with that contract, with improper motive or by improper means, causing Sears to breach its obligations to BVTV under the Syndication Agreement, as amended, to breach the implied covenant of good faith and fair dealing inherent in the Syndication Agreement and to repudiate its future obligations to BVTV under the Syndication Agreement.

82. As a direct and proximate result of SHLD's and Kmart's tortious interference with the Syndication Agreement between Sears and BVTV, BVTV has been damaged in an amount to be determined at trial, but, in no event less than $2,169,500, plus interest, costs and its attorneys' fees and will be damaged in a further amount to be determined at trial, but, in no event less than $1,719,500, plus interest, costs and its attorneys' fees.

## COUNT XI
### (Violation of M.G.L. c. 93A)

83. BVTV repeats the allegations contained in paragraphs 1 through 82, as though fully set forth herein.

84. BVTV, Sears, SHLD and Kmart are engaged in trade or commerce in the Commonwealth of Massachusetts, within the meaning of M.G.L. c. 93A.

85. By their actions and conduct, Sears, SHLD and Kmart have knowingly and intentionally engaged in unfair and deceptive acts or practices in violation of M.G.L. c. 93A, §§2 and 11.

86. As a direct and proximate result of Sears', SHLD's and Kmart's violations of M.G.L. c. 93A, BVTV has been damaged in an amount to be determined at trial, but, in no event less than $2,169,500, trebled, but in no event, less than doubled, plus interest, costs and its attorneys' fees. Further, BVTV will be damaged in a further amount to be determined at trial, but, in no event less than $1,719,500, trebled, but in no event, less than doubled, plus interest, costs and its attorneys' fees.

## PRAYERS FOR RELIEF

WHEREFORE, Robert J. Vila and B.V.T.V, Inc. respectfully request that this Court enter judgment, as follows:

A. Awarding Robert J. Vila damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $948,750, as a result of Sears,

Roebuck and Co.'s breach of the Spokesperson Agreement, together with interest, costs and his attorneys' fees;

B.  Awarding Robert J. Vila damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $9,686,926, as a result of Sears, Roebuck and Co.'s repudiation of the Spokesperson Agreement, together with interest, costs and his attorneys' fees;

C.  Awarding Robert J. Vila damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $10,635,676, as a result of Sears, Roebuck and Co.'s breach of the implied covenant of good faith and fair dealing inherent in the Spokesperson Agreement, together with interest, costs and his attorneys' fees;

D.  Awarding Robert J. Vila damages against Sears Holdings Corporation and Kmart Holding Corporation in an amount to be determined at trial, but in no event less than $10,635,676, as a result of Sears Holdings Corporation's and Kmart Holding Corporation's tortious interference with the Spokesperson Agreement, together with interest, costs and his attorneys' fees;

E.  Awarding Robert J. Vila damages against Sears, Roebuck and Co., Sears Holdings Corporation and Kmart Holding Corporation in an amount to be determined at trial, but in no event less than $10,635,676, trebled, but, in no event less than doubled, as a result of Sears, Roebuck and Co.'s, Sears Holding Corporation's and Kmart Holding Corporation's unfair and deceptive conduct in violation of M.G.L. c. 93A, together with interest, costs and his attorneys' fees;

F. Awarding B.V.T.V., Inc. damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $2,169,500, as a result of Sears, Roebuck and Co.'s breach of the Syndication Agreement, together with interest, costs and its attorneys' fees;

G. Awarding B.V.T.V., Inc. damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $1,719,500, as a result of Sears, Roebuck and Co.'s repudiation of the Syndication Agreement, together with interest, costs and its attorneys' fees;

H. Awarding B.V.T.V., Inc. damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $3,889,000, as a result of Sears, Roebuck and Co.'s breach of the implied covenant of good faith and fair dealing inherent in the Syndication Agreement, together with interest, costs and its attorneys' fees;

I. Awarding B.V.T.V., Inc. damages against Sears Holdings Corporation and Kmart Holding Corporation, in an amount to be determined at trial, but in no event less than $3,889,000, as a result of Sears Holdings Corporation's and Kmart Holding Corporation's tortious interference with the Syndication Agreement, together with interest, costs and its attorneys' fees;

J. Awarding B.V.T.V., Inc. damages against Sears, Roebuck and Co., Sears Holdings Corporation and Kmart Holding Corporation, in an amount to be determined at trial, but in no event less than $3,889,000, trebled, but, in no event, less than doubled, as a result of Sears, Roebuck and Co.'s, Sears Holdings

22

Corporation's and Kmart Holding Corporation's unfair and deceptive conduct in

violation of M.G.L. c. 93A, together with interest, costs and its attorneys' fees;

K. Awarding Robert J. Vila and B.V.T.V., Inc. such other and further relief as this

Court deems just and proper.

## JURY DEMAND

Robert J. Vila and B.V.T.V., Inc. hereby demand a jury as to all claims and issues so
triable.

ROBERT J. VILA and B.V.T.V., INC.

By their attorney,

_____
James F. O'Brien (BBO # 375765)
410 Park Avenue, Suite 1530
New York, New York 10022
212 813 9300
Dated: October  , 2005                                     212 813 1907 (fax)

## CERTIFICATE OF SERVICE

I, James F. O'Brien, counsel for Plaintiffs, hereby certify that, on October  , 2005, I
served a true copy of the foregoing Motion for Partial Summary Judgment upon Gary
Greenberg, Esq., Greenberg, Traurig LLP, One International Place, Boston, MA 02110,
counsel for defendants, by overnight mail, postage prepaid.

_____
James F. O'Brien