UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
05-11717-REK

|  |  |
|---|---|
| ROBERT J. VILA and B.V.T.V., INC. | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
| SEARS, ROEBUCK AND CO., | ) |
| SEARS HOLDINGS CORPORATION | ) |
| and KMART HOLDING COPORATION | ) |
| Defendants. | ) |

**PLAINTIFF ROBERT J. VILA'S MEMORANDUM OF REASONS IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Robert J. Vila ("Vila") has brought a Motion for Partial Summary Judgment as to Counts I, II, III and VI of Plaintiffs' eleven count First Amended Complaint against Defendants. As is demonstrated by the First Amended Complaint, the Affidavit of Robert J. Vila and the exhibits thereto, Plaintiff's Statement of Material Facts, the Affidavit of James F. O'Brien and the exhibits thereto and this Memorandum, there is no genuine issue of material fact in dispute as to Counts I,II, III, and VI of Plaintiffs' First Amended Complaint and Plaintiff Robert J. Vila is entitled to the entry of judgment thereon as a matter of law.

**INTRODUCTION**

Robert J. Vila has been, for over 15 years, the national spokesperson for Defendant Sears, Roebuck and Co., ("Sears"), making personal appearances, radio, television and

print commercials and videos promoting Sears and certain of its products. Vila is also the president of Plaintiff BVTV which, for over 15 years, has been the producer of the nationally syndicated television series, *Bob Vila's Home Again* (the "Series") sponsored by Sears. The Series is presently airing nationwide under the title *Bob Vila.* Since 1989, Vila, BVTV and Sears, one of the nation's largest retailers, enjoyed a mutually beneficial and satisfactory relationship. In the Spring of 2005, Sears was acquired by Defendant Kmart Holding Corporation ("Kmart"). In connection with that acquisition, a new company was organized, Defendant Sears Holdings Corporation ("SHLD"). SHLD now owns 100% of the stock of Sears and Kmart. Beginning before the consummation of the acquisition of Sears by Kmart and continuing to the present, Kmart and then SHLD caused Sears to breach and repudiate Sears' continuing contractual obligations to Vila and BVTV. After months of unsuccessfully attempting to have Sears honor its contractual obligations to Vila and BVTV, this action was commenced on July 18, 2005 in Dukes Superior Court. On August 4, 2005, counsel for all Defendants requested of and were granted by Plaintiffs' counsel an extension of time to respond to Plaintiffs' Complaint to and including August 22, 2005. There then ensued two weeks of discussions in an effort to resolve the issues which were the subject of the original Complaint. Those discussions were unsuccessful and, on August 17, 2005, the Defendants removed the action to this Court.

On August 19, 2005, Defendant SHLD sent a fax letter to Vila, purporting, among other things, to terminate the Spokesperson Agreement and repudiating all future obligations to Vila under the Spokesperson Agreement. On August 22, 2005, Defendants filed their Answer and Defendant Sears filed a multi-count counterclaim against Plaintiffs.

On October 20, 2006, Plaintiffs filed their First Amended Complaint and Defendants subsequently filed their Answer and Defendant Sears reiterated its multi-count Counterclaim against Plaintiffs.

On February 8, 2005, Vila learned that Defendant Sears continued to exploit Vila's name and image on its website, craftsman.com. On that same date Vila made demand upon Sears for compensation pursuant to the Spokesperson Agreement. Defendants did not respond.

In accordance with F.R.C.P. Rule 56(a), Vila has filed and served his Motion for Partial Summary Judgment.

**FACTS RELEVANT TO COUNTS I, II, III AND VI**
  **I  (Breach of contract with Robert J. Vila)**
  **II  (Repudiation of Contract with Robert J. Vila)**
  **III (Breach of the Implied Covenant of Good Faith and Fair Dealing)**
  **VI   (Violation of M.G.L. c. 93A)**

1. On or about September 29, 1989, Vila entered into an agreement with Defendant Sears, whereby Vila was to render professional services as a spokesperson, participant and performer in connection with the advertising of Sears' products by way of, among other things, television and radio commercials, videos, still photographs and personal appearances (the "Spokesperson Agreement"). (First Amend. Comp. ¶ 9 ; Vila Aff. ¶¶ 3 and 5, Ex. A, p.1)

2. The Spokesperson Agreement has been extended and amended by Sears and Vila numerous times and currently is due to expire on December 31, 2009. (First Amend. Comp. ¶ 10, Vila Aff. ¶4 , Ex. A, Tab 10).

3.  Since 1989, Vila has continually and fully performed and  remains ready, willing

3

and able to perform his obligations to Sears pursuant to the Spokesperson Agreement. (First Amend. Comp. ¶10 , Vila Aff. ¶ 6).

4. The Spokesperson Agreement includes a so-called "Pay or Play" provision that Sears will not be required to request Vila's services at any time or to utilize Vila's services or the product of Vila's services and that Sears' only obligation shall be to make the payments required pursuant to the Spokesperson Agreement. (First Amend. Comp. ¶ 9, Vila Aff., Ex. A, p.7,¶ VII, subparagraph 2.)

5. The Spokesperson Agreement requires that Sears pay Vila the sum of $1,897,500 for the calendar year 2005 and that 50% of that sum be paid by January 1, 2005 and that the remaining 50% be paid by July 1, 2005. ( First Amend. Comp. ¶¶ 31-34 , Vila Aff. ¶ 8, Ex. A, Tab 10, pp. 1 and 2)

6. On or about January 1, 2005, Sears paid Vila the sum of $948,750 as required by the Spokesperson Agreement. (First Amend. Comp. ¶ 33, Vila Aff. ¶ 9 ).

7. In February 2005, prior to the consummation of the acquisition of Sears by Kmart, Kmart and SHLD caused Sears to advise BVTV and Vila that Sears wanted to renegotiate the terms of both the Syndication Agreement and the Spokesperson Agreement. (First Amend. Comp. ¶¶ 23-26).

8. On or about March 24, 2005, Defendant Sears was acquired by Defendant Kmart . (Vila Aff. ¶ 10 ).

9. Since that acquisition and despite demand, Sears has refused to pay Vila the balance which was due by July 1, 2005 under the Spokesperson Agreement in the amount of $948,750. (First Amend. Comp. ¶ 34, Vila Aff. ¶ 11 ).

10. On July 18, 2005, this action was commenced in the Dukes County Superior Court.

(Vila Aff. ¶ 12).

11. On August 17, 2005 Defendants removed this action to this Court. (Vila Aff. ¶ 13).

12. On August 19, 2005. Defendant SHLD sent Vila a faxed letter claiming, among other things, that Sears was cancelling the Spokesperson Agreement. By that letter, Sears totally repudiated its past, present and future obligations to Vila under the Spokesperson Agreement.  (First Amend. Comp. ¶ 40, Vila Aff. ¶14, Ex. B).

13. Notwithstanding its alleged termination of the Spokesperson Agreement, Sears has continued to exploit the name and likenesses of Vila on Sears' website,  craftsman.com, without compensation to Vila. (Vila Aff. ¶¶ 15, 18, 21 and 22, Ex. C).

## **ARGUMENT**

It is axiomatic that a party is entitled to summary judgment under Fed.R.C..P. Rule 56 when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995)(quoting Fed.R.C..P. 56(c)), cert denied, 516 U.S.1113 (1996).  In order to prevail on his Motion for Partial Summary Judgment, Plaintiff must show that there is an absence of evidence to support Defendants' position.  Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990); see also Celotex Corp. v. Catrett, 477 U. S. 317, 325 (1986).  Once Plaintiff has done so, the burden shifts to Defendants, which may not rest upon mere allegations or denials in their pleadings, but must come forward with specific facts showing there is a genuine dispute of a material fact that must be resolved at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986). A fact is material if it affects the outcome of the litigation under the governing law. Anderson, 477 U. S. at 248. A dispute is genuine if a fair minded jury could return a verdict on the evidence presented. Id., at 252. See also Rogers, 902 F.2d at 143 (where evidence is merely colorable or is not significantly probative, summary judgment is warranted). If the non-movant fails to meet its burden, summary judgment is appropriate. Celotex, 477 U. S. at 322.

## I  Breach of Contract

At the time of its failure and refusal to make the July 1, 2005 payment to Vila under the Spokesperson Agreement in the amount of $948,750, Defendant Sears never asserted to Vila or any of his representatives that Vila was not entitled to that payment under the Spokesperson Agreement.. Neither did it take that position within its own internal corporate communications. Indeed, following its own internal procedures, on June 20, 2005, Sears approved the payment of Vila's invoice for that amount ( O'Brien Aff., Dep. Ex. 57). After Defendant Sears failed to make the payment to Vila due by July 1, 2005, and offered no explanation for the non-payment, this lawsuit was initiated on July 18, 2005 in Dukes County Superior Court. (First Amend. Comp. ¶ 35, Vila Aff. ¶ 12.). On August 17, 2005, Defendants removed this action to this Court. (First Amend. Comp. ¶ 38, Vila Aff. ¶ 13). On that same date, August 17, 2005, Vila's counsel, pursuant to Local Rule 7.1, notified Defendants' counsel that Vila would be moving for partial summary judgment as to Count I of the Complaint (Breach of the Spokesperson Agreement) and conferred with Defendants' counsel in an attempt to resolve the proposed motion. (First Amend. Comp. ¶ 39).

On August 19, 2005, by fax letter of that date addressed to Vila, defendant SHLD stated, among other things, and for the very first time, that defendant Sears "has learned that you have engaged in substantial misconduct under the [Spokesperson] agreement including your violation of Sears' trademark in the Home Again name"; that Sears was, therefore, under no obligation to make the July 1, 2005 payment under the Spokesperson Agreement; and that Sears was terminating the Spokesperson Agreement effective August 19, 2005. In that letter, SHLD, further stated that, since Vila had alleged in the Complaint that Sears "knowingly and intentionally deceived" Vila, Vila was "involved in [a] situation" that "reflects unfavorably upon [Sears'] reputation" and that Sears was terminating the Spokesperson Agreement on that ground as well. SHLD further stated that Sears "hereby cancels the Bob Vila Home Again television show". (First Amend. Comp. ¶ 40, Vila Aff. ¶ 14, Ex. B)

On February 8, 2006, Vila learned that, notwithstanding Defendants' alleged termination and repudiation of the Spokesperson Agreement, Sears continued to exploit the name and likenesses of Bob Vila on Sears' website, craftsman. com. Although demand was made upon Sears on that same date, Sears has paid no compensation to Vila for this exploitation of his name and likenesses. Neither did Sears cease its exploitation of Vila's name and likenesses.(Vila Aff. ¶¶ 15-22, Ex. C).

Sears has continued to reap the benefits of the Spokesperson Agreement, but has refused to pay any compensation due Vila . Vila is entitled to judgment in the amount of $948,750, plus statutory interest at 12% per annum from July 1, 2005 to the present and to judgment in the amount of $1,043,625, plus statutory interest at 12% per annum from January 1, 2006 for Sears breaches of the Spokesperson Agreement.

7

## II  Repudiation of Contract

The Spokesperson Agreement provides that

> This agreement shall be construed in accordance with the law of the State of Illinois.

(Vila Aff., Ex. A , p. 10, paragraph 16).

The State of Illinois recognizes the cause of action for anticipatory breach or repudiation of a contract. The seminal Illinois case states that

> The doctrine of anticipatory repudiation requires a clear manifestation of an intent not to perform the contract on the date of performance. The failure of the breaching party must be a total one which defeats or renders unattainable the object of the contract.

<u>In re Marriage of Olsen</u>, 124 Ill. 2d, 19, 24, 528 N.E. 2d 684 (1988).

Sears has the obligation under the Spokesperson Agreement to pay Vila as and when provided in that contract: (First Amend. Comp. ¶ 9 Vila Aff. Ex. A, p.7 Article VII, paragraph 2.)

By fax letter to Vila dated August 19, 2005, Defendant Sears unequivocally renounced its duty – its only duty under the Spokesperson Agreement – to make the payments provided as and when they were to come due. As will be shown below, the purported justifications for such action set forth in that letter are groundless and were interposed for the purpose of defeating Plaintiff's proposed Motion for Partial Summary Judgment of which Defendants were advised on August 17, 2005. (First Amend. Comp. ¶ 39).

Even more telling is that Defendant Sears continues to exploit the benefits to it of the Spokesperson Agreement by utilizing the name and likenesses of Vila on Sears' Craftsman website. (Vila Aff., Ex. C). Indeed, Sears continues to do so, even after demand for payment by Vila on February 8, 2006.

Vila is entitled to judgment on Count II of the First Amended Complaint, as a matter of law.

### III   Breach of the Implied Covenant of Good Faith and Fair Dealing

For months prior to Sears' refusal to pay Vila the sum of $948,750, due by July 1, 2005 under the Spokesperson Agreement, Defendants had been engaged in efforts to have Vila and BVTV renegotiate both the Spokesperson Agreement with Vila and the Syndication Agreement with BVTV. (First Amend. Comp. ¶¶ 24-27).

Sears had stated in an internal memorandum dated February 7, 2005 that the extension of the Syndication Agreement with BVTV was "negotiated and ready to sign".

(O'Brien Aff., Dep. Ex. 75). In an exchange of emails (O'Brien Aff., Dep. Ex. 110), Defendants stated as follows:

> On March 30, 2005, the Chairman of SHLD (Eddie Lampert) wrote to the Chief   Financial Officer (William C. Crowley),
>
>> Make sure you look at the proposed renegotiated deal with Bob Vila to see if it makes sense (emphasis added).
>
> On April 2, 2005 Mr. Crowley wrote to Mr. Luis Padilla the then President of   Merchandising for Sears,
>
>> What is the best way to reduce our exposure to Vila?" (emphasis added).
>
> On April 2, 2005, Mr. Padilla replied to Mr. Crowley
>
>> Send him back to Cuba? Kidding, we are in the process of renegotiating our commitment to minimize our exposure of fees and length (sic) of time.  I will review with you Monday (sic)." (emphasis added).

In another internal memorandum of April 4, 2005, (O'Brien Aff., Dep. Ex. 112), Sears stated as follows:

> Spokesperson Agreement runs through 2009. Sears wants

> to re-structure to a business arrangement that provides reduced
> expense. Sears wants to exchange ownership in the TV show
> library [re-runs] for reduction in future obligations.
>
> Timing is urgent. CBS/Kingworld has sold-out 2005-06 season
> to advertisers and has prepared to clear in syndication for this fall.

On April 15, 2005, William Crowley emailed Mark Rode, the Sears Craftsman Brand Manager (O'Brien Aff., Dep. Ex. 36) and stated,

> I would like to figure out the cheapest way to get out of this agreement.

In still another email, the date of which and the addressee to whom sent were redacted, (O'Brien Aff., Dep. Ex. 142), William Crowley states,

> Can we trade a portion of our ownership of the library to eliminate
> our continuing spokesperson obligation?.....Again, I would like to
> review the contract. Do we have any rights under the contract that
> might help us in this negotiation? We do not appear to have much
> leverage.

On May 6, 2005, Mark Rode emailed William Crowley (O'Brien Aff., Dep. Ex. 49) and stated that

> There is a clause in one of the amendments which says if
> the show is "cancelled" we can terminate the spokesperson
> agreement. The clause was written to cover us if Bob was no
> longer marketable and we couldn't sell the show. Since we own
> the name and pay for syndication, Rob Rathke believes that if
> we "cancel" the show that would allow us to get out of the
> remainder of the spokesperson agreement.
> (quotation marks in original).

Every contract contains the implied promise of good faith and fair dealing between the contracting parties. Schwinder v. Austin Bank of Chicago, 348 Ill. App. 3d 461, 473, 809 N.E. 2d 180 (2004). The implied covenant of good faith and fair dealing provides that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Anthony's Pier Four, Inc. v. HBC

10

Associates, 411 Mass. 451, 471 (1991). "…in Illinois, the parties to every contract owe each other duties of good faith and fair dealing." Podolsky & Associates L.P. v. Discipio, 211 Ill. App. 3d 1014, 1023, 697 N.E. 2d 840 (1998).

Sears own documents make it abundantly clear that Sears was determined to

> reduce our exposure to Vila (O'Brien Aff., Dep. Ex.110).
>
> renegotiate our commitment (O'Brien Aff., Dep. Ex.110).
>
> minimize our exposure of fees and length (sic) of time. (O'Brien Aff., Dep. Ex.110).
>
> re-structure to a business arrangement that provides reduced expense. (O'Brien Aff., Dep. Ex.112).
>
> exchange ownership in the TV show library for reduction in future obligations. (O'Brien Aff., Dep. Ex. 112).
>
> figure out the cheapest way to get out of this agreement. (O'Brien Aff., Dep. Ex.36).
>
> eliminate our continuing spokesperson obligation, (O'Brien Aff., Dep. Ex.142).

Sears realized, "We do not appear to have much leverage." (O'Brien Aff. Dep. Ex.142). Sears then proceeded to concoct an artifice that it could "cancel" the television series and use that purported "cancellation" to "get out of the remainder of the spokesperson agreement." (O'Brien Aff., Dep. Ex. 49).

Sears did this knowing that the real purpose of the language they relied upon to "get out" of the Spokesperson Agreement was "to cover us if Bob was no longer marketable and we couldn't sell the show." (O'Brien Aff., Dep. Ex. 49). Moreover, Sears knew that CBS/Kingworld, the syndicator of the television series, had already sold out the 2005-06 season to advertisers.

> Every contract implies good faith and fair dealing between the parties to it, and where an instrument is susceptible of two conflicting constructions, one which imputes bad faith to one of the parties and the other does not, the latter construction should be adopted.

<u>Mid-West Energy Consultants, Inc. v. Covenant Home</u>, 352 Ill. App. 3d 160, 163, 815 N.E. 2d 911 (2004), quoting <u>Martindell v. Lake Shore National Bank,</u> 15 Ill. 2d 272, 286, 154 N.E. 2d 683, 690 (1958)

Sears' own internal documents establish that Sears breached the implied covenant of good faith and fair dealing inherent in the Spokesperson Agreement and Vila is entitled to a judgment on Count III of the First Amended Complaint, as a matter of law.

## VI   Violation of M.G.L. c. 93A

M.G.L. c. 93A §2 makes it unlawful to employ unfair methods of competition and unfair or deceptive trade practices in the conduct of trade or commerce. Section 11 of the statute makes the prohibition applicable to dealings between individuals and entities engaged in commerce. That same section provides for a private right of action and requires that, upon a finding of a violation, "recovery shall be in the amount of actual damages, or up to three but not less than two times such amount, if the court finds that the use or employment of… the act or practice was a willful or knowing violation of said section 2.

> ……If the court finds in any action commenced hereunder, that there has been a violation of section 2, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in said action.

It has been stated that "The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce. <u>Levings v. Forbes & Wallace</u>, 8 Mass. App. Ct. 498 , 504 (1979).  The

12

conduct of Sears in its dealings with Vila meets, if not exceeds that level of rascality. Defendants attempted to have Vila modify the Spokesperson Agreement in bad faith. When their attempted renegotiation of the Spokesperson Agreement did not go to their liking, Defendants, caused Sears not pay the $948,750 due Vila by July 1, 2005. Sears made no claim that Vila was not entitled to that payment. Rather Sears intended to use the non-payment as a wedge to extort economic concessions from Vila. Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc., 754 F.2d 10, 17-19 (1st Cir. 1985).

> …conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes."

Anthony's Pier 4, Inc v. HBC Associates, at 474.

Not until August 19, 2005, three calendar days before their answer was due, did Defendants articulate that Sears had any justification for not making the July 1, 2005 payment to Vila.  As demonstrated above, this was a total artifice concocted by Defendants in order "to get out" of Sears obligations to Vila under the Spokesperson Agreement. (O'Brien Aff. Dep. Ex. 49) and defeat Plaintiff's proposed Motion for Partial Summary Judgment as to Count I of the original Complaint. This was a knowing use of a pretext to coerce Vila to accept less than the Spokesperson Agreement required and establishes wilfullness as a matter of law.

That Sears breached the Spokesperson Agreement by, at a minimum, continuing to exploit the name and likenesses of Vila on its Craftsmen website, without paying compensation to Vila has been clearly established. (Vila Aff. , Ex. C)

Defendants have already profited by their misconduct. In addition to Defendants' continued exploitation of Vila's name and likenesses without payment therefor, Sears has

caused Vila and BVTV to initiate this action to enforce their rights and to incur many tens of thousands of dollars in defending themselves against groundless counterclaims. Defendants' misconduct must not be rewarded by the mere payment of contract damages. As their own internal communications demonstrate, their conduct is a classic example of why M.G.L. c. 93A exists. Defendants knowingly and willingly engaged in unfair and deceptive acts in commerce prohibited by Massachusetts law and should be ordered to pay triple, but in no event, less than double Vila's actual damages, plus Vila's costs and reasonable attorneys' fees.

## CONCLUSION

Plaintiff Robert J. Vila respectfully requests that this Court enter Summary Judgment in his favor and against Defendant Sears, Roebuck and Co. on Counts I, II, III and VI of the First Amended Complaint and that he be awarded his actual damages, trebled, but in no event less than doubled, plus his attorney's fees and costs.

                                            ROBERT J. VILA
                                            By his attorney,
                                            /s/ James F. O'Brien_____
                                            James F. O'Brien (BBO # 375765)
                                            410 Park Avenue, Suite 1530
                                            New York, New York 10022
                                            212 813 9300
Dated: February 22, 2006                jfob1@aol.com

## CERTIFICATE OF SERVICE

I, James F. O'Brien, counsel for plaintiffs, hereby certify that on February 22, 2006 I served a true copy of the foregoing Memorandum of Reasons upon Gary Greenberg, Esq., Greenberg, Traurig LLP, One International Place, Boston, MA 02110 counsel for defendants by overnight mail, postage prepaid and electronically.

                                            /s/ James F. O'Brien
                                            James F. O'Brien