UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
05-11717-REK

_____
                                        )
ROBERT J. VILA and B.V.T.V., INC.       )
                                        )
              Plaintiffs,               )
                                        )
                                        )
v.                                      )
                                        )
                                        )
SEARS, ROEBUCK AND CO.,                 )
SEARS HOLDINGS CORPORATION              )
 and KMART HOLDING COPORATION           )
              Defendants.               )
_____)


**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EMERGENCY
MOTION FOR PROTECTIVE ORDER THAT THE DEPOSITIONS OF
EDWARD S. LAMPERT AND ALAN LACY NOT BE HAD**

Plaintiffs' Robert J. Vila ("Vila") and B.V.T.V., Inc., ("BVTV") by their attorney  and

pursuant to Local Rule 7.1(b)(2), hereby submit their opposition to Defendants'

Emergency Motion for Protective Order that the Depositions of Edward S. Lampert and

Alan Lacy Not Be Had.

**FACTUAL BACKGROUND**

On or about September 29, 1985, Defendant Sears, Roebuck and Co. ("Sears") entered

into an agreement with Vila, whereby, for guaranteed compensation, Vila was to render

professional services as a spokesperson, participant and performer in connection with the

advertising of Sears' products by way of, among other things, television and radio

commercials, videos, still photographs and personal appearances (the "Spokesperson Agreement"). (First Amended Complaint ("FAC"), ¶ 9) The Spokesperson Agreement has been extended and amended by the parties ten (10) times and currently is due to expire on December 31, 2009. (FAC, ¶ 10). Also on or about September 29, 1989, Sears entered into an agreement with BVTV, whereby BVTV was to produce and deliver to Sears a series of home improvement television programs to be financed by Sears (the "Syndication Agreement"). (FAC, ¶ 14). The Syndication Agreement has been extended and amended by the parties eleven (11) times. Negotiations for the most recent amendment to the Syndication Agreement (Amendment 11) took place from February 2004 to January 18, 2005. (FAC, ¶ 15). Amendment 11 to the Syndication Agreement provides for the production by BVTV and financing by Sears of the television series for the 2005-2006 and 2006-2007 viewing seasons. (FAC, ¶ 16)

On or about November 17, 2004, when negotiations for Amendment 11 of the Syndication Agreement were nearing conclusion, Sears announced a transaction whereby, subject to, among other things, shareholder approval by the shareholders of Kmart Holding Corporation ("Kmart") and Sears, respectively, Kmart would acquire Sears and combine the two companies into a major new retail company. (FAC,¶ 17). In anticipation of that transaction, on November 23, 2004, Kmart formed  Sears Holdings Corporation ("SHLD") in the State of Delaware. (FAC, ¶ 18).

On January 18, 2005, Sears and BVTV concluded their negotiations and entered into Amendment 11 to the Syndication Agreement, as amended. (FAC, ¶ 20).

In February 2005, although the transaction with Kmart  had not been consummated or approved by shareholders of Sears and Kmart, and although Sears and BVTV had just

recently entered into Amendment 11 to the Syndication Agreement, Kmart and SHLD caused Sears to advise BVTV that management of Kmart and SHLD wanted to change the Syndication Agreement, as amended and then in effect. (FAC, ¶ 23). They also caused Sears to advise Vila  that management of Kmart and SHLD also wanted to change the Spokesperson Agreement, as amended and then in effect. The most recent amendment to the Spokesperson Agreement (Amendment X) had been entered into in December 2000 and had extended the term of the Spokesperson Agreement through December 31, 2009. (FAC, ¶ 25). Because of the long and mutually successful relationship Vila and BVTV enjoyed with Sears, BVTV and Vila engaged in discussions with Sears for a possible further amendment to the Syndication Agreement and the Spokesperson Agreement, both as amended and then in effect. (FAC, ¶¶ 24 and 26). When those discussions did not progress as SHLD and Kmart desired, SHLD and Kmart caused Sears to claim that Sears had not agreed with BVTV  for the production of the television series *Bob Vila's Home Again* for the 2005-2006 viewing season or any other future viewing season.(FAC, ¶ 27) and without color of justification or any explanation, caused Sears to refuse to pay to Vila the balance of the guaranteed compensation due  July 1, 2005 under the Spokesperson Agreement in the amount of $948,750. (FAC, ¶ 34).

On July 18, 2005, Plaintiffs filed this action in the Dukes County Superior Court, Edgartown, Massachusetts. (FAC, ¶ 34). On August 17, 2005, Defendants removed this action to this Court.(FAC, ¶ 38).

On August 19, 2005, by fax letter of that date addressed to Vila, defendant SHLD stated, among other things, and for the very first time and without any prior notice, that defendant Sears "has learned that you have engaged in substantial misconduct under the

[Spokesperson] agreement including your violation of Sears' trademark in the Home Again name"; that Sears was, therefore, under no obligation to make the July 1, 2005 payment under the Spokesperson Agreement; and that Sears was terminating the Spokesperson Agreement effective August 19, 2005. In that letter, SHLD, further stated that, since Vila had alleged in the Complaint that Sears "knowingly and intentionally deceived" Vila, Vila was "involved in [a] situation" that "reflects unfavorably upon [Sears'] reputation" and that Sears was terminating the Spokesperson Agreement on that ground as well. SHLD further stated that Sears "hereby cancels the Bob Vila Home Again television show". (FAC, ¶ 40). On August 22, 2005, defendants filed their Answer to the Complaint and defendant Sears filed a counterclaim alleging trademark infringement and overpayment of the incentive bonus for the 2003-2004 viewing season. (FAC, ¶ 41).

## DISCOVERY TO DATE

Plaintiffs served their First Request for Production of Documents on November 4, 2005 and noticed depositions to begin in early December 2005. Among the documents requested were emails between and among Defendants regarding BVTV and/or Vila. Defendants resisted such production, but after Plaintiffs agreed to postpone depositions, Defendants produced emails of six prospective deponents, with both Plaintiffs and Defendants reserving their respective rights with respect to such production. Plaintiffs began depositions  in late January 2006 through mid-March, taking seven depositions of Defendants former and present employees. Defendants began their depositions in mid-March. In early March, Plaintiffs advised Defendants that Plaintiffs wished to take the deposition of Edward S. Lampert, based upon the fact that certain documents produced

by Defendants indicated that Mr. Lampert had knowledge of the facts in issue and was

involved in the matters giving rise to this action. Defendants advised that they would

object to Mr. Lampert's deposition being taken, for no other apparent reason than he was

Mr. Lampert. Plaintiffs advised Defendant that, if Defendants would produce the email

records of Mr. Lampert relating to the subject matter of this action, Plaintiffs might be

persuaded that Mr. Lampert's deposition would not be necessary. On March 10,

2006,Defendants advised Plaintiffs that it is

> "…Defendants' position that the documents that have already been
> produce[d] are sufficient and no new information reasonably calculated
> to lead to the discovery of admissible evidence will come from the newly
> requested production. Accordingly, defendants find this production
> to be unnecessary and will only engage in this production if plaintiffs bear
> the cost.". (O'Brien Aff., Ex. A)

The production of Mr. Lampert's emails relating to the subject matter of this action was

requested on November 4, 2005 and was not a "newly requested production".  Many of

the documents which Defendants did produce were duplicates and triplicates and many

others were produced in a heavily redacted form. Further, Defendants have produced a

First Amended Privilege Log identifying over 400 documents either withheld from

production or produced in redacted form. In light of the position taken by Defendants, on

March 10, 2005, Plaintiffs noticed the deposition of Mr. Lampert a to take place in late

March 2006. Plaintiffs also noticed the deposition of Alan Lacy, former President and

Chief Executive officer of Sears, based upon deposition testimony of Mr. William

Crowley to the effect that Mr. Crowley had the most interface with Alan Lacy during the

period between the announcement of Kmart's acquisition of Sears in November 2004 and

the consummation of that transaction in March 2005. Said Notices are the subject of

Defendants' Emergency Motion for Protective Order, which Plaintiffs oppose herein.

## EDWARD S. LAMPERT

In support of their Motion for Protective Order, Plaintiffs submitted the Declaration of Edward S. Lampert ("Lampert Decl."). In his Declaration, which largely just tracks the language of F.R.C.P. 26 (c) and associated case law, Mr. Lampert makes a number of statements that do not withstand close scrutiny.

Mr. Lampert identifies himself as the Chairman of the Board of Directors of Sears Holding Company (Lampert Decl. ¶ 1). Mr. Lampert does not disclose that, prior to March 24, 2005, the date the acquisition of Sears by Kmart was consummated, March 24, 2005, he was the Chairman of Defendant Kmart, a defendant in this suit and against which a claim is asserted for tortuous interference with contracts. Mr. Lampert claims he was "not involved in the negotiation" regarding the "proposed" Amendment 11 to the Syndication Agreement "or the renegotiation of Amendment X to the ......Spokesperson Agreement" (Lampert Decl. ¶ 2). He states that he recalls "engaging in a few conversations on the subject [of the two agreements] with William Crowley" and that "Mr. Crowley had the decision-making responsibility and full discretion with respect to the matters at issue (Lampert Decl. ¶ 3).

Documents produced by Defendants belie these assertions.

### Sears Document 1226-1229, Deposition Exhibit 109

On March 30, 2005, six days after the consummation of the acquisition of Sears by Kmart, a Sears employee sent Mr. Lampert three electronic files which included summaries of Sears'

 "....current relationships with Bob Vila.....details of a proposal to renegotiate that relationship that was presented to Vila's representatives last week.....a one page graphic summary of our various agreements with Bob Vila and a spreadsheet showing the revenue details of the TV show production and syndication arrangements,

assuming Vila accepts the recent proposed changes. If you have any questions, please feel free to contact Andy Ginger or me directly….P.S. Sorry for the delay, I did not have your correct email."

Mr. Lampert then sent an email to Mr. Crowley, directing Mr. Crowley to

"Make sure you look at the proposed renegotiated deal with Bob Vila to see if it makes sense." (O'Brien Aff., Exhibit B).

**Sears Document 1940-1944, Deposition Exhibit 31**

On April 4, 2005, Mr. Padilla, President of Merchandising for Sears, forwarded Mr.

Lampert an email from Mr. Ginger, also dated April 4, 2005, which set forth the details

of the Vila contract and the renegotiation. Mr. Padilla stated,

"I can review with you tonight." (O'Brien Aff., Exhibit B).

**Sears Document 1751-1752, Deposition Exhibit 150**

On April 18, 2005, Mr. Lampert sent an email to Mr. Crowley, directing

"We better understand the value of the library. What does it consist of?"

Mr. Crowley responded,

"I will get Scott's views. I would like to see if we can get a good value on the library and thereby forego the obligated cash payments…" (O'Brien Aff. Ex. B)

**Sears Document (not numbered), Deposition Exhibit 151**

On April 19, 2005, Mr. Crowley sent an email to Mr. Lampert requesting Mr. Lampert's

permission to retain the services of Alan Mnuchin

"to take a look at the library…….If there is a big difference in value, then we would retain him to help us negotiate a deal with Bob [Vila] or someone else. I think he knows the King World people well.
 OK?

On that same day, April 19, 2005, Mr. Lampert emailed Mr. Crowley, stating,

"Ok, but who has the rights to the library now?

Mr. Crowley responded to Mr. Lampert's inquiry, advising Mr. Lampert

"50%/50% ownership of library Bob [Vila] and S[ears]. Call me when you get a chance." (O'Brien Aff., Ex. B ).

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In addition to the foregoing, Defendants have provided a First Amended Privilege Log that identifies  an additional nine emails to (6) or from (3) Mr. Lampert relating to the matters at issue. (O'Brien Aff., Exhibit E).

Mr. Luis Padilla, former President of Merchandising, Marketing and Product Development for Sears, has testified

"I don't know the timing of it, but certainly all contracts were to be reviewed by Bill [Crowley] and Eddie [Lampert].

Q. Did someone tell you that?
A. Yes.

Q. Who?
A. It would have had to have been either Bill or Eddie….(O'Brien Aff., Ex. C, p. 40)

Although, Mr. Lampert states in his Declaration that Mr. Crowley had the decision making responsibility and full discretion with respect to the matters at issue, the content and tone of the above described documents produced by Defendants do not support his assertion. Mr. Lampert also asserts that "everything I know about it is duplicative of information Mr. Crowley possesses." In the course of his deposition , Mr. Crowley responded to more than 100 questions with "I don't recall", "I don't remember" or "I don't know." These include subjects such as,

Whether Sears Holdings is one of the defendant in this lawsuit (O'Brien Aff., Ex.D, pp. 9-10).

Whether he was Senior Vice President of Kmart (O'Brien Aff., Ex. D, p.12).

What was said in conversations with Luis Padilla regarding the Vila contracts. (O'Brien Aff., Ex. D, pp. 31-32).

Whether he gave any guidance to Sears personnel in connection with their negotiations with Vila, prior to the consummation of Kmart's acquisition of Sears, (O'Brien Aff., Ex. D, pp. 42-43).

Whether Mr. Lampert responded to information regarding Vila that Mr. Crowley passed on to Mr. Lampert. (O'Brien Aff., Ex. D, p.66).

Whether Sears' personnel were seeking Mr. Crowley's approval to sign the Vila contract and what was preventing the Sears' personnel from getting the Vila contract signed. (O'Brien Aff., Ex. D, p.75-76).

Plaintiffs decision to seek the deposition of Mr. Lampert was not lightly taken. It is the result of Defendants refusal to produce the relevant email files of Mr. Lampert and Mr. Crowley's professed inability to recall relevant facts and events in which he participated. Mr. Lampert's deposition is intended to obtain discovery of facts directly relevant to the subject matter of Plaintiffs' claims (including, but not limited to their claims for tortious interference by Kmart and SHLD with the Syndication Agreement between BVTV and Sears and the Spokesperson Agreement between Vila and Sears), is calculated to lead to the discovery of admissible evidence, and to obtain discovery relating to Sears counterclaims against Plaintiffs.

It is clear from documents produced by Defendants, that Mr. Lampert's involvement "in the matters at issue" is much more significant than Mr. Lampert represents in his Declaration to this Court..

"There is no per se rule barring depositions of top corporate executives." Salter v. Upjohn, 593 F. 2d 649, 651 (5th Cir. 1979). Plaintiffs have attempted to obtain facts relating to their claims through requests for production of documents, interrogatories and depositions of lower level former and present employees. Mr. Lampert has stated in his

declaration that, essentially, all he knows about the issues in dispute, he learned from Mr. Crowley and that Mr. Crowley had complete "discretion" in these matters. The few emails cited above demonstrate that both assertions are of questionable veracity.

## ALAN LACY

Mr. Lacy is the former Chairman and Chief Executive officer of Sears to whom Mr. Padilla reported. (O'Brien Aff., Exhibit C, p. 15). On February 7, 2005, Mr. Ginger, Vice President of Brand Management of Sears, sent an email to his superior Janine Bousquette (who reported to Mr. Padilla) in which he stated, among other things,

> Earlier we met with you and secured approval to negotiate
> a limited extension [of the Syndication Agreement]of 1-2 years
> vs. the proposed longer term.
>
> As with other long term deals, since the merger announcement,
> as directed, we have been holding back the contract completion for this
> [Bob Vila's Home Again TV show contract].....
> They are negotiated and ready to sign. (O'Brien Aff., Exhibit B, Dep. Ex. 75)

Mr. Padilla, denied knowledge of the foregoing and that he had given a direction to hold back the contract completion. (O'Brien Aff., Exhibit C, p. 39-40. He testified that it was clear that all contracts had to be reviewed by Eddie Lampert and Bill Crowley and that that was discussed at Sears executive committee meetings. (O'Brien Aff., Exhibit C, p.41). It is Plaintiffs contention that a binding contract was entered into between BVTV and Sears by January 18, 2005. Mr. Lacy was a participant in the executive committee meetings to which Mr. Padilla referred. Mr. Lacy's testimony regarding the origins and nature of the direction to "hold back the contract completion" is directly relevant to the claims of BVTV in this action, including, but not limited to its claims for tortious interference and violations of M.G.L. c. 93A. That information is not available from any other witness..

Plaintiffs respectfully request that this Court deny Defendants' Emergency Motion for Protective Order that the Depositions of Edward S. Lampert and Alan Lacy not be Had and that Plaintiffs be awarded their costs, including reasonable attorney's fees in connection with this Opposition.

REQUEST FOR ORAL ARGUMENT

Plaintiffs respectfully requests that they be granted oral argument on the within Opposition.

ROBERT J. VILA and B.V.T.V., INC.

By their attorney,

/s/ James F. O'Brien
James F. O'Brien (BBO # 375765)
410 Park Avenue, Suite 1530
New York, New York 10022
212 813 9300
Dated: April 10, 2006         212 813 1907 (fax)
jfob1@aol.com

CERTIFICATE OF SERVICE

I, James F. O'Brien, counsel for Plaintiffs, hereby certify that, on April 10, 2006, I served a true copy of the foregoing Opposition upon Gary Anna Sankaran, Esq., Greenberg, Traurig LLP, One International Place, Boston, MA 02110, counsel for defendants, by electronic mail and overnight mail, postage prepaid.

/s/ James F. O'Brien
James F. O'Brien

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
05-11717-REK

_____
                                          )
ROBERT J. VILA and B.V.T.V., INC.         )
                                          )
                Plaintiffs,               )
                                          )
                                          )
v.                                        )
                                          )
                                          )
SEARS, ROEBUCK AND CO.,                   )
SEARS HOLDINGS CORPORATION                )
 and KMART HOLDING COPORATION             )
                Defendants.               )
_____)


## AFFIDAVIT OF JAMES F. O'BRIEN


James F. O'Brien, being duly sworn, deposes and says as follows:

1.  I am an attorney and a member of the bar of the Supreme Judicial Court of the Commonwealth of Massachusetts, the bar of the State of New York, the United States District Court  for the District of Massachusetts and the United States District Court for the Southern District of New York.

2.   I am counsel for the Plaintiffs Robert J. Vila and B.V.T.V., Inc. in this action.

3.   I make this affidavit based upon my personal knowledge of the facts set forth herein and in support of PlaintiffS' Opposition to Defendants' Emergency Motion for a Protective Order that the depositions of Edward S. Lampert and Alan Lacy Not be Had.

4.   Exhibit A attached to this Affidavit is a true copy of an electronic message sent to me on March 10, 2006 by counsel for Defendants.

5   Exhibit B to this Affidavit are true copies of documents produced o by Defendants in this action and are marked as Deposition Exhibits (Dep. Ex.___) 109, 31, 150, 151 and 75.

6.   Exhibit C to this Affidavit are true copies of pages 1, 15, 40 and 41 of the transcript of the deposition of Luis Padilla taken in this matter.

7.   Exhibit D to this Affidavit are true copies of pages 1, 9, 10, 12, 31,32,42,43,66, 75, and 76).

8.    Exhibit E to this Affidavit are true copies of pages 1, 21, 32, 34, 39, 50, 53, 60, 107 and 108 of Defendants' First Amended Privilege Log.


                                                          /s/ James F. O'Brien
                                                          James F. O'Brien

State of New York
County of  New York                                       April 10, 2006


Then personally appeared before me James F. O'Brien, known to me, who took oath and said that he has read the foregoing Affidavit and that the factual statements therein are true of his personal knowledge.

                                                          /s/ Laura Caldera
                                                          Laura Caldera
                                                          01CA5073745
                                                          My Commission Expires 03/03/07


                        CERTIFICATE OF SERVICE

     I, James F. O'Brien, counsel for plaintiffs,  hereby certify that on April 10, 2006 I served a true copy of the foregoing Affidavit upon Anna Sankaran, Esq., Greenberg,

Traurig LLP, One International Place, Boston, MA 02110 counsel for defendants by overnight mail, postage prepaid and electronically.


/s/ James F. O'Brien
James F. O'Brien

# EXHIBIT A

This message has been scanned for known viruses.

From: SankaranA@GTLAW.com

To: jfob1@aol.com

Cc: colleys@gtlaw.com, GREENBERGG@GTLAW.com

Subject: Vila v. Sears

Date: Fri, 10 Mar 2006 11:50:57 -0500

I am writing in response to your voice mail from yesterday. I am confirming that we will start the deposition of Luis Padilla on Monday morning at 10:00 a.m. I finally spoke with Janine Bousquette and she is available for a deposition at my West Palm Beach office on March 22, 2006. Please let me know if you are available for this deposition and I will finalize arrangements (if this date is not available, she will not be available again until the beginning of April). With respect to the Lampert and Bousquette email production you recently requested, it is the Defendants' position that the documents that have already been produce are sufficient and no new information reasonably calculated to lead to the discovery of admissible evidence will come from the newly requested production. Accordingly, defendants find this production to be unnecessary and will only engage in this production if plaintiffs bear the cost. I hope to be getting the privilege log to you next week some time.

As you explained, please forward Plaintiff's answers to interrogatories as soon as they are available. In addition, please let me know (a) for what topics, if any, on the Fed. R. Civ. P. 30(b)(6) notice, Mr. Vila and Mr. Feiner are being designated, (b) who the other Fed. R. Civ. P. 30(b)(6) witnesses are, and (c) when the other noticed witnesses will be available for deposition.

I thank you for your attention to this matter and I look forward to hearing from you soon.

**Annapoorni R. Sankaran**
Greenberg Traurig LLP
One International Place, 20th floor
Boston, MA 02110
www.gtlaw.com
(617) 310-6058 (direct)
(617) 279-8458 (fax)
(617) 803-9593 (mobile)
sankarana@gtlaw.com

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com.

EXHIBIT C

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

2

3   ROBERT J. VILA and                    )
    B.V.T.V., INC.,                       )
                                          )
4              Plaintiffs,                )
                                          )
5        vs.                              )
                                          )  Civil Action No.
6   SEARS, ROEBUCK AND CO.,               )     05-11717-REK
    SEARS HOLDINGS CORPORATION,           )
7   and KMART HOLDING                     )
    CORPORATION,                          )
8                                         )
               Defendants.               )
9

10             The deposition of LUIS PADILLA, called

11   by the Plaintiffs for examination, taken pursuant

12   to the Federal Rules of Civil Procedure of the

13   United States District Courts pertaining to the

14   taking of depositions, taken before ROBIN M.

15   CHIMNIAK, a Notary Public within and for the

16   County of DuPage, State of Illinois, and a

17   Certified Shorthand Reporter of said State, taken

18   at 77 West Wacker Drive, Suite 3000, Chicago,

19   Illinois, on the 13th day of March, 2006, at the

20   hour of 10:40 a.m.

21

22

23

24

                                                          2

1        PRESENT:

2             MR. JAMES P. O'BRIEN
                 410 Park Avenue
3                Suite 1530
                 New York, New York 10022
4
                     Appeared on behalf of the

031306

14      A.   No.

15      Q.   Okay.  Were you replacing someone?

16      A.   Partially.  I think there was a guy

17   there who was president of retail, and he had a

18   broader -- little broader scope than I did, which

19   included the stores, which is the only thing I

20   didn't have that he had.  But there was a

21   president of retail.

22      Q.   Do you recall his name?

23      A.   No.  And so I was replacing him.  And

24   then they were -- we were going to wait 90 days

15

1   or so and determine whether the full scope of the

2   job would come to fruition.

3      Q.   You mean -- does that mean including

4   responsibility for the stores?

5      A.   Right, yes.

6      Q.   What was your title?

7      A.   President of merchandising.

8      Q.   Okay.  It wasn't president of

9   merchandising, marketing, and development?

10      A.   I think in some document it said

11   president of merchandising and marketing.  I

12   don't remember exactly.

13      Q.   To whom did you report as the president

14   of merchandising?

15      A.   Alan Lacy.

16      Q.   Who reported to you?

17      A.   The head of product development and

18   then four senior VPs of merchandising and -- or

19   three senior VPs of merchandising and the CMO,

Page 12

```
 8         A.  No.

 9         Q.  Have you --

10         A.  Prior -- I saw it in the binder in

11    preparation, but not prior to that.

12         Q.  Okay.  Could I draw your attention to

13    the second paragraph?

14         A.  Uh-hum.

15         Q.  Mr. Ginger says to Ms. Bousquette:

16             "Earlier, we met with you and secured

17    approval to negotiate a limited extension of

18    1-2 years vs. the proposed, longer term."

19         A.  Right.

20         Q.  Were you aware of that?

21         A.  No.

22         Q.  Now, in the third paragraph, it says:

23             "As with other long-term deals, since

24    the merger announcement, as directed, we have
```

40

```
 1    been holding back the contract completion on

 2    this."

 3             Did you give such a direction?

 4         A.  No.

 5         Q.  Were you aware such a direction had

 6    been given?

 7         A.  I don't know the timing of it, but

 8    certainly all contracts were to be reviewed by

 9    Bill and Eddie.  That was clear.

10         Q.  When did that --

11         A.  I don't remember.

12         Q.  Let's stay with that a little bit.
```

031306

| | | |
|---|---|---|
| 13 | A. | Yeah. |
| 14 | Q. | Was it a memorandum? |
| 15 | A. | Not that I know of. |
| 16 | Q. | Did someone tell you that? |
| 17 | A. | Yes. |
| 18 | Q. | Who? |
| 19 | A. | It would have had to have been either |

20   Bill or Eddie.

21        Q.   When you say "Bill or Eddie," you're

22   referring to William Crowley or Eddie Lampert?

23        A.   That's correct.

24        Q.   You say that that was clear?

41

1        A.   Clear.

2        Q.   Now, again, the distinction between --

3   if I can, what -- are you testifying as to what

4   should have happened, or do you have -- or from a

5   specific memory you have?

6        A.   A specific memory of executive

7   committee discussions about contract review.

8        Q.   Who was on the executive committee that

9   you just referred to?

10        A.   To the best of my memory, it would have

11   been myself, Alan Lacy, Glenn Richter -- let's

12   see.  Who else would have been there?  The

13   attorney at the time, Sara LaPorta, which was the

14   chief strategist; the guy who was the head of HR.

15   Those kind of groups.

16        Q.   Were these all Sears people?

17        A.   These were all Sears people, yeah.

18        Q.   Were either of Eddie or Bill there?

**EXHIBIT D**

1

2        UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF MASSACHUSETTS
3
         ---------------------------------------x
4
         ROBERT J. VILA and B.V.T.V., INC.,        :
5
                             Plaintiffs,           :
6
                      - against -                  :  Civil Action
7                                                     No. 05-11717
         SEARS, ROEBUCK AND CO., SEARS HOLDINGS :
8        CORPORATION and KMART HOLDING
         CORPORATION,                              :
9
                             Defendants.           :
10
         ---------------------------------------x
11
                                 200 Park Avenue
12                               New York, New York

13                               March 1, 2006
                                 11:00 a.m.
14

15

16             ORAL DEPOSITION of WILLIAM C. CROWLEY, a

17       nonparty witness herein, taken by the Plaintiffs,

18       pursuant to Notice, held at the above-captioned

19       time and place, before Hanna Roth, Shorthand

20       Reporter and Notary Public of the State of New

21       York.

22

23

24

CROWLEYDEP

20      A.    Yes.

21      Q.    Are you a limited partner in RBS

22   Partners, LP?

23      A.    Yes, I am.

24      Q.    Are you a limited partner in ESL

25   Investments?

9

1                    William Crowley

2       A.    No.

3       Q.    Are you a limited partner in ESL

4   Partners?

5       A.    Investment in RBS, I think I said I am

6   a limited partner in RBS, which has a partnership

7   interest in ESL Partners.

8       Q.    Now, in terms of Sears Holdings, you

9   became the executive vice president and CFO on

10   March 24, 2005; is that correct?

11      A.    Yes.  The date of the merger, in terms

12   of legal, I think on the date the merger closed I

13   became CFO and executive vice president, but it

14   could have been a day later.  I'm not sure.

15      Q.    Prior to that, give or take a day from

16   that date, were you an officer or employee of

17   Sears Holdings?

18      A.    I don't recall.  Sears Holdings, I

19   think, existed with respect to the acquisition

20   entity.

21      Q.    Sears Holdings we are talking about is

22   one of the defendants in this lawsuit; is that

Page 8

```
23        correct?
24            A.    I don't know.
25                  MR. O'BRIEN:  Can we stipulate to
```

```
1                     William Crowley
2         that?
3                  MR. GREENBERG:  That Sears Holdings is
4         a defendant?  Sure, we will stipulate to
5         that.
6             Q.    I show you a document.  It's a press
7         release.
8                  (Whereupon, Exhibit No. 148, Kmart
9         Corporation Press Release, marked for
10        identification, as of this date.)
11            Q.    I show you a press release I ran off
12        this morning before coming here.  Did you have an
13        opportunity to look at it?
14            A.    Yes.
15            Q.    Have you ever seen it before?
16            A.    I think I saw it before.
17            Q.    Now, this press release is dated
18        January 6, 2005.  It captions Sears Holdings
19        Corporation Launches Debut $4.0 Billion Revolving
20        Credit Facility.  In the first line of the press
21        release it states:  "Sears Holdings Corporation,
22        currently a wholly owned subsidiary of Kmart
23        Holding Corporation, created to facilitate the
24        business combination between Kmart Holding
25        Corporation and Sears Roebuck and Co., announced
```

William Crowley

1

2          A.   If that's what you would . . . there
3     are different Kmart entities.

4          Q.   That's what I mean when I'm referrin
5     to Kmart.  That's the entity of which you were
6     senior vice president of finance, correct?

7               MR. GREENBERG:  There are various
8          Kmart entities.  You're asking him which
9          entity he was employed by?

10               MR. O'BRIEN:  Yes.

11          A.   I don't recall.

12          Q.   You don't know?

13          A.   No.  I'm not sure.

14          Q.   When I refer to Kmart here, sir, I a
15     going to be referring to the defendant in the
16     lawsuit, Kmart Holding Corporation, so you
17     understand my questions.  If I confuse you at
18     all, stop me and I will try to clarify it.

19          A.   Okay.

20          Q.   When did Kmart first give
21     consideration to the acquisition of Sears Roebu
22     and Co.?

23          A.   It was sometime in 2004.

24          Q.   Do you recall that on or about
25     November 17th, Kmart and Sears Roebuck and Co.

♀

1                    William Crowley
2          announced that they had signed a definitive
3          merger agreement?

23    Questions about legal issues

24         Q.    What about conversations about the

25    Vila contracts with Luis Padilla prior to March

1                        william Crowley

2    24, 2005, did you have any?

3         A.    Yes.

4         Q.    How many?

5         A.    I don't recall.

6         Q.    Was it more than one?

7         A.    It was more than one.

8         Q.    Was it more than ten?

9         A.    I think not.

10        Q.    When was the first of those

11    conversations?

12        A.    I don't remember.

13        Q.    But you do remember it was prior to

14    March 24, 2005?

15        A.    Yes.

16        Q.    Now, in those conversations with Mr.

17    Padilla, prior to March 24, 2005, regarding the

18    Vila contracts, what was said?

19             MR. GREENBERG:    To the extent a lawyer

20        was there and it involved information that

21        was being conveyed as part of seeking or

22        receiving legal advice, it's attorney-client

23        privileged.  If you had a conversation with

24        Mr. Padilla in which no lawyer was present

25        that's fine.  We are not suggesting there

CROWLEYDEP

♀

32

```
 1                     William Crowley
 2              any privilege on that, we are not asserting
 3              privilege.
 4              A.    I don't recall.
 5              Q.    After that, I want to make sure I
 6        understand your answer, you don't recall what you
 7        discussed with Padilla about the Vila contracts?
 8              A.    I don't recall what was said.
 9              Q.    You spoke with Mr. Padilla more than
10        once.  Did you suggest that he should try to
11        renegotiate the Vila contracts?
12              A.    I don't recall.
13              Q.    Did he suggest he should try to
14        renegotiate the Vila contracts?
15              A.    I don't recall.
16              Q.    Did you do anything to prepare for
17        this deposition?
18                    MR. GREENBERG:  Objection.
19              Q.    You can answer.
20                    MR. GREENBERG:  Yes or no.
21              Q.    Did you do anything to prepare for
22        this deposition?
23              A.    I met with counsel.
24              Q.    When?
25              A.    This morning.
```

♀

33

1                          William Crowley

2                  MR. O'BRIEN:  I asked the witness to

3          read it.  There is a lot in there.

4          Q.    I am going to ask you to look at it

5      and tell me if there is anything in here that you

6      discussed with anyone prior to today.

7          A.    We discussed CBS, for example.

8          Q.    You tell me.

9          A.    I watched CBS, I talked about CBS.  I

10     don't understand what you're asking about.

11         Q.    Weren't you being kept informed of the

12     negotiations with Mr. Vila?

13                MR. GREENBERG:  What period?

14                MR. O'BRIEN:  Prior to March 5th.

15         A.    What do you mean?

16         Q.    Were you kept informed by people from

17     Sears regarding negotiations with Vila prior to

18     March 24, 2005?

19                MR. GREENBERG:  Objection.  You can

20         answer.

21         A.    I'm not sure what "kept informed"

22     means the way you're using it.  I was aware of

23     the negotiations.

24         Q.    That's good.  From time to time, were

25     you informed as to the progress of those

CROWLEYDEP

43

1                        William Crowley
2        negotiations?
3              A.    I was informed about the progress from
4        time to time.
5              Q.    Did you give guidance as to those
6        negotiations?
7                    MR. GREENBERG:   Objection to form.
8              A.    What time are we talking about?
9              Q.    Prior to March 24, 2005.
10             A.    I don't recall.
11             Q.    Didn't you tell them what they should
12       say to Vila prior to March 24th?
13             A.    I don't recall.
14             Q.    You don't remember one way or the
15       other?
16             A.    Not before March 24th.
17             Q.    Would you look at Exhibit 25, sir.
18             A.    Okay.
19             Q.    This is a memorandum from Mark Rode
20       dated February 2005 to D. Ginger, F. Henry
21       Ferris.  Do you know who Mr. Ferris is?
22             A.    I believe I was told today that he
23       works for Vila.
24             Q.    Somebody told you incorrectly, sir.
25                   By the way, you weren't told that by a

44

1                        William Crowley
                         Page 39

CROWLEYDEP

5        Q.   Now, as to the information or the

6   learning you gathered during the period November

7   to March 24, 2005, did you pass that information

8   on to Mr. Lampert?

9        A.   What information?

10       Q.   The information you said you learned

11  during the period of time.

12       A.   Any information?  Some I did, yes.

13       Q.   Did you pass any information to Mr.

14  Lampert concerning Vila?

15       A.   Yes, I did.

16       Q.   What information was that?

17       A.   I recall on a couple occasions telling

18  him that we were describing what was going on at

19  the time.

20       Q.   Did he respond to that information?

21       A.   I don't recall.

22       Q.   Would you take another look at

23  Exhibit 77.  You've seen it once before.  This is

24  the two e-mails, one of which is from you to

25  Mr. Ginger.  Do you recall this?

♀

67

1               William Crowley

2       A.   Yes.

3       Q.   You said:  "Summarize deals in e-mail

4  for me, please."

5         Why did you give him that directive?

6       A.   I don't recall.

7       Q.   If you look at the next page,

2      you read the attachments? You don't know if you

3      even got them?

4      A.    I don't know. I mean, a got a lot of

5      stuff. This was not the top priority in terms o

6      what we were dealing with.

7      Q.    Please go back to 112. If you look a

8      the third paragraph, "Timing urgent," was that

9      communicated to you at or around April 4, 2005?

10     A.    I was aware that there were people,

11    Andy Ginger and Rode, who wanted to get this

12    approved. That was going on since I first met

13    with them.

14     Q.    Get it approved by whom?

15     A.    Somebody. They wanted to get it

16    signed.

17     Q.    Well, were they asking for your

18    approval?

19     A.    I couldn't sign the document.

20     Q.    I didn't ask that. Were you asked if

21    you approved it?

22     A.    I don't recall if they asked for my

23    approval.

24     Q.    Do you know whose approval they were

25    seeking?

1                  William Crowley

2      A.    I don't know. I mean, I wasn't an

3      officer of Sears Roebuck. I didn't sign the

```
 5              MR. GREENBERG: We are talking about

 6         the period prior to March 24th?

 7              MR. O'BRIEN: Right.

 8         Q.   So they were seeking somebody's

 9    approval but you don't know whose?

10         A.   They wanted to get it signed.

11         Q.   What was preventing them from gettin

12    it signed?

13         A.   I don't recall.

14         Q.   Now, the same paragraph, next senten

15    says: "CBS Kingworld has sold out 2005-'06

16    season to advertisers and has prepared to clea

17    in syndication for this fall."

18              At or about this time, were you

19    advised of that?

20         A.   I don't remember being told that.

21         Q.   Now, as to the attachments to this

22    Exhibit 112, for lack of a better word,

23    spreadsheets that appear to be there, did you

24    instruct someone to prepare those?

25         A.   I don't recall.
```

```
 1                   William Crowley

 2         Q.   Would you turn to Exhibit 31. Take

 3    moment to look through it. For the moment, yo

 4    can ignore the attached pages because they cam

 5    printed out in unreadable form.

 6         A.   Okay.
```

**EXHIBIT E**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT J. VILA and B.V.T.V., INC.,

Plaintiffs,

v.

SEARS, ROEBUCK AND CO., SEARS HOLDINGS
CORPORATION and KMART HOLDING CORPORATION,

Defendants.

Civil Action No. 05-11717-REK

**DEFENDANTS' FIRST AMENDED PRIVILEGE LOG**

| Bates Numbers | Document Type | To | From | Date | Reason Withheld from Production | Description |
|---|---|---|---|---|---|---|
| 1. | SEARS PL-0001 – 0004 | E-mail | William Crowley at Kmart; Andrea Zopp at Sears (in-house legal); cc: Robert Rathke at Sears (in-house legal); Scott Charles at Wachtell, Lipton, Rosen & Katz (outside counsel) | Mike Kier at Sears (in-house legal) | 8/30/05 | Attorney-client privilege | E-mails dated 8/30/05 between and amongst Kier (in-house legal) Crowley, Zopp (in-house legal), Rathke (in-house legal), and Charles (outside legal) from various dates, requesting and conveying legal advice concerning settlement discussions with Vila |

Case 1:05-cv-11717-WGY    Document 27-7    Filed 04/10/2006    Page 3 of 9

| | Bates Numbers | Document Type | To | From | Date | Reason Withheld from Production | Description |
|---|---|---|---|---|---|---|---|
| 73. | SEARS PL-0210 – 0230 | E-mail | Alan Mnuchin at AGM Partners LLC | William Crowley at Kmart | 4/19/05 | Retention of expert | E-mail dated 4/19/05 from Crowley to Mnuchin requesting expert analysis on issues relating to Vila relationship and attaching E-mails dated 4/19/05 between and amongst Mnuchin, Crowley and Rode concerning same. See Fed. R. Civ. P. 26(b)(4). If defendants designate AGM as trial experts appropriate disclosures will be made pursuant to Fed. R. Civ. P. 26(a)(2). |
| 74. | SEARS PL-0231 | E-mail | Eddie Lampert at Sears | William Crowley at Kmart | 4/19/05 | Retention of expert | E-mail dated 4/19/05 from Crowley to Lampert regarding retention of expert to conduct analysis on issues relating to Vila relationship. See Fed. R. Civ. P. 26(b)(4). If defendants designate AGM as trial experts appropriate disclosures will be made pursuant to Fed. R. Civ. P. 26(a)(2). |

- 21 -

| Bates Numbers | Document Type | To | From | Date | Reason Withheld from Production | Description |
|---|---|---|---|---|---|---|
| 91. SEARS PL-0308 - 0311 | E-mail | William Crowley at Kmart | Eddie Lambert at Sears | 04/18/05 | Retention of Expert; Attorney-client privilege; **Produced in Redacted Form.** | E-mail dated 04/18/05 from Eddie Lambert to William Crowley concerning expert report relating to Bob Vila relationship; and attaching E-mails from various dates between and amongst Crowley, Lambert, Mark Rode at Sears, Chris Nickel at Sears, Drew Farkas at Sears (in-house legal) Luis Padilla at Sears, and Henry Ferris at Sears requesting and conveying legal advice relating to Bob Vila relationship and Expert Report relating to same. See Fed. R. Civ. P. 26(b)(4). If defendants designate AGM as trial experts appropriate disclosures will be made pursuant to Fed. R. Civ. P. 26(a)(2). |

- 32 -

| Bates Numbers | Document Type | To | From | Date | Reason Withheld from Production | Description |
|---|---|---|---|---|---|---|
| SEARS PL- 0316 - 0326 | E-mail | Eddie Lambert at Sears | William Crowley at Kmart | 04/18/05 | Retention of Expert; Attorney-client privilege; **Produced in Redacted Form.** | E-mail dated 4/18/05 from Crowley to Lambert regarding retention of Expert to produce report relating to Bob Vila relationship. And attaching E-mails between from various dates between and amongst Rode at Sears, Crowley at Kmart, Chris Nickel at Sears, Drew Farkas at Sears (in-house legal) Luis Padilla at Sears, and Henry Ferris at Sears requesting and conveying legal advice relating to Bob Vila relationship. See Fed. R. Civ. P. 26(b)(4). If defendants designate AGM as trial experts |

| Bates Numbers | Document Type | To | From | Date | Reason Withheld from Production | Description |
|---|---|---|---|---|---|---|
| 98. SEARS PL - 0352 | E-mail | William Crowley at Kmart | Eddie Lambert at Sears | 04/30/05 | Attorney-client privilege; Work Product; **Produced in Redacted Form.** | E-mail dated 03/30/05 from Crowley to Lambert conveying information relating to Vila proposal and attaching e-mail dated 03/30/05 from Pam Schenider (in-house legal) at Sears to Lambert, Luis Padilla at Sears, Andrea Zopp at Sears (in-house legal) and Amy Ginger at Sears conveying legal advice relating to Vila relationship and Vila proposal |
| 99. SEARS PL - 0353 - 0370 | E-mail | William Crowley at Kmart | Toure Claiborne at Sears | 07/07/05 | Attorney-client privilege; Work Product; **Produced in Redacted Form.** | E-mail dated 07/07/05 from Claiborne to Crowley regarding financial analysis of Vila relationship and attaching E-mails from various dates between and amongst Crowley, Claiborne, Jean Jeannero at Sears (in-house legal) requesting and conveying legal advice relating to Vila relationship |

| # | Bates Numbers | Document Type | To | From | Date | Reason Withheld from Production | Description |
|---|---|---|---|---|---|---|---|
| 1 | SEARS PL- 0489 - 0490 | E-mail | William Crowley at Kmart, Eddie Lambert at Sears | Scott Charles at Wachtell, Lipton, Rosen, and Katz (outside counsel) | 07/25/05 | Attorney-client privilege | E-mail dated 07/25/05 to Crowley and Lambert from Charles requesting legal advice relating to Vila relationship, and attaching E-mail dated 07/25/05 from Robert Rathke at Sears (in-house counsel) to Scott Charles (outside counsel) requesting and conveying legal advice concerning Vila |

| Bates Numbers | Document Type | To | From | Date | Reason Withheld from Production | Description |
|---|---|---|---|---|---|---|
| 114 | | | | | | |
| SEARS PL-0509-0512 | E-mail | William Crowley at Kmart | Mark Rode at Sears | 4/18/05 | Attorney-client privilege, Work Product; **Produced in Redacted Form** | E-mail dated 7/4/05 from Rode to Crowley regarding Vila finances and attaching E-mails between/amongst Crowley, Rode, Chris Nickel at Sears, Drew Farkas at Sears (in-house legal), Luis Padilla at Sears and Henry Ferris at Sears requesting and conveying legal advice relating to Vila relationship |
| 115 | | | | | | |
| SEARS PL-0513 | E-mail | William Crowley at Kmart | Eddie Lampert at Sears | 4/19/05 | Expert retained; **Produced in Redacted Form** | E-mail dated 4/19/05 from Lampert to Crowley concerning Vila relationship and attaching E-mail dated 4/19/05 from Crowley to Lampert regarding expert analysis re Vila relationship. See Fed. R. Civ. P. 26(b)(4). If defendants designate AGM as trial experts appropriate disclosures will be made pursuant to Fed. R. Civ. P. 26(a)(2). |

| Bates Numbers | Document Type | To | From | Date | Reason Withheld from Production | Description |
|---|---|---|---|---|---|---|
| SEARS PL-0535-0543 | E-mail | Eddie Lampert at Sears and Scott Charles at Wachtel, Lipton, Rosen & Katz (outside counsel) | William Crowley at Kmart | 4/18/05 | Attorney-client privilege, Work Product; **Produced in Redacted Form** | E-mail dated 4/18/05 from Crowley to Lampert and Charles (outside counsel) relating to legal strategy in Vila matter and attaching E-mail from various dates between/amongst Lampert, Crowley, Rode, Nickel, Farkas (in-house legal), Padilla, and Henry Ferris requesting and conveying legal advice concerning Vila relationship. See Fed. R. Civ. P. 26(b)(4). If defendants designate AGM as trial experts appropriate disclosures will be made pursuant to Fed. R. Civ. P. 26(a)(2). |

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

## CLERK'S NOTICE

The image of this document is not viewable because it is either SEALED or filed EX PARTE.