UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT J. VILA and B.V.T.V., INC.,

      Plaintiffs,

v.

SEARS, ROEBUCK AND COMPANY,
SEARS HOLDINGS CORPORATION and
KMART HOLDING CORPORATION,

      Defendants.

Civil Action No. 05-11717-WGY

## DECLARATION OF ANNAPOORNI R. SANKARAN

I, Annapoorni R. Sankaran declare and say:

1.      I am a shareholder at Greenberg Traurig, LLP, a member of the bar of this Court and am counsel for defendants Sears, Roebuck and Co. ("**Sears**"), Sears Holdings Corporation ("**Sears Holdings**"), and Kmart Holding Corporation ("**Kmart Holding**") (collectively "**Defendants**"). I submit this Declaration in opposition to Plaintiffs' Motion to Further Amend Complaint ("**Second Motion to Amend**"). Unless otherwise indicated, I have first hand knowledge of the matters contained herein.

2.      A true and accurate of the docket in this case is attached hereto as Exhibit 1.

3.      A true and accurate copy of the Complaint in this case is attached hereto as Exhibit 2.

4.      A true and accurate copy of a letter from Michael Kier, Esq., to Robert J. Vila dated August 18, 2006 is attached hereto as Exhibit 3.

5.      A true and accurate copy of the First Amended Complaint in this case is attached

hereto as Exhibit 4.

6.      A true and accurate copy of the joint statement filed by the parties is attached hereto as Exhibit 5.

7.      A true and accurate copy of and electronic mail message from James O'Brien, Esq., to me dated November 4, 2006, plaintiffs' requests for the production of documents, a letter from Mr. O'Brien to me dated January 26, 2006 and plaintiffs' interrogatories to Defendants  are attached hereto as Exhibit 6.

8.      Over the course of discovery, Defendants have  produced over 3000 pages of documents to the Plaintiffs in response to document requests.   Similarly, Plaintiffs have produced close to 1000 pages of documents.  None of the documents produced, including those in Plaintiffs' Initial Disclosures pursuant to FED. R. CIV. P.  26, contained documents reflecting or concerning trademarks held by either plaintiff Robetr J. Vila ("**Vila**") or B.V.T.V., Inc. ("**BVTV**") (collectively "**Plaintiffs**").

9.      True and accurate copies of the cover pages of the deposition transcripts of Mark Rode, Andrew Ginger, Fred Ciba, Richard Anderson, Richard Anderson as a FED. R. CIV. P. 30(b)(6) designee, Luis Padilla,  Mary Totorice as a FED. R. CIV. P.  30(b)(6) designee, Drew Farkas, Esq., Ronald Feiner, Robert J. Vila, Melissa Marchand, Sarah Monzon are attached hereto as Exhibit 7.

10.     True and accurate copies of selected excerpts from the deposition of William Crowley as well as Exhibit 154, are attached hereto as Exhibit 8.

11.     A true and accurate copy of the February 12, 2006, the *Chicago Tribune* story titled Sears in Demolition Mode, is attached hereto as Exhibit 9.

12.     A true and accurate copy of Defendants' Assented-To Motion To Extend Time To

File Opposition To Plaintiffs' Motion For Partial Summary Judgment is attached hereto as Exhibit 10.

13.     A true and accurate copy an April 7, 2006 electronic email from Mr. O'Brien to Gary Greenberg, Esq., and me with a notice of taking deposition is attached hereto as Exhibit 11.

14.     A true and accurate copy of a April 21, 2006 letter from Mr. O'Brien to me is attached hereto as Exhibit 12.

15.     True and accurate copies of subpoenas for the depositions of Jonathan Birkhahn, a FED. R. CIV. P.  30(b)(6) designee from KingWorld, Jonathan Russo, Eddie Ward and Eileen Campion are attached hereto as Exhibit 13.

16.     A true and accurate copy of the transcript from the July 14, 2006 status conference in this case is attached hereto as Exhibit 15.

17.     A true and accurate copy of the Spokesperson Agreement with amendments is attached hereto as Exhibit 16.


**SIGNED THIS 25TH DAY OF JULY UNDER THE PENALTIES OF PERJURY.**

/s/ Annapoorni R. Sankaran_____
Annapoorni R. Sankaran


CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.4, I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on July 25, 2006.


/s/ Annapoorni R. Sankaran_____
Annapoorni R. Sankaran

# EXHIBIT 1

## United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:05-cv-11717-WGY

Vila et al v. Sears, Roebuck and Co. et al
Assigned to: Judge William G. Young
Case in other court: Dukes County Superior Court, 05-00041
Cause: 28:1441 Petition For Removal--Other Contract

Date Filed: 08/17/2005
Jury Demand: Both
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Robert J. Vila**

represented by **James F. O'Brien**
Law Offices of James F. O'Brien
410 Park Avenue
Suite 1530
New York, NY 10022
212-813-9300
Fax: 212-813-1907
Email: jfob1@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**B.V.T.V., Inc.**

represented by **James F. O'Brien**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Sears, Roebuck and Co.**

represented by **Gary R. Greenberg**
Greenberg Traurig, LLP
One International Place
20th Floor
Boston, MA 02110
617-310-6013
Fax: 617-310-6001
Email: greenbergg@gtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Annapoorni R. Sankaran**
Greenberg Traurig, LLP
One International Place
20th Floor
Boston, MA 02110
617-310-6000
Fax: 617-310-6001

Email: sankarana@gtlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sears Holdings Corporation**    represented by    **A. John Pappalardo**
Greenberg Traurig, LLP
One International Place
Boston, MA 02110
617-310-6072
Fax: 617-310-6001
Email: pappalardoj@gtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Annapoorni R. Sankaran**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary R. Greenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kmart Holding Corporation**    represented by    **A. John Pappalardo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Annapoorni R. Sankaran**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary R. Greenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Kmart Holding Corporation**    represented by    **Annapoorni R. Sankaran**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Sears, Roebuck and Co.**    represented by    **Annapoorni R. Sankaran**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Sears Holdings Corporation**

V.

**Counter Defendant**

**Robert J. Vila**

**Counter Defendant**

**B.V.T.V., Inc.**

**Counter Claimant**

**Kmart Holding Corporation**

**Counter Claimant**

**Sears, Roebuck and Co.**

**Counter Claimant**

**Sears Holdings Corporation**          represented by  **Annapoorni R. Sankaran**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Robert J. Vila**

**Counter Defendant**

**B.V.T.V., Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/17/2005 | 1 | NOTICE OF REMOVAL by Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation from Dukes County Superior Court, case number 2005-00041. $ 250, receipt number 66341, filed by Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation. (Attachments: # 1 Exhibit A# 2 Civil Cover Sheet)(Folan, Karen) (Entered: 08/22/2005) |
| 08/17/2005 |  | If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Alexander. (Folan, Karen) (Entered: 08/22/2005) |
| 08/22/2005 | 2 | CORPORATE DISCLOSURE STATEMENT by Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation. (Sankaran, Annapoorni) (Entered: 08/22/2005) |
| 08/22/2005 | 3 | ANSWER to Complaint with Jury Demand *And,* COUNTERCLAIM *by Sears, Roebuck and Co.,* against all plaintiffs by Kmart Holding Corporation, Sears, Roebuck and Co., |

|  |  | Sears Holdings Corporation.(Sankaran, Annapoorni) (Entered: 08/22/2005) |
|---|---|---|
| 08/22/2005 | 5 | CORPORATE DISCLOSURE STATEMENT by B.V.T.V., Inc.. (Folan, Karen) (Entered: 08/25/2005) |
| 08/23/2005 | 4 | NOTICE of Scheduling Conference Scheduling Conference set for Wednesday, 10/19/2005 02:15 PM before Judge Robert E. Keeton. (Folan, Karen) (Entered: 08/23/2005) |
| 09/07/2005 | 6 | Response by Robert J. Vila, B.V.T.V., Inc. to 3 Counterclaim. (Folan, Karen) (Entered: 09/12/2005) |
| 09/12/2005 | 7 | STATE COURT Record received for filing. (Folan, Karen) (Entered: 09/19/2005) |
| 10/11/2005 | 8 | NOTICE by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation *Certification* (Sankaran, Annapoorni) (Entered: 10/11/2005) |
| 10/12/2005 | 9 | JOINT STATEMENT of counsel. (Sankaran, Annapoorni) (Entered: 10/12/2005) |
| 10/13/2005 | 10 | CERTIFICATION pursuant to Local Rule 16.1 by Robert J. Vila, B.V.T.V., Inc..(Folan, Karen) (Entered: 10/18/2005) |
| 10/17/2005 | 11 | MOTION to Amend complaint by Robert J. Vila, B.V.T.V., Inc.. (Attachments: # 1 Exhibit)(Folan, Karen) (Entered: 10/19/2005) |
| 10/19/2005 |  | ElectronicClerk's Notes for proceedings held before Judge Robert E. Keeton : Scheduling Conference held on 10/19/2005. Re: proposed scheduling agreement - parties are in entire agreement with proposal. Final Pretrial conference set for July 26, 2006 at 12:00 p.m. Colloquy re: length of trial - plaintiff says 5 days, defendant says 2-3 days for counterclaim. REK has other cases scheduled for trial so he suggests that trial commence on Monday October 16, 2006 at 9:00 a.m. Parties agree. Re: Plaintiffs motion to amend complaint (docket no. 11) - ALLOWED. Re: settlement negotiations - coming along but the parties will keep settlement options open but not at that stage yet. (Court Reporter Marzilli.) (Folan, Karen) (Entered: 10/20/2005) |
| 10/19/2005 |  | Judge Robert E. Keeton : ElectronicORDER entered granting 11 Motion to Amend complaint. Plaintiffs attorney must now file the amended complaint to receive a separate docket entry number. (Folan, Karen) (Entered: 10/20/2005) |
| 10/21/2005 | 12 | NOTICE by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation *of filing of Defendants' Initial Disclosure Statement Pursuant to Rule 26(a)* (Sankaran, Annapoorni) (Entered: 10/21/2005) |
| 10/21/2005 | 13 | AMENDED COMPLAINT against Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, filed by Robert J. Vila, B.V.T.V., Inc..(Folan, Karen) (Entered: 10/25/2005) |
| 10/21/2005 | 14 | Initial disclosure by Robert J. Vila, B.V.T.V., Inc..(Folan, Karen) (Entered: 10/25/2005) |
| 10/31/2005 | 15 | *Defendants'* ANSWER to Amended Complaint, Amended COUNTERCLAIM against Robert J. Vila, B.V.T.V., Inc., Robert J. Vila, B.V.T.V., Inc. by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation.(Sankaran, |

| | | |
|---|---|---|
| | | Annapoorni) (Entered: 10/31/2005) |
| 11/03/2005 | 16 | Response by Robert J. Vila, B.V.T.V., Inc. to 15 Amended counterclaim. (Folan, Karen) (Entered: 11/07/2005) |
| 02/22/2006 | 17 | MOTION for Partial Summary Judgment by Robert J. Vila. (Attachments: # 1 # 2 # 3 # 4 # 5 # 6 # 7 # 8 # 9 # 10)(O'Brien, James) (Entered: 02/22/2006) |
| 02/22/2006 | 18 | MEMORANDUM in Support re 17 MOTION for Partial Summary Judgment filed by Robert J. Vila. (Filo, Jennifer) (Entered: 02/23/2006) |
| 02/23/2006 | | Notice of correction to docket made by Court staff. Memorandum in Support of 17 Motion for Partial Summary Judgment was entered on the docket as a separate entry. Counsel attached the memo in support to the Motion. Please note for future filings, that the memorandum should be a separate entry on the docket. (Filo, Jennifer) (Entered: 02/23/2006) |
| 03/06/2006 | 19 | Assented to MOTION for Extension of Time to April 4, 2006 to File Opposition To Plaintiffs' Motion for Partial Summary Judgment by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation.(Sankaran, Annapoorni) (Entered: 03/06/2006) |
| 03/14/2006 | | Senior Judge Robert E. Keeton: Electronic ORDER entered granting 19 Assented to Motion for Extension of Time to April 4, 2006 to File Opposition To Plaintiffs' Motion for Partial Summary Judgment (Filo, Jennifer) (Entered: 03/14/2006) |
| 03/20/2006 | 20 | Emergency MOTION for Protective Order *That the Depositions of Edward S. Lampert And Alan Lacy Not Be Had* by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation. (Attachments: # 1 # 2 # 3)(Sankaran, Annapoorni) (Entered: 03/20/2006) |
| 03/21/2006 | 21 | MEMORANDUM in Support re 20 Emergency MOTION for Protective Order *That the Depositions of Edward S. Lampert And Alan Lacy Not Be Had* filed by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation. (Sankaran, Annapoorni) (Entered: 03/21/2006) |
| 03/21/2006 | 22 | DECLARATION *Of Alan Lacy* by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation. (Sankaran, Annapoorni) (Entered: 03/21/2006) |
| 03/21/2006 | 23 | DECLARATION *of Edward S. Lampert* by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation. (Sankaran, Annapoorni) (Entered: 03/21/2006) |
| 03/29/2006 | 24 | Assented to MOTION for Extension of Time *To File Opposition To Plaintiffs' Motion For Partial Summary Judgment* by Kmart Holding Corporation, Kmart Holding |

| | | Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation.(Sankaran, Annapoorni) (Entered: 03/29/2006) |
|---|---|---|
| 03/30/2006 | | Senior Judge Robert E. Keeton: Electronic ORDER entered granting 24 Assented to Motion for Extension of Time To File Opposition To Plaintiffs' Motion For Partial Summary Judgment (Filo, Jennifer) (Entered: 03/30/2006) |
| 03/30/2006 | 25 | Assented to MOTION for Extension of Time to April 10, 2006 to File Response/Reply by Robert J. Vila.(O'Brien, James) (Entered: 03/30/2006) |
| 03/31/2006 | | Judge Robert E. Keeton: Electronic ORDER entered granting 25 ASSENTED Motion for Extension of Time to File Response/Reply re 20 Emergency MOTION for Protective Order *That the Depositions of Edward S. Lampert And Alan Lacy Not Be Had* Responses due by 4/10/2006 (Filo, Jennifer) (Entered: 03/31/2006) |
| 04/07/2006 | 26 | Assented to MOTION for Leave to File Excess Pages by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation.(Sankaran, Annapoorni) (Entered: 04/07/2006) |
| 04/10/2006 | | Senior Judge Robert E. Keeton: Electronic ORDER entered granting 26 Assented to Motion for Leave to File Excess Pages (Filo, Jennifer) (Entered: 04/10/2006) |
| 04/10/2006 | 27 | Opposition re 20 Emergency MOTION for Protective Order *That the Depositions of Edward S. Lampert And Alan Lacy Not Be Had* filed by B.V.T.V., Inc.. (Attachments: # 1 Affidavit # 2 Exhibit A# (3) Exhibit B# 4 Exhibit C# 5 Exhibit D# 6 Exhibit E) (O'Brien, James) Additional attachment(s) added on 4/26/2006 (Filo, Jennifer). (Entered: 04/10/2006) |
| 04/11/2006 | 28 | Response by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation *To Plaintiff Robert J. Vila's Statement of Material Facts In Support of Plaintiff's Motion For Partial Summary Judgment*. (Sankaran, Annapoorni) (Entered: 04/11/2006) |
| 04/11/2006 | 29 | DUPLICATE OF DOCKET ENTRY 35. Opposition re 17 MOTION for Partial Summary Judgment *And Cross-Motion For Summary Judgment* filed by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation. (Sankaran, Annapoorni) Modified on 4/13/2006 (Filo, Jennifer). (Entered: 04/11/2006) |
| 04/11/2006 | 30 | MEMORANDUM in Opposition re 17 MOTION for Partial Summary Judgment *and in Support of Cross-Motion for Summary Judgment* filed by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation. (Sankaran, Annapoorni) (Entered: 04/11/2006) |
| 04/11/2006 | 31 | DECLARATION re 30 Memorandum in Opposition to Motion, *Volume I* by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears |

| | | |
|---|---|---|
| | | Holdings Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation. (Attachments: # 1 # 2 # 3 # 4 # 5 # 6 # 7 # 8 # 9)(Sankaran, Annapoorni) (Entered: 04/11/2006) |
| 04/11/2006 | 32 | DECLARATION re 30 Memorandum in Opposition to Motion, *Volume II* by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation. (Attachments: # 1 # 2 # 3 # 4 # 5 # 6 # 7 # 8 # 9 # 10)(Sankaran, Annapoorni) (Entered: 04/11/2006) |
| 04/11/2006 | 33 | DECLARATION re 30 Memorandum in Opposition to Motion, *Volume III* by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation. (Attachments: # 1 # 2 # 3 # 4 # 5 # 6 # 7 # 8)(Sankaran, Annapoorni) (Entered: 04/11/2006) |
| 04/11/2006 | 34 | DECLARATION re 30 Memorandum in Opposition to Motion, *Volume IV* by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation. (Sankaran, Annapoorni) (Entered: 04/11/2006) |
| 04/11/2006 | 35 | OPPOSITION to Plaintiffs' Motion for Partial Summary Judgment and CROSS-MOTION for Summary Judgment by Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation.(Filo, Jennifer) (Entered: 04/13/2006) |
| 04/13/2006 | | Notice of correction to docket made by Court staff. The clerk docketed #29 again because it was not entered as a motion. The clerk entered as a motion so it shows up on the pending motions list. (Filo, Jennifer) (Entered: 04/13/2006) |
| 04/24/2006 | 36 | Joint MOTION to Withdraw *Defendants' Motion for Protective Order and Plaintiffs' Opposition Thereto and to Impound* by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation.(Sankaran, Annapoorni) (Entered: 04/24/2006) |
| 04/24/2006 | 37 | Assented to MOTION for Extension of Time to 14 days after completion of Rule 30(b)(6) deposition of Defendant Seras Roebuck and Co. to File Response/Reply as to 35 MOTION for Summary Judgment by Robert J. Vila.(O'Brien, James) (Entered: 04/24/2006) |
| 04/25/2006 | | Senior Judge Robert E. Keeton: Electronic ORDER entered granting 37 Assented to Motion for Extension of Time to 14 days after completion of Rule 30(b)(6) deposition of Defendant Seras Roebuck and Co. to File Response/Reply re 35 CROSS-MOTION for Summary Judgment. (Filo, Jennifer) (Entered: 04/25/2006) |
| 04/26/2006 | | Senior Judge Robert E. Keeton: Electronic ORDER entered granting 36 Motion to Withdraw Defendants' Motion for Protective Order, withdrawing 20 Motion for Protective Order. "Allowed and so ordered, subject to legal requirements." (Filo, Jennifer) (Entered: 04/26/2006) |

| | | |
|---|---|---|
| 06/15/2006 | | ELECTRONIC NOTICE of Reassignment. Judge William G. Young added. Judge Robert E. Keeton no longer assigned to case. From this date forward the case number on all pleadings should be followed by the initials WGY. (Folan, Karen) (Entered: 06/15/2006) |
| 06/16/2006 | | ELECTRONIC NOTICE of Hearing on Motion 35 MOTION for Summary Judgment, 17 MOTION for Partial Summary Judgment: Motion Hearing set for 7/31/2006 02:00 PM in Courtroom 18 before Judge William G. Young. (Smith, Bonnie) (Entered: 06/16/2006) |
| 06/16/2006 | | ELECTRONIC NOTICE of Scheduling Conference Scheduling Conference set for 7/14/2006 02:00 PM in Courtroom 18 before Judge William G. Young. (Smith, Bonnie) (Entered: 06/16/2006) |
| 06/20/2006 | 38 | NOTICE by Kmart Holding Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Kmart Holding Corporation, Sears, Roebuck and Co., Sears Holdings Corporation, Sears, Roebuck and Co., Sears Holdings Corporation re Order on Motion for Extension of Time to File Response/Reply, *Notification of Scheduling of Fed.R.Civ.P.30(b)(6) Depositions and Date on Which Opposition to Defendants' Cross Motion for Summary Judgment is Due Pursuant to March 25, 2006 Order* (Sankaran, Annapoorni) (Entered: 06/20/2006) |
| 06/29/2006 | | Judge William G. Young : Electronic ORDER entered. re 38 Notice (Other), Notice (Other), Notice (Other) filed by Sears, Roebuck and Co.,, Kmart Holding Corporation,, Sears Holdings Corporation,THE HEARING set by this court will proceed as set on July 31,2006. The briefing schedule previously set is VACATED. Either the 30(b)(6) depositions are to be rescheduled or parties briefs will be filed without the benefit of the depositions. Briefs are to be filed no later than July 21, 2006. cc/cl(Smith, Bonnie) (Entered: 06/29/2006) |
| 07/11/2006 | 39 | Second MOTION to Amend *COMPLAINT* by all plaintiffs. (Attachments: # 1 Exhibit # 2 # 3 Exhibit)(O'Brien, James) (Entered: 07/11/2006) |
| 07/14/2006 | | ElectronicClerk's Notes for proceedings held before Judge William G. Young : Scheduling Conference held on 7/14/2006. The Court explains the requirements of the session. Final Pretrial Conference set for 9/6/2006 02:00 PM in Courtroom 18 before Judge William G. Young. Jury Trial set for RUNNING TRIAL LIST AS OF 9/5/2006 09:00 AM in Courtroom 18 before Judge William G. Young. Final pretrial memo is due by 8/2/06.(Court Reporter Womack.) (Smith, Bonnie) (Entered: 07/17/2006) |
| 07/17/2006 | 40 | Judge William G. Young : ORDER entered. PROCEDURAL ORDER re pretrial/trial Final Pretrial Conference set for 9/6/2006 02:00 PM in Courtroom 18 before Judge William G. Young.(Smith, Bonnie) (Entered: 07/17/2006) |
| 07/21/2006 | 41 | First Opposition re 35 MOTION for Summary Judgment *Plaintiffs' Opposition to Defendants' Cross-Motion for Summary Judgment* filed by all plaintiffs. (O'Brien, James) (Entered: 07/21/2006) |
| 07/21/2006 | 42 | DECLARATION re 41 Opposition to Motion *Plaintiffs' Opposition to Defendants' Cross-Motion for Summary Judgment* by Robert J. Vila, B.V.T.V., Inc.. (Attachments: # 1 Exhibit Exhibit A (part 1)# 2 Exhibit Exhibit A (Part 2)# 3 Exhibit Exhibit B (Part 1)# 4 Exhibit Exhibit B (Part 2)# 5 Exhibit Exhibit C# 6 Exhibit Exhibit D# 7 Exhibit Exhibit E (Part 1)# 8 Exhibit Exhibit E (Part 2)# 9 Exhibit Exhibit F# 10 Exhibit Exhibit |

| | | |
|---|---|---|
| | | G# 11 Exhibit Exhibit H# 12 Exhibit Exhibit H (Part 2)# 13 Exhibit Exhibit I# 14 Exhibit Exhibit J# 15 Exhibit Exhibits K, L and M# 16 Exhibit Exhibit N# 17 Exhibit Exhibit O# 18 Exhibit Exhibit P# 19 Exhibit Exhibits Q and R# 20 Exhibit Exhibit S) (O'Brien, James) (Entered: 07/21/2006) |
| 07/21/2006 | 43 | DECLARATION re 41 Opposition to Motion *Plaintiffs' Opposition to Defendants' Cross-Motion for Summary Judgment* by Robert J. Vila, B.V.T.V., Inc.. (Attachments: # 1 Exhibit Deposition Exhibit 4 (Part 1)# 2 Exhibit Deposition Exhibit 4 (Part 2)# 3 Exhibit Deposition Exhibit 4 (Part 3)# 4 Exhibit Exhibits 7 and 10# 5 Exhibit Deposition Exhibit 13 (Part 1)# 6 Exhibit Deposition Exhibit 13 (Part 2)# 7 Exhibit Exhibits 21, 22, 23 and 27# 8 Exhibit Exhibits 29-32# 9 Exhibit Exhibits 36,45-47,49# 10 Exhibit Deposition Exhibits 51-52,56-58, 62 and 69# 11 Exhibit Deposition Exhibit 71# 12 Errata Deposition Exhibits 75,77-78,80,95,100 and 110# 13 Exhibit Deposition Exhibits 112,121,142,148-151# 14 Exhibit Deposition Exhibit 154,162,170-173,179-180 and 195# 15 Exhibit Deposition Exhibits 196,239,242-244)(O'Brien, James) (Entered: 07/21/2006) |
| 07/24/2006 | 44 | TRANSCRIPT of Proceedings held on 7/14/06 before Judge Young. Court Reporter: Womack. The original transcripts are maintained in the case file in the Clerk's Office. Copies may be obtained by contacting the court reporter at womack@megatran.com or the Clerk's Office. (Smith, Bonnie) (Entered: 07/24/2006) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/25/2006 13:02:10 | | |
| **PACER Login:** | gt0222 | **Client Code:** | 54151.021500 |
| **Description:** | Docket Report | **Search Criteria:** | 1:05-cv-11717-WGY |
| **Billable Pages:** | 6 | **Cost:** | 0.48 |

# EXHIBIT 2

COMMONWEALTH OF MASSACHUSETTS

DUKES, ss.                          SUPERIOR COURT DEPARTMENT
                                    OF THE TRIAL COURT
                                    CIVIL ACTION NO. DUCV2005-00041

---

ROBERT J. VILA and B.V.T.V., INC.    )
                                     )   A True Copy,
            Plaintiffs,              )   Attest:
                                     )
                                     )        *Joseph E. Sollitto Jr.*
v.                                   )
                                     )        JOSEPH E. SOLLITTO, JR.
                                     )        CLERK OF COURTS
SEARS, ROEBUCK AND CO.,              )
SEARS HOLDINGS CORPORATION           )
and KMART HOLDING COPORATION         )
            Defendants.              )
                                     )

---

## COMPLAINT

This is an action by plaintiffs Robert J. Vila and B.V.T.V., Inc. seeking to recover

damages and other relief from defendants Sears, Roebuck and Co., Sears Holdings

Corporation and Kmart Holding Corporation in connection with the repudiation of and

breaches by Sears, Roebuck and Co. of a contract with Robert J. Vila to act as

spokesperson for certain products of Sears, Roebuck and Co. and of a contract with

B.V.T.V., Inc. for the production of the nationally syndicated television series known as

*Home Again With Bob Vila.* In particular, Robert J. Vila seeks the recovery of amounts

due and to become due pursuant to his Spokesperson Agreement with Sears, Roebuck

and Co., damages from Sears Holdings Corporation and Kmart Holding Corporation the



FILED
SUPERIOR COURT
COUNTY OF DUKES COUNTY

JUL 1 8 RECD
2005

_____, Clerk

to their tortious interference with the Spokesperson Agreement and an award of damages from Sears, Roebuck and Co., Sears Holdings Corporation and Kmart Holding Corporation due to their bad faith and unfair and deceptive conduct, trebled on account of defendants' willful violations of M.G.L. c. 93A, §§2 and 11, together with interest, costs and attorneys' fees. B.V.T.V., Inc. seeks the recovery of amounts due and to become due pursuant to its Syndication Agreement with Sears, Roebuck and Co., damages from Sears Holdings Corporation and Kmart Holding Corporation due to their tortious interference with the Syndication Agreement and an award of damages from Sears, Roebuck and Co., Sears Holdings Corporation and Kmart Holding Corporation due to their bad faith and unfair and deceptive conduct, trebled on account of defendants' willful violation of M.G.L. c. 93A, §§2 and 11, together with interest, costs and attorneys' fees.

## THE PARTIES

1. Plaintiff Robert J. Vila ("Vila") is a citizen of the Commonwealth of Massachusetts with a residence in Chilmark, Massachusetts. Continuously since 1989, Vila has been the national spokesperson for certain products marketed and sold by defendant Sears, Roebuck and Co.

2. Plaintiff B.V.T.V., Inc. ("BVTV") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 115 Kingston Street, Boston, Massachusetts. Continuously since 1989, BVTV has been the producer of the nationally syndicated television series known

2

as *Home Again With Bob Vila*, which series has been paid for and sponsored by Sears, Roebuck and Co.

3. Defendant Sears, Roebuck and Co. ("Sears") is a corporation organized and existing under the laws of the State of New York with a principal place of business at 3333 Beverly Road., Hoffman Estates, Illinois. At all times material hereto, Sears has been one of the nation's largest retailers of merchandise, including so-called home improvement products.

4. Defendant Sears Holdings Corporation ("SHLD") is a corporation organized in 2004 and existing under the laws of the State of Delaware with a principal place of business at 3333 Beverly Road., Hoffman Estates, Illinois

5. Defendant Kmart Holding Corporation ("Kmart") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 3100 West Big Beaver Road, Troy, Michigan.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction with respect to defendants Sears, SHLD and Kmart pursuant to M.G.L. c. 223A, §3 because Sears transacts business within the Commonwealth of Massachusetts and SHLD and Kmart have caused tortious injury in the Commonwealth of Massachusetts.

7. This Court has jurisdiction with respect to the subject matter of this action pursuant to M.G.L. c. 212, §4 and c. 93A, §11.

8. Venue is proper in this county under M.G.L. c. 223, §1, §8.

3

<u>FACTS</u>

9.  On or about September 29, 1985, Sears entered into an agreement with Vila, whereby Vila was to render professional services as a spokesperson, participant and performer in connection with the advertising of Sears' products by way of, among other things, television and radio commercials, videos, still photographs and personal appearances (the "Spokesperson Agreement").

10. The Spokesperson Agreement has been extended and amended by the parties numerous times and currently is due to expire on December 31, 2009. Since 1989, Vila has performed and continues to perform his obligations to Sears pursuant to the Spokesperson Agreement, as amended.

11. On or about September 29, 1985, Sears entered into an agreement with BVTV, whereby BVTV was to produce and deliver to Sears a series of home improvement television programs to be paid for and sponsored by Sears (the "Syndication Agreement").

12. The Syndication Agreement has been extended and amended by the parties numerous times. Negotiations for the most recent amendment to the Syndication Agreement (Amendment 11) took place from March 2004 to January 18, 2005. On January 18, 2005, Amendment 11 to the Syndication Agreement was entered into by the parties. The Syndication Agreement, as amended, is currently due to expire on August 31, 2007. Since 1989, BVTV has performed and continues to perform its obligations to Sears pursuant to the Syndication Agreement, as amended.

13. On or about November 17, 2004, while negotiations for Amendment 11 of the Syndication Agreement were ongoing, Sears announced a transaction whereby, subject to, among other things, shareholder approval by the shareholders of Kmart and Sears, Kmart would acquire Sears and combine the two companies into a major new retail company.

14. In anticipation of that transaction, on November 23, 2004, Kmart formed SHLD in the State of Delaware.

15. Pursuant to the course of conduct established by Sears and BVTV over the fifteen years of their relationship, in December 2004, BVTV began preproduction activities for the September 2005 – August 2006 season of the television series and submitted invoices to Sears for the payment of $750,000 that would be due under Amendment 11 on January 1, 2005.

16. On January 18, 2005, Sears and BVTV concluded their negotiations and entered into Amendment 11 to the Syndication Agreement, as amended. Amendment 11 extended the term of the Syndication Agreement to August 31, 2007.

17. Pursuant to the Syndication Agreement, for the year September 2003 through August 2004, Sears is obligated, among other things, to pay BVTV certain incentive bonus payments of up to a maximum of $1,250,000. Sears has not fully accounted to BVTV for or paid to BVTV the entirety of the incentive bonus payment due for the year ended August 2004. Upon information and belief, the balance of the incentive bonus payment due to BVTV is approximately $500,000.

18. Pursuant to the Syndication Agreement, as most recently amended and in effect, Sears is obligated to pay to BVTV the guaranteed sums of $750,000 by January 1,

2005, $494,500 by March 1, 2005, $275,000 by August 1, 2005, plus, by August 1, 2005, a $200,000 advance against Revenue Sharing fees, with the balance of said Revenue Sharing fees to be estimated and paid by October 1, 2005. Similarly, for the year September 2006 through August 2007, Sears is obligated, among other things, to pay BVTV the guaranteed sums of $750,000 by January 1, 2006, $494,500 by March 1, 2006 , $275,000 by August 1, 2006, plus, by August 1, 2006, a $200,000 advance against Revenue Sharing fees, with the balance of said Revenue Sharing fees to be estimated and paid by October 1, 2006.

19. In February 2005, although the transaction with Kmart Holding had not been consummated or approved by shareholders of Sears and Kmart, and although Sears and BVTV had just recently entered into Amendment 11 to the Syndication Agreement, Kmart and SHLD caused Sears to advise BVTV that management of Kmart and SHLD wanted to change the Syndication Agreement, as amended and then in effect.

20. Although Sears and BVTV had just recently entered into Amendment 11 to the Syndication Agreement, because of the long and mutually successful relationship BVTV enjoyed with Sears, BVTV engaged in discussions with Sears for a possible further amendment to the Syndication Agreement, as amended and then in effect.

21. In the course of those discussions, Kmart and SHLD caused Sears to advise Vila that management of Kmart and SHLD also wanted to change  the Spokesperson Agreement, as amended and then in effect.

6

22. Because of the long and mutually successful relationship Vila enjoyed with Sears, Vila engaged in discussions with Sears for a possible further amendment to the Spokesperson Agreement, as amended and then in effect.

23. When those discussions did not progress as SHLD and Kmart desired, SHLD and Kmart caused Sears to claim that Sears had not agreed with BVTV for the production of the television series *Home Again With Bob Vila* for the 2005-2006 season or any other future season.

24. SHLD and Kmart caused Sears to breach its Syndication Agreement, as amended, with BVTV and to refuse to pay BVTV the payments due BVTV pursuant to the Syndication Agreement, as amended, by January 1, 2005 and March 1, 2005 in the total amount of $1,244,500. Further, SHLD caused Sears to totally repudiate the Syndication Agreement and stated that Sears will not make any payments due BVTV in the future under the Syndication Agreement, as amended.

25. SHLD and Kmart also caused Sears to take the position that Sears' repudiation of the Syndication Agreement, as amended, entitled Sears to terminate the Spokesperson Agreement with Vila.

26. Pursuant to the Spokesperson Agreement, as amended, Sears is obligated to pay to Vila each year, one half of the guaranteed compensation for that year on January 1 and the other half on July 1.

27. The guaranteed compensation owed to Vila for the year 2005 is $1,897,500. The guaranteed compensation to be paid to Vila for the years 2006-2009 is $9,686,926.

28. Sears made the payment due Vila on January 1, 2005 in the amount of $948,750.

7

29. SHLD and Kmart caused Sears to refuse to pay to Vila the guaranteed compensation due July 1, 2005 in the amount of $948,750.

## COUNT I
### (Breach of Contract)

30. Vila repeats the allegations contained in paragraphs 1 through 29, as though fully set forth herein.

31. By its failure and refusal to pay Vila the guaranteed compensation in the amount of $948,750 due Vila on July 1, 2005, Sears has breached its obligations to Vila pursuant to the Spokesperson Agreement.

32. As a direct and proximate result of Sears' breach of the Spokesperson Agreement, Vila has been damaged in an amount to be determined at trial, but, in no event less than $948,750, plus interest, costs and his attorneys' fees.

## COUNT II
### (Repudiation of Contract)

33. Vila repeats the allegations contained in paragraphs 1 through 32, as though fully set forth herein.

34. Upon information and belief, Sears has repudiated its future obligations to Vila pursuant to the Spokesperson Agreement.

35. As a direct and proximate result of Sears' repudiation of the Spokesperson Agreement, Vila has been damaged in an amount to be determined at trial, but, in no event less than $948,750 and will be damaged in a further amount to be

determined at trial, but, in no event less than $9,686,926, plus interest, costs and his attorneys' fees.

## COUNT III
(Breach of Implied Covenant of Good Faith and Fair Dealing)

36. Vila repeats the allegations contained in paragraphs 1 through 35, as though fully set forth herein.

37. By its actions and conduct, Sears has breached the implied covenant of good faith and fair dealing inherent in the Spokesperson Agreement.

38. As a direct and proximate result of Sears' breach of the implied covenant of good faith and fair dealing inherent in the Spokesperson Agreement, Vila has been damaged in an amount to be determined at trial, but, in no event less than $948,750, and will be damaged in a further amount to be determined at trial, but, in no event less than $9,686,926, plus interest, costs and his attorneys' fees.

## COUNT IV
(Tortious Interference With Contract)

39. Vila repeats the allegations contained in paragraphs 1 through 38, as though fully set forth herein.

40. SHLD and Kmart knew of the Spokesperson Agreement, as amended, between Sears and Vila.

41. SHLD and Kmart, without any right or privilege to do so, intentionally and tortiously interfered with the Spokesperson Agreement with improper purpose or

by improper means, causing Sears to breach its obligations to Vila under the Spokesperson Agreement, as amended, to breach the implied covenant of good faith and fair dealing in the Spokesperson Agreement and to repudiate its future obligations to Vila under the Spokesperson Agreement.

42. As a direct and proximate result of SHLD's and Kmart's tortious interference with the Spokesperson Agreement between Sears and Vila, Vila has been damaged in an amount to be determined at trial, but, in no event less than $948,750 and will be damaged in a further amount to be determined at trial, but, in no event less than $9,686,926, plus interest, costs and his attorneys' fees.

<div align="center">COUNT V<br>(Violation of M.G.L. 93A)</div>

43. Vila repeats the allegations contained in paragraphs 1 through 42, as though fully set forth herein.

44. Vila, Sears, SHLD and Kmart are engaged in trade or commerce in the Commonwealth of Massachusetts, within the meaning of M.G.L. c. 93A.

45. By their actions and conduct, Sears, SHLD and Kmart have knowingly and intentionally engaged in unfair and deceptive acts or practices in violation of M.G.L. c. 93A, §§2 and 11.

46. As a direct and proximate result of Sears', SHLD's and Kmart's violations of M.G.L. c. 93A, Vila has been damaged in an amount to be determined at trial, but, in no event less than $948,750, trebled, but in no event, less than doubled, plus interest, costs and his attorneys' fees. Further, Vila will be damaged in a

<div align="center">10</div>

further amount to be determined at trial, but, in no event less than $9,686,926,

trebled, but in no event, less than doubled, plus interest, costs and his attorneys'

fees.

## COUNT VI
(Breach of Contract)

47. BVTV repeats the allegations contained in paragraphs 1 through 46, as though

fully set forth herein.

48. By its failure and refusal to pay BVTV the full, incentive bonus due for the year

ended August 31, 2004 and the guaranteed compensation past due BVTV, Sears

has breached its obligations to BVTV pursuant to the Syndication Agreement, as

amended.

49. As a direct and proximate result of Sears' breach of the Syndication Agreement,

BVTV has been damaged in an amount to be determined at trial, but, in no event

less than $1,744,500, plus interest, costs and its attorneys' fees.

## COUNT VII
(Repudiation of Contract)

50. BVTV repeats the allegations contained in paragraphs 1 through 49, as though

fully set forth herein.

51. Sears has repudiated its future obligations to BVTV pursuant to the Syndication

Agreement.

52. As a direct and proximate result of Sears' repudiation of the Syndication

Agreement, BVTV has been damaged in an amount to be determined at trial, but,

11

in no event less than $1,744,500, plus interest, costs and its attorneys' fees, and will be damaged in a further amount to be determined at trial, but, in no event less than $2,194,500, plus interest, costs and its attorneys' fees.

## COUNT VIII
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

53. BVTV repeats the allegations contained in paragraphs 1 through 52, as though fully set forth herein.

54. By its actions and conduct, Sears has breached the implied covenant of good faith and fair dealing inherent in the Syndication Agreement.

55. As a direct and proximate result of Sears' breach of the implied covenant of good faith and fair dealing inherent in the Syndication Agreement, BVTV has been damaged in an amount to be determined at trial, but, in no event less than $1,744,500, plus interest, costs and its attorneys' fees. and will be damaged in a further amount to be determined at trial, but, in no event less than $2,194,500, plus interest, costs and its attorneys' fees.

## COUNT IX
### (Tortious Interference With Contract)

56. BVTV repeats the allegations contained in paragraphs 1 through 55, as though fully set forth herein.

57. SHLD and Kmart knew of the Syndication Agreement, as amended, between Sears and BVTV.

58. SHLD and Kmart, without any right or privilege to do so, intentionally and tortiously interfered with that contract, with improper motive or by improper means, causing Sears to breach its obligations to BVTV under the Syndication Agreement, as amended, to breach the implied covenant of good faith and fair dealing inherent in the Syndication Agreement and to repudiate its future obligations to BVTV under the Syndication Agreement.

59. As a direct and proximate result of SHLD's and Kmart's tortious interference with the Syndication Agreement between Sears and BVTV, BVTV has been damaged in an amount to be determined at trial, but, in no event less than $1,744,500, plus interest, costs and its attorneys' fees and will be damaged in a further amount to be determined at trial, but, in no event less than $2,194,500, plus interest, costs and its attorneys' fees.

## COUNT X
### (Violation of M.G.L. c. 93A)

60. BVTV repeats the allegations contained in paragraphs 1 through 59, as though fully set forth herein.

61. BVTV, Sears, SHLD and Kmart are engaged in trade or commerce in the Commonwealth of Massachusetts, within the meaning of M.G.L. c. 93A.

62. By their actions and conduct, Sears and SHLD have knowingly and intentionally engaged in unfair and deceptive acts or practices in violation of M.G.L. c. 93A, §§2 and 11.

63. As a direct and proximate result of Sears', SHLD's and Kmart's violations of M.G.L. c. 93A, BVTV has been damaged in an amount to be determined at trial, but, in no event less than $1,744,500, trebled, but in no event, less than doubled, plus interest, costs and its attorneys' fees. Further, BVTV will be damaged in a further amount to be determined at trial, but, in no event less than $2,194,500, trebled, but in no event, less than doubled, plus interest, costs and its attorneys' fees.

## PRAYERS FOR RELIEF

WHEREFORE, Robert J. Vila and B.V.T.V, Inc. respectfully request that this Court enter judgment, as follows:

A. Awarding Robert J. Vila damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $948,750, as a result of Sears, Roebuck and Co.'s breach of the Spokesperson Agreement, together with interest, costs and his attorneys' fees;

B. Awarding Robert J. Vila damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $9,686,926, as a result of Sears, Roebuck and Co.'s repudiation of the Spokesperson Agreement, together with interest, costs and his attorneys' fees;

C. Awarding Robert J. Vila damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $10,635,676, as a result of Sears, Roebuck and Co.'s breach of the implied covenant of good faith and fair dealing

inherent in the Spokesperson Agreement, together with interest, costs and his attorneys' fees;

D. Awarding Robert J. Vila damages against Sears Holdings Corporation and Kmart Holding Corporation in an amount to be determined at trial, but in no event less than $10,635,676, as a result of Sears Holdings Corporation's and Kmart Holding Corporation's tortious interference with the Spokesperson Agreement, together with interest, costs and his attorneys' fees;

E. Awarding Robert J. Vila damages against Sears, Roebuck and Co., Sears Holdings Corporation and Kmart Holding Corporation in an amount to be determined at trial, but in no event less than $10,635,676, trebled, but, in no event less than doubled, as a result of Sears, Roebuck and Co.'s, Sears Holding Corporation's and Kmart Holding Corporation's unfair and deceptive conduct in violation of M.G.L. c. 93A, together with interest, costs and his attorneys' fees;

F. Awarding B.V.T.V., Inc. damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $1,744,500, as a result of Sears, Roebuck and Co.'s breach of the Syndication Agreement, together with interest, costs and its attorneys' fees;

G. Awarding B.V.T.V., Inc. damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $2,194,500, as a result of Sears, Roebuck and Co.'s repudiation of the Syndication Agreement, together with interest, costs and its attorneys' fees;

H. Awarding B.V.T.V., Inc. damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $3,939,000, as a result of Sears,

Roebuck and Co.'s breach of the implied covenant of good faith and fair dealing inherent in the Syndication Agreement, together with interest, costs and its attorneys' fees;

I.  Awarding B.V.T.V., Inc. damages against Sears Holdings Corporation and Kmart Holding Corporation, in an amount to be determined at trial, but in no event less than $3,939,000, as a result of Sears Holdings Corporation's and Kmart Holding Corporation's tortious interference with the Syndication Agreement, together with interest, costs and its attorneys' fees;

J.  Awarding B.V.T.V., Inc. damages against Sears, Roebuck and Co., Sears Holdings Corporation and Kmart Holding Corporation, in an amount to be determined at trial, but in no event less than $3,939,000, trebled, but, in no event, less than doubled, as a result of Sears, Roebuck and Co.'s, Sears Holdings Corporation's and Kmart Holding Corporation's unfair and deceptive conduct in violation of M.G.L. c. 93A, together with interest, costs and its attorneys' fees;

K.  Awarding Robert J. Vila and B.V.T.V., Inc. such other and further relief as this Court deems just and proper.

## JURY DEMAND

Robert J. Vila and B.V.T.V., Inc. hereby demand a jury as to all claims and issues so triable.

ROBERT J. VILA and B.V.T.V., INC.

By their attorney,

James F. O'Brien (BBO # 375765)
410 Park Avenue, Suite 1530
New York, New York 10022
212 813 9300
212 813 1907 (fax)

Dated: July 15, 2005

# EXHIBIT 3

# SEARS HOLDINGS CORPORATION

Michael W. Klar
Vice President - Deputy General Counsel,
Litigation and Government Affairs
Law Department

Sears Holdings Corporation
3333 Beverly Road, B6-312A
Hoffman Estates, Illinois 60179
Telephone. (847) 286-8272
Fax (847) 286-0288
mklar@sears.com

August 19, 2005

**CERTIFIED MAIL RETURN RECEIPT REQUESTED &
BY FACSIMILE**

Mr. Robert Vila
c/o Ronald E. Feiner, Esq
Kaufman, Feiner, Yamin, Gildin & Robbins
777 Third Avenue
New York. NY 10017

Dear Mr. Vila:

Please be advised that, as a result of your conduct, Sears, Roebuck and Co. ("Sears") hereby notifies you of its election to terminate and cancel the Bob Vila Spokesperson Agreement ("Spokesperson Agreement") effective on the date of your receipt of this notice. Sears has learned that you have engaged in substantial misconduct under the agreement, including your violation of Sears' trademark in the Home Again name. As a result of this material breach of the Spokesperson Agreement, Sears was under no obligation to pay for your services beginning on July 1, 2005. In addition, under Article VII(6) of the Spokesperson Agreement, which permits Sears to terminate the agreement in response to any material breach thereunder, Sears hereby terminates the Spokesperson Agreement.

Article VII.7 of the Spokesperson Agreement grants to Sears an independent right to terminate the Spokesperson Agreement if you are "involved in any situation" that "reflect[s] unfavorably upon [Sears'] reputation." The provision states also that Sears' "decision on all matters arising under this paragraph shall be conclusive and shall be based on our judgment as to whether or not your act or involvement has harmed or may be harmful in a significant respect." Sears has determined that your false accusation that Sears knowingly and intentionally deceived you -- which you have insisted on airing notwithstanding Sears' good faith attempt to avoid litigation and adverse publicity -- will "reflect unfavorably upon [Sears'] reputation." Accordingly, by this letter, Sears terminates the Spokesperson Agreement on the independent basis that you have made false accusations that may significantly harm Sears' reputation.



P 0000288

In addition to Sears' right to terminate the Spokesperson Agreement pursuant to Article VII(6) and (7), Sears also retains and reserves any and all other grounds for termination arising out of your conduct.

Finally, pursuant to Paragraph 7 of Amendment IX to the Spokesperson Agreement, incorporated by Paragraph 4 of Amendment X to the Spokesperson Agreement, if "the Bob Vila Home Again television show is canceled <u>for any reason</u>," Sears has the right to terminate the Spokesperson Agreement effective on December 31 after the notice of cancellation. Paragraph 7 of Amendment IX to the Spokesperson Agreement (emphasis added). As set forth above, Sears has exercised its right to terminate the Spokesperson Agreement immediately pursuant to Article VII(6) and (7). However, should Sears' cancellation pursuant to Articles VII(6) and (7) be deemed ineffective for any reason, Sears hereby exercises its rights under Paragraph 7 of Amendment IX to the Spokesperson Agreement, incorporated by Paragraph 4 of Amendment X to the Spokesperson Agreement, and hereby cancels the Bob Vila Home Again television (confirming prior advice to you). Pursuant to that cancellation, under no circumstances, would the Spokesperson Agreement be effective beyond December 31, 2005.

Sincerely yours,

*Michael W. Kier* /opc

Michael W. Kier

P 0000289

# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
05-11717 REK

```
                                    )
ROBERT J. VILA and B.V.T.V., INC.   )
                                    )
        Plaintiffs,                 )
                                    )
                                    )
v.                                  )
                                    )
                                    )
SEARS, ROEBUCK AND CO.,             )
SEARS HOLDINGS CORPORATION          )
  and KMART HOLDING COPORATION      )
        Defendants.                 )
                                    )
```

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs Robert J. Vila and B.V.T.V., Inc. file this First Amended Complaint seeking to recover damages and other relief from defendants Sears, Roebuck and Co., Sears Holdings Corporation and Kmart Holding Corporation in connection with the repudiation of and breaches by Sears, Roebuck and Co. of a contract with Robert J. Vila to act as spokesperson for certain products of Sears, Roebuck and Co. and of a contract with B.V.T.V., Inc. for the production of the nationally syndicated television series known as *Bob Vila's Home Again*. In particular, Robert J. Vila seeks the recovery of amounts due and to become due pursuant to his Spokesperson Agreement with Sears, Roebuck and Co., damages from Sears Holdings Corporation and Kmart Holding Corporation due to their tortious interference with the Spokesperson Agreement and an award of damages

from Sears, Roebuck and Co., Sears Holdings Corporation and Kmart Holding Corporation due to their bad faith and unfair and deceptive conduct, trebled on account of defendants' willful violations of M.G.L. c. 93A, §§2 and 11, together with interest, costs and attorneys' fees. B.V.T.V., Inc. seeks the recovery of amounts due and to become due pursuant to its Syndication Agreement with Sears, Roebuck and Co., damages from Sears Holdings Corporation and Kmart Holding Corporation due to their tortious interference with the Syndication Agreement and an award of damages from Sears, Roebuck and Co., Sears Holdings Corporation and Kmart Holding Corporation due to their bad faith and unfair and deceptive conduct, trebled on account of defendants' willful violation of M.G.L. c. 93A, §§2 and 11, together with interest, costs and attorneys' fees.

## THE PARTIES

1. Plaintiff Robert J. Vila ("Vila") is a citizen of the Commonwealth of Massachusetts with a residence in Chilmark, Massachusetts. Continuously since 1989, Vila has been the national spokesperson for certain products marketed and sold by defendant Sears, Roebuck and Co.

2. Plaintiff B.V.T.V., Inc. ("BVTV") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 115 Kingston Street, Boston, Massachusetts. Continuously since 1989, BVTV has been the producer of the nationally syndicated television series initially known as *Home Again With Bob Vila* and more recently known as *Bob Vila's Home Again* which series has been financed by Sears, Roebuck and Co.

2

3.  Defendant Sears, Roebuck and Co. ("Sears") is a corporation organized and existing under the laws of the State of New York with a principal place of business at 3333 Beverly Road., Hoffman Estates, Illinois. At all times material hereto, Sears has been one of the nation's largest retailers of merchandise, including so-called home improvement products.

4.  Defendant Sears Holdings Corporation ("SHLD") is a corporation organized in 2004 and existing under the laws of the State of Delaware with a principal place of business at 3333 Beverly Road., Hoffman Estates, Illinois

5.  Defendant Kmart Holding Corporation ("Kmart") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 3100 West Big Beaver Road, Troy, Michigan.

JURISDICTION AND VENUE

6.  This Court has personal jurisdiction with respect to defendants Sears, SHLD and Kmart pursuant to M.G.L. c. 223A, §3 because Sears transacts business within the Commonwealth of Massachusetts and SHLD and Kmart have caused tortious injury in the Commonwealth of Massachusetts.

7.  This Court has jurisdiction with respect to the subject matter of this action pursuant to 28 U.S.C. § 1332.

8.  Venue is proper in this district pursuant to 28 U.S.C. § 1391.

<u>FACTS</u>

9.  On or about September 29, 1985, Sears entered into an agreement with Vila,
    whereby, for guaranteed compensation, Vila was to render professional services
    as a spokesperson, participant and performer in connection with the advertising of
    Sears' products by way of, among other things, television and radio commercials,
    videos, still photographs and personal appearances (the "Spokesperson
    Agreement"). The Spokesperson Agreement includes, at Paragraph VII, sub-
    paragraph 2, a "Pay or Play" provision that Sears will not be required to request
    Vila's services at any time or to utilize Vila's services or the product of Vila's
    services and that Sears' only obligation shall be to make the payments required
    pursuant to the Spokesperson Agreement.

10. The Spokesperson Agreement has been extended and amended by the parties ten
    (10) times and currently is due to expire on December 31, 2009. The "Pay or
    Play" provision remained in effect through all ten amendments. Since 1989, Vila
    has performed and continues to be ready, willing and able to perform his
    obligations to Sears pursuant to the Spokesperson Agreement, as amended.

11. The Spokesperson Agreement, Amendment IX, paragraph 7 provides, "If the
    Bob Vila Home Again television show is canceled for any reason, Sears has the
    right to terminate this Agreement effective the 31st day of December following
    the notice of cancellation."

12. At the time of the negotiations of Amendment IX to the Spokesperson
    Agreement in 1998, to induce Vila to enter into Amendment IX, Sears

4

represented that the language of paragraph 7 was there in the event that the television series was canceled by the syndicator of the television series, an independent third party. Sears intended that Vila rely upon that representation and Vila reasonably did rely upon that representation in entering into Amendment IX to the Spokesperson Agreement, as amended.

13. The Spokesperson Agreement, Amendment X, paragraph 4, dated December 1, 2000, provides, "Paragraph 7 of Amendment IX shall remain in effect during the current term and any extension of that certain Bob Vila Syndicated Television Program Agreement dated September 29, 1989, as amended, between Ogilvy & Mather, as agent for Sears, and B.V.T.V., Inc."

14. On or about September 29, 1989, Sears entered into an agreement with BVTV, whereby BVTV was to produce and deliver to Sears a series of home improvement television programs to be financed by Sears (the "Syndication Agreement"). The television programs produced by BVTV and financed by Sears are distributed for airing by a syndicator, an independent third party.

15. The Syndication Agreement has been extended and amended by the parties eleven (11) times. Negotiations for the most recent amendment to the Syndication Agreement (Amendment 11) took place from February 2004 to January 18, 2005. During the period of these negotiations, BVTV, relying upon the fifteen year course of conduct of the parties in amicably and non-adversarially successfully negotiating the ten (10) prior amendments to the Syndication Agreement, began performance of BVTV's obligations under Amendment 11.

16. Amendment 11 to the Syndication Agreement provides for the production by
    BVTV and financing by Sears of the television series for the 2005-2006 and
    2006-2007 viewing seasons. At no time during the period of negotiations of
    Amendment 11 did Sears give any indication to BVTV that it would not enter
    into Amendment 11 with BVTV.

17. On or about November 17, 2004, when negotiations for Amendment 11 of the
    Syndication Agreement were nearing conclusion, Sears announced a transaction
    whereby, subject to, among other things, shareholder approval by the
    shareholders of Kmart and Sears, respectively, Kmart would acquire Sears and
    combine the two companies into a major new retail company.

18. In anticipation of that transaction, on November 23, 2004, Kmart formed SHLD
    in the State of Delaware.

19. Pursuant to the course of conduct established by Sears and BVTV over the fifteen
    years of their relationship, in December 2004, BVTV began preproduction
    activities for the 2005–2006 viewing season of the television series and submitted
    invoices to Sears for the initial payment of $750,000 that would be due under
    Amendment 11 on January 1, 2005 as it had done religiously over the prior years.

20. On January 18, 2005, Sears and BVTV concluded their negotiations and entered
    into Amendment 11 to the Syndication Agreement, as amended. Since 1989,
    BVTV has performed and continues to perform its obligations to Sears pursuant
    to the Syndication Agreement, as amended.

21. Pursuant to the Syndication Agreement, as amended, for the 2003-2004 viewing
    season, Sears is obligated, among other things, to pay BVTV certain incentive

6

bonus payments of up to a maximum of $1,250,000. Sears has not fully accounted to BVTV for or paid to BVTV the entirety of the incentive bonus payments due for the 2003-2004 viewing season. Upon information and belief, the balance of the incentive bonus payment due to BVTV for the 2003-2004 viewing season is approximately $450,000.

22. Pursuant to the Syndication Agreement, as most recently amended and in effect, for the 2005-2006 viewing season, Sears is obligated to pay to BVTV the guaranteed sums of $750,000 by January 1, 2005, $494,500 by March 1, 2005, $275,000 by August 1, 2005, plus, by August 1, 2005, a $200,000 advance against incentive bonus payments, with the balance of said incentive bonus payments to be estimated and paid by October 1, 2005. Similarly, for the 2006-2007 viewing season, Sears is obligated, among other things, to pay BVTV the guaranteed sums of $750,000 by January 1, 2006, $494,500 by March 1, 2006 , $275,000 by August 1, 2006, plus, by August 1, 2006, a $200,000 advance against incentive bonus payments, with the balance of said incentive bonus payments to be estimated and paid by October 1, 2006.

23. In February 2005, although the transaction with Kmart Holding had not been consummated or approved by shareholders of Sears and Kmart, and although Sears and BVTV had just recently entered into Amendment 11 to the Syndication Agreement, Kmart and SHLD caused Sears to advise BVTV that management of Kmart and SHLD wanted to change the Syndication Agreement, as amended and then in effect.

24. Although Sears and BVTV had just recently entered into Amendment 11 to the Syndication Agreement, because of the long and mutually successful relationship BVTV enjoyed with Sears, BVTV engaged in discussions with Sears for a possible further amendment to the Syndication Agreement, as amended and then in effect.

25. In the course of those discussions, Kmart and SHLD caused Sears to advise Vila that management of Kmart and SHLD also wanted to change the Spokesperson Agreement, as amended and then in effect. The most recent amendment to the Spokesperson Agreement (Amendment X) had been entered into in December 2000 and extended the term of the Spokesperson Agreement through December 31, 2009.

26. Because of the long and mutually successful relationship Vila enjoyed with Sears, Vila engaged in discussions with Sears for a possible further amendment to the Spokesperson Agreement, as amended and then in effect.

27. When those discussions did not progress as SHLD and Kmart desired, SHLD and Kmart caused Sears to claim that Sears had not agreed with BVTV for the production of the television series *Bob Vila's Home Again* for the 2005-2006 viewing season or any other future viewing season.

28. SHLD and Kmart caused Sears to breach its Syndication Agreement, as amended, with BVTV and to refuse to pay BVTV (i) the balance of the incentive bonus payments for the 2003-2004 viewing season, believed to be $450,000 (ii) the payments due BVTV pursuant to the Syndication Agreement, as amended, by January 1, 2005, March 1, 2005 and August 1, 2005 in the total amount of

$1,719,500 and (iii) by October 1, 2005, an amount to be determined, as incentive bonus payments for the 2004-2005 viewing season.

29.   SHLD also caused Sears totally to repudiate the Syndication Agreement, as amended, and stated that Sears will not make any payments due BVTV or to become due to BVTV in the future under the Syndication Agreement, as amended. For the 2006-2007 viewing season, Sears is obligated, among other things, to pay BVTV the guaranteed sums of $750,000 by January 1, 2006, $494,500 by March 1, 2006 , $275,000 by August 1, 2006, plus, by August 1, 2006, a $200,000 advance against incentive bonus payments, with the balance of said incentive bonus payments to be estimated and paid by October 1, 2006.

30.  Further, SHLD and Kmart also caused Sears to take the position that Sears' repudiation of the Syndication Agreement, as amended, constituted a "cancellation" of the television series, entitling Sears to terminate the Spokesperson Agreement with Vila.

31.  Pursuant to the Spokesperson Agreement, as amended, Sears is obligated to pay to Vila each year through December 31, 2009, one half of the guaranteed compensation for that year on January 1 and the other half on July 1.

32.  The guaranteed compensation owed to Vila for the year 2005 is $1,897,500.  The guaranteed compensation to be paid to Vila for the years 2006-2009 is $9,686,926.

33.  Sears made the payment due Vila on January 1, 2005 in the amount of $948,750, which was 50% of the monies contractually due for that year.

34.  SHLD and Kmart, without color of justification or any explanation, caused Sears to refuse to pay to Vila the balance of the guaranteed compensation due July 1, 2005 in the amount of $948,750. Sears had neither received a notification of cancellation of the television series by the syndicator, nor had it sent Vila a notice of termination of the Spokesperson Agreement. In fact, the television series has not been canceled and is currently airing nationwide.

35.  On July 18, 2005, plaintiffs filed this action in the Dukes County Superior Court, Edgartown, Massachusetts.

36.  Defendants requested that plaintiffs grant defendants an extension of time to August 22, 2005 for defendants to file a responsive pleading to plaintiffs' Complaint. Plaintiffs granted the requested extension of time.

37.  During the period from August 1, 2005 through and including August 17, 2005, plaintiffs and defendants engaged in discussions regarding the facts of the case and attempts to resolve their issues. On several occasions during those discussions, plaintiffs were informed in response to their direct questions that defendants were not contesting plaintiffs' rights to be paid the $948,750 due Vila on July 1, 2005 (Complaint, Count I) or the balance of the incentive bonus payments overdue BVTV for the 2003-2004 viewing season (Complaint, Count VI). Also in response to direct questions, defendants did not state any factual or legal basis for not making those payments.

38.  Efforts to reach a resolution were unsuccessful and on August 17, 2005, defendants removed this action to this Court.

10

39.  On August 17, 2005, counsel for plaintiffs conferred, pursuant to Local Rule 7.1, with counsel for defendants concerning plaintiffs' intent to move for partial summary judgment with respect to Counts I and VI of plaintiffs' Complaint, since there was no genuine material issue of fact in dispute as to those Counts of the Complaint.

40.  On August 19, 2005, by fax letter of that date addressed to Vila, defendant SHLD stated, among other things, and for the very first time and without any prior notice, that  defendant Sears "has learned that you have engaged in substantial misconduct under the [Spokesperson] agreement including your violation of Sears' trademark in the Home Again name"; that Sears was, therefore, under no obligation to make the July 1, 2005 payment under the Spokesperson Agreement; and that Sears was terminating the Spokesperson Agreement effective August 19, 2005. In that letter, SHLD, further stated that, since Vila had alleged in the Complaint that Sears "knowingly and intentionally deceived" Vila, Vila was "involved in [a] situation" that "reflects unfavorably upon [Sears'] reputation" and that Sears was terminating the Spokesperson Agreement on that ground as well. SHLD further stated that Sears "hereby cancels the Bob Vila Home Again television show".

41.  On August 22, 2005, defendants filed their Answer to the Complaint and defendant Sears filed a counterclaim alleging trademark infringement and overpayment of the incentive bonus for the 2003-2004 viewing season.

42.  On August 23, 2005, counsel for defendants faxed a letter to counsel for plaintiffs claiming that Sears had a trademark in the words HOME AGAIN, that

that trademark is the exclusive property of Sears, that defendants were infringing on the alleged trademark and demanding that defendants cease and desist from the alleged infringement.

43. On August 24, 2005, by letter of the same date, counsel for plaintiffs advised counsel for defendants that the words HOME AGAIN were not a trademark, that the alleged trademark was not the exclusive property of Sears, that Sears' position had no merit, but that it was a non-issue for plaintiffs. Defendants were advised that BVTV had intended to use the phrase "Home Again" in its production of the television series for the 2005-2006 season, anticipating that defendant Sears and plaintiff BVTV would settle their issues regarding Sears' obligation to finance that production. Defendants were further advised that, since such a resolution now appeared unlikely, "BVTV's production, advertising and airing of its home improvement television series for the 2005-2006 [viewing] season and thereafter will not bear the phrase 'Home Again'".

44. On August 25, 2005, at the inception of a meeting among counsel and representatives of both plaintiffs and defendants, defendants were advised by plaintiffs that, although defendants' position regarding the alleged trademark had no merit, plaintiffs would not use the phrase "Home Again" in the name of the television series for the 2005-2006 viewing season or thereafter. Defendants were further advised that BVTV was taking immediate action to remove the phrase "Home Again" from the title of the television series and from any advertising or promotions for the series for the 2005-2006 viewing season. Plaintiffs requested that, if defendants became aware of any continuing use of the phrase "Home

Again" in advertising or promotions, defendants notify plaintiffs or their counsel of the same and plaintiffs would attempt to have such phrase removed from such advertising or promotion.

## COUNT I
### (Breach of Contract)

45.  Vila repeats the allegations contained in paragraphs 1 through 44, as though fully set forth herein.

46.  By its failure and refusal to pay Vila the guaranteed compensation in the amount of $948,750 due Vila on July 1, 2005, Sears has breached its obligations to Vila pursuant to the Spokesperson Agreement.

47.  As a direct and proximate result of Sears' breach of the Spokesperson Agreement, Vila has been damaged in an amount to be determined at trial, but, in no event less than $948,750, plus interest, costs and his attorneys' fees.

## COUNT II
### (Repudiation of Contract)

48.  Vila repeats the allegations contained in paragraphs 1 through 47, as though fully set forth herein.

49.  Sears has repudiated its future obligations to Vila pursuant to the Spokesperson Agreement.

50.  As a direct and proximate result of Sears' repudiation of the Spokesperson Agreement, as amended to run through December 31, 2009, Vila has been

13

damaged in an amount to be determined at trial, but, in no event less than
$948,750 and will be damaged in a further amount to be determined at trial, but,
in no event less than $9,686,926, plus interest, costs and his attorneys' fees.

### COUNT III
(Breach of Implied Covenant of Good Faith and Fair Dealing)

51.  Vila repeats the allegations contained in paragraphs 1 through 50, as though fully
set forth herein.

52.  By its actions and conduct, Sears has breached the implied covenant of good
faith and fair dealing inherent in the Spokesperson Agreement, as amended.

53.  As a direct and proximate result of Sears' breach of the implied covenant of good
faith and fair dealing inherent in the Spokesperson Agreement, as amended, Vila
has been damaged in an amount to be determined at trial, but, in no event less
than $948,750, and will be damaged in a further amount to be determined at trial,
but, in no event less than $9,686,926, plus interest, costs and his attorneys' fees.

### COUNT IV
(Equitable Estoppel)

54.  Vila repeats the allegations contained in paragraphs 1 through 53, as though fully
set forth herein.

55.  In the negotiation of Amendment IX to the Spokesperson Agreement, Sears
represented that paragraph 7 of the proposed Amendment IX was there in the

14

event that the television series was canceled by the syndicator of the television
series, an independent third party.

56.    Sears intended that Vila rely upon that representation and Vila reasonably  did
rely upon that representation in entering into Amendment IX to the Spokesperson
Agreement, as amended.

57.    SHLD have now caused Sears to take the position and Sears has taken the
position that Sears, itself, rather than the syndicator, is entitled to cancel the
television series and, thereby, is entitled to terminate the Spokesperson
Agreement.

58.    By letter dated August 19, 2005, SHLD asserted that Sears cancelled the
television series, effective that date.

59.    In fact, the television series has not been canceled and is currently airing
nationwide.

60.    As the result of the foregoing, Vila has been damaged in an amount to be
determined at trial, but, in no event less than $948,750, and will be damaged in a
further amount to be determined at trial, but, in no event less than $9,686,926,
plus interest, costs and his attorneys' fees.

61.    Defendants' conduct is inequitable and defendants should be estopped from
asserting that Sears, itself, has the right to cancel the television series in order to
escape Sears' substantial obligations to Vila through December 31, 2009 under
the Spokesperson Agreement, as amended.

## COUNT V
### (Tortious Intereference)

62. Vila repeats the allegations contained in paragraphs 1 through 61, as though fully set forth herein.

63. SHLD and Kmart knew of the Spokesperson Agreement, as amended, between Sears and Vila.

64. SHLD and Kmart, without any right or privilege to do so, intentionally and tortiously interfered with the Spokesperson Agreement with improper purpose or by improper means, causing Sears to breach its obligations to Vila under the Spokesperson Agreement, as amended, to breach the implied covenant of good faith and fair dealing in the Spokesperson Agreement and to repudiate its future obligations to Vila under the Spokesperson Agreement.

65. As a direct and proximate result of SHLD's and Kmart's tortious interference with the Spokesperson Agreement between Sears and Vila, Vila has been damaged in an amount to be determined at trial, but, in no event less than $948,750 and will be damaged in a further amount to be determined at trial, but, in no event less than $9,686,926, plus interest, costs and his attorneys' fees.

## COUNT VI
### (Violation of M.G.L. 93A)

66. Vila repeats the allegations contained in paragraphs 1 through 65, as though fully set forth herein.

67. Vila, Sears, SHLD and Kmart are engaged in trade or commerce in the Commonwealth of Massachusetts, within the meaning of M.G.L. c. 93A.

68. By their actions and conduct, Sears, SHLD and Kmart have knowingly and intentionally engaged in unfair and deceptive acts or practices in violation of M.G.L. c. 93A, §§2 and 11.

69. As a direct and proximate result of Sears', SHLD's and Kmart's violations of M.G.L. c. 93A, Vila has been damaged in an amount to be determined at trial, but, in no event less than $948,750, trebled, but in no event, less than doubled, plus interest, costs and his attorneys' fees. Further, Vila will be damaged in a further amount to be determined at trial, but, in no event less than $9,686,926, trebled, but in no event, less than doubled, plus interest, costs and his attorneys' fees.

<div align="center">COUNT VII<br>(Breach of Contract)</div>

70. BVTV repeats the allegations contained in paragraphs 1 through 69, as though fully set forth herein.

71. By its failure and refusal to pay BVTV the full incentive bonus due for the 2003-2004 and the 2004-2005 viewing seasons and the guaranteed compensation past due BVTV for the 2005-2006 viewing season, Sears has breached its obligations to BVTV pursuant to the Syndication Agreement, as amended.

72. As a direct and proximate result of Sears' breach of the Syndication Agreement, BVTV has been damaged in an amount to be determined at trial, but, in no event less than $2,169,500, plus interest, costs and its attorneys' fees.

COUNT VIII
(Repudiation of Contract)

73.  BVTV repeats the allegations contained in paragraphs 1 through 72, as though

fully set forth herein.

74.  Sears has repudiated its future obligations to BVTV pursuant to the Syndication

Agreement.

75.  As a direct and proximate result of Sears' repudiation of the Syndication

Agreement, BVTV has been damaged in an amount to be determined at trial, but,

in no event less than $2,169,500, plus interest, costs and its attorneys' fees, and

will be damaged in a further amount to be determined at trial, but, in no event less

than $1,719,500, plus interest, costs and its attorneys' fees.


COUNT IX
(Breach of the Implied Covenant of Good Faith and Fair Dealing)

76.  BVTV repeats the allegations contained in paragraphs 1 through 75, as though

fully set forth herein.

77.  By its actions and conduct, Sears has breached the implied covenant of good

faith and fair dealing inherent in the Syndication Agreement, as amended.

78.  As a direct and proximate result of Sears' breach of the implied covenant of good

faith and fair dealing inherent in the Syndication Agreement, as amended, BVTV

has been damaged in an amount to be determined at trial, but, in no event less

than $2,169,500, plus interest, costs and its attorneys' fees. and will be damaged

18

in a further amount to be determined at trial, but, in no event less than $1,719,500, plus interest, costs and its attorneys' fees.

<div align="center">

COUNT X
(Tortious Interference With Contract)

</div>

79. BVTV repeats the allegations contained in paragraphs 1 through 78, as though fully set forth herein.

80. SHLD and Kmart knew of the Syndication Agreement, as amended, between Sears and BVTV.

81. SHLD and Kmart, without any right or privilege to do so, intentionally and tortiously interfered with that contract, with improper motive or by improper means, causing Sears to breach its obligations to BVTV under the Syndication Agreement, as amended, to breach the implied covenant of good faith and fair dealing inherent in the Syndication Agreement and to repudiate its future obligations to BVTV under the Syndication Agreement.

82. As a direct and proximate result of SHLD's and Kmart's tortious interference with the Syndication Agreement between Sears and BVTV, BVTV has been damaged in an amount to be determined at trial, but, in no event less than $2,169,500, plus interest, costs and its attorneys' fees and will be damaged in a further amount to be determined at trial, but, in no event less than $1,719,500, plus interest, costs and its attorneys' fees.

<div align="center">

19

</div>

## COUNT XI
### (Violation of M.G.L. c. 93A)

83. BVTV repeats the allegations contained in paragraphs 1 through 82, as though fully set forth herein.

84. BVTV, Sears, SHLD and Kmart are engaged in trade or commerce in the Commonwealth of Massachusetts, within the meaning of M.G.L. c. 93A.

85. By their actions and conduct, Sears, SHLD and Kmart have knowingly and intentionally engaged in unfair and deceptive acts or practices in violation of M.G.L. c. 93A, §§2 and 11.

86. As a direct and proximate result of Sears', SHLD's and Kmart's violations of M.G.L. c. 93A, BVTV has been damaged in an amount to be determined at trial, but, in no event less than $2,169,500, trebled, but in no event, less than doubled, plus interest, costs and its attorneys' fees. Further, BVTV will be damaged in a further amount to be determined at trial, but, in no event less than $1,719,500, trebled, but in no event, less than doubled, plus interest, costs and its attorneys' fees.

### PRAYERS FOR RELIEF

WHEREFORE, Robert J. Vila and B.V.T.V, Inc. respectfully request that this Court enter judgment, as follows:

A. Awarding Robert J. Vila damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $948,750, as a result of Sears,

Roebuck and Co.'s breach of the Spokesperson Agreement, together with interest, costs and his attorneys' fees;

B.  Awarding Robert J. Vila damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $9,686,926, as a result of Sears, Roebuck and Co.'s repudiation of the Spokesperson Agreement, together with interest, costs and his attorneys' fees;

C.  Awarding Robert J. Vila damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $10,635,676, as a result of Sears, Roebuck and Co.'s breach of the implied covenant of good faith and fair dealing inherent in the Spokesperson Agreement, together with interest, costs and his attorneys' fees;

D.  Awarding Robert J. Vila damages against Sears Holdings Corporation and Kmart Holding Corporation in an amount to be determined at trial, but in no event less than $10,635,676, as a result of Sears Holdings Corporation's and Kmart Holding Corporation's tortious interference with the Spokesperson Agreement, together with interest, costs and his attorneys' fees;

E.  Awarding Robert J. Vila damages against Sears, Roebuck and Co., Sears Holdings Corporation and Kmart Holding Corporation in an amount to be determined at trial, but in no event less than $10,635,676, trebled, but, in no event less than doubled, as a result of Sears, Roebuck and Co.'s, Sears Holding Corporation's and Kmart Holding Corporation's unfair and deceptive conduct in violation of M.G.L. c. 93A, together with interest, costs and his attorneys' fees;

F.  Awarding B.V.T.V., Inc. damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $2,169,500, as a result of Sears, Roebuck and Co.'s breach of the Syndication Agreement, together with interest, costs and its attorneys' fees;

G.  Awarding B.V.T.V., Inc. damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $1,719,500, as a result of Sears, Roebuck and Co.'s repudiation of the Syndication Agreement, together with interest, costs and its attorneys' fees;

H.  Awarding B.V.T.V., Inc. damages against Sears, Roebuck and Co. in an amount to be determined at trial, but in no event less than $3,889,000, as a result of Sears, Roebuck and Co.'s breach of the implied covenant of good faith and fair dealing inherent in the Syndication Agreement, together with interest, costs and its attorneys' fees;

I.  Awarding B.V.T.V., Inc. damages against Sears Holdings Corporation and Kmart Holding Corporation, in an amount to be determined at trial, but in no event less than $3,889,000, as a result of Sears Holdings Corporation's and Kmart Holding Corporation's tortious interference with the Syndication Agreement, together with interest, costs and its attorneys' fees;

J.  Awarding B.V.T.V., Inc. damages against Sears, Roebuck and Co., Sears Holdings Corporation and Kmart Holding Corporation, in an amount to be determined at trial, but in no event less than $3,889,000, trebled, but, in no event, less than doubled, as a result of Sears, Roebuck and Co.'s, Sears Holdings

Corporation's and Kmart Holding Corporation's unfair and deceptive conduct in

violation of M.G.L. c. 93A, together with interest, costs and its attorneys' fees;

K.  Awarding Robert J. Vila and B.V.T.V., Inc. such other and further relief as this

Court deems just and proper.

### JURY DEMAND

Robert J. Vila and B.V.T.V., Inc. hereby demand a jury as to all claims and issues so

triable.

ROBERT J. VILA and B.V.T.V., INC.

By their attorney,

James F. O'Brien (BBO # 375765)
410 Park Avenue, Suite 1530
New York, New York 10022
212 813 9300
212 813 1907 (fax)

Dated: October 20, 2005

### CERTIFICATE OF SERVICE

I, James F. O'Brien, counsel for Plaintiffs, hereby certify that, on October 20, 2005, I
served a true copy of the foregoing Motion for Partial Summary Judgment upon Anna
Sankaran Esq., Greenberg, Traurig LLP, One International Place, Boston, MA 02110,
counsel for defendants, by overnight mail, postage prepaid.

James F. O'Brien

# EXHIBIT 5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ROBERT J. VILA and B.V.T.V., INC., <br><br> Plaintiffs, <br><br> v. <br><br> SEARS, ROEBUCK AND CO., SEARS HOLDINGS CORPORATION and KMART HOLDING CORPORATION, <br><br> Defendants. | Civil Action No. 05-11717-REK |

## JOINT STATEMENT

In accordance with Local Rule 16.1 and FED. R. CIV. P. 16(b), (c) and FED. R. CIV. P. 26(f), plaintiffs Robert J. Vila ("Vila") and B.V.T.V., Inc. ("BVTV") (collectively "Plaintiffs"), and defendants Sears, Roebuck and Co. ("Sears"), Sears Holdings Corporation ("SHC") and Kmart Holding Corporation ("KHC") (collectively "Defendants") hereby submit this joint statement.

## I.    AGENDA

The matters to be discussed at the Scheduling Conference on October 19, 2005, will include but will not be limited to discovery, use of phasing of discovery, filing of motions, consenting to trial by Magistrate Judge and the use of alternative dispute resolution procedures. In addition, the plaintiffs plan to submit a motion for leave to file an amended complaint prior to the Scheduling Conference.

### A.    PROPOSED DISCOVERY PLAN

It is stipulated and agreed by and between Plaintiffs and Defendants that the following deadlines should apply to the various stages of discovery described below. The parties do not

1

believe that the present limitation of eight (8) hour depositions is practical. Instead, the parties

propose that each party may take up to ten (10) depositions each, lasting up to fifteen (15) hours

per deposition. Unless otherwise agreed between the parties and/or permitted or ordered by the

Court, the various stages of discovery shall be completed no later than the deadlines indicated.

## PHASE I

| | |
|---|---|
| Automatic Disclosure pursuant to Local Rule 26.2 to be made by plaintiff and defendants by | October 21, 2005 |
| Requests to produce documents for inspection and copying under FED. R. CIV. P. 34 to be served by | November 8, 2005 |
| Interrogatories under FED. R. CIV. P. 33 to be served by | December 30, 2005 |
| Responses to document requests under FED. R. CIV. P. 34 to be served by | thirty days after initial request |
| Answers to interrogatories under FED. R. CIV. P. 33 to be served by | thirty days after initial request |
| Depositions of fact and/or lay witnesses to be concluded by | March 31, 2006 |
| Requests for admissions under FED. R. CIV. P. 36 to be served by | April 14, 2006 |
| Responses to requests for admissions under FED. R. CIV. P. 36 to be served by | thirty days after initial request |

## PHASE II

| | |
|---|---|
| Plaintiff's Answers to expert interrogatories, expert disclosures, and reports of plaintiff's experts to be provided to defendants by | April 14, 2006 |
| Answers to interrogatories, expert disclosures, and defendants' experts to be provided to plaintiff by | April 28, 2006 |
| Depositions of expert witnesses to be completed by | May 31, 2006 |

## DISPOSITIVE MOTIONS

| | |
|---|---|
| Dispositive motions can be filed by any party at any time up to and including | June 16, 2006 |
| Oppositions to dispositive motions to be filed | within thirty (30) days of service of the dispositive motion. |

**FINAL PRETRIAL CONFERENCE** ..........................................................By August 1, 2006

**TRIAL**.................................................................................................September 2006

### B.    TRIAL BY MAGISTRATE JUDGE

At this tile, the parties have not yet made a decision regarding whether they will consent

to submitting the case for trial by a Magistrate Judge.

### C.    ALTERNATIVE DISPUTE RESOLUTION

The parties will make diligent efforts at the appropriate time to come to an agreement on

the various alternative dispute resolution procedures set forth in Local Rule 16.4.

## II.    <u>CERTIFICATION</u>

The parties and their respective counsel will submit separate certifications stating that

they each have conferred with a view of establishing a budget for the costs of conducting the full

course (and various alternative courses) of this litigation, and to consider the resolution of this

litigation through the use of alternative dispute resolution programs, in advance of or at the

October 19, 2005 scheduling conference in this matter.

| | |
|---|---|
| **RESPECTFULLY SUBMITTED:** | **RESPECTFULLY SUBMITTED:** |
| ROBERT J. VILA and B.V.T.V., INC., | SEARS HOLDINGS CORPORATION and |
| Plaintiffs/ Defendants-in-Counterclaim, | KMART HOLDING CORPORATION, |
| By their attorneys: | Defendants, and SEARS, ROEBUCK AND |
| | CO.,  Defendant/Counterclaimant, |
| | By their attorneys: |
| | |
| /s/ James F. O'Brien | /s/ Annapoorni R. Sankaran |
| James F. O'Brien, BBO #375765 | Gary R. Greenberg, BBO #209420 |
| 410 Park Avenue, Suite 1530 | A. John Pappalardo, BBO # 338760 |
| New York, NY 10022 | Annapoorni R. Sankaran, BBO #631065 |
| (212) 813-9300 | GREENBERG TRAURIG, LLP |
| (212) 813-1907 (fax) | One International Place, 20th Floor |
| | Boston, MA 02110 |
| | (617) 310-6000 |
| | (617) 310-6001 (fax) |

# EXHIBIT 6

## Sankaran, Annapoorni R. (Shld-Bos-LT)

| | |
|---|---|
| **From:** | jfob1@aol.com |
| **Sent:** | Friday, November 04, 2005 4:30 PM |
| **To:** | Sankaran, Annapoorni R. (Assoc-Bos-LT) |
| **Attachments:** | VILASEARSFEDDOCREQ.pdf |

 Anna,
Here is our first document request.
Jim

James F. O'Brien
410 Park Avenue
Suite 1530
New York, NY 10022
212 813 9300
212 813 1907 (fax)
917 843 4579 (cell)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
05-11717 REK

| | |
|---|---|
| ROBERT J. VILA and B.V.T.V., INC. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| SEARS, ROEBUCK AND CO., | ) |
| SEARS HOLDINGS CORPORATION | ) |
| and KMART HOLDING COPORATION | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANTS

Pursuant to Fed.R.Civ.P. 26 and 34, Plaintiffs Robert J. Vila ("Vila") and

B.V.T.V., Inc. ("BVTV") hereby requests that Defendants Sears Roebuck and Co.

("Sears"), Sears Holdings Corporation ("SHLD") and Kmart Holding Corporation

("Kmart") produce for inspection and copying the documents described below at the

offices of Goulston & Storrs, P.C., 400 Atlantic Avenue, Boston, MA 02110.

## INSTRUCTIONS

1. If any documents responsive to this request have been destroyed, please describe such documents and state (1) the date of the destruction of such documents; (2) the names of the persons who destroyed such documents; and (3) the reasons why such documents were destroyed.

2. If you contend that any requested document is privileged or is otherwise not subject to discovery, please: (1) state the name of each signatory to the document and the capacity in which each signed; (2) state the date of the document; (3) state the name of

each addressor of the document and the capacity in which each was acting at the time he or she addressed the document; (4) state the name of each addressee of the document (including all persons to whom copies were sent) and the capacity in which each such addressee was addressed; (5) set forth the subject matter of the document; and (6) set forth the specific grounds or reasons asserted for withholding the document.

## **DEFINITIONS**

The following definitions shall apply to all interrogatories set forth below:

1.      The terms **"person,"**, **"communication,"** **"identify,"** **"concerning,"** and **"state the basis,"** shall have the meaning set forth in District Court Local Rule 26.5

2.      The term "**document**" shall have the meaning set forth in District Court Local Rule 26.5 and shall also include all forms of electronic mail and electronically stored data.

3.      "**Including**" shall include with in its meaning the phrase "including, but not limited to."

4.      The terms "**and**" and "**or**" shall each mean "and/or."

5.      **"You,"** and **"Your"** shall mean Sears, SHLD and Kmart and, where applicable, officers, directors, present and former employees, partners, corporate parent, subsidiaries, or affiliates of each of Sears, SHLD and Kmart..

6.      **"Plaintiffs"** shall mean Robert J. Vila and B.V.T.V., Inc. and, where applicable, their officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

7.      **"O&M"** shall mean Ogilvy & Mather and, where applicable, their officers, directors, present and former employees, partners, corporate parent, subsidiaries, or affiliates.

8.      **"King World"** shall mean King World Productions and, where applicable, its predecessor, Eyemark Entertainment, their officers, directors, present and former employees, partners, corporate parent, subsidiaries, or affiliates.

9.      The **"Spokesperson Agreement"** shall mean the September 29, 1989 Bob Vila Spokesperson Agreement between Ogilvy & Mather, as agent for Sears, Sears and Robert J. Vila  and all amendments thereto.

10.      The **"Syndication Agreement"** shall mean the September 29, 1989 Syndicated Television Agreement between Ogilvy & Mather, as agent for Sears, Sears and BVTV and all amendments thereto.

11.     **"Bonuses"** shall mean bonuses, performance bonuses and incentive bonuses to be paid to BVTV by Sears pursuant to the Syndication Agreement, as amended.

12.     The **"Alleged Trademark"** shall mean the term "Home Again".

## REQUESTS FOR PRODUCTION

1.     All documents concerning the negotiation and execution of the Syndication Agreement and all amendments thereto including all drafts thereof.

2.     All documents concerning the negotiation and execution of the Spokesperson Agreement and all amendments thereto including all drafts thereof.

3.     All documents concerning the negotiation of Amendment 11 to the Syndication Agreement including any drafts thereof.

4.     All documents concerning the alleged cancellation of the television series *Bob Vila's Home Again.*

5.     All documents concerning the alleged termination of the Spokesperson Agreement.

6.     All documents concerning your agreements with any and all syndicators of the television series *Bob Vila's Home Again.*, including, but not limited to, King World and Eyemark Entertainment.

7.     All documents by, between and among Sears' employees concerning the negotiation of Amendment 11 to the Syndication Agreement.

8.     All documents by, between and among Sears' employees concerning the proposed cancellation of the television series *Bob Vila's Home Again.*

9.     All documents by, between and among Sears' employees concerning the proposed termination of the Spokesperson Agreement

10.     All documents concerning communications by and between Sears and Kmart, including by and among the present or former employees of each, concerning the Syndication Agreement.

11.     All documents concerning communications by and between Sears and SHLD, including by and among the present or former employees of each, concerning the Syndication Agreement.

12. All documents concerning communications by and between you and O&M, including by and among the present or former employees of you or O&M, concerning the Syndication Agreement.

13. All documents concerning communications by and between you and King World, including by and among the present or former employees of you or King World, concerning the Syndication Agreement.

14. All documents concerning communications by and between Sears and Kmart, including by and among the present or former employees of each, concerning the Spokesperson Agreement.

15. All documents concerning communications by and between Sears and SHLD, including by and among the present or former employees of each, concerning the Spokesperson Agreement.

16. All documents concerning communications by and between you and O&M, including by and among the present or former employees of you or O&M, concerning the Spokesperson Agreement.

17. All documents concerning communications by and between you and King World, including by and among the present or former employees of you or King World, concerning the Spokesperson Agreement.

18. All documents from the files of Andy Ginger, a former employee of Sears concerning the Syndication Agreement.

19. All documents from the files of Andy Ginger, a former employee of Sears concerning the Spokesperson Agreement.

20. All documents concerning the termination of Andy Ginger, a former employee of Series.

21. All documents concerning the calculation of bonuses paid to BVTV for the 1990-2003 viewing seasons.

22. All documents concerning the calculation of bonuses paid or to be paid to BVTV for the 2003-2004 viewing season.

23. All documents concerning the calculation of bonuses paid or to be paid to BVTV for the 2004-2005 viewing season.

24. All documents concerning any and all alleged breaches by Vila of the Spokesperson Agreement.

25.    All documents concerning communications by you to Vila regarding alleged breaches by Vila of the Spokesperson Agreement.

26.    All documents concerning any and all alleged breaches by BVTV of the Syndication Agreement.

27.    All documents concerning communications by you to BVTV regarding alleged breaches by Vila of the Syndication Agreement.

28.    All documents concerning your alleged sole ownership of the alleged trademark.

29.    All documents concerning Defendants' alleged willful improper use of the alleged trademark.

30.    All documents concerning Defendants' receipt of an alleged Unearned Bonus Payment as alleged in paragraph 41 of your Amended Counterclaim.

31.    All documents concerning the damages you have allegedly incurred as alleged in your Amended Counterclaim.

32.    All documents concerning your efforts to mitigate or reduce your alleged damages.

33.    All documents concerning communications between you and the Plaintiffs including all notes, emails, phone records, faxes, or diary entries from January 1, 2004 to date.

34.    All documents concerning communications between you and any other person including all notes, emails, phone records, faxes, or diary entries from January 1, 2004 to date concerning the Plaintiffs or either of them .

35.    All documents concerning communications since November 1, 2004 between you and Andy Ginger concerning Plaintiffs or either of them.

36.    All documents concerning communications since January 1, 2004 between you and Ronald Feiner, Esq. concerning Plaintiffs or either of them.

37.    All documents concerning communications since January 1, 2004 between you and Mark Rode concerning Plaintiffs or either of them.

38.    All documents concerning communications since January 1, 2004 between you and Drew Farkas, Esq. concerning Plaintiffs or either of them.

39.    All documents concerning communications since January 1, 2004 between you and Fred Ciba concerning Plaintiffs or either of them.

40.    All documents concerning communications since January 1, 2004 between you and Richard Anderson concerning Plaintiffs or either of them.

41.    All documents concerning communications since January 1, 2004 between you and Luis Padilla concerning Plaintiffs or either of them.

42.    All documents concerning communications since January 1, 2004 between you and Michael Kier concerning Plaintiffs or either of them.

43.    All documents concerning communications since November 1, 2004 between you and Robert Rathke concerning Plaintiffs or either of them.

44.    All documents concerning communications since November 1, 2004 between you and William Crowley concerning Plaintiffs or either of them.

45.    All documents concerning communications since November 1, 2004 between you and Ole Riise concerning Plaintiffs or either of them.

46.    All documents concerning communications since November 1, 2004 between you and O&M concerning Plaintiffs or either of them.

47.    All documents concerning communications since November 1, 2004 between you and William Patterson concerning Plaintiffs or either of them.

48.    All documents concerning communications since November 1, 2004 between you and O&M concerning Plaintiffs or either of them.

49.    All documents concerning communications between you and Glori Katz concerning Plaintiffs or either of them.

50.    All documents concerning communications between you and Judy Davis concerning Plaintiffs or either of them.

51.    All documents concerning communications since November 1, 2004 between you and King World concerning Plaintiffs or either of them.

52.    All documents concerning communications since November 1, 2004 between you and Aylwin B. Lewis concerning Plaintiffs or either of them.

53.    All documents concerning communications since November 1, 2004 between you and Alan Lacy concerning Plaintiffs or either of them.

54.    All documents concerning communications since November 1, 2004 between you and Edward Lampert concerning Plaintiffs or either of them.

6

ROBERT J. VILA and B.V.T.V., INC.

By their attorney,

James F. O'Brien (BBO # 375765)
410 Park Avenue, Suite 1530
New York, New York 10022
212 813 9300
212 813 1907 (fax)

Dated: November 4, 2005

## CERTIFICATE OF SERVICE

I, James F. O'Brien, counsel for plaintiffs, hereby certify that on November 4, 2005 I served a true copy of the foregoing Plaintiffs' First Set of Requests for Production of Documents upon Anna Sankaran, Esq., Greenberg, Traurig LLP, One International Place, Boston, MA 02110 counsel for defendants by electronic mail and overnight mail, postage prepaid.

James F. O'Brien

# James F. O'Brien
Counsellor and Attorney at Law

**NEW YORK**

т. 212.813.9300 / ғ. 212.813.1907

410 Park Avenue, Suite 1530

New York, NY 10022, U.S.A.

**BOSTON**

т. 617.482.8811

10 Liberty Square, Suite 600

Boston, MA 02109, U.S.A.

January 26, 2006

Anna Sankaran, Esq.
Greenberg & Traurig LLP
One International Place
Boston, MA 02110

Re: <u>Robert J. Vila, etal. v. Sears, Roebuck and Co., etal</u>
     Civil Action No. 05-11717REK

Dear Anna:

Enclosed please find Plaintiffs' First Set of Interrogatories.

Very truly yours,

James F. O'Brien

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
05-11717 REK

|  |  |
|---|---|
| ROBERT J. VILA and B.V.T.V., INC. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| SEARS, ROEBUCK AND CO., | ) |
| SEARS HOLDINGS CORPORATION | ) |
| and KMART HOLDING COPORATION | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS

Pursuant to Fed.R.Civ.P. 26 and 33, Plaintiffs Robert J. Vila ("Vila") and

B.V.T.V., Inc. ("BVTV") hereby propound the following interrogatories to be answered

under oath by Defendants Sears, Roebuck and Co., Sears Holdings Corporation and

Kmart Holding Corporation.

## DEFINITIONS

The following definitions shall apply to all interrogatories set forth below:

1.    The terms **"person,", "communication," "identify," "concerning,"** and
**"state the basis,"** shall have the meaning set forth in District Court Local Rule 26.5

2.    The term **"document"** shall have the meaning set forth in District Court
Local Rule 26.5 and shall also include all forms of electronic mail and electronically
stored data.

3.      "**Including**" shall include within its meaning the phrase "including, but not limited to."

4.      The terms "**and**" and "**or**" shall each mean "and/or."

5.      "**You**," and "**Your**" shall mean Sears, SHLD and Kmart and, where applicable, officers, directors, present and former employees, partners, corporate parent, subsidiaries, or affiliates of each of Sears, SHLD and Kmart..

6.      "**Plaintiffs**" shall mean Robert J. Vila and B.V.T.V., Inc. and, where applicable, their officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

7.      The "**Spokesperson Agreement**" shall mean the September 29, 1989 Bob Vila Spokesperson Agreement between Ogilvy & Mather, as agent for Sears, Sears and Robert J. Vila  and all amendments thereto.

8.      The "**Syndication Agreement**" shall mean the September 29, 1989 Syndicated Television Agreement between Ogilvy & Mather, as agent for Sears, Sears and BVTV and all amendments thereto.

9.      "**Bonuses**" shall mean bonuses, performance bonuses and incentive bonuses to be paid to BVTV by Sears pursuant to the Syndication Agreement, as amended.

10.      The "**Alleged Trademark**" shall mean the term "Home Again".


## INTERROGATORIES


## INTERROGATORY NO. 1

Please describe in detail any and all communications between November 6, 2004 and March 24, 2005 from any officers, agents, employees, attorneys and/or contractors of Sears to and/or including  any officers, agents, employees, attorneys and/or contractors of Kmart and/or SHLD,  regarding Robert J. Vila, BVTV, the Syndication Agreement or the Spokesperson Agreement, identifying as to each:

    a. the date(s) of the communications;
    b. the identity of the individuals present during or copied on
     the communication (s);

        c. the method of communication;

        d. the substance of the communication.

## INTERROGATORY NO. 2

Please describe in detail any and all communications between November 6, 2004 and March 24, 2005 from any officers, agents, employees, attorneys and/or contractors of Kmart and/or SHLD to and/or including any officers, agents, employees, attorneys and/or contractors of Sears regarding Robert J. Vila, BVTV, the Syndication Agreement or the Spokesperson Agreement, identifying as to each:

        a. the date(s) of the communications;

        b. the identity of the individuals present during or copied on the communication (s);

        c. the method of communication;

        d. the substance of the communication.

## INTERROGATORY NO. 3

Please describe in detail any and all communications since November 6, 2004 among your officers, agents, employees, attorneys and/or contractors regarding Robert J. Vila, BVTV, the Syndication Agreement or the Spokesperson Agreement, identifying as to each:

        a. the date(s) of the communications;

        b. the identity of the individuals present during or copied on the communication (s);

        c. the method of communication;

        d. the substance of the communication.

## INTERROGATORY NO. 4

Please describe in detail any and all communications since November 6, 2004 among your officers, agents, employees, attorneys and/or contractors regarding the alleged cancellation of the television series *Bob Vila's Home Again*, identifying as to each:

        a. the date(s) of the communications;

        b. the identity of the individuals present during or copied on

the communication (s);
c. the method of communication;
d. the substance of the communication.

## INTERROGATORY NO. 5

Please describe in detail any and all communications since November 6, 2004 among your officers, agents, employees, attorneys and/or contractors regarding the alleged termination of the Spokesperson Agreement, identifying as to each:

a. the date(s) of the communications;
b. the identity of the individuals present during or copied on the communication (s);
c. the method of communication;
d. the substance of the communication.

## INTERROGATORY NO. 6

Please describe in detail any and all communications since November 6, 2004 among your officers, agents, employees, attorneys and/or contractors regarding the calculation of bonuses paid or to be paid to BVTV for the 2003-2004 viewing season, identifying as to each:

a. the date(s) of the communications;
b. the identity of the individuals present during or copied on the communication (s);
c. the method of communication;
d. the substance of the communication.

## INTERROGATORY NO. 7

Please describe in detail any and all communications since November 6, 2004 among your officers, agents, employees, attorneys and/or contractors regarding the calculation of bonuses paid or to be paid to BVTV for the 2004-2005 viewing season, identifying as to each:

a. the date(s) of the communications;
b. the identity of the individuals present during or copied on the communication (s);
c. the method of communication;
d. the substance of the communication.

## INTERROGATORY NO. 8

Please describe in detail any and all communications since November 6, 2004 among your officers, agents, employees, attorneys and/or contractors regarding any and all alleged breaches by Vila of the Spokesperson Agreement, identifying as to each:

a. the date(s) of the communications;
b. the identity of the individuals present during or copied on the communication (s);
c. the method of communication;
d. the substance of the communication.

## INTERROGATORY NO. 9

Please describe in detail any and all communications since November 6, 2004 among your officers, agents, employees, attorneys and/or contractors regarding any and all alleged breaches by BVTV of the Syndication Agreement, identifying as to each:

a. the date(s) of the communications;
b. the identity of the individuals present during or copied on the communication (s);
c. the method of communication;
d. the substance of the communication.

## INTERROGATORY NO. 10

Please identify each of your officers, agents, employees, contractors and attorneys having any knowledge of any alleged breaches by Vila of the Spokesperson Agreement, including as to each,

a. the person's name, address and telephone number; and
b. the substance of that person's knowledge.

**INTERROGATORY NO. 11**

Please identify each of your officers, agents, employees, contractors and attorneys having any knowledge of any alleged breaches by BVTV of the Syndication Agreement, including as to each,

     a. the person's name, address and telephone number; and
     b. the substance of that person's knowledge.

**INTERROGATORY NO. 12**

Please identify each person or entity of whom you are aware having any knowledge of Defendants' alleged willful improper use of the alleged trademark, including as to each,

     a. the person's name, address and telephone number; and
     b. the substance of that person's knowledge.

**INTERROGATORY NO. 13**

Please state each and every fact upon which you rely in support of your Counterclaims.

**INTERROGATORY NO. 14**

Please state each and every fact upon which you rely in support of your Affirmative Defense Three, that Defendants' actions were privileged.

ROBERT J. VILA and B.V.T.V., INC.

By their Attorney,

James F. O'Brien (BBO # 375765)

410 Park Avenue, Suite 1530
New York, New York 10022
212 813 9300
Dated: January 27, 2006          212 813 1907 (fax)


CERTIFICATE OF SERVICE

I, James F. O'Brien, counsel for plaintiffs, hereby certify that on January 27, 2006 I served a true copy of the foregoing Interrogatories upon Anna Sankaran, Esq., Greenberg, Traurig LLP, One International Place, Boston, MA 02110 counsel for defendants by email, fax and overnight mail, postage prepaid.

_____
James F. O'Brien

# EXHIBIT 7

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ROBERT J. VILA and B.V.T.V., INC.)
                                  )
            Plaintiffs;           )
                                  )
        -vs-                      )     No. 05-11717-REK
                                  )
SEARS, ROEBUCK AND CO.,           )
SEARS HOLDINGS CORPORATION        )
and KMART HOLDING CORPORATION,    )
                                  )
            Defendants.           )



        The deposition of MARK P. RODE, taken in

the above-entitled cause, before Christine Golden, a

Notary Public and Certified Shorthand Reporter in and

for the County of DuPage, State of Illinois, taken at

77 West Wacker Drive, 30th Floor, Chicago, Illinois on

the 24th day of January, 2006, commencing at 10:00

o'clock a.m.

Reported by:  Christine Golden, CSR
License No.:  84-2126

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT J. VILA and<br>B.V.T.V., INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Civil Action No. |
| SEARS, ROEBUCK AND CO.,<br>SEARS HOLDINGS CORPORATION<br>and KMART HOLDING<br>CORPORATION, | ) | 05-11717-REK |
| | ) | |
| Defendants. | ) | |

The deposition of ANDY GINGER, called
by the Plaintiffs for examination, taken pursuant
to the Federal Rules of Civil Procedure of the
United States District Courts pertaining to the
taking of depositions, taken before ROBIN M.
CHIMNIAK, a Notary Public within and for the
County of DuPage, State of Illinois, and a
Certified Shorthand Reporter of said State, taken
at 77 West Wacker Drive, Suite 3000, Chicago,
Illinois, on the 30th day of January, 2006, at
the hour of 11:05 a.m.

BRIDGES
COURT REPORTING

*DOWNTOWN*
77 W. WASHINGTON, STE. 1917
CHICAGO, IL 60602
312/895-4974

*SUBURBS*
1407 E. ELM STREET
WHEATON, IL 60187
630/690-6911

BridgesReporting@aol.com
*FAX* 312/528-9025

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ROBERT J. VILA and          )
B.V.T.V., INC.,             )
                            )
          Plaintiffs,       )
                            )
     vs.                    )
                            ) Civil Action No.
SEARS, ROEBUCK AND CO.,     )
SEARS HOLDINGS CORPORATION  ) 05-11717-REK
and KMART HOLDING           )
CORPORATION,                )
                            )
          Defendants.       )

          The continued deposition of ANDY

GINGER, called by the Plaintiffs for examination,

taken pursuant to the Federal Rules of Civil

Procedure of the United States District Courts

pertaining to the taking of depositions, taken

before ROBIN M. CHIMNIAK, a Notary Public within

and for the County of DuPage, State of Illinois,

and a Certified Shorthand Reporter of said State,

taken at 77 West Wacker Drive, Suite 3000,

Chicago, Illinois, on the 31st day of January,

2006, at the hour of 10:15 a.m.

# BRIDGES
## COURT REPORTING

*DOWNTOWN*
77 W. WASHINGTON, STE. 1917
CHICAGO, IL 60602
312/895-4974

*SUBURBS*
1407 E. ELM STREET
WHEATON, IL 60187
630/690-6911

BRIDGESREPORTING@AOL.COM
*FAX* 312/528-9025

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

COPY

ROBERT J. VILA and B.V.T.V., INC. )
                                   )
          Plaintiffs;              )
                                   )
     -vs-                          )   No. 05-11717-REK
                                   )
SEARS, ROEBUCK AND CO.,            )
SEARS HOLDINGS CORPORATION         )
and KMART HOLDING CORPORATION,     )
                                   )
          Defendants.              )


        The deposition of FRED CIBA, taken in the

above-entitled cause, before Christine Golden, a

Notary Public and Certified Shorthand Reporter in and

for the County of DuPage, State of Illinois, taken at

77 West Wacker Drive, 30th Floor, Chicago, Illinois,

on the 1st day of February, 2006, commencing at 10:00

o'clock a.m.


Reported by:  Christine Golden, CSR
License No.:  84-2126


BRIDGES
COURT REPORTING

DOWNTOWN
77 W. WASHINGTON, STE. 1917
CHICAGO, IL 60602
312/895-4974

SUBURBS
1407 E. ELM STREET
WHEATON, IL 60187
630/690-6911

BridgesReporting@aol.com
FAX 312/528-9025

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS



ROBERT J. VILA and B.V.T.V., INC.)
                               )
        Plaintiffs;      )
                               )
      -vs-              )  No. 05-11717-REK
                               )
SEARS, ROEBUCK AND CO.,     )
SEARS HOLDINGS CORPORATION   )
and KMART HOLDING CORPORATION,  )
                               )
        Defendants.      )

        The deposition of RICHARD L. ANDERSON, taken
in the above-entitled cause, before Christine Golden,
a Notary Public and Certified Shorthand Reporter in
and for the County of DuPage, State of Illinois, taken
at 77 West Wacker Drive, 30th Floor, Chicago, Illinois,
on the 3rd day of February, 2006, commencing at 10:00
o'clock a.m.

Reported by:  Christine Golden, CSR
License No.:  84-2126

BRIDGES COURT REPORTING

DOWNTOWN
77 W. WASHINGTON, STE. 1917
CHICAGO, IL 60602
312/895-4974

SUBURBS
1407 E. ELM STREET
WHEATON, IL 60187
630/690-6911

BridgesReporting@aol.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ROBERT J. VILA and            )
B.V.T.V., INC.,               )
                              )
        Plaintiffs,           )
                              )
    vs.                       )
                              )  Civil Action No.
SEARS, ROEBUCK AND CO.,       )     05-11717-REK
SEARS HOLDINGS CORPORATION,   )
and KMART HOLDING             )
CORPORATION,                  )
                              )
        Defendants.           )

COPY

        The deposition of RICHARD ANDERSON,

called by the Plaintiffs for examination, taken

pursuant to the Federal Rules of Civil Procedure

of the United States District Courts pertaining

to the taking of depositions, taken before ROBIN

M. CHIMNIAK, a Notary Public within and for the

County of DuPage, State of Illinois, and a

Certified Shorthand Reporter of said State, taken

at 77 West Wacker Drive, Suite 3000, Chicago,

Illinois, on the 5th day of July, 2006, at the

hour of 2:56 p.m.

BRIDGES
COURT REPORTING

DOWNTOWN
77. W. WASHINGTON, SUITE 1917
CHICAGO, ILLINOIS 60602
312/895-4974

SUBURBS
211 E. ILLINOIS STREET, SUITE L3
WHEATON, ILLINOIS 60187
630/690-6911

WWW.BRIDGESCOURTREPORTING.COM • FAX 312/528-9025

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ROBERT J. VILA and                    )
B.V.T.V., INC.,                       )
                                      )
            Plaintiffs,               )                    **COPY**
                                      )
      vs.                             )
                                      ) Civil Action No.
SEARS, ROEBUCK AND CO.,               )     05-11717-REK
SEARS HOLDINGS CORPORATION,           )
and KMART HOLDING                     )
CORPORATION,                          )
                                      )
            Defendants.               )

       The deposition of LUIS PADILLA, called

by the Plaintiffs for examination, taken pursuant

to the Federal Rules of Civil Procedure of the

United States District Courts pertaining to the

taking of depositions, taken before ROBIN M.

CHIMNIAK, a Notary Public within and for the

County of DuPage, State of Illinois, and a

Certified Shorthand Reporter of said State, taken

at 77 West Wacker Drive, Suite 3000, Chicago,

Illinois, on the 13th day of March, 2006, at the

hour of 10:40 a.m.

# BRIDGES
## COURT REPORTING

*DOWNTOWN*
77 W. WASHINGTON, STE. 1917
CHICAGO, IL 60602
312/895-4974

*SUBURBS*
1407 E. ELM STREET
WHEATON, IL 60187
630/690-6911

BRIDGESREPORTING@AOL.COM
*FAX* 312/528-9025

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ROBERT J. VILA and )
B.V.T.V., INC., )
)
      Plaintiffs, )
)
   vs. )
) Civil Action No.
SEARS, ROEBUCK AND CO., ) 05-11717-REK
SEARS HOLDINGS CORPORATION, )
and KMART HOLDING )
CORPORATION, )
)
      Defendants. )

COPY

     The deposition of MARY TORTORICE,

called by the Plaintiffs for examination, taken

pursuant to the Federal Rules of Civil Procedure

of the United States District Courts pertaining

to the taking of depositions, taken before ROBIN

M. CHIMNIAK, a Notary Public within and for the

County of DuPage, State of Illinois, and a

Certified Shorthand Reporter of said State, taken

at 77 West Wacker Drive, Suite 3000, Chicago,

Illinois, on the 5th day of July, 2006, at the

hour of 11:06 a.m.

# BRIDGES
### COURT REPORTING

DOWNTOWN
77. W. WASHINGTON, SUITE 1917
CHICAGO, ILLINOIS 60602
312/895-4974

SUBURBS
211 E. ILLINOIS STREET, SUITE L3
WHEATON, ILLINOIS 60187
630/690-6911

WWW.BRIDGESCOURTREPORTING.COM • FAX 312/528-9025

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


ROBERT J. VILA and B.V.T.V., INC.          )

                                           )

              Plaintiff,                   )

                                           )

       vs.                                 ) NO. 05-11717-REK

                                           )

SEARS, ROEBUCK AND COMPANY,                )

SEARS HOLDINGS CORPORATION and             )

KMART HOLDING COPORATION,                  )

                                           )

              Defendant.                   )


       The discovery deposition of Drew Farkas, taken

before Deborah A. Bridges, Certified Shorthand Reporter,

and Notary Public, at 77 West Wacker Drive, 30th Floor,

Chicago, Illinois, commencing at 10:00 a.m. on the 2nd day

of February, A.D., 2006.


## BRIDGES
## COURT REPORTING

*DOWNTOWN*
77 W. WASHINGTON, STE. 1917
CHICAGO, IL 60602
312/895-4974

*SUBURBS*
1407 E. ELM STREET
WHEATON, IL 60187
630/690-6911

BridgesReporting@aol.com
FAX 312/528-0025

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

------------------------------x
ROBERT J. VILA and B.V.T.V.,
INC.,

        Plaintiffs,

       vs.           No. 05-11717-REK

SEARS, ROEBUCK AND CO., SEARS
HOLDINGS CORPORATION and
KMART HOLDINGS CORPORATION,

        Defendants.
------------------------------x

DEPOSITION OF ROBERT J. VILA

New York, New York

Wednesday, March 15, 2006

Reported by:
Yaffa Kaplan
JOB NO. 182381

**ORIGINAL**

580c18f3-699a-44e6-8c7f-89c2b638c610

Page 297

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

------------------------------x
ROBERT J. VILA and B.V.T.V.,
INC.,

        Plaintiffs,

     vs.           No. 05-11717-REK

SEARS, ROEBUCK AND CO., SEARS
HOLDINGS CORPORATION and
KMART HOLDINGS CORPORATION,

        Defendants.
------------------------------x

CONTINUED DEPOSITION OF ROBERT J. VILA

New York, New York

Thursday, March 16, 2006

Reported by:
Yaffa Kaplan
JOB NO. 182382A

**ORIGINAL**

874be2bd-50d5-405d-9427-d1fa9e8ac824

1

Volume III
Pages 1 through 111
Exhibits per index

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

Civil Action No. 05-11717-REK

- - - - - - - - - - - - - - - - x

ROBERT J. VILA and B.V.T.V, INC.,
                Plaintiffs,

V.

SEARS, ROEBUCK and CO., SEARS
HOLDINGS CORPORATION and KMART
HOLDING CORPORATION,
                Defendants.

- - - - - - - - - - - - - - - - x

CONTINUED DEPOSITION OF ROBERT J. VILA
Tuesday, March 28, 2006, 12:57 a.m.
GREENBERG TRAURIG, LLP
One International Place
Boston, Massachusetts 02110

----------Reporter: MaryJo O'Connor, CSR, RPR-------
BOSTON REPORTING ASSOCIATES
REGISTERED PROFESSIONAL REPORTERS
67 Bright Road
Belmont, Massachusetts 02478
(617) 877-6640

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

------------------------------x
ROBERT J. VILA and B.V.T.V.,
INC.,

        Plaintiffs,

       vs.             No. 05-11717-REK

SEARS, ROEBUCK AND CO., SEARS
HOLDINGS CORPORATION and
KMART HOLDINGS CORPORATION,

        Defendants.
------------------------------x




DEPOSITION OF RONALD E. FEINER

New York, New York

Thursday, March 16, 2006









Reported by:
Yaffa Kaplan
JOB NO. 182382B

a21eeae1-e1db-4d93-a0e7-56c3f3841788

1

2                    UNITED STATES DISTRICT COURT

3                    DISTRICT OF MASSACHUSETTS

4    ------------------------------x
     ROBERT J. VILA and B.V.T.V.,
5    INC.,

6                    Plaintiffs,

7              vs.                    No. 05-11717-REK

8    SEARS, ROEBUCK AND CO., SEARS
     HOLDINGS CORPORATION and
9    KMART HOLDINGS CORPORATION,

10                   Defendants.
     ------------------------------x
11

12

13

14      CONTINUED DEPOSITION OF RONALD E. FEINER

15              New York, New York

16          Monday, March 20, 2006

17

18

19

20

21

22

23   Reported by:
     Yaffa Kaplan
24   JOB NO. 182383

25

1

```
 1                                    VOLUME: I

 2                                    PAGES: 1-179

 3                                    EXHIBITS: 188-214

 4

 5              UNITED STATES DISTRICT COURT

 6              DISTRICT OF MASSACHUSETTS

 7    - - - - - - - - - - - - - - - - x

 8    ROBERT J. VILA and B.V.T.V., INC.,

 9                      Plaintiffs,

10        v.                           Civil Action

11    SEARS, ROEBUCK and CO., SEARS    No. 05-11717-REK

12    HOLDINGS CORPORATION and KMART

13    HOLDING CORPORATION,

14                      Defendants.

15    - - - - - - - - - - - - - - - - x

16

17         DEPOSITION of MELISSA W. MARCHAND

18              March 27, 2006

19                10:08 a.m.

20           Greenberg Traurig, LLP

21           One International Place

22           Boston, Massachusetts

23

24       Reporter: Michael D. O'Connor, RPR
```

1

Volume I
Pages 1 through 174
Exhibits per index


UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS


Civil Action No. 05-11717-REK

- - - - - - - - - - - - - - - x

ROBERT J. VILA and B.V.T.V,   INC.,
              Plaintiffs,

V.

SEARS, ROEBUCK and CO., SEARS
HOLDINGS CORPORATION and KMART
HOLDING CORPORATION,
              Defendants.

- - - - - - - - - - - - - - - x


DEPOSITION OF SARAH BEASLEY MONZON
Tuesday, March 29, 2006, 10:00 a.m.
GREENBERG TRAURIG, LLP
One International Place
Boston, Massachusetts 02110


----------Reporter: MaryJo O'Connor, CSR, RPR-------
BOSTON REPORTING ASSOCIATES
REGISTERED PROFESSIONAL REPORTERS
67 Bright Road
Belmont, Massachusetts 02478
(617) 877-6640

# EXHIBIT 8

Page 1

1

2      UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF MASSACHUSETTS          **COPY**

3      ----------------------------------------x

4      ROBERT J. VILA and B.V.T.V., INC.,        :

5                  Plaintiffs,                    :

6             - against -                         :   Civil Action
                                                      No. 05-11717-REK
7      SEARS, ROEBUCK AND CO., SEARS HOLDINGS :
       CORPORATION and KMART HOLDING
8      CORPORATION,                               :

9                  Defendants.                    :

10     ----------------------------------------x

11                        200 Park Avenue
                          New York, New York
12

13                        March 1, 2006
                          11:00 a.m.
14

15

16          ORAL DEPOSITION of WILLIAM C. CROWLEY, a

17     nonparty witness herein, taken by the Plaintiffs,

18     pursuant to Notice, held at the above-captioned

19     time and place, before Hanna Roth, Shorthand

20     Reporter and Notary Public of the State of New

21     York.

22

23

24

25

Page 2

1

2          A P P E A R A N C E S:

3              JAMES F. O'BRIEN, ESQ.
                      Attorney for Plaintiffs
4                         410 Park Avenue
                          Suite 1530
5                         New York, New York 10022
                          (212) 813-9300
6

7

8              GREENBERG TRAURIG, LLP
                      Attorneys for Defendants
                          One International Place
9                         Boston, Massachusetts 02110
                          (617) 310-6058
10         By:            GARY GREENBERG, ESQ.
                          ANNAPOORNI R. SANKARAN, ESQ.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 145

1                          William Crowley

2          A.    I don't know if anyone knows.

3          Q.    You do know that it is claimed in your

4    Sears counterclaim that Sears has suffered damage

5    as a result of the use by the plaintiffs in this

6    case of the alleged trademark Home Again; you do

7    know that?

8          A.    You just told me.

9          Q.    Did you know that before I just told

10   you?

11         A.    I didn't recall it until you just told

12   me.

13         Q.    But you did know it before?

14         A.    I don't know.

15         Q.    Did you read the counterclaim before

16   it was filed?

17         A.    I don't know if I did.  I don't

18   recall.

19              MR. O'BRIEN:  Off the record.

20              (Discussion held off the record.)

21         Q.    Are you aware that, notwithstanding

22   the letter of August 19, 2005, Exhibit 62, Sears

23   has continued to display the likeness and name of

24   Bob Vila on the Craftsman Home site?

25              MR. GREENBERG:  Objection.

Page 146

1                           William Crowley

2            MR. O'BRIEN:  He is aware or not.

3        A.    I don't know if Sears is doing it

4    today, I don't know.

5                 (Whereupon, Exhibit No. 154,

6            Craftsman.com Web page, marked for

7            identification, as of this date.)

8        Q.    Exhibit 154 is a printout of the

9    Craftsman Web site home page that I ran off

10   today.  It states:  "Craftsman.com is temporarily

11   closed for site enhancements."  Do you know who

12   caused that to happen?

13       A.    No.

14       Q.    It wasn't you, I guess?

15       A.    No.

16       Q.    Do you think it appropriate that Sears

17   continued to use Mr. Vila's image and name on its

18   Web site?

19            MR. GREENBERG:  Objection.  Don't

20            answer that question.  I am going to

21            instruct -- you're asking for his opinion.

22            He is here as a fact witness.

23       A.    I'm not going to answer on advice of

24   counsel.

25            MR. O'BRIEN:  Are you instructing him



**CRAFTSMAN**
MAKES ANYTHING POSSIBLE™

Craftsman.com is temporarily closed for site enhancements



For Craftsman products visit sears.com

**Lawn & Garden | Tools**



Craftsman is the official tool of NASCAR, NCTS & the NHRA

Sign up for Craftsman Club e-mail | Request a Craftsman Tool Catalog | Order online from o



EXHIBIT
154
3/1/06 HR

http://www.craftsman.com/                                    3/1/2006

Page 160

1

2                        C E R T I F I C A T E

3

4        STATE OF NEW YORK )

5                            :    SS:

6        COUNTY OF KINGS    )

7

8              I, HANNA ROTH, a Shorthand Reporter

9        and Notary Public within and for the State of New

10       York, do hereby certify:

11             That WILLIAM C. CROWLEY, the witness

12       whose deposition is herein before set forth, was

13       duly sworn by me, and that such deposition is a

14       true record of the testimony given by such

15       witness.

16             I further certify that I am not

17       related to any of the parties to this action by

18       blood or by marriage, and that I am in no way

19       interested in the outcome of this matter.

20             IN WITNESS WHEREOF, I have hereunto

21       set my hand this 7th day of March 2006.

22                              _Hanna Roth_

23                       _____

24                              HANNA ROTH

25

# EXHIBIT 9

1 of 1 DOCUMENT

Copyright 2006 Chicago Tribune Company
Chicago Tribune

February 12, 2006 Sunday
Chicagoland Final Edition

**SECTION:** BUSINESS ; ZONE C; Pg. 1

**LENGTH:** 1351 words

**HEADLINE:** Sears in demolition mode;
Chairman Edward Lampert continues to remodel his retailing behemoth, scaling back on high-end, star-studded wallpaper like Bob Vila and Martha Stewart, but the moves may cost him

**BYLINE:** By Susan Chandler, Tribune staff reporter

**BODY:**

Edward Lampert certainly isn't dazzled by celebrity.

The Sears chairman has taken on Martha Stewart, asking the diva of home decor to accept less money under her long-term contract with Kmart if she wants to expand her distribution to Sears' stores.

Now he is trying to do a gut-rehab on Bob Vila, the home remodeling whiz.

Sears Holdings Corp.has terminated a long-standing contract with Vila to act as a spokesman for Sears' Craftsman tool line. It also has dumped its sponsorship of his nationally syndicated home remodeling show.

Vila has sued, charging Sears wrongfully breached the contracts, and is seeking more than $14 million in damages. Sears is countersuing Vila and says he has been paid more than he was due. The suit is headed for trial in October.

It's all in a day's work for Lampert, the bottom-line oriented hedge fund operator who engineered Kmart's takeover of Sears in March. Lampert and Sears' chief financial officer, William Crowley, are poring over contracts, looking for places to save money. They are reopening contracts and pushing those who do business with Sears for better terms. In some cases, they are getting them.

In Vila's case, Lampert and Crowley believe that the original host of "This Old House," wasn't doing much for his money, says a source close to Sears. Yet as of late last week, the Craftsman.com Web site still had Vila's photo on its home page with links to "Bob Vila's tips and techniques" and "Bob Vila's project plans."

Sears' willingness to cut ties with a well-known spokesman comes at a time when other companies are eager to sign celebrity endorsers. Catherine Zeta-Jones graces TV spots for T-Mobile. Joan Cusack scampers up staircases and pops out of manhole covers in ads for U.S. Cellular Corp.

Donovan McNabb, the quarterback for the Philadelphia Eagles, represents Campbell's Chunky Soup, and Gap has cycled through a cast of celebrities, including actors Elijah Wood, Gary Sinise and Juliette Lewis; musician Carole King; and comedian Will Ferrell.

But using celebrities to promote a brand is always fraught with peril, says Christie Nordhielm, clinical associate professor of marketing at the University of Michigan's Ross School of Business.

"The problem is you end up raising the awareness of the celebrity and the brand," Nordhielm said. "It increases the celebrity's negotiating power and, therefore, their costs. What starts out as a synergistic partnership can end up as more of a zero-sum game. That's why it's always better to hire cartoons."

At this stage of the game, Vila likely has more to lose than Sears if the two part ways, she adds. "He is getting paid so much right now. His hourly rate is quite high, and from Sears' perspective, Bob Vila's awareness is probably benefiting more than theirs is. It's probably a good strategic shift to refocus on the Sears brand and the Sears product."

EXHIBIT

Sears in demolition mode; Chairman Edward Lampert continues to remodel h

There's no doubt that Vila had the "street cred" among handymen to be a valuable endorser of Sears' Craftsman lines of drills and power saws when Sears signed him up as a spokesman in 1985. For six years, he had been the folksy host of "This Old House," a nationally syndicated home renovation show on public television.

The relationship deepened four years later when Vila left the PBS show and founded his own production company to produce "Bob Vila's Home Again." Sears agreed to finance the show. In 2000, Sears and Vila formed a joint venture to turn BobVila.com into "America's leading site for home improvement solutions."

Vila says his current spokesman's contract was due to expire at the end of 2009. The contract has a "pay or play" provision that calls for Vila to be paid whether or not Sears calls on him to perform any duties, according to Vila's lawsuit. Most recently, Vila was paid $1.9 million a year for his spokesman's duties.

Drama involves TV show, too

The TV syndication also has been extended and renewed multiple times, but how many times is a matter of dispute. Vila says negotiations over an 11th amendment began in the fall of 2004 and were concluded in January 2005 for Sears to sponsor the 2005-2006 and 2006-2007 seasons. Sears says that no such agreement was reached, and it never agreed to underwrite the next two seasons. Both sides agree that Vila's company began production of a new season of shows.

Much at Sears changed in those months.

Kmart made a friendly $11 billion takeover offer in November 2004 with a plan to form a new company called Sears Holdings. Before the deal closed in March, though, Vila was approached by Kmart's top management about changing the syndication and spokesman agreements, the lawsuit says.

Talks stall, lawsuit follows

Talks went on for several months, but no new agreement was reached. Under pressure from Kmart, the suit alleges, Sears "repudiated" the syndication agreement in late spring. Vila filed a breach of contract suit in Massachusetts state court in mid-July. Sears Holdings then asked for an extension so it could resume negotiations with Vila.

Those talks went on for a month, and the suit was moved to federal court. Then on Aug. 19, Sears Holdings sent Vila a letter, saying it was canceling the spokesman agreement because Vila had engaged in "substantial misconduct," and violated Sears' trademark in the "Home Again" name. Vila's lawsuit "reflected unfavorably" on Sears' reputation, the letter said.

Sears also said it was canceling Vila's show.

A Sears spokesman said the company disagrees "with Mr. Vila's characterization of the circumstances surrounding the fact that he is no longer a Sears spokesman and that the show, "Bob Vila's Home Again," was canceled," but declined to go into detail. He also declined to comment on the use of Vila's image on a Sears' Web site.

Vila is out of the country and could not be reached for comment. His attorney, James O'Brien, declined to comment because the matter is still being litigated, except to say, "We're certainly preparing for trial."

In his suit, Vila argues that only the show's syndicator, King World Productions, can cancel the show, and it hasn't done so. In fact, the show is still airing with new sponsors. He also is disputing that "Home Again" is a trademark of Sears, but he agreed to drop those words from the show's title, which is now simply "Bob Vila."

Vila doesn't blame the old Sears, the one he had a lucrative relationship with for 20 years. He blames the guys at the top of Kmart, who "intentionally and tortiously interfered" with his contracts, according to the suit.

Vila says Sears owes him $948,750 for the second half of 2005 and another $9.7 million for the 2006–2009 period under the spokesman agreement. Under the TV deal, Vila is seeking $3.9 million in damages. He is asking the judge to treble both amounts.

In Sears' answer and counterclaim, the retailer denies that Vila began making the 2005-2006 season of his show "under any purported eleventh amendment of the syndication agreement." By going ahead and making shows under the "Home Again" banner, Vila violated Sears trademark, the retailer says.

'Home Again' rights disputed

As to a nearly million dollar payment due last July, Sears says Vila is entitled to only a pro rata amount because the

Sears in demolition mode; Chairman Edward Lampert continues to remodel h

spokesman agreement was terminated in mid-August. Even that amount should be reduced "by the damages [Sears] has suffered as a result of Vila's misconduct." Sears also alleges that Vila was overpaid by $75,000 in bonuses for the 2003–2004 season TV season.

Sears asks the court to find that it has exclusive rights to the "Home Again" trademark and to order Vila to turn over any materials bearing the logo so they can be destroyed.

The retailer also is seeking unspecified damages as well as attorney fees and costs.

Stephen Presser, a law professor at Northwestern University, says it is tough to get a read on the case unless one examines the actual contracts in dispute.

"My guess is this is a very arcane dispute among lawyers about what some of the clauses mean," he said. "You need some kind of pretext to walk away from a contract. You can always breach a contract but you're going to have to pay damages if you do."

schandler@tribune.com

**GRAPHIC:** PHOTO (color): Sears Holdings Corp. has terminated its contract with Bob Vila, but visitors to the Craftsman Web site can still find his image and plenty of tips and projects. Vila has sued and seeks more than $14 million in damages from Sears, and Sears has countersued.

PHOTO (color): OTHER CELEBRITY SPOKESPEOPLE
Actress Joan Cusack scampers up staircases and pops out of manhole covers in ads for U.S. Cellular.

PHOTO (color): Donovan McNabb, quarterback for the Philadelphia Eagles, is a spokesman for Campbell's Chunky Soup.

PHOTO (color): Actress Catherine Zeta-Jones appears in commercials for T-Mobile cellular phones and service.

GRAPHIC (color): Tribune photo illustration by Kiera E. Westphal.
PHOTOS 4 GRAPHIC

**LOAD-DATE:** February 12, 2006

# EXHIBIT 10

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT J. VILA and B.V.T.V., INC., <br><br> Plaintiffs, <br><br> v. <br><br> SEARS, ROEBUCK AND COMPANY, SEARS HOLDINGS CORPORATION and KMART HOLDING CORPORATION, <br><br> Defendants. | Civil Action No. 05-11717-REK |

### DEFENDANTS' ASSENTED-TO MOTION TO EXTEND TIME TO FILE OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs Sears, Roebuck and Co. ("Sears"), Sears Holdings Corporation ("Sears Holdings"), and Kmart Holding Corporation ("Kmart Holding") (collectively "Defendants"), with the assent of plaintiffs Robert J. Vila ("Vila") and B.V.T.V., Inc. ("BVTV") (collectively "Plaintiffs"), hereby move for an extension of time to file their opposition to Plaintiffs' Motion For Partial Summary Judgment up to and including April 11, 2006. In support of their motion, Defendants state that discovery is ongoing and the depositions of key witnesses of the Plaintiffs are necessary for the opposition are concluding this week. Accordingly, Defendants need additional time to collect facts sufficient to properly respond to the plaintiffs' summary judgment motion. The Plaintiffs assent to the requested extension.

WHEREFORE, Defendants Sears, Roebuck and Co., Sears Holdings Corporation and Kmart Holding Corporation respectfully requests that this Court extend the time by which they are to file their opposition to Plaintiffs' Motion For Partial Summary Judgment up to and including April 11, 2006.

| | |
|---|---|
| **RESPECTFULLY SUBMITTED:** | **ASSENTED TO BY:** |
| SEARS HOLDINGS CORPORATION and | ROBERT J. VILA and B.V.T.V., INC., |
| KMART HOLDING CORPORATION, | Plaintiffs/ Defendants-in-Counterclaim, |
| Defendants, and SEARS, ROEBUCK | By their attorneys: |
| AND CO., Defendant/Counterclaimant, | |
| By their attorneys: | /s/ James F. O'Brien_____ |
| | James F. O'Brien, BBO #375765 |
| /s/ Annapoorni R. Sankaran_____ | 410 Park Avenue, Suite 1530 |
| Gary R. Greenberg, BBO #209420 | New York, NY 10022 |
| Annapoorni R. Sankaran, BBO #631065 | (212) 813-9300 |
| GREENBERG TRAURIG, LLP | (212) 813-1907 (fax) |
| One International Place, 20th Floor | |
| Boston, MA 02110 | |
| (617) 310-6000 | |
| (617) 310-6001 (fax) | |

<center>CERTIFICATE OF SERVICE</center>

I Annapoorni R. Sankaran, hereby certify that on March 29, 2006 I served a copy of the foregoing by first class mail, postage-prepaid upon:

James F. O'Brien, Esq.
410 Park Avenue, Suite 1530
New York, NY 10022

/s/ Annapoorni R. Sankaran_____
Annapoorni R. Sankaran

# EXHIBIT 11

**Sankaran, Annapoorni R. (Shld-Bos-LT)**

| | |
|---|---|
| **From:** | jfob1@aol.com |
| **Sent:** | Friday, April 07, 2006 12:38 PM |
| **To:** | Sankaran, Annapoorni R. (Shld-Bos-LT); Greenberg, Gary R. (Shld-Bos-LT) |
| **Subject:** | Deposition Notice |
| **Attachments:** | VDEPNOT30b6.DOC |

Anna and Gary,
Enclosed is 30(b)(6) Notice of Deposition. Although noticed for my office, I shall be glad to take it
at your office in Chicago if that is more efficient.
Jim

James F. O'Brien
410 Park Avenue
Suite 1530
New York, NY 10022
212 813 9300
212 813 1907 (fax)
917 843 4579 (cell)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
05-11717-REK

|  |  |
|---|---|
| ROBERT J. VILA and B.V.T.V., INC. | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
|  | ) |
| v. | ) |
|  | ) |
|  | ) |
| SEARS, ROEBUCK AND CO., | ) |
| SEARS HOLDINGS CORPORATION | ) |
| and KMART HOLDING COPORATION | ) |
| Defendants. | ) |
|  | ) |

## **NOTICE OF DEPOSITION**

TO: Gary Greenberg, Esq.
Anna Sankaran, Esq.
Greenberg Traurig, LLP
One International Place
Boston, MA 02110

Please take notice that, pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Plaintiffs Robert J. Vila and B.V.T.V., Inc. shall take the deposition upon oral examination of the individual and/or individuals designated by the Defendant Sears, Roebuck and Co. pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure who consent to testify on its behalf as having the most knowledge of the topics listed in Schedule "A" attached hereto, on Wednesday, April 19, 2006, beginning at 10:00 A.M., and continuing from day to day until completed. The deposition will be taken before a Notary Public duly commissioned

for the State of New York, or before some other qualified person, at the offices of James F.

O'Brien, Esq. 410 Park Avenue, Suite 1530, (15th Floor) New York, NY 10022.

You are invited to attend and to cross examine the witness(es).

ROBERT J. VILA and B.V.T.V., INC.

By their attorney,

_____
James F. O'Brien (BBO#375765)
410 Park Avenue, Suite 1530
New York, NY 10022
212 813 9300

Dated: April 7, 2006

CERTIFICATE OF SERVICE

I, James F. O'Brien, counsel for plaintiffs, hereby certify that on April 7, 2006, I served a true copy of the foregoing Notice of Deposition upon Anna Sankaran, Esq., Greenberg, Traurig LLP, One International Place, Boston, MA 02110 counsel for defendants, by electronic mail and first class mail, postage prepaid.

_____
James F. O'Brien

<u>SCHEDULE A</u>

Pursuant to FED. R. CIV. P. 30(b)(6), Defendant Sears, Roebuck and Co.. is required to designate one or more officers, directors, or managing agents, or other person(s) who consent to testify on its behalf with regard to the matters specifically designated below to appear at the deposition referenced in the accompanying Notice of Deposition and testify, under oath, regarding those areas. Unless designated, the time period covered by this request is January 1, 1990 through the present.

1.    The term <u>"Sears"</u> shall mean defendant Sears, Roebuck, Inc., Sears Brands, LLC and any individual, agent, servant, attorney, representative or person acting or purporting to act on its or their behalf.

2.    The term <u>"Sears Holdings"</u> shall mean the defendant Sears Holdings Corporation, and any individual, agent, servant, attorney, representative or person acting or purporting to act on its behalf.

3.    The term <u>"Kmart"</u> shall mean the defendant Kmart Holding Corporation, and any individual, agent, servant, attorney, representative or person acting or purporting to act on its behalf.

4.    The term <u>"Defendants"</u> shall mean Sears, Sears Holdings, and Kmart.

5.    The term <u>"Vila"</u> shall mean the plaintiff Robert J. Vila, and any individual, agent, servant, attorney, representative or person acting or purporting to act on his behalf.

6.    The term <u>"BVTV"</u> shall mean the plaintiff B.V.T.V., Inc., and any individual, agent, servant, attorney, representative or person acting or purporting to act on its behalf.

7.    The term <u>"Plaintiffs"</u> shall mean Vila and BVTV.

8.    The terms "concerning" and "relating to" shall mean relating, reflecting, regarding, containing, comprising, concerning, discussing, constituting, evidencing, recording, pertaining or in any way referring or pursuant to.

9.    The term "communications" shall mean any oral, written, computerized, telephonic, facsimile, or other exchange or transmission of words, information, thoughts or ideas.

10.   The term <u>"Spokesperson Agreement"</u> shall mean the September 29, 1989 Bob Vila Spokesperson Agreement between Sears, Ogilvy & Mather, as agent for Sears, and Robert J Vila and all amendments thereto.

11.   The term <u>"Syndication Agreement"</u> shall mean the September 29, 1989 Bob Vila Spokesperson Agreement between Sears, Ogilvy & Mather, as agent for Sears, and Robert J. Vila and all amendments thereto.

12.   The term "HOME AGAIN" shall mean the alleged trademark HOME AGAIN as defined in paragraph 9 of Sears' First Amended Counterclaim in this action.

3

TOPICS FOR EXAMINATION

1. Sears' registration of the alleged trademark HOME AGAIN.

2. Sears' attempted registration(s) of the alleged trademark HOME AGAIN.

3. Sears' ownership of the alleged trademark HOME AGAIN.

4. Sears' exploitation of the alleged trademark HOME AGAIN.

5. The association, if any, by the public of the alleged trademark HOME AGAIN with Sears or any of Sears' products.

6. The promotion of Sears' products by use of the alleged trademark HOME AGAIN.

7. All uses by Sears of the alleged trademark HOME AGAIN from August 19, 2005 to the present.

8. The exhibition of the name and likenesses of Vila on the Craftsman website from August 19, 2005 to the present.

9. All efforts by Sears to enforce its alleged rights in the alleged trademark HOME AGAIN against any third party.

10. Any and all injury Sears has allegedly sustained as alleged in Count I of its Counterclaim.

11. Any and all damages Sears has allegedly sustained as alleged in Count II of its Counterclaim.

12. The alleged overpayment of the bonus for the 2003-2004 season as alleged in Count VII of its Counterclaim.

13. The calculation of the bonus payable to BVTV for the 2004-2005 and 2005-2006 seasons.

14. The nonpayment by Sears to Vila of the amounts due Vila under the Spokesperson Agreement on July 1, 2005 and January 1, 2006.

# EXHIBIT 12

# James F. O'Brien
Counsellor and Attorney at Law

**NEW YORK**

T. 212.813.9300 / F. 212.813.1907

410 Park Avenue, Suite 1530

New York, NY 10022, U.S.A.

**BOSTON**

T. 617.482.8811

10 Liberty Square, Suite 600

Boston, MA 02109, U.S.A.

April 21, 2006

Anna Sankaran, Esq.
Greenberg & Traurig LLP
One International Place
Boston, MA 02110

Re: Robert J. Vila, etal. v. Sears, Roebuck and Co., etal
Civil Action No. 05-11717-REK

Dear Anna:

This letter, if acceptable to you, shall memorialize the agreement we reached today regarding certain discovery issues between us.

1. Defendants shall withdraw their Emergency Motion for Protective Order that the Depositions of Edward S. Lampert and Alan Lacy not be Had.

2. Plaintiffs shall withdraw their Opposition to the above Motion.

3. Defendants may withdraw from production the document marked as Exhibit 109 to the depositions.

4. Plaintiffs will forego the Deposition of Edward S. Lampert.

5. Plaintiffs reserve the right to take the deposition of Alan Lacy and Jeanine Bousquette. If Plaintiffs do notice the deposition of Mr. Lacy, Plaintiffs agree to limit the length of that deposition to four (4) testimonial hours.

6. Defendants shall produce Mary Tortorice to testify as a designated Rule 30(b)(6) witness pursuant to the Notice of Deposition served on or about April 7, 2006. (I propose that the

deposition take place the early part of the week of May 8 and preferably on May 9, 2006 in Chicago or Boston as is most convenient for the witness.)

7. Plaintiffs shall have until fourteen days after the conclusion of the 30(b)(6) deposition to file their Opposition to Defendants' Cross Motion for Summary Judgment.

8. Plaintiffs shall have until May 15, 2006 to file their response on their expert(s).

9. Defendants shall have until May 29, 2006 to file their response on their expert(s).

10. The depositions of Alan Lacy, Jeanine Bousquette, Jonathan Birkhahn, Jonathan Russo, Eddie Ward and Eileen Campion shall go forward at a time mutually agreeable to both of us and the prospective deponents, which shall not be prior to Plaintiffs filing of their Opposition to Defendants' Cross Motion for Summary Judgment.

11. Defendants will prepare and file a Motion to Impound Exhibit 109 attached to Plaintiffs' Opposition to Defendants' Emergency Motion for Protective Order That The Depositions of Edward S. Lampert and Alan Lacy Not Be Had previously filed with the Court and Plaintiffs agree to assent to such motion.

If the above accurately reflects our agreement, please so acknowledge by return email.


Very truly yours,

/s/
James F. O'Brien

# EXHIBIT 13

AO 88 (Rev. 1/94) Subpoena in a Civil Case

<div align="center">

Issued by the

# UNITED STATES DISTRICT COURT

### Southern   DISTRICT OF   New York

</div>

| | |
|---|---|
| ROBERT J. VILA and B.V.T.V., INC. , Plaintiffs<br>v.<br>SEARS, ROEBUCK AND COMPANY, SEARS<br>HOLDINGS CORPORATION and KMART<br>HOLDING CORPORATION, Defendants | **SUBPOENA IN A CIVIL CASE**<br><br>05-11717-REK<br>**U.S.D.C. Massachusetts**<br>CASE NUMBER:[1] |

TO:  **Jonathan Birkhahn**
   **King World Productions, Inc./CBS Enterprises, 1700 Broadway. New York, NY 10019**

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| CE OF DEPOSITION | DATE AND TIME |
|---|---|
| Greenberg Traurig LLP, Met Life Building, 200 Park Avenue, New York, NY 10166 | March 31, 2006<br>at 10:00 a.m. |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**All documents listed on Schedule A attached hereto.**

| PLACE | DATE AND TIME |
|---|---|
| Greenberg Traurig LLP, Met Life Building, 200 Park Avenue, New York, NY  10166 | March 30, 2006<br>by 10:00 a.m. |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Annapoorni R. Sankaran        [signature]<br>**Attorney for Defendants** | March  21 , 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

nnapoorni R. Sankaran, Greenberg Traurig LLP, One International Place, Boston, MA 02110, (617) 310-6000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)
[1] If action is pending in district other than district of issuance, state district under case number.

O 88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
|      |       |

SERVED

| ERVED ON (PRINT NAME) | MANNER OF SERVICE |
|-----------------------|-------------------|
|                       |                   |

| ERVED BY (PRINT NAME) | TITLE |
|-----------------------|-------|
|                       |       |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information ontained in the Proof of Service is true and correct.

xecuted on _____

| DATE | SIGNATURE OF SERVER |
|------|---------------------|
|      | ADDRESS OF SERVER   |

---

ule 45, Federal Rules of Civil Procedure, Parts C & D:

) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and ervice of a subpoena shall take reasonable steps to avoid imposing ndue burden or expense on a person subject to that subpoena. The urt on behalf of which the subpoena was issued shall enforce this uty and impose upon the party or attorney in breach of this duty an ppropriate sanction which may include, but is not limited to, lost rnings and reasonable attorney's fees.

(2) (A) A person commanded to produce and permit inspection nd copying of designated books, papers, documents or tangible ings, or inspection of premises need not appear in person at the ace of production or inspection unless commanded to appear for position, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person mmanded to produce and permit inspection and copying may, within days after service of subpoena or before the time specified for mpliance if such time is less than 14 days after service, serve upon e party or attorney designated in the subpoena written objection to spection or copying of any or all of the designated materials or of the emises. If objection is made, the party serving the subpoena shall t be entitled to inspect and copy materials or inspect the premises cept pursuant to an order of the court by which the subpoena was sued. If objection has been made, the party serving the subpoena ay, upon notice to the person commanded to produce, move at any ne for an order to compel the production. Such an order to compel oduction shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and pying commanded.

(3) (A) On timely motion, the court by which a subpoena was sued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance, (ii) requires a person who is not a party or an officer of a rty to travel to a place more than 100 miles from the place where at person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of claus (c)(3)(B)(iii)of this rule, such a person may in order to attend tri be commanded to travel from such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unrestrained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearances or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## <u>DEFINITIONS</u>

1.    Defendants incorporate the definitions set forth in the Uniform Definitions in Discovery Requests set forth by Rule 26.5 of the Local Rules of this Court.  In addition, the following definitions shall apply to Sears' requests.

2.    "<u>Sears</u>" shall mean Sears, Roebuck and Co..

3.    "<u>Sears Holdings</u>" shall mean Sears Holdings Corporation.

4.    "<u>Kmart Holding</u>" shall mean Kmart Holding Corporation.

5.    "<u>Vila</u>" shall mean Robert J. Vila and any individual, agent, assigns, representatives, employees or all other persons or entities acting or purporting to act on his behalf.

6.    "<u>BVTV</u>" shall mean B.V.T.V., Inc. and each of its past or present officers, directors, partners, divisions, subsidiaries, affiliates, predecessors, successors, agents, assigns, representatives, employees, officers, directors, and all other persons or entities acting or purporting to act on its behalf.

7.    "<u>Artists Agency</u>" shall mean Artists Agency, Inc. and each of its past or present officers, directors, partners, divisions, subsidiaries, affiliates, predecessors, successors, agents, assigns, representatives, employees, officers, directors, and all other persons or entities acting or purporting to act on its behalf.

8.    "<u>King World</u>" shall mean King World Productions, Inc. and each of its past or present officers, directors, partners, divisions, subsidiaries, affiliates, predecessors, successors, agents, assigns, representatives, employees, officers, directors, and all other persons or entities acting or purporting to act on its behalf.

9.    "<u>MindShare</u>" shall mean Mind Share and each of its past or present officers, directors, partners, divisions, subsidiaries, affiliates, predecessors, successors, agents, assigns, representatives, employees, officers, directors, and all other persons or entities acting or purporting to act on its behalf.

10.    "<u>Ogilvy & Mather</u>" shall mean Ogilvy & Mather and each of its past or present officers, directors, partners, divisions, subsidiaries, affiliates, predecessors, successors, agents, assigns, representatives, employees, officers, directors, and all other persons or entities acting or purporting to act on its behalf.

11.    "<u>Plaintiffs</u>" shall mean plaintiffs Vila and BVTV and any individual, agent, servant, attorney, employee, representative or person acting or purporting to act on their behalf.

12.    "<u>Defendants</u>" shall mean Sears, Sears Holdings and Kmart Holding Corporation.

13.    "Spokesman Agreement" shall mean the September 29, 1989 Bob Vila Spokesperson Agreement between Sears, Ogilvy & Mather, as agent for Sears, and Robert J. Vila and all amendments thereto.

14.    Syndication Agreement shall mean the September 29, 1989 Bob Vila Spokesperson Agreement between Sears, Ogilvy & Mather, as agent for Sears, and Robert J. Vila and all amendments thereto.

15.    "First Amended Complaint" shall mean the First Amended Complaint for filed by Vila and BVTV in the United States District Court for the District of Massachusetts, bearing Civil Action No. 05-11717-REK.

16.    "Communication(s)" shall mean the disclosure, transfer, exchange or transmission of any form of information, or request for information, by any means whatsoever including written, oral or otherwise, from one person or entity to another person or entity, whether made face to face, by correspondence, by telephone, or by any other means and includes, without limitation, all inquiries, discussions, conversations, negotiations, agreements, contracts, understandings, meetings, correspondence, memoranda, telegrams, telexes, telecopies, or other forms of exchange, whether written or oral or electronic, whether sent or received.

17.    "Date" means the exact day, month and year, if ascertainable, or if not, the best approximation thereof, including by way of any relationship of the date in question to other events.

18.    "Document" is used in the broadest possible sense permitted by Rule 34 and means, without limitation, all documents or writings containing written or printed material, symbols or a physical image or sound, and includes, but is not limited to, any and all written, recorded or graphic matter of every type and description, however and by whomever prepared, whether signed or unsigned, preliminary, reviewed draft, other draft or final, produced, reproduced, disseminated or made, that is in the possession, custody or control of the person or entity to whom these Requests for Production are made (as that person or entity is defined herein).

19.    The term "Document" shall include, without limitation, agreements, appointment books, calendars, charts, computer printouts, conferences, contracts, data compilations from which information can be obtained, descriptions, diagrams, diaries, drafts, envelopes, financial statements, graphs, instructions, inter or intra-office communications, ledgers, letters, memoranda, microfiche, microfilm, minutes and notes of meetings, notebooks, notes, photocopies, photographs, plans, publications, published or unpublished speeches or articles, purchase orders, recordings, records, reports, scrapbooks, specifications, tape or disk recordings, telegrams, telephone or other conversations or communications, telexes and transcripts.

The term "Document" shall also include, without limitation, electronically stored data from which information can be obtained either directly, indirectly, or by translation through detection devices or readers, and any such document is to be produced in a reasonably legible and usable form.

20.    "Identify" and "describe" when used in reference to a document or a writing shall mean to state the date of the document, or, if undated, the date upon which the document was sent or received, the identity of its author or originator, the identity of every person to whom it was addressed, the type of document (e.g., letter, memorandum, telegram, fax, chart, etc.), and its present location or custodian.

"Identify" and "describe" when used in reference to a communication shall mean to identify the persons participating in the communication, the nature, substance and subject matter of his or her the communication, the date of the communication, the witnesses to the communication, and state whether the communication was oral or written.

"Identify" and "describe" when used in reference to a person shall mean to state his or her name, residential address, occupation, job title, work address, age, and relationship, if any, to the parties to this action.

21.    "Relating to" or "concerning" shall mean and include referring to, pertaining to, consisting of, concerning, containing, constituting, reflecting, relating to, evidencing or describing.

## INSTRUCTIONS

1.    Before responding to this request for production you must make reasonable and diligent effort to obtain the requested information, including making inquiry of your agents, employees, accountants, representatives and attorneys.

2.    This request for production constitutes a continuing request pursuant to Rule 26(e) and requires supplemental responses up to and through the time of trial.

3.    If you claim that the attorney-client privilege or any other privilege is applicable to any communication or document sought by this request for production:
   (a)    state the date of the document or communication;
   (b)    identify each and every person who prepared or participated in the preparation of the document or in the communication;
   (c)    identify each and every person from whom the document or communication was received;
   (d)    identify each and every person who received the document or communication;
   (e)    state the present location of the document and all copies thereof;
   (f)    identify each and every person having possession, custody or control of the document and all copies thereof; and
   (g)    provide sufficient further information concerning the document or communication and the circumstances thereof to explain the claim of privilege and to permit the adjudication of the propriety of that claim.

4.    If any document described herein was, but no longer is, in your possession, custody or control, please state in detail:
   (a)    a summary of the contents of each document;

(b)    what disposition was made of the document;

(c)    the date of such disposition;

(d)    whether the original or a copy thereof is within the possession, custody or control of any other person; and

(e)    if the answer to (d) of this instruction is affirmative, identify that person.

5.    Any word written in the singular should be construed as plural and vice versa, and any use of the conjunctive should be construed as being in the disjunctive and vice versa.

6.    All documents produced in response to this request for production must be segregated in accordance with the numbered production requests below pursuant to Rule 34(b).

## REQUESTS FOR PRODUCTION

1.    All documents, from any time between January 1, 2004 to the present, relating to or concerning communications between and amongst Ronald Feiner, Esq., BVTV, Vila, Artists Agency and/or King World regarding negotiations of the agreement reached May 16, 2005 between King World and BVTV to distribute new episodes of the television program "Bob Vila's Home Again."

2.    All documents, from any time between January 1, 2004 to the present, relating to or concerning communications between and amongst King World, Artists Agency, Mind Share, Ogilvy & Mather, and/or Sears regarding negotiations of the proposed Amendment 11 to the Syndication Agreement.

3.    Copies of all press kits, media relations information, and promotional materials, from between January 1, 2004 to the present, relating to the 2005-2006 viewing season of the television show currently known as "Bob Vila," as well as all documents, from between January 1, 2004 to the present, relating to or concerning communications regarding said press kits, media relations information, and promotional materials.

BLUMBERG, INC.,
PUBLISHER, NYC 10013

**COURT**  UNITED STATES DISTRICT COURT
COUNTY OF                        SOUTHERN DISTRICT OF NEW YORK

BERT J. VILA AND B.V.T.V. INC.

Index No. 05-11717-REK

Plaintiff(s)

against

SEARS, ROEBUCK AND COMPANY, SEARS HOLDINGS CORPORATION AND
KMART HOLDING CORPORATION,

Defendant(s)

*AFFIDAVIT OF*
*SERVICE OF SUBPOENA*
IN A CIVIL CASE

STATE OF NEW YORK, COUNTY OF    NEW YORK          SS:   The undersigned, being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides at  NEW YORK, NEW YORK
That on   3/27/06                      at 12:09 P.M., at 1700 BROADWAY, NEW YORK, NEW YORK 33RD FL.
deponent served the within subpoena on    JONATHAN BIRKHAHN                                   witness therein named,
IN A CIVIL CASE

| | | |
|---|---|---|
| **INDIVIDUAL** 1. ☒ | by delivering a true copy to said witness personally; deponent knew the person so served to be the witness described in said subpoena. | |
| **CORPORATION** 2. ☐ | a                                    corporation, by delivering thereat a true copy to personally, deponent knew said corporation so served to be the corporation witness and knew said individual to be thereof. | |
| **SUITABLE AGE PERSON** 3. ☐ | by delivering thereat a true copy to                                    a person of suitable age and discretion. Said premises is witness'—actual place of business—dwelling place—usual place of abode—within the state. | |
| **AFFIXING TO DOOR, ETC.** 4. ☐ | by affixing a true copy to the door of said premises, which is witness'—actual place of business—dwelling place—usual place of abode—within the state. Deponent was unable, with due diligence to find witness or a person of suitable age and discretion thereat, having called there | |

**MAILING TO RESIDENCE USE WITH 3 OR 4** 5A. ☐    Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to witness at witness' last known residence, at                                    and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

**MAILING TO BUSINESS USE WITH 3 OR 4** 5B. ☐    Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class postpaid envelope properly addressed to witness at witness' actual place of business, at
in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the witness.

**DESCRIPTION USE WITH 1, 2, OR 3** ☒

| | | | | | |
|---|---|---|---|---|---|
| ☒ Male | ☒ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☒ Brown Hair | ☐ Balding | ☐ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100-130 Lbs. |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☒ 131-160 Lbs. |
| | ☐ Brown Skin | ☒ Gray Hair | ☐ Beard | ☒ 51-65 Yrs. | ☒ 5'9"-6'0" | ☐ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☐ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

At the time of said service, deponent paid (tendered) in advance $  45.00          the authorized traveling expenses and one day's witness fee.

JOHN DICANIO
Notary Public, State of New York
No. 01-DI4977768
Qualified in Westchester County
Commission Expires Feb. 11, 2007

Sworn to before me on
3/27/06

*Martha Florez*
PRINT NAME BENEATH SIGNATURE
MARTHA FLOREZ

License No. ......1187460.........

AO 88 (Rev. 1/94) Subpoena in a Civil Case

<div align="center">

### Issued by the

# UNITED STATES DISTRICT COURT

Southern  DISTRICT OF  New York

</div>

| | |
|---|---|
| ROBERT J. VILA and B.V.T.V., INC. , Plaintiffs | **SUBPOENA IN A CIVIL CASE** |
| **v.** | |
| **SEARS, ROEBUCK AND COMPANY, SEARS HOLDINGS CORPORATION and KMART HOLDING CORPORATION, Defendants** | **05-11717-REK** |
| CASE NUMBER:[1] | **U.S.D.C. Massachusetts** |

TO:    **Jonathan Russo**
        **Artists Agency, Inc., 230 W. 55th Street, #29D, New York, NY 10019**

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Greenberg Traurig LLP, Met Life Building, 200 Park Avenue, New York, NY 10166 | March 30, 2006 at 10:00 a.m. |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**All documents listed on Schedule A attached hereto.**

| PLACE | DATE AND TIME |
|---|---|
| Greenberg Traurig LLP, Met Life Building, 200 Park Avenue, New York, NY  10166 | March 29, 2006 by 10:00 a.m. |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| **Annapoorni R. Sankaran** ⟋ **Attorney for Defendants** | **March   21 , 2006** |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

**Annapoorni R. Sankaran, Greenberg Traurig LLP, One International Place, Boston, MA 02110, (617) 310-6000**

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

. action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fees.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause(c)(3)(B)(iii)of this rule, such a person may in order to attend trial be commanded to travel from such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unrestrained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearances or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## **DEFINITIONS**

1.    Defendants incorporate the definitions set forth in the Uniform Definitions in Discovery Requests set forth by Rule 26.5 of the Local Rules of this Court. In addition, the following definitions shall apply to Sears' requests.

2.    "Sears" shall mean Sears, Roebuck and Co..

3.    "Sears Holdings" shall mean Sears Holdings Corporation.

4.    "Kmart Holding" shall mean Kmart Holding Corporation.

5.    "Vila" shall mean Robert J. Vila and any individual, agent, assigns, representatives, employees or all other persons or entities acting or purporting to act on his behalf.

6.    "BVTV" shall mean B.V.T.V., Inc. and each of its past or present officers, directors, partners, divisions, subsidiaries, affiliates, predecessors, successors, agents, assigns, representatives, employees, officers, directors, and all other persons or entities acting or purporting to act on its behalf.

7.    "Artists Agency" shall mean Artists Agency, Inc. and each of its past or present officers, directors, partners, divisions, subsidiaries, affiliates, predecessors, successors, agents, assigns, representatives, employees, officers, directors, and all other persons or entities acting or purporting to act on its behalf.

8.    "King World" shall mean King World Productions, Inc. and each of its past or present officers, directors, partners, divisions, subsidiaries, affiliates, predecessors, successors, agents, assigns, representatives, employees, officers, directors, and all other persons or entities acting or purporting to act on its behalf.

9.    "Plaintiffs" shall mean plaintiffs Vila and BVTV and any individual, agent, servant, attorney, employee, representative or person acting or purporting to act on their behalf.

10.    "Defendants" shall mean Sears, Sears Holdings and Kmart Holding Corporation.

11.    "Spokesman Agreement" shall mean the September 29, 1989 Bob Vila Spokesperson Agreement between Sears, Ogilvy & Mather, as agent for Sears, and Robert J. Vila and all amendments thereto.

12.    Syndication Agreement shall mean the September 29, 1989 Bob Vila Spokesperson Agreement between Sears, Ogilvy & Mather, as agent for Sears, and Robert J. Vila and all amendments thereto.

13.    "First Amended Complaint" shall mean the First Amended Complaint for filed by Vila and BVTV in the United States District Court for the District of Massachusetts, bearing Civil Action No. 05-11717-REK.

14.    "Communication(s)" shall mean the disclosure, transfer, exchange or transmission of any form of information, or request for information, by any means whatsoever including written, oral or otherwise, from one person or entity to another person or entity, whether made face to face, by correspondence, by telephone, or by any other means and includes, without limitation, all inquiries, discussions, conversations, negotiations, agreements, contracts, understandings, meetings, correspondence, memoranda, telegrams, telexes, telecopies, or other forms of exchange, whether written or oral or electronic, whether sent or received.

15.    "Date" means the exact day, month and year, if ascertainable, or if not, the best approximation thereof, including by way of any relationship of the date in question to other events.

16.    "Document" is used in the broadest possible sense permitted by Rule 34 and means, without limitation, all documents or writings containing written or printed material, symbols or a physical image or sound, and includes, but is not limited to, any and all written, recorded or graphic matter of every type and description, however and by whomever prepared, whether signed or unsigned, preliminary, reviewed draft, other draft or final, produced, reproduced, disseminated or made, that is in the possession, custody or control of the person or entity to whom these Requests for Production are made (as that person or entity is defined herein).

17.    The term "Document" shall include, without limitation, agreements, appointment books, calendars, charts, computer printouts, conferences, contracts, data compilations from which information can be obtained, descriptions, diagrams, diaries, drafts, envelopes, financial statements, graphs, instructions, inter or intra-office communications, ledgers, letters, memoranda, microfiche, microfilm, minutes and notes of meetings, notebooks, notes, photocopies, photographs, plans, publications, published or unpublished speeches or articles, purchase orders, recordings, records, reports, scrapbooks, specifications, tape or disk recordings, telegrams, telephone or other conversations or communications, telexes and transcripts.

The term "Document" shall also include, without limitation, electronically stored data from which information can be obtained either directly, indirectly, or by translation through detection devices or readers, and any such document is to be produced in a reasonably legible and usable form.

18.    "Identify" and "describe" when used in reference to a document or a writing shall mean to state the date of the document, or, if undated, the date upon which the document was sent or received, the identity of its author or originator, the identity of every person to whom it was addressed, the type of document (e.g., letter, memorandum, telegram, fax, chart, etc.), and its present location or custodian.

"Identify" and "describe" when used in reference to a communication shall mean to identify the persons participating in the communication, the nature, substance and subject matter of his or her the communication, the date of the communication, the witnesses to the communication, and state whether the communication was oral or written.

"Identify" and "describe" when used in reference to a person shall mean to state his or her name, residential address, occupation, job title, work address, age, and relationship, if any, to the parties to this action.

19.    "Relating to" or "concerning" shall mean and include referring to, pertaining to, consisting of, concerning, containing, constituting, reflecting, relating to, evidencing or describing.

## INSTRUCTIONS

1.    Before responding to this request for production you must make reasonable and diligent effort to obtain the requested information, including making inquiry of your agents, employees, accountants, representatives and attorneys.

2.    This request for production constitutes a continuing request pursuant to Rule 26(e) and requires supplemental responses up to and through the time of trial.

3.    If you claim that the attorney-client privilege or any other privilege is applicable to any communication or document sought by this request for production:
   (a)    state the date of the document or communication;
   (b)    identify each and every person who prepared or participated in the preparation of the document or in the communication;
   (c)    identify each and every person from whom the document or communication was received;
   (d)    identify each and every person who received the document or communication;
   (e)    state the present location of the document and all copies thereof;
   (f)    identify each and every person having possession, custody or control of the document and all copies thereof; and
   (g)    provide sufficient further information concerning the document or communication and the circumstances thereof to explain the claim of privilege and to permit the adjudication of the propriety of that claim.

4.    If any document described herein was, but no longer is, in your possession, custody or control, please state in detail:
   (a)    a summary of the contents of each document;
   (b)    what disposition was made of the document;
   (c)    the date of such disposition;
   (d)    whether the original or a copy thereof is within the possession, custody or control of any other person; and
   (e)    if the answer to (d) of this instruction is affirmative, identify that person.

5.    Any word written in the singular should be construed as plural and vice versa, and any use of the conjunctive should be construed as being in the disjunctive and vice versa.

6.    All documents produced in response to this request for production must be segregated in accordance with the numbered production requests below pursuant to Rule 34(b).

## REQUESTS FOR PRODUCTION

1.    All documents, from between January 1, 2004 to the present, relating to or concerning communications between and amongst Ronald Feiner, Esq., BVTV, Vila, King World and/or Artists Agency regarding negotiations of the agreement reached May 16, 2005

between King World and BVTV to distribute new episodes of the television program "Bob Vila's Home Again."

2.  Copies of all press kits, media relations information, and promotional materials, from between January 1, 2004 to the present, relating to the 2005-2006 viewing season of the television show currently known as "Bob Vila," as well as all documents, from between January 1, 2004 to the present, relating to or concerning communications regarding said press kits, media relations information, and promotional materials.

ROBERT ... BLUMBERG, INC.,
PUBLISHER, NYC 10013

| COURT | UNITED STATES DISTRICT COURT |
|---|---|

SOUTHERN DISTRICT OF NEW YORK

COUNTY OF

ROBERT J. VILA AND B.V.T.V., INC.,

*Plaintiff(s)*

Index No. 05-11717-REK

against

SEARS, ROEBUCK AND COMPANY, ET AL.,

*Defendant(s)*

**AFFIDAVIT OF
SERVICE OF SUBPOENA**
IN A CIVIL CASE

STATE OF NEW YORK, COUNTY OF NEW YORK    SS:    The undersigned, being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides at SUNNYSIDE, NEW YORK

That on 3/22/06            at 3:26   P.M., at 230 WEST 55TH STREET, NEW YORK, NEW YORK 10019-ROOM# 29D
deponent served the within subpoena on    JONATHAN RUSSO                            witness therein named,
IN A CIVIL CASE

**INDIVIDUAL**
1. ☒    by delivering a true copy to said witness personally; deponent knew the person so served to be the witness described in said subpoena.

**CORPORATION**
2. ☐    a                            corporation, by delivering thereat a true copy to
personally, deponent knew said corporation so served to be the corporation witness and knew said individual to be
                                            thereof.

**SUITABLE AGE PERSON**
3. ☐    by delivering thereat a true copy to                            a person of suitable age
and discretion. Said premises is witness'—actual place of business—dwelling place—usual place of abode—within the state.

**AFFIXING TO DOOR, ETC.**
4. ☐    by affixing a true copy to the door of said premises, which is witness'—actual place of business—dwelling place—usual place of abode—within the state. Deponent was unable, with due diligence to find witness or a person of suitable age and discretion thereat, having called there

**MAILING TO RESIDENCE USE WITH 3 OR 4**
5A. ☐    Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to witness at witness' last known residence, at                            and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

**MAILING TO BUSINESS USE WITH 3 OR 4**
5B. ☐    Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class postpaid envelope properly addressed to witness at witness' actual place of business, at
in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the witness.

**DESCRIPTION USE WITH 1, 2, OR 3**

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ Male | ☒ White Skin | ☐ Black Hair | ☒ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☐ Brown Hair | ☐ Balding | ☐ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100-130 Lbs. |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☒ 131-160 Lbs. |
| | ☐ Brown Skin | ☒ Gray Hair | ☐ Beard | ☒ 51-65 Yrs. | ☒ 5'9"-6'0" | ☐ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☒ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

At the time of said service, deponent paid (tendered) in advance $ 45.00    the authorized traveling expenses and one day's witness fee.

Sworn to before me on
3/23/06

JOHN DICANIO
Notary Public, State of New York
No. 01-DI4977768
Qualified in Westchester County
Commission Expires Feb. 11, 2007

PRINT NAME BENEATH SIGNATURE

DI CONG JIANG

License No. ........................

AO 88 (Rev. 1/94) Subpoena in a Civil Case

<div align="center">

Issued by the

# UNITED STATES DISTRICT COURT

Southern  DISTRICT OF  New York

</div>

| ROBERT J. VILA and B.V.T.V., INC. , Plaintiffs | SUBPOENA IN A CIVIL CASE |
|---|---|
| v. | |
| SEARS, ROEBUCK AND COMPANY, SEARS HOLDINGS CORPORATION and KMART HOLDING CORPORATION, Defendants | 05-11717-REK |
| | CASE NUMBER:[1]  U.S.D.C. Massachusetts |

TO:  **Eddie Ward**
    **Dera, Roslan & Campion Inc., 584 Broadway, Suite 1001, New York, NY 10012**

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Greenberg Traurig LLP, Met Life Building, 200 Park Avenue, New York, NY 10166 | **April 14, 2006**<br>**at 10:00 a.m.** |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**All documents listed on Schedule A attached hereto.**

| PLACE | DATE AND TIME |
|---|---|
| Greenberg Traurig LLP, Met Life Building, 200 Park Avenue, New York, NY 10166 | **April 13, 2006**<br>**by 10:00 a.m.** |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| **Annapoorni R. Sankaran**<br>**Attorney for Defendants** | **March 30  , 2006** |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

**nnapoorni R. Sankaran, Greenberg Traurig LLP, One International Place, Boston, MA 02110, (617) 310-6000**

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fees.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c)(3)(B)(iii)of this rule, such a person may in order to attend trial be commanded to travel from such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearances or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**SCHEDULE A**

**DEFINITIONS**

1.      Defendants incorporate the definitions set forth in the Uniform Definitions in Discovery Requests set forth by Rule 26.5 of the Local Rules of this Court.  In addition, the following definitions shall apply to Sears' requests.

2.      "Sears" shall mean Sears, Roebuck and Co..

3.      "Sears Holdings" shall mean Sears Holdings Corporation.

4.      "Kmart Holding" shall mean Kmart Holding Corporation.

5.      "Vila" shall mean Robert J. Vila and any individual, agent, assigns, representatives, employees or all other persons or entities acting or purporting to act on his behalf.

6.      "BVTV" shall mean B.V.T.V., Inc. and each of its past or present officers, directors, partners, divisions, subsidiaries, affiliates, predecessors, successors, agents, assigns, representatives, employees, officers, directors, and all other persons or entities acting or purporting to act on its behalf.

7.      "Dera, Roslan & Campion" shall mean Dera, Roslan & Campion Inc. and each of its past or present officers, directors, partners, divisions, subsidiaries, affiliates, predecessors, successors, agents, assigns, representatives, employees, officers, directors, and all other persons or entities acting or purporting to act on its behalf.

8.      "Communication(s)" shall mean the disclosure, transfer, exchange or transmission of any form of information, or request for information, by any means whatsoever including written, oral or otherwise, from one person or entity to another person or entity, whether made face to face, by correspondence, by telephone, or by any other means and includes, without limitation, all inquiries, discussions, conversations, negotiations, agreements, contracts, understandings, meetings, correspondence, memoranda, telegrams, telexes, telecopies, or other forms of exchange, whether written or oral or electronic, whether sent or received.

9.      "Date" means the exact day, month and year, if ascertainable, or if not, the best approximation thereof, including by way of any relationship of the date in question to other events.

10.     "Document" is used in the broadest possible sense permitted by Rule 34 and means, without limitation, all documents or writings containing written or printed material, symbols or a physical image or sound, and includes, but is not limited to, any and all written, recorded or graphic matter of every type and description, however and by whomever prepared, whether signed or unsigned, preliminary, reviewed draft, other draft or final, produced, reproduced, disseminated or made, that is in the possession, custody or control of the person or entity to whom these Requests for Production are made (as that person or entity is defined herein).

11.    The term "Document" shall include, without limitation, agreements, appointment books, calendars, charts, computer printouts, conferences, contracts, data compilations from which information can be obtained, descriptions, diagrams, diaries, drafts, envelopes, financial statements, graphs, instructions, inter or intra-office communications, ledgers, letters, memoranda, microfiche, microfilm, minutes and notes of meetings, notebooks, notes, photocopies, photographs, plans, publications, published or unpublished speeches or articles, purchase orders, recordings, records, reports, scrapbooks, specifications, tape or disk recordings, telegrams, telephone or other conversations or communications, telexes and transcripts.

The term "Document" shall also include, without limitation, electronically stored data from which information can be obtained either directly, indirectly, or by translation through detection devices or readers, and any such document is to be produced in a reasonably legible and usable form.

12.    "Identify" and "describe" when used in reference to a document or a writing shall mean to state the date of the document, or, if undated, the date upon which the document was sent or received, the identity of its author or originator, the identity of every person to whom it was addressed, the type of document (e.g., letter, memorandum, telegram, fax, chart, etc.), and its present location or custodian.

"Identify" and "describe" when used in reference to a communication shall mean to identify the persons participating in the communication, the nature, substance and subject matter of his or her the communication, the date of the communication, the witnesses to the communication, and state whether the communication was oral or written.

"Identify" and "describe" when used in reference to a person shall mean to state his or her name, residential address, occupation, job title, work address, age, and relationship, if any, to the parties to this action.

13.    "Relating to" or "concerning" shall mean and include referring to, pertaining to, consisting of, concerning, containing, constituting, reflecting, relating to, evidencing or describing.

## INSTRUCTIONS

1.    Before responding to this request for production you must make reasonable and diligent effort to obtain the requested information, including making inquiry of your agents, employees, accountants, representatives and attorneys.

2.    This request for production constitutes a continuing request pursuant to Rule 26(e) and requires supplemental responses up to and through the time of trial.

3.    If you claim that the attorney-client privilege or any other privilege is applicable to any communication or document sought by this request for production:
   (a)    state the date of the document or communication;
   (b)    identify each and every person who prepared or participated in the preparation of the document or in the communication;

(c)     identify each and every person from whom the document or communication was received;

(d)     identify each and every person who received the document or communication;

(e)     state the present location of the document and all copies thereof;

(f)     identify each and every person having possession, custody or control of the document and all copies thereof; and

(g)     provide sufficient further information concerning the document or communication and the circumstances thereof to explain the claim of privilege and to permit the adjudication of the propriety of that claim.

4.     If any document described herein was, but no longer is, in your possession, custody or control, please state in detail:

(a)     a summary of the contents of each document;

(b)     what disposition was made of the document;

(c)     the date of such disposition;

(d)     whether the original or a copy thereof is within the possession, custody or control of any other person; and

(e)     if the answer to (d) of this instruction is affirmative, identify that person.

5.     Any word written in the singular should be construed as plural and vice versa, and any use of the conjunctive should be construed as being in the disjunctive and vice versa.

6.     All documents produced in response to this request for production must be segregated in accordance with the numbered production requests below pursuant to Rule 34(b).

## REQUESTS FOR PRODUCTION

1.     All documents, from any time between January 1, 2005 to the present, relating to or concerning communications between Dera, Roslan & Campion on one hand and Vila and BVTV on the other hand regarding media coverage of the current litigation between Vila and Sears, including, but not limited to the February 12, 2006 article in the Chicago Tribune by Susan Chandler titled "Sears in Demolition Mode" and the March 2, 2006 article in the Chicago Tribune by Susan Chandler titled "Vila Shows Sears' Harder Side."

2.     All documents, from any time between January 1, 2005 to the present, relating to or concerning communications between Dera, Roslan & Campion and any writer or representative of the Chicago Tribune, including, but not limited Susan Chandler, regarding the current litigation between Vila and Sears.

3.     Copies of all press kits, media relations information, and promotional materials, from any time between January 1, 2004 to the present, relating to the 2005-2006 viewing season of the television show currently known as "Bob Vila," as well as all documents, from any time between January 1, 2004 to the present, relating to or concerning communications regarding said press kits, media relations information, and promotional materials.

Form 04 - PERSONAL

### GREENBERG TRAURIG LLP
### ATTN:

U.S.SOUTHERN DIST. COURT        NEW YORK  COUNTY

-----------------------------------------------------

ROBERT J.VILA, ETANO                    plaintiff

- against -

SEARS, ROEBUCK AND COMPANY, ETAL        defendant

-----------------------------------------------------

Index No. **05-11717-REK**

Date Filed  ...........

Office No. **54151-021500**

Court Date: **04/14/2006**

STATE OF NEW YORK, COUNTY OF NEW YORK          :SS:

**JAMAR MCINTOSH**     being duly sworn, deposes and says; I am over 18 years of age,
not a party to this action, and reside in the State of New York. That on the
**30th** day of **March, 2006  10:45 AM**             at
     **%DERA, ROSLAN, CAMPION**
     **584 BROADWAY SUITE 1001 NEW YORK, NY 10012**

I served the  **SUBPOENA**
**and at the same time and place, a fee of $45.00 was paid**
upon **EDDIE WARD**
**the  WITNESS**  therein named by delivering and leaving a true copy or
copies of the aforementioned documents with
**EDDIE WARD**
said **WITNESS** personally.
    Deponent describes the person served as aforesaid to the best of deponent's
ability at the time and circumstances of the service as follows:
        SEX: **MALE**        COLOR: **WHITE**      HAIR: **BLACK**
        APP. AGE: **30**     APP. HT: **5:8**      APP. WT: **190**

OTHER IDENTIFYING FEATURES:

Sworn to before me this
31st  day of  March,        2006ni

JOEL GOLUB
Notary Public, State of New York
    No.01G04751136
Qualified in NASSAU COUNTY
Commission Expires 12/31/2009

JAMAR MCINTOSH  1172728
AETNA  CENTRAL  JUDICIAL  SERVICE
225 BROADWAY, SUITE 1802
NEW YORK, NY, 10007
Reference No: 2GT1935815

AO 88 (Rev. 1/94) Subpoena in a Civil Case

<div align="center">

**Issued by the**

# UNITED STATES DISTRICT COURT

**Southern**  DISTRICT OF  **New York**

</div>

| | |
|---|---|
| ROBERT J. VILA and B.V.T.V., INC. , Plaintiffs<br>v.<br>SEARS, ROEBUCK AND COMPANY, SEARS<br>HOLDINGS CORPORATION and KMART<br>HOLDING CORPORATION, Defendants | **SUBPOENA IN A CIVIL CASE**<br><br>**05-11717-REK**<br>CASE NUMBER:[1]  **U.S.D.C. Massachusetts** |

TO:    **Eileen Campion**
       **Dera, Roslan & Campion Inc., 584 Broadway, Suite 1001, New York, NY 10012**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| **Greenberg Traurig LLP, Met Life Building, 200 Park Avenue, New York, NY 10166** | **April 13, 2006**<br>**at 10:00 a.m.** |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**All documents listed on Schedule A attached hereto.**

| PLACE | DATE AND TIME |
|---|---|
| **Greenberg Traurig LLP, Met Life Building, 200 Park Avenue, New York, NY 10166** | **April 12, 2006**<br>**by 10:00 a.m.** |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| **Annapoorni R. Sankaran**<br>**Attorney for Defendants** | **March 30 , 2006** |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

**...nnapoorni R. Sankaran, Greenberg Traurig LLP, One International Place, Boston, MA 02110, (617) 310-6000**

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)
[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fees.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c)(3)(B)(iii)of this rule, such a person may in order to attend trial be commanded to travel from such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearances or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS

1.    Defendants incorporate the definitions set forth in the Uniform Definitions in Discovery Requests set forth by Rule 26.5 of the Local Rules of this Court. In addition, the following definitions shall apply to Sears' requests.

2.    "Sears" shall mean Sears, Roebuck and Co..

3.    "Sears Holdings" shall mean Sears Holdings Corporation.

4.    "Kmart Holding" shall mean Kmart Holding Corporation.

5.    "Vila" shall mean Robert J. Vila and any individual, agent, assigns, representatives, employees or all other persons or entities acting or purporting to act on his behalf.

6.    "BVTV" shall mean B.V.T.V., Inc. and each of its past or present officers, directors, partners, divisions, subsidiaries, affiliates, predecessors, successors, agents, assigns, representatives, employees, officers, directors, and all other persons or entities acting or purporting to act on its behalf.

7.    "Dera, Roslan & Campion" shall mean Dera, Roslan & Campion Inc. and each of its past or present officers, directors, partners, divisions, subsidiaries, affiliates, predecessors, successors, agents, assigns, representatives, employees, officers, directors, and all other persons or entities acting or purporting to act on its behalf.

8.    "Communication(s)" shall mean the disclosure, transfer, exchange or transmission of any form of information, or request for information, by any means whatsoever including written, oral or otherwise, from one person or entity to another person or entity, whether made face to face, by correspondence, by telephone, or by any other means and includes, without limitation, all inquiries, discussions, conversations, negotiations, agreements, contracts, understandings, meetings, correspondence, memoranda, telegrams, telexes, telecopies, or other forms of exchange, whether written or oral or electronic, whether sent or received.

9.    "Date" means the exact day, month and year, if ascertainable, or if not, the best approximation thereof, including by way of any relationship of the date in question to other events.

10.    "Document" is used in the broadest possible sense permitted by Rule 34 and means, without limitation, all documents or writings containing written or printed material, symbols or a physical image or sound, and includes, but is not limited to, any and all written, recorded or graphic matter of every type and description, however and by whomever prepared, whether signed or unsigned, preliminary, reviewed draft, other draft or final, produced, reproduced, disseminated or made, that is in the possession, custody or control of the person or entity to whom these Requests for Production are made (as that person or entity is defined herein).

11.   The term "Document" shall include, without limitation, agreements, appointment books, calendars, charts, computer printouts, conferences, contracts, data compilations from which information can be obtained, descriptions, diagrams, diaries, drafts, envelopes, financial statements, graphs, instructions, inter or intra-office communications, ledgers, letters, memoranda, microfiche, microfilm, minutes and notes of meetings, notebooks, notes, photocopies, photographs, plans, publications, published or unpublished speeches or articles, purchase orders, recordings, records, reports, scrapbooks, specifications, tape or disk recordings, telegrams, telephone or other conversations or communications, telexes and transcripts.

The term "Document" shall also include, without limitation, electronically stored data from which information can be obtained either directly, indirectly, or by translation through detection devices or readers, and any such document is to be produced in a reasonably legible and usable form.

12.   "Identify" and "describe" when used in reference to a document or a writing shall mean to state the date of the document, or, if undated, the date upon which the document was sent or received, the identity of its author or originator, the identity of every person to whom it was addressed, the type of document (e.g., letter, memorandum, telegram, fax, chart, etc.), and its present location or custodian.

"Identify" and "describe" when used in reference to a communication shall mean to identify the persons participating in the communication, the nature, substance and subject matter of his or her the communication, the date of the communication, the witnesses to the communication, and state whether the communication was oral or written.

"Identify" and "describe" when used in reference to a person shall mean to state his or her name, residential address, occupation, job title, work address, age, and relationship, if any, to the parties to this action.

13.   "Relating to" or "concerning" shall mean and include referring to, pertaining to, consisting of, concerning, containing, constituting, reflecting, relating to, evidencing or describing.

## INSTRUCTIONS

1.   Before responding to this request for production you must make reasonable and diligent effort to obtain the requested information, including making inquiry of your agents, employees, accountants, representatives and attorneys.

2.   This request for production constitutes a continuing request pursuant to Rule 26(e) and requires supplemental responses up to and through the time of trial.

3.   If you claim that the attorney-client privilege or any other privilege is applicable to any communication or document sought by this request for production:

(a)   state the date of the document or communication;

(b)   identify each and every person who prepared or participated in the preparation of the document or in the communication;

(c)   identify each and every person from whom the document or communication was received;

(d)   identify each and every person who received the document or communication;

(e)   state the present location of the document and all copies thereof;

(f)   identify each and every person having possession, custody or control of the document and all copies thereof; and

(g)   provide sufficient further information concerning the document or communication and the circumstances thereof to explain the claim of privilege and to permit the adjudication of the propriety of that claim.

4.     If any document described herein was, but no longer is, in your possession, custody or control, please state in detail:

(a)   a summary of the contents of each document;

(b)   what disposition was made of the document;

(c)   the date of such disposition;

(d)   whether the original or a copy thereof is within the possession, custody or control of any other person; and

(e)   if the answer to (d) of this instruction is affirmative, identify that person.

5.     Any word written in the singular should be construed as plural and vice versa, and any use of the conjunctive should be construed as being in the disjunctive and vice versa.

6.     All documents produced in response to this request for production must be segregated in accordance with the numbered production requests below pursuant to Rule 34(b).

## REQUESTS FOR PRODUCTION

1.     All documents, from any time between January 1, 2005 to the present, relating to or concerning communications between Dera, Roslan & Campion on one hand and Vila and BVTV on the other hand regarding media coverage of the current litigation between Vila and Sears, including, but not limited to the February 12, 2006 article in the Chicago Tribune by Susan Chandler titled "Sears in Demolition Mode" and the March 2, 2006 article in the Chicago Tribune by Susan Chandler titled "Vila Shows Sears' Harder Side."

2.     All documents, from any time between January 1, 2005 to the present, relating to or concerning communications between Dera, Roslan & Campion and any writer or representative of the Chicago Tribune, including, but not limited Susan Chandler, regarding the current litigation between Vila and Sears.

3.     Copies of all press kits, media relations information, and promotional materials, from any time between January 1, 2004 to the present, relating to the 2005-2006 viewing season of the television show currently known as "Bob Vila," as well as all documents, from any time between January 1, 2004 to the present, relating to or concerning communications regarding said press kits, media relations information, and promotional materials.

Form 27 - GENERAL PURPOSE

**GREENBERG TRAURIG LLP**
**ATTN:**
U.S. SOUTHERN DIST. COURT    NEW YORK  COUNTY

-------------------------------------------------

ROBERT J. VILA, ETANO                      plaintiff

- against -

SEARS, ROEBUCK AND COMPANY, ETAL        defendant

-------------------------------------------------

Index No. **05-11717-REK**

Date Filed  ..........

Office No. **54151-02150**

Court Date: **04/13/2006**

STATE OF NEW YORK, COUNTY OF NEW YORK            :SS:

**JAMAR MCINTOSH**      being duly sworn, deposes and says:
I am over 18 years of age, not a party to this action, and reside in the
State of New York.
    That on the  **30th  day of March, 2006**     at  **10:45 AM.**,                      a
    **%DERA, ROSLAN & CAMPION INC.**
    **584 BROADWAY SUITE 1001, NEW YORK, NY 10012**
I served a true copy of the
    **SUBPOENA**
**and at the same time and place, a fee of $45.00 was paid**
upon **EILEEN CAMPION**
the **WITNESS** therein named,
by delivering to, and leaving personally with
    **EDDIE WARD,  ATTORNEY AUTHORIZED TO ACCEPT SERVICE**

a true copy of each thereof.

    Deponent describes the person served as aforesaid to the best of deponen
ability at the time and circumstances of the aforesaid service as follows:
    SEX: **MALE**            COLOR: **WHITE**        HAIR: **BLACK**
    APP. AGE: **30**         APP. HT: **5:8**        APP. WT: **190**

OTHER IDENTIFYING FEATURES:

Sworn to before me this
31st  day of  March, 2006ni

JOEL GOLUB
Notary Public, State of New York
No. 01G0475113/6
Qualified in NASSAU COUNTY
Commission Expires 12/31/2009

JAMAR MCINTOSH  1172728
AETNA  CENTRAL  JUDICIAL  SERVIC
225 BROADWAY, SUITE 1802
NEW YORK, NY, 10007
Reference No: 2GT1935816

AO 88 (Rev. 1/94) Subpoena in a Civil Case

<div align="center">

**Issued by the**

# UNITED STATES DISTRICT COURT

Southern **DISTRICT OF** New York

</div>

| | |
|---|---|
| ROBERT J. VILA and B.V.T.V., INC. , Plaintiffs | **SUBPOENA IN A CIVIL CASE** |
| v. | |
| SEARS, ROEBUCK AND COMPANY, SEARS HOLDINGS CORPORATION and KMART HOLDING CORPORATION, Defendants | **05-11717-REK** |
| | CASE NUMBER:[1]  **U.S.D.C. Massachusetts** |

TO:   **Keeper of Records**
   **King World Productions, Inc./CBS Enterprises, 1700 Broadway. New York, NY 10019**

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| CE OF DEPOSITION | DATE AND TIME |
|---|---|
| **Greenberg Traurig LLP, Met Life Building, 200 Park Avenue, New York, NY 10166** | **April 4, 2006 at 10:00 a.m.** |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**All documents listed on Schedule A attached hereto.**

| PLACE | DATE AND TIME |
|---|---|
| **Greenberg Traurig LLP, Met Life Building, 200 Park Avenue, New York, NY  10166** | **April 3, 2006 by 10:00 a.m.** |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| **Annapoorni R. Sankaran** | |
| **Attorney for Defendants** | **March** 21 **, 2006** |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

   **napoorni R. Sankaran, Greenberg Traurig LLP, One International Place, Boston, MA 02110, (617) 310-6000**

<div align="center">(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)</div>

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                              DATE                                                SIGNATURE OF SERVER

                                                                _____
                                                                ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fees.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commended to travel from such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unrestrained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearances or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## <u>DEFINITIONS</u>

1.      Defendants incorporate the definitions set forth in the Uniform Definitions in Discovery Requests set forth by Rule 26.5 of the Local Rules of this Court.  In addition, the following definitions shall apply to Sears' requests.

2.      "Sears" shall mean Sears, Roebuck and Co..

3.      "Sears Holdings" shall mean Sears Holdings Corporation.

4.      "Kmart Holding" shall mean Kmart Holding Corporation.

5.      "Vila" shall mean Robert J. Vila and any individual, agent, assigns, representatives, employees or all other persons or entities acting or purporting to act on his behalf.

6.      "BVTV" shall mean B.V.T.V., Inc. and each of its past or present officers, directors, partners, divisions, subsidiaries, affiliates, predecessors, successors, agents, assigns, representatives, employees, officers, directors, and all other persons or entities acting or purporting to act on its behalf.

7.      "Artists Agency" shall mean Artists Agency, Inc. and each of its past or present officers, directors, partners, divisions, subsidiaries, affiliates, predecessors, successors, agents, assigns, representatives, employees, officers, directors, and all other persons or entities acting or purporting to act on its behalf.

8.      "King World" shall mean King World Productions, Inc. and each of its past or present officers, directors, partners, divisions, subsidiaries, affiliates, predecessors, successors, agents, assigns, representatives, employees, officers, directors, and all other persons or entities acting or purporting to act on its behalf.

9.      "MindShare" shall mean Mind Share and each of its past or present officers, directors, partners, divisions, subsidiaries, affiliates, predecessors, successors, agents, assigns, representatives, employees, officers, directors, and all other persons or entities acting or purporting to act on its behalf.

10.     "Ogilvy & Mather" shall mean Ogilvy & Mather and each of its past or present officers, directors, partners, divisions, subsidiaries, affiliates, predecessors, successors, agents, assigns, representatives, employees, officers, directors, and all other persons or entities acting or purporting to act on its behalf.

11.     "Plaintiffs" shall mean plaintiffs Vila and BVTV and any individual, agent, servant, attorney, employee, representative or person acting or purporting to act on their behalf.

12.     "Defendants" shall mean Sears, Sears Holdings and Kmart Holding Corporation.

13.    "Spokesman Agreement" shall mean the September 29, 1989 Bob Vila Spokesperson Agreement between Sears, Ogilvy & Mather, as agent for Sears, and Robert J. Vila and all amendments thereto.

14.    Syndication Agreement shall mean the September 29, 1989 Bob Vila Spokesperson Agreement between Sears, Ogilvy & Mather, as agent for Sears, and Robert J. Vila and all amendments thereto.

15.    "First Amended Complaint" shall mean the First Amended Complaint for filed by Vila and BVTV in the United States District Court for the District of Massachusetts, bearing Civil Action No. 05-11717-REK.

16.    "Communication(s)" shall mean the disclosure, transfer, exchange or transmission of any form of information, or request for information, by any means whatsoever including written, oral or otherwise, from one person or entity to another person or entity, whether made face to face, by correspondence, by telephone, or by any other means and includes, without limitation, all inquiries, discussions, conversations, negotiations, agreements, contracts, understandings, meetings, correspondence, memoranda, telegrams, telexes, telecopies, or other forms of exchange, whether written or oral or electronic, whether sent or received.

17.    "Date" means the exact day, month and year, if ascertainable, or if not, the best approximation thereof, including by way of any relationship of the date in question to other events.

18.    "Document" is used in the broadest possible sense permitted by Rule 34 and means, without limitation, all documents or writings containing written or printed material, symbols or a physical image or sound, and includes, but is not limited to, any and all written, recorded or graphic matter of every type and description, however and by whomever prepared, whether signed or unsigned, preliminary, reviewed draft, other draft or final, produced, reproduced, disseminated or made, that is in the possession, custody or control of the person or entity to whom these Requests for Production are made (as that person or entity is defined herein).

19.    The term "Document" shall include, without limitation, agreements, appointment books, calendars, charts, computer printouts, conferences, contracts, data compilations from which information can be obtained, descriptions, diagrams, diaries, drafts, envelopes, financial statements, graphs, instructions, inter or intra-office communications, ledgers, letters, memoranda, microfiche, microfilm, minutes and notes of meetings, notebooks, notes, photocopies, photographs, plans, publications, published or unpublished speeches or articles, purchase orders, recordings, records, reports, scrapbooks, specifications, tape or disk recordings, telegrams, telephone or other conversations or communications, telexes and transcripts.

The term "Document" shall also include, without limitation, electronically stored data from which information can be obtained either directly, indirectly, or by translation through detection devices or readers, and any such document is to be produced in a reasonably legible and usable form.

20.    "Identify" and "describe" when used in reference to a document or a writing shall mean to state the date of the document, or, if undated, the date upon which the document was sent or received, the identity of its author or originator, the identity of every person to whom it was addressed, the type of document (e.g., letter, memorandum, telegram, fax, chart, etc.), and its present location or custodian.

"Identify" and "describe" when used in reference to a communication shall mean to identify the persons participating in the communication, the nature, substance and subject matter of his or her the communication, the date of the communication, the witnesses to the communication, and state whether the communication was oral or written.

"Identify" and "describe" when used in reference to a person shall mean to state his or her name, residential address, occupation, job title, work address, age, and relationship, if any, to the parties to this action.

21.    "Relating to" or "concerning" shall mean and include referring to, pertaining to, consisting of, concerning, containing, constituting, reflecting, relating to, evidencing or describing.

## INSTRUCTIONS

1.    Before responding to this request for production you must make reasonable and diligent effort to obtain the requested information, including making inquiry of your agents, employees, accountants, representatives and attorneys.

2.    This request for production constitutes a continuing request pursuant to Rule 26(e) and requires supplemental responses up to and through the time of trial.

3.    If you claim that the attorney-client privilege or any other privilege is applicable to any communication or document sought by this request for production:

    (a)    state the date of the document or communication;

    (b)    identify each and every person who prepared or participated in the preparation of the document or in the communication;

    (c)    identify each and every person from whom the document or communication was received;

    (d)    identify each and every person who received the document or communication;

    (e)    state the present location of the document and all copies thereof;

    (f)    identify each and every person having possession, custody or control of the document and all copies thereof; and

    (g)    provide sufficient further information concerning the document or communication and the circumstances thereof to explain the claim of privilege and to permit the adjudication of the propriety of that claim.

4.    If any document described herein was, but no longer is, in your possession, custody or control, please state in detail:

    (a)    a summary of the contents of each document;

(b)     what disposition was made of the document;

(c)     the date of such disposition;

(d)     whether the original or a copy thereof is within the possession, custody or control of any other person; and

(e)     if the answer to (d) of this instruction is affirmative, identify that person.

5.     Any word written in the singular should be construed as plural and vice versa, and any use of the conjunctive should be construed as being in the disjunctive and vice versa.

6.     All documents produced in response to this request for production must be segregated in accordance with the numbered production requests below pursuant to Rule 34(b).

## REQUESTS FOR PRODUCTION

1.     All documents, from any time between January 1, 2004 to the present, relating to or concerning communications between and amongst Ronald Feiner, Esq., BVTV, Vila, Artists Agency and/or King World regarding negotiations of the agreement reached May 16, 2005 between King World and BVTV to distribute new episodes of the television program "Bob Vila's Home Again."

2.     All documents, from any time between January 1, 2003 to the present, relating to or concerning communications between and amongst King World, Artists Agency, Mind Share, Ogilvy & Mather, and/or Sears regarding a contemplated further amendment to the Distribution and Media Sales Agreement executed April 1, 1994 between Eyemark Entertainment, a unit of CBS Enterprises, a division of CBS Broadcasting Inc., and Sears, and amended September  1, 1999 between CBS Enterprises, a division of CBS Broadcasting Inc. and Sears.

3.     Copies of all press kits, media relations information, and promotional materials, from between January 1, 2004 to the present, relating to the 2005-2006 viewing season of the television show currently known as "Bob Vila," as well as all documents, from between January 1, 2004 to the present, relating to or concerning communications regarding said press kits, media relations information, and promotional materials.

4.     All accounting statements, financial statements, participation statements, reconciliation worksheets, reconciliation summaries, and ledger reports sent from King World to Sears from January 1, 2003 to the present relating to the television program "Bob Vila's Home Again."

**IF THE ABOVE-REFERENCED DOCUMENTS ARE PRODUCED BY APRIL 3, 2006, THEN THE WITNESS NEED NOT APPEAR.**

JULIUS BLUMBERG, INC.
PUBLISHER, NYC 10013

COURT    UNITES STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COUNTY OF

ROBERT J. VILA AND B.V.T.V., INC.,

                                    Plaintiff(s)

                against

SEARS, ROEBUCK AND COMPANY, ET AL.,

                                    Defendant(s)

Index No. 05-11717-REK

**AFFIDAVIT OF
SERVICE OF SUBPOENA
IN A CIVIL CASE**

STATE OF NEW YORK, COUNTY OF NEW YORK    SS:    The undersigned, being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides at SUNNYSIDE, NEW YORK

That on 3/22/06    at 3:07    P.M., at 1700 BROADWAY, NEW YORK, NEW YORK 10019-33RD FLOOR

deponent served the within subpoena on    BERNADINE GOLDBERG    witness therein named,
IN A CIVIL CASE    KEEPER OF RECORDS
                   KING WORLD PRODUCTIONS, INC./CBS ENTERPRISES

**INDIVIDUAL**  ☒  by delivering a true copy to said witness personally; deponent knew the person so served to be the witness described in said
1.             subpoena.

**CORPORATION**  ☐  a    corporation, by delivering thereat a true copy to
2.             personally, deponent knew said corporation so served to be the corporation witness and knew said individual to be
               thereof.

**SUITABLE AGE PERSON**  ☐  by delivering thereat a true copy to    a person of suitable age
3.             and discretion. Said premises is witness'—actual place of business—dwelling place—usual place of abode—within the state.

**AFFIXING TO DOOR, ETC.**  ☐  by affixing a true copy to the door of said premises, which is witness'—actual place of business—dwelling place—usual place
4.             of abode—within the state. Deponent was unable, with due diligence to find witness or a person of suitable age and discretion
               thereat, having called there

**MAILING TO RESIDENCE USE WITH 3 OR 4**  ☐  Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to witness
5A.            at witness' last known residence, at    and deposited
               said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

**MAILING TO BUSINESS USE WITH 3 OR 4**  ☐  Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class postpaid envelope properly
5B.            addressed to witness at witness' actual place of business, at
               in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore
               the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the
               communication was from an attorney or concerned an action against the witness.

**DESCRIPTION USE WITH 1, 2, OR 3** ☒

| ☐ Male | ☒ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☒ Female | ☐ Black Skin | ☒ Brown Hair | ☐ Balding | ☒ 21-35 Yrs. | ☒ 5'0"-5'3" | ☒ 100-130 Lbs. |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☐ 131-160 Lbs. |
| | ☐ Brown Skin | ☐ Gray Hair | ☐ Beard | ☐ 51-65 Yrs. | ☐ 5'9"-6'0" | ☐ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☒ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

At the time of said service, deponent paid (tendered) in advance $45.00    the authorized traveling expenses and one day's witness fee.

                JOHN DICANIO
             Notary Public, State of New York
Sworn to before me on    No. 01-DI4977768
3/23/06    Qualified in Westchester County
           Commission Expires Feb. 11, 2007

PRINT NAME BENEATH SIGNATURE
DI CONG JIANG

License No. ................................

EXHIBIT 14

Page 1

```
 1                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS
 2
                                      Civil Action
 3                                    No. 05-11717-WGY
 4
 5  * * * * * * * * * * * * * * * * **
                                     *
 6  ROBERT J. VILA and B.V.T.V., INC.,  *
                                     *
 7          Plaintiffs,               *
                                     *
 8  v.                                *    STATUS CONFERENCE
                                     *
 9  SEARS, ROEBUCK AND CO.,           *
    SEARS HOLDINGS CORPORATION        *
10  and KMART HOLDING CORPORATION,    *
                                     *
11          Defendants.               *
    * * * * * * * * * * * * * * * * **
12
13
                BEFORE:  The Honorable William G. Young,
14                       District Judge
15
16  APPEARANCES:
17
                LAW OFFICES OF JAMES F. O'BRIEN (By James
18      F. O'Brien, Esq.) 410 Park Avenue, Suite 1530,
        New York, New York 10022, on behalf of the
19      Plaintiffs
20
                GREENBERG TRAURIG, LLP (By Annapoorni R.
21      Sankaran, Esq.), One International Place, 20th
        Floor, Boston, Massachusetts 02110, on behalf of
22      the Defendants
23
24                                    1 Courthouse Way
                                      Boston, Massachusetts
25
                                      July 14, 2006
```

Page 2

1              THE CLERK:  Civil Action 05-11717, Vila v. Sears.

2              MR. O'BRIEN:  Good afternoon, your Honor.

3              THE COURT:  Yes, good afternoon.

4              Do you want to go to a magistrate judge in this

5     case?

6              MR. O'BRIEN:  No, your Honor.  In fact, we're ready

7     for trial right now and the earliest date the Court can give

8     us we're ready to go.

9              THE COURT:  Thank you very much.  That would be

10    September.  We'll put you on the running trial list for

11    September.  Agreed to that?

12             MS. SANKARAN:  Actually, your Honor, that wouldn't

13    work.  I have -- I'm actually getting married next month and

14    will be away for the beginning of September, as will my

15    co-counsel, so we would like an October date.

16             THE COURT:  How about -- I certainly will wait

17    until you get back.  But when are you getting back in

18    September?

19             MS. SANKARAN:  I'm getting back September 3rd, your

20    Honor.  So if the joint pretrial is due the month before it

21    sort of makes it difficult if I'm not around to get that

22    done.

23             (Whereupon the Court and the Clerk conferred.)

24             THE COURT:  All right.  How about October then?

25             MR. O'BRIEN:  I'm sorry, your Honor, October 16th,

1    which Judge Keeton -- we had earlier agreed in the joint

2    statement for a September trial date.

3              THE COURT:  All right.

4              MR. O'BRIEN:  When we appeared before Judge Keeton

5    at the initial scheduling conference, he had a trial

6    scheduled and wasn't able to accommodate us, thus became

7    April 16th.  Now it turns out my client is going to be away

8    in Europe from October 16th to October 31st.

9              THE COURT:  Well, let's do this.  Let's -- here's

10   what I want.  She's back the 3rd of September.  The final,

11   the final -- the joint pretrial memorandum is due the 11th

12   of September.  Monday, the 11th of September.

13             THE CLERK:  And we'll have a final pretrial

14   conference that day at two o'clock.

15             THE COURT:  Yes.  And we'll schedule the final

16   pretrial conference for that day, the 11th of September.

17             What's more, we'll put you on the running trial

18   list.

19             MR. O'BRIEN:  For September, your Honor?

20             THE COURT:  Well, it won't be before the 11th.

21             MR. O'BRIEN:  Right.

22             THE COURT:  And something, I'll get something

23   going.  So you're not going to go out on the 11th.  But

24   we'll work all those things through and we'll get the matter

25   to trial just as soon as we can.

Page 4

1           MS. SANKARAN:  One thing, your Honor, my

2    co-counsel, Gary Greenberg, who's the other partner working

3    on this case and will be doing the trial with me, is

4    scheduled to be on vacation, I believe the middle two weeks

5    of September.  So --

6           THE COURT:  Well, I mean, I'm waiting because

7    you're on vacation; now I'm waiting because he's on

8    vacation.

9           MS. SANKARAN:  I believe it's the only vacation

10   either of us have taken in over a year.

11          THE COURT:  I'm not faulting anyone.  But why don't

12   I just put it on the, put it on the running trial list for

13   the 5th, the day after Labor Day, and expect him, not you,

14   to do the joint -- that's just written.  I'm going on

15   vacation in August, too.  So we won't have the final

16   pretrial conference until early in September, and then we'll

17   get it to trial.  And you've told me his vacation dates.

18   And because I'm taking over for Judge Keeton, I'll try to

19   respect that.

20          (Whereupon the Court and the Clerk conferred.)

21          THE COURT:  Ms. Smith suggests the 6th for the

22   final pretrial conference.

23          MR. O'BRIEN:  Final pretrial?  That's fine, your

24   Honor.

25          THE COURT:  Right.

Page 5

1              MR. O'BRIEN:  As early as possible.  I just want to

2     make sure I understand before I leave your --

3              THE COURT:  Of course.  So it's on the September

4     running trial list.

5              MR. O'BRIEN:  Yes.

6              THE COURT:  We're going to have a final pretrial

7     conference on the 6th, two o'clock.  The joint proposed, the

8     joint pretrial memorandum is to be filed by Wednesday, the

9     2nd of August.  All right?

10             MR. O'BRIEN:  Fine.

11             THE COURT:  I will respect his two week vacation,

12    whenever it is.

13             MR. O'BRIEN:  Does that include Mr. Vila's?

14             THE COURT:  No, but she's going in August; she'll

15    be back.

16             MR. O'BRIEN:  So will -- I understand.

17             THE COURT:  All right.  Thank you.

18             MR. O'BRIEN:  Thank you, your Honor.

19             (Whereupon the matter concluded.)

20

21

22

23

24

25

Page 6

```
 1                  C E R T I F I C A T E

 2

 3

 4          I, Donald E. Womack, Official Court Reporter for

 5     the United States District Court for the District of

 6     Massachusetts, do hereby certify that the foregoing pages

 7     are a true and accurate transcription of my shorthand notes

 8     taken in the aforementioned matter to the best of my skill

 9     and ability.

10

11

12

13

14          _____

                      DONALD E. WOMACK

15                Official Court Reporter

                      P.O. Box 51062

16          Boston, Massachusetts 02205-1062

                    womack@megatran.com

17

18

19

20

21

22

23

24

25
```

EXHIBIT 15

# Ogilvy & Mather
### Advertising

676 St Clair Chicago, Illinois 60611
Telephone 1 312 988-2500 · Telex 255162 · Cable Ogilvy Chicago

~~Dr. ~~~~~~~~~~~ BOB VILA
Colton, Hartnick, Yamin & Sheresky
79 Madison Avenue
New York, NY  10016

September 29, 1989

Dear Bob Vila:

### Re:  Bob Vila Spokesperson Agreement

This will set forth the terms of the agreement between you and
us as agency for our client, Sears, Roebuck and Co., and Sears,
Roebuck and Co., whereby you agree to render personal services
in advertising Sears Home Improvement (Group 700-7) products
and services (hereinafter referred to as "product(s)") upon the
terms and conditions set forth below.

I.  **TERM**

   A.  The term of this agreement shall commence on October
       15, 1989 and continue through December 31, 1990
       ("first-term").

   B.  We shall have the option, if we so elect, to extend
       the term of this agreement for one additional year to
       commence on the first day after termination of the
       then preceding term by giving you notice no later
       than November 1, 1990.

II.  **NATURE OF SERVICES AND USE**

   We hereby engage the talent to render the following
   professional services to us as spokesperson, performer
   and participant in connection with the advertising of the
   Client's Products as follows:

   A.  Perform in as many  television commercials as we may
       designate;

   B.  Perform in as many recording sessions/radio
       commercials as we may designate;

   C.  Perform in as many videos or taped announcements for
       industrial use in-store as we may designate;

   D.  Pose for such number of still photographs as we may
       designate;

   E.  Make as many personal appearances as we may designate;

   F.  However, the total days worked shall not exceed 40
       days as defined under "Notice/Availability."



EXHIBIT
#13
1-24-06

P 0000086

- 2 -

G.  You hereby grant to us and our Client the right to use and re-use your name, approved likeness, (not be be unreasonably withheld) photograph, voice, signature, biography, testimonial and/or endorsement in all materials produced hereunder, including but not limited to the following forms of marketing activities:  (a) advertising -- television and radio commercials, magazine and newspaper ads (ROP or circulars), direct mail, catalogs; (b) industrial use -- POP videos and announcements; (c) promotional materials -- signs, brochures, posters, displays; (d) special merchandising -- premiums, give-aways, products; (e) new line items -- "how-to" audio/video casssettes, Craftsman/Vila products, etc. (points "a" through "e" termed "Advertising").

H.  You warrant and represent that you are familiar with the Client and Client's Products, recommend them, and will continue to recommend them throughout the Term (, and the Option Period(s) if any,) hereof.  Should it prove necessary, you shall cooperate with us in executing any affidavits, testimonial statements, or releases confirming such familiarity and recommendation which may be required for network clearance or legal reasons.  Such cooperation shall include, without limitation, using the product(s) which are the subject of such testimonial.

## Extent of Ownership and Use

All Advertising produced hereunder, all elements thereof,  shall be and remain the absolute property of our client forever.  We shall have full and complete right to copyright said Advertising; and to telecast, broadcast, use, reproduce, and/or exhibit the Advertising during the term hereof and for a period of sixty (60) days thereafter (for make-good purposes only) except for catalogs or in-store signage issued prior to termination of this agreement which may be used up until one year after date of issue.  Sears may telecast broadcast, use, reproduce, and/or exhibit the Advertising anywhere in the United States, its possessions and territories, Mexico and Canada ("Territory(s)") subject only to the provisions of this agreement and to the restrictions of any union or guild having jurisdiction hereof.

## Notice/Availability

We shall give you two (2) weeks prior notice of the date(s) and place(s) wherein you will render your services hereunder which services you shall then render, subject only to your prior bona fide contractual commitments which will not include the taping of the syndicated TV series.  However, we shall do our best to give more than 2 weeks notice where possible and will accommodate the taping of the syndicated TV series whenever possible.

– 3 –

It is understood that during the initial term, we will
have your services for a total of <u>40 working days (8 hour
days)</u>. Should you be required to perform your services
in excess of eight hours on any given day, you will be
compensated at the standard applicable union fees as
outlined in paragraph III. point one.

Working days shall be defined strictly as scale for those
periods when actually performing the requested service,
not travel to and from the worksite, weather days, rest,
etc.

<u>Manner of Rendering Service</u>

You agree to render your services hereunder in a
competent pain-stacking and artistic manner and to the
best of your ability. You will attend and participate in
all rehearsals, conferences and other such meetings that
we may deem necessary or advisable from time to time.
All of your services will be subject to our approval,
direction and control at all times and you will promptly
comply with whatever reasonable instructions, suggestions
and recommendations which may be given from time to time
in connection with the rendition of your services, on
behalf of the Product.

Television commercials or industrial videos to be
produced during the Initial Term (and any Option
Period(s)) shall be shot at such time(s) and place(s) as
we shall designate. The television commercial(s) may be
taped or filmed as we may determine. Should weather
conditions or any occurrence beyond our reasonable
control make it impractical or impossible to shoot, we
shall have the right to postpone such shoot(s) without
any additional compensation to you until such time(s) as
we may determine. We shall have the right to use the
footage shot to produce number of commercials or such
number of television commercials as we designate.

These commercials shall be of such length and may be used
in such a manner as we may determine (during the Initial
Term and the Option Period(s)) anywhere within the
Territory(s). We shall have the right to edit the
commercials for legal reasons, marketing reasons and time
requirements.

- 4 -

Recording session shall take place at such time(s) and place(s) as we shall designate. Should any occurrence beyond our reasonable control make it impossible or impractical to record, we shall have the right to postpone such session(s) without additional compensation to you until such time(s) as we may determine. During all recording sessions (whether within the Initial Term or any Option Period(s),) we may require the talent to record radio commercials and/or voiceover tracks to be used in connection with the television commercials, video or taped announcements, produced pursuant to this agreement. We shall have the right to use the recordings made to produce (such number of radio commercials as we determine. These commercials or taped announcements shall be of such length and may be used in such manner as we may determine (during the Initial Term and the Option Period(s) anywhere within the Territory(s). We shall have the right to edit the commercials for legal reasons, marketing reasons, and time requirements.

Still photographs to be shot (during the Initial Term and Options Period(s), if applicable,) shall be shot at such time(s) and place(s) as we shall designate. The photographs taken hereunder may be used, together with such copy as we choose, to produce such number of print advertisements (and promotional materials for store usage -- collateral materials, point of purchase, etc.) as we may determine. The print advertisements may be run by us in newspapers and/or magazines anywhere within the Territory(s). The promotional materials may be used by us in the same territory as the newspaper and magazine advertisements. We shall have the right to use the print materials produced during the Initial Term in the Option Period(s).

You shall make personal appearances at such time(s) and place(s) as we may designate. Personal appearance days may be consecutive or non-consecutive as we may determine, and talent may be required to make such appearances anywhere within the Territory(s).

III.    COMPENSATION

We agree to pay you, and you agree to accept, in consideration of all services rendered by you and the use of the results thereof, all rights granted by you to us, and all covenants and representations made by you, the following compensation:

Initial Term and First Option Period

1.  With respect to all services provided by you pursuant to this agreement, we shall pay you the applicable fees provided for in the respective contracts with the several unions having jurisdiction over the use and re-use of the commercials at scale. Overtime will be compensated at scale and a half (9-10 hours) and double scale (11 hours and beyond).

– 5 –

2.  We agree, however, that your guaranteed compensation
    with respect to all services provided by you pursuant
    to this agreement shall be the sum of $456,682
    ("Guarantee") plus the pension and welfare payment sum
    of $43,318, based on the standard 11.5% of the amount
    allocated to broadcast and industrial use ("P & W
    Guarantee").  The Guarantee shall be paid to you in 3
    payments.  The first $200,000 payment shall be payable
    within 15 days upon execution of this agreement.  The
    remaining Guarantee sum of $256,682 will be payable as
    follows:  $128,341 by January 1, 1990 and $128,341 by
    July 1, 1990.  The Guarantee shall also include
    payment for all other services to be performed by you
    hereunder, the use of materials produced from such
    services, and all rights granted and covenants,
    representations and warranties made by you herein.
    The Guarantee shall be allocated as follows:  a)
    $250,000 to your service in and the use of television
    materials; b) $100,000 to your service in and the use
    of radio materials, c) $26,682 to your services in
    video or taped announcements for industrial use; and
    d) $80,000 to your services in posing for still
    photographs and the use thereof, personal appearances,
    and all rights granted and covenants, representations
    and warranties made by you herein.  The
    aforementioned  Guarantee shall be credited against
    all payments that become due under the preceding
    paragraph.

    Should we exercise our option to renew, with respect
    to your services in the commercials, their use and
    re-use, we shall likewise pay you the applicable fees
    provided for in the respective contracts with the
    several unions having jurisdiction over the use and
    re-use of the commercials at scale.  We will allocate
    the compensation as we deem it appropriate in our sole
    discretion.

    Any sums that may become due under the appropriate
    union contract(s) by reason of or on account of
    additional rehearsal, holding fees and any other
    additional services covered by said union agreements
    in connection with the commercials shall be credited
    against the Guarantee.

    We agree to reimburse you for the actual amount of
    your and one other person's necessary and reasonable
    travel expenses incurred in connection with the
    performance of your services hereunder.  This shall
    specifically include:  first class  a) airfare; b)
    ground transportation; c) lodging and $100 per diem.
    You agree to provide us with documentation of such
    expenses upon request.

- 6 -

All payments to be made to you will be made subject
to such deductions as may be required by law, and you
shall be fully responsible for the payment for all
taxes required by federal, state and local laws.  All
payments will be sent to the following address:  B.V.
TV., ~~Colton, Hartnick, Yamin & Sheresky, 19 Madison~~
~~Avenue, New York, NY  10016.~~ P.O. BOX 749
MALSTONS MILLS, MA. 02648
You will be responsible for all payments to be made
to any agent, broker, or other third party with
respect to the services rendered by you and the
rights granted by you hereunder.

IV.    <u>COMPETITIVE PROTECTION</u>

During the terms of this agreement and for a period of 60
days thereafter, you will not render any services or make
any public statements for on behalf of, nor will you
permit your name, likeness, photograph, voice, biography
to be used in advertising, publicizing or promoting any
product or service other than the Product.  Under mutual
agreement, the one allowable exception is your current
job as a spokesperson for Time/Life home improvement
books.

You hereby commit to a termination schedule of any and
all existing services rendered companies other than the
Product and Time/Life per exhibit A.

IV.    <u>WARRANTY</u>

1.    <u>Testimonial Capacity</u>

You warrant and represent that the statements made by
you in connection with the commercial and the Product
represents your actual belief and personal experience
and you will provide an affidavit to such effect. You
also warrant that you will comply with all relevant
Federal Trade Commission guidelines on endorsements
and testimonials as directed by Ogilvy & Mather.

2.    <u>Contractual Capacity</u>

You and we further warrant and represent that you
have full right to enter into this agreement and that
you are free to perform all of your obligations
hereunder without violating the legal or equitable
rights of anyone.

P 0000091

- 7 -

VII.    MISCELLANEOUS PROVISIONS

1.    Services Unique

It is understood and agreed that the services to be
performed by you and the rights and privileges granted
to us hereunder are of special, unique, unusual,
extraordinary and intellectual character, giving them a
peculiar value.

2.    Pay or Play

We shall not be required to request your services at
any time or to utilize your services or the product of
your services, it being understood that, subject to
articles VII. 6., 7., 9., and 10. hereof, our only
obligation shall be to make the payments required
pursuant to the provisions of Article III. hereof.

3.    Union Membership

You warrant, represent and agree that you are a member
of the American Federation of Television and Radio
Artists and of Screen Actors Guild, and will remain a
member in good standing for the duration of this
agreement.

4.    Indemnities

You will at all times indemnify and hold harmless us
and our client and our and their respective licensees
and assigns from and against any and all claims,
damages, liabilities, costs and expenses, including
counsel fees, arising out of any material breach by you
of any representation, warranty, or agreement made by
you herein.

We shall similarly indemnify you and hold you harmless
with respect to any claims, damages, liabilities, costs
and expenses, including counsel fees, with respect to
all material in the Advertising supplied by us, as well
as any product liability actions that may be brought
against you, us and/or our client.

5.    Ownership of Materials

You acknowledge that you have no right, title or
interest, and agree that you will not claim any, in or
to any of the materials produced hereunder.

– 8 –

## 6. Breach

If you or we at any time commit a material breach of any provision of this agreement or at any time fail or refuse to fulfill your material obligations hereunder, then we may terminate this agreement forthwith. Further, in such event, we shall also be entitled to all available legal and equitable remedies which we may have.

In the event that this contract is terminated pursuant to this paragraph, you shall nevertheless be entitled to all payment accrued, including the pro rata portion of the compensation under this contract up to and including the date of such termination.

## 7. Morals

If you have committed or shall commit any act, or have or do become involved in any situation or occurrence bringing you into public disrepute, contempt, scandal or ridicule, or shocking, insulting, or offending the people of this nation or any racial or religious group thereof, or reflecting unfavorably upon our reputation or our Products, then we shall have the right to immediately terminate this agreement. Our decision on all matters arising under this paragraph shall be conclusive and shall be based on our judgment as to whether or not your act or involvement has harmed or may be harmful in a significant respect; provided that our decision to terminate hereunder must be exercised, if at all, not later than sixty 60 days after the facts giving rise to such right under this paragraph are brought to our attention. Should a termination take place, ours and your remedies shall be those set forth in Article VII. 6. above.

## 8. Force Majeure

If for any reason, such as strikes, boycotts, war, Acts of God, labor troubles, riots, delays of commercial carriers, or restraints or public authority, we shall be unable to use and or re-use any of the materials produced hereunder during any period of the Initial Term (or Option Period, if any,) hereof, (as applicable,) then we shall have the right to extend the Initial Term (or Option Period, if any,) hereof for an equivalent period without any additional compensation to you. However, this period shall not exceed 3 months. If the period exceeds 3 months, both parties shall be released from the contract.

– 9 –

9. <u>Death</u>

In the event of your death during the Initial Term (or Option Period, if any) hereof, we shall have the right to elect either: (i) to have this agreement continue in full force and effect with respect to all terms and conditions except those pertaining to your performance of services; or (ii) to terminate all usage permitted hereunder immediately following death. In the event we elect to terminate usage of the materials produced hereunder, the applicable Guarantee set forth in Article III. above shall be equitably prorated to the date of death, and, if necessary, your agent agree to promptly refund any overpayment.

10. <u>Illness</u>

If during the Initial Term or any Option Period hereof, you should fail to fulfill your obligations hereunder due to illness, injury, accident, or significant change in physical appearance or voice, then we shall have the right to terminate this agreement if you are prevented from rendering services for four (4) or more consecutive weeks. In such event, we shall have no obligation to make any payments to you if you have not performed any services. However, if you have already performed some services, we shall have the right to either: (i) use the materials already produced hereunder upon making any payments required under Article II. hereof, or (ii) choose not to continue using the materials produced hereunder, in which case the applicable Guarantee shall be equitably prorated to the date we cease using the materials and, if necessary, you agree to promptly refund any overpayment.

11. <u>Full Power</u>

You and we represent that you have the full right and authority to enter into this agreement.

12. <u>Notices</u>

Service of all notices under this agreement shall be sufficient if given personally, mailed return receipt requested, or telegraphed to the General Counsel of Ogilvy & Mather, New York, NY or to you at the address set forth above. Any notice given personally or mailed shall be deemed to have been given on the date reflected on the receipt evidencing delivery, and any notice telegraphed shall be deemed to have been given on the day it is deposited with the telegraph company for transmission.

P 0000094

– 10 –

13. <u>Fan Mail</u>

Any and all mail addressed to the talent and received by us from the public in connection with the results of the services hereunder shall be and shall remain our property. However, such mail shall be made available upon your request for review and copying.

14. <u>Waiver</u>

The failure by either of us to exercise rights granted to us herein upon the occurrence of any of the contingencies set forth in this agreement shall not constitute a waiver of such rights upon the reoccurrence of such contingency.

15. <u>Entire Understanding</u>

This agreement constitutes the entire understanding between you and us in respect to the subject matter hereof, and supersedes all prior agreements. No waiver, modification or addition to this agreement shall be valid unless in writing and signed by the parties hereto.

16. <u>Law Governing</u>

This agreement shall be construed in accordance with the law of the State of Illinois.

17. <u>Interviews, Advertising and Publicity</u>

You will not authorize or release advertising matter or publicity, or give interviews which make reference to your engagement hereunder without our prior written approval, provided, that the talent may make limited casual references to your performance of services hereunder.

18. <u>Confidentiality</u>

You shall hold in strict confidence all information obtained from Sears with respect to Sears operations, plans, and programs, and not divulge or reveal such information to any other persons.

— 11 —

18. **Applicable Union Agreements**

This agreement is subject to all of the terms and conditions of the respective contracts of the union(s) having jurisdiction over services covered by this agreement, as such contracts may be superseded, amended, or supplemented.

Please confirm your acceptance of and agreement to the foregoing by affixing your signature in the place indicated below.

Talent

By _____

Bob Vila

Soc. Sec. # 261 900 699

Sears, Roebuck and Co.

By _____

Bill Patterson
Vice President,
Home Improvements Group

Ogilvy & Mather/Chicago

By _____  (10-3-89)

Ole Riise
Vice President,
Account Supervisor

P 0000096

Exhibit 1

e 08 1990 13:05  FROM        COLTON,HARTNICK        TO        15034281954 P.05

**OGILVY AND MATHER**
676 North St. Clair
Chicago, IL  60611

June 8, 1990

Mr. Bob J. Vila
c/o Ronald E. Feiner, Esq.
79 Madison Avenue
New York, New York  10016

Re:  <u>Amendment to Bob Vila's Spokesperson Agreement</u>

Dear Bob:

An agreement has heretofore been entered into dated September 29th, 1989 between you and us as agency for our client, Sears Roebuck and Co. whereby you agreed to render personal services as a spokesperson for Sears Home Improvement (Group 700-7) Products and Services (the "Agreement").  We are all desirous at this time of extending the term of the Agreement as well as other certain terms and conditions contained therein.  The following therefore constitutes the Amendment to the Agreement.

Paragraph "I.  <u>Term</u>" shall be deemed amended by adding thereto a new sub-paragraph C which shall read as follows:

> "C.  We shall have the option, if we so elect, to extend the term of this agreement for three (3) successive three year extensions (Extension I 1992, 1993, 1994, Extension II 1995, 1996, 1997 and Extension III 1998, 1999, 2000.)  On or before

September 1, before the expiration of the option term or each subsequent extension, we shall have the option of giving you notice to extend for the next extension period."

The paragraph on the top of page 3 which refers to "40 working days" unless desired by Sears, shall be deemed not to include personal appearances made by you on behalf of the television show entitled "Home Again with Bob Vila" or any other "non-advertising activities" including NATPE, media interviews, and industry events. Notwithstanding the foregoing, it is understood that you shall have absolute approval over all such personal appearances which are not counted toward your forty (40) day commitment.

Also in the same paragraph on top of page 3, it is now hereby agreed that you shall not be required on any of these "40 working days" to work more than ten hour days. Additionally, we agree to use our best efforts to give you a minimum of 60 days advance notice as to when your services will be required pursuant to this Agreement.

Paragraph III. <u>Compensation.</u> The subheading title "Initial Term and First Option Period" shall be deemed amended to read "Initial Term, First Option Period and Extensions I, II and III ".

- 2 -

P 0000099

The guarantee referred to in subparagraph 2 shall be increased on a 10% cumulative increase each year of the contract (on the base of $500,000) with said 10% increase to begin on January 1, 1992 (e.g., $550,000 for contract year 1992, $605,000 for 1993, $665,500 for 1994, etc.)  Each guarantee commencing with January 1, 1990 shall be payable on a yearly basis in two equal installments due and payable on January 5 and July 1 of each year.

Paragraph IV shall be amended to add the following:

"American Electric Power shall have the right to use you as a spokesperson through December of 1990 (with expenditures not to exceed Two Million ($2,000,000) Dollars for 1990) and the companies listed on the attached schedule shall be permitted to continue to use the generic heat pump advertisements through the periods indicated on the attached schedule.  It is understood that you have no further obligations under these agreements which will in any way affect your performance under this Agreement and that all uses mentioned herein will be of material which has been shot prior to your contract with us."

It is understood by the parties hereto that the Agreement and this Amendment are to be construed and exist separate and apart from the "Bob Vila Syndicated Television Programs" Agreement and Amendment.

Except for the foregoing, all of the terms and conditions of the Agreement are hereby ratified and affirmed.

- 3 -

Please confirm your acceptance of and agreement to the foregoing amendment by affixing your signature in the place indicated below.

Talent:

Bob Vila
SS#: 261-900-699

Sears, Roebuck and Co.

By: _____
    Bill Patterson
    Vice President,
    Home Improvements Group

Ogilvy & Mather/Chicago

By: _____
    Ole Riise
    Vice President,
    Account Supervisor

/76FF:90:05:30

- 4 -

P 0000101

Exhibit 2

P 0000102

OGILVY & MATHER

676 North St. Clair

Chicago, IL 60611


December 3, 1990


Mr. Bob J. Vila
c/o Ronald E. Feiner, Esq.
79 Madison Avenue
New York, New York 10016


RE: <u>Amendment II to Bob Vila's Spokesperson Agreement</u>

Dear Bob:


An agreement has heretofore been entered into dated

September 29, 1989 between you and Ogilvy & Mather, as

advertising agency for Sears, Roebuck and Co., whereby you agreed

to render personal services as a spokesperson for Sears Home

Improvement (Group 700-7) Products and Services (the

"Agreement"). Said Agreement was subsequently amended on June 8,

1990. We are all desirous at this time of extending the term of

the Agreement as well as modifying other certain terms and

conditions contained therein. The following therefore

constitutes Amendment II to the Agreement.

Mr. Bob J. Vila

December 3, 1990

Page Two


Paragraph "I.  TERM"  Subparagraph A shall be deleted in its

entirety and the following language substituted:

    A.  The term of this Agreement shall commence on

        January 1, 1991, and continue through December 31, 1991.


    Subparagraph B shall be amended by changing the date for

notice of renewal of the Agreement from November 1, 1990 to

November 1, 1991.


Paragraph "III.  COMPENSATION" shall be amended by changing the

dates for payment of guaranteed compensation from January 1,

1990, and July 1, 1990 to January 1, 1991 and July 1, 1991,

respectively.  The guaranteed compensation for 1991 shall be Five

Hundred Thousand ($500,000.00) Dollars in accordance with the

terms of paragraph III of the Agreement.


Paragraph "IV.  COMPETITIVE PROTECTION" shall be amended by

adding the following language:


    You represent that you currently have no contractual

    obligation to film any more commercials for Time/Life.  In

    the event you are called upon to enter into such an

Mr. Bob J. Vila

December 3, 1990

Page Three


agreement or are asked to appear in any Time/Life
advertisement, you agree to give Sears, during the term of
this Agreement and for sixty (60) days thereafter, the right
to approve or disapprove of your participation in any future
Time/Life advertising.


Please confirm your acceptance of and agreement to the
foregoing amendment by affixing your signature in the place
indicated below.


**Talent:**                              **Sears, Roebuck and Co.**

By: _____

Bob Vila                                 Bill Patterson
SS#:  261-900-699                        Vice President,
                                         Home Improvements Group



                                         **Ogilvy & Mather/Chicago**

                                         By: _____

                                         David Wurfel
                                         Vice President,
                                         Account Media Director


P 0000105

Exhibit 3

AMENDMENT #3

OGILVY AND MATHER
676 North St Clair
Chicago, IL 60611

December 3, 1991

Mr. Bob Vila
c/o Ronald E. Feiner, Esq.
79 Madison Avenue
New York, N.Y. 10016

RE:  Amendment III to Bob Vila Spokesperson Agreement

Dear Bob:

        An Agreement has heretofore been entered into dated
September 29, 1989, between you and Ogilvy & Mather, as
advertising agency for Sears, Roebuck and Co., whereby you
agreed to render personal services as a spokesperson for Sears
Home Improvement Group (Department 700-7).  Said Agreement was
subsequently amended on June 8, 1990 (Amendment I) and December
3, 1990 (Amendment II).  We are all desirous at this time of
extending the term of the Agreement, as well as modifying other
terms and conditions contained therein.  The following
constitutes Amendment III to the Agreement.

Paragraph I.  TERM

        Subparagraph A. shall be amended by changing the dates
for the term of this Agreement from January 1, 1991 through
December 31, 1991, to January 1, 1992 through December 31,
1992, respectively.

        Subparagraph B. shall be amended by changing the date
for notice of renewal of the Agreement from November 1, 1991 to
August 1, 1992.

        Subparagraph C., as added by Amendment I dated June 8,
1990, shall be deleted in its entirety and the following
language substituted:

        "C.  We shall have the option, if we so elect, to
extend the term of this Agreement for eight (8) successive
one-year extensions through the year 2000 by August 1 of each
year.

Paragraph III.  COMPENSATION

        Paragraph III shall be amended by changing the dates

for payment of guaranteed compensation from January 1, 1991 and July 1, 1991, to January 2, 1992 and July 1, 1992, respectively.  The guaranteed compensation for 1992 shall be Five Hundred Fifty Thousand Dollars ($550,000.00) in accordance with the terms of Paragraph III of the Agreement.

It is understood by the parties that the Agreement and its Amendments are to be construed and exist separate and apart from the "Bob Vila Syndicated Television Programs" Agreement and Amendment.

Except for the foregoing, all of the terms and conditions of the Agreement are hereby ratified and affirmed.

Please confirm your acceptance of and agreement to this Amendment by signing your name in the place indicated below.

TALENT:                              SEARS, ROEBUCK AND CO.


Bob Vila                             By: _____
SS# 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                          Bill Patterson
                                         Vice President,
                                         Home Improvement Group


                                     OGILVY & MATHER/CHICAGO


                                     By: _____
                                         Charles Otto
                                         Management Supervisor
                                         Vice President

2007F

-2-

P 0000108

Exhibit 4

P 0000109

AMENDMENT #4

**OGILVY & MATHER**
676 North St. Clair
Chicago, Illinois  60611

July 13, 1992

Mr. Bob Vila
c/o Ronald E. Feiner, Esq.
79 Madison Avenue
New York, New York  10016

RE:  Amendment IV to Bob Vila Spokesperson Agreement

Dear Bob:

An Agreement has heretofore been entered into dated September 29, 1989, between you and Ogilvy & Mather, as advertising agency for Sears, Roebuck and Co., whereby you agreed to render personal services as a spokesperson for Sears Home Improvement Group (Department 700-7).  Said Agreement was subsequently amended on June 8, 1990 (Amendment I), December 3, 1990 (Amendment II), and December 3, 1991 (Amendment III).  We are all desirous at this time of extending the term of the Agreement, as well as modifying other terms and conditions contained therein.  The following constitutes Amendment IV to the Agreement.

Paragraph I.  TERM

Subparagraph A. shall be amended by changing the dates for the term of this Agreement from January 1, 1992 through December 31, 1992, to January 1, 1993 through December 31, 1993, respectively.

Paragraph III.  COMPENSATION

Paragraph III shall be amended by changing the dates for payment of guaranteed compensation from January 1, 1992 and July 1, 1992, to January 2, 1993, and July 1, 1993, respectively.  The guaranteed compensation for 1993 shall be Six Hundred Five Thousand Dollars ($605,000.00) in accordance with the terms of Paragraph III of the Agreement.

It is understood by the parties that the Agreement and its Amendments are to be construed and exist separate and apart from the "Bob Vila Syndicated Television Programs" Agreement and Amendment.

Except for the foregoing, all of the terms and conditions of the Agreement are hereby ratified and affirmed.

Please confirm your acceptance of and agreement to this Amendment by signing your name in the place indicated below.

TALENT:                                          SEARS, ROEBUCK AND CO.


                                                 By: _____
_____                             Marv Stern
Bob Vila                                               Vice President
SS# 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                                        Home Improvement Group



                                                 OGILVY & MATHER/CHICAGO


                                                 By: _____
                                                      Charles Otto
                                                      Management Supervisor
                                                      Vice President



2007F


P 0000111

Exhibit 5

P 0000112

**AMENDMENT # 5**

**OGILVY & MATHER**
**676 North St. Clair**
**Chicago, Illinois 60611**

November 15, 1993

Mr. Bob Vila
c/o Ronald E. Feiner, Esq.
Kaufmann, Feiner, Yamin,
   Gildin & Robbins
777 Third Avenue
New York, New York 10017

RE:   <u>Amendment V to Bob Vila Spokesperson Agreement (Year V)</u>

Dear Bob:

An Agreement has heretofore been entered into dated September 29, 1989, between you and Ogilvy & Mather, as advertising agency for Sears, Roebuck and Co., whereby you agreed to render personal services as a spokesperson for Sears Home Improvement Group (Department 700-7). Said Agreement was subsequently amended on June 8, 1990 (Amendment I), December 3, 1990 (Amendment II), December 3, 1991 (Amendment III) and July 13, 1992 (Amendment IV). We are all desirous at this time of extending the term of the Agreement, as well as modifying other terms and conditions contained therein. The following therefore constitutes Amendment V to the Agreement.

**Paragraph I.  TERM**

Subparagraph A. shall be amended by changing the dates for the term of this Agreement from January 1, 1993 through December 31, 1993 to January 1, 1994 through December 31, 1994, respectively.

**Paragraph III.  COMPENSATION**

Paragraph III shall be amended by changing the dates for payment of guaranteed compensation from January 1, 1993 and July 1, 1993 to January 1, 1994 and July 1, 1994, respectively. The guaranteed compensation for 1994 shall be Six Hundred Sixty Five Thousand Five Hundred Dollars ($665,500.00) in accordance with the terms of Paragraph III of the Agreement.

P 0000113

Page Two


Except for the foregoing, all of the terms and conditions of the Agreement are hereby ratified and affirmed.

Please confirm your acceptance of and agreement to this Amendment by signing your name in the place indicated below.

TALENT:                                  SEARS, ROEBUCK AND CO.

_____                  BY: _____
Bob Vila                                     Jerry Post
SS# 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                              Vice President
                                             Home Improvement Group


                                         OGILVY & MATHER/CHICAGO


                                         By: _____
                                             Charles Otto
                                             Management Supervisor
                                             Vice President

Exhibit 6

P 0000115

**AMENDMENT # 6**

**OGILVY & MATHER**
676 North St. Clair
Chicago, Illinois 60611

October 21, 1994

Mr. Bob Vila
c/o Ronald E. Feiner, Esq.
Kaufmann, Feiner, Yamin,
  Gildin & Robbins
777 Third Avenue
New York, New York 10017

RE:  Amendment VI to Bob Vila Spokesperson Agreement (Year VI)

Dear Bob:

An Agreement has heretofore been entered into dated September 29, 1989, between you and Ogilvy & Mather, as advertising agency for Sears, Roebuck and Co., whereby you agreed to render personal services as a spokesperson for Sears Home Improvement Group (Department 700-7).  Said Agreement was subsequently amended on June 8, 1990 (Amendment I), December 3, 1990 (Amendment II), December 3, 1991 (Amendment III), July 13, 1992 (Amendment IV) and November 15, 1993 (Amendment V).  We are all desirous at this time of extending the term of the Agreement, as well as modifying other terms and conditions contained therein.  The following therefore constitutes Amendment VI to the Agreement.

Paragraph I.  TERM

Subparagraph A. shall be amended by changing the dates for the term of this Agreement from January 1, 1994 through December 31, 1994 to January 1, 1995 through December 31, 1995, respectively.

Paragraph III.  COMPENSATION

Paragraph III shall be amended by changing the dates for payment of guaranteed compensation from January 1, 1994 and July 1, 1994 to January 1, 1995 and July 1, 1995, respectively.  The guaranteed compensation for 1995 shall be Seven Hundred Thirty Two Thousand and Fifty Dollars ($732,050.00) in accordance with the terms of Paragraph III of the Agreement.

Page Two

    Except for the foregoing, all of the terms and conditions of the Agreement are hereby ratified and affirmed.

    Please confirm your acceptance of and agreement to this Amendment by signing your name in the place indicated below.

TALENT:

Bob Vila
/SS# 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

SEARS, ROEBUCK AND CO.

By: _____
    Jerry Post
    Vice President
    Home Improvement Group

OGILVY & MATHER/CHICAGO

By: _____
    Charles Otto
    Management Supervisor
    Vice President

Exhibit 7

P 0000118

**AMENDMENT # 7**

OGILVY & MATHER
676 North St. Clair
Chicago, Illinois 60611

November 17, 1995

Mr. Bob Vila
c/o Ronald E. Feiner, Esq.
Kaufmann, Feiner, Yamin,
    Gildin & Robbins
777 Third Avenue
New York, New York 10017

RE: Amendment VII to Bob Vila Spokesperson Agreement (Year VII)

Dear Bob:

An Agreement has heretofore been entered into dated September 29, 1989, between you and Ogilvy & Mather, as advertising agency for Sears, Roebuck and Co., whereby you agreed to render personal services as a spokesperson for Sears Home Improvement Group (Department 700-7). Said Agreement was subsequently amended on June 8, 1990 (Amendment I), December 3, 1990 (Amendment II), December 3, 1991 (Amendment III), July 13, 1992 (Amendment IV), November 15, 1993, (Amendment V) and October 21, 1995 (Amendment VI). We are all desirous at this time of extending the term of the Agreement, as well as modifying other terms and conditions contained therein. The following therefore constitutes Amendment VII to the Agreement.

**Paragraph I.   TERM**

Subparagraph A. shall be amended by changing the dates for the term of this Agreement from January 1, 1995 through December 31, 1995 to January 1, 1996 through December 31, 1996, respectively.

**Paragraph III.   COMPENSATION**

Paragraph III shall be amended by changing the dates for payment of guaranteed compensation from January 1, 1995 and July 1, 1995 to January 1, 1996 and July 1, 1996, respectively. The guaranteed compensation for 1996 shall be Eight Hundred and Five Thousand Two Hundred and Fifty-Five Dollars ($805,255.00) in accordance with the terms of Paragraph III of the Agreement.

Page Two


Except for the foregoing, all of the terms and conditions of the Agreement are hereby ratified and affirmed.

Please confirm your acceptance of and agreement to this Amendment by signing your name in the place indicated below.

TALENT:

_____
Bob Vila
SS# 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

SEARS, ROEBUCK AND CO.

By: _____
Jerry Post
Vice President
Home Improvement Group


OGILVY & MATHER/CHICAGO

By: _____
Bill Reishtein
Management Supervisor
Vice President

P 0000120

Exhibit 8

P 0000121

**AMENDMENT # 8**

**OGILVY & MATHER**
**676 North St. Clair**
**Chicago, Illinois 60611**

December 18, 1996

Mr. Bob Vila
c/o Ronald E. Feiner, Esq.
Kaufmann, Feiner, Yamin,
   Gildin & Robbins
777 Third Avenue
New York, New York 10017

RE:   **Amendment VIII to Bob Vila Spokesperson Agreement**
      **(Year VIII and Years IX)**

Dear Bob:

   An Agreement has heretofore been entered into dated September
29, 1989, between you and Ogilvy & Mather, as advertising agency
for Sears, Roebuck and Co., whereby you agreed to render personal
services as a spokesperson for Sears Home Improvement Group
(Department 700-7).   Said Agreement was subsequently amended on
June 8, 1990 (Amendment I), December 3, 1990 (Amendment II),
December 3, 1991 (Amendment III), July 13, 1992 (Amendment IV),
November 15, 1993, (Amendment V), October 21, 1994 (Amendment VI)
and November 17, 1995 (Year VII).   We are all desirous at this time
of extending the term of the Agreement, as well as modifying other
terms and conditions contained therein.   The following therefore
constitutes Amendment VII to the Agreement.

**Paragraph I.   TERM**

   Subparagraph A. shall be amended by changing the dates for the
term of this Agreement from January 1, 1996 through December 31,
1996 to January 1, 1997 through December 31, 1998, respectively.

**Paragraph III.  COMPENSATION**

Paragraph III shall be amended by changing the dates for payment of guaranteed compensation from January 1, 1996 and July 1, 1996 to January 1, 1997 and July 1, 1997 for Year VIII and January 1, 1998 and July 1, 1998 for Year IX respectively.  The guaranteed compensation for 1997 shall be Eight Hundred and Eighty-Five Thousand Seven Hundred and Eighty-Five Dollars ($885,785.00) and for 1998 shall be Nine Hundred and Seventy-Four Thousand Three Hundred and Fifty-Eight Dollars ($974,358.00) in accordance with the terms of Paragraph III of the Agreement.

Except for the foregoing, all of the terms and conditions of the Agreement are hereby ratified and affirmed.

Please confirm your acceptance of and agreement to this Amendment by signing your name in the place indicated below.

TALENT:                                   SEARS, ROEBUCK AND CO.

_____              By: _____
Bob Vila                                  Andy Ginger
SS# 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


                                          OGILVY & MATHER/CHICAGO

                                     By: _____
                                          Bill Reishtein
                                          Management Supervisor
                                          Vice President

Exhibit 9

P 0000124

[date]    1|5|99

Mr. Bob Vila
c/o Ronald E. Feiner, Esq.
Kaufmann, Feiner, Yamin, Gildin & Robbins
777 Third Avenue
New York, New York 10017

      Re:    **Amendment IX to Bob Vila Spokesperson Agreement
              (Years 10 through and including 15)**

Dear Bob:

      An Agreement dated September 29, 1989 has heretofore been entered into between you and Ogilvy & Mather, as advertising agency for Sears, Roebuck and Co. ("Sears")(the "Agreement"), whereby you agreed to render personal services as a spokesperson for Sears Home Improvement Group (Department 700-7). The Agreement was subsequently amended on June 8, 1990 (Amendment I), December 3, 1990 (Amendment II), December 3, 1991 (Amendment III), July 13, 1992 (Amendment IV), November 15, 1993 (Amendment V), October 21, 1994 (Amendment VI), November 17, 1995 (Amendment VII), and December 18, 1996 (Amendment VIII). We are all desirous at this time of extending the term of the Agreement, as well as modifying other terms and conditions contained therein. The following therefore constitutes Amendment IX to the Agreement.

**1.**      **TERM**

      Paragraph I(A) of the Agreement shall be amended to extend the Term to December 31, 2004.

**2.**      **COMPENSATION**

      Paragraph III of the Agreement shall be amended such that the guaranteed compensation for the respective years shall be as follows:

P 0000125

1999 - $1,072,000.00 (original contract)
2000 - $1,180,000.00
2001 - $1,300,000.00
2002 - $1,430,000.00
2003 - $1,575,000.00
2004 - $1,725,000.00

Each year, one half of the guaranteed sum for that year shall be paid on January 1 and the other half on July 1.

3.  **OPTION TO RENEW**

Sears shall have to option to renew the Agreement for the Year 2005 at a guaranteed sum of $1,897,500.00.

4.  **COMMISSION**

Vila shall receive a commission on Sears products sold by direct marketing on television commercials in which Vila appears and/or are directly connected to a product endorsement on the Internet. Said commission shall be limited to those sales made by phone and/or mail and/or on the Internet or any other electronic means which may be developed during the Term of this Agreement. Such sales shall not include store sales. Said commission shall be one (1%) percent of gross on each item sold. Said commissions shall be made quarterly to Vila and shall be capped each year at $100,000

5.  **AVAILABILITY**

The first sentence of the second paragraph of the Section of the Agreement entitled Notice/Availability shall be deleted in its entirety and replaced with the following:

"It is understood that during the Term of this Agreement, Sears will have your services for a total of thirty -five (35) working days (eight hour days)."

6.  **COMPETITIVE PROTECTION**

The first sentence of Paragraph IV of the Agreement shall be deleted in its entirety and replaced with the following:

"During the Term of this Agreement and for a period of six (6) months thereafter, you will not render any services or make any public statements for or on behalf of, nor will you permit your name, likeness, photograph, voice or biography to be used in, advertising publicizing or promoting any product or service other than the Product. Vila may submit a written proposal to

2

Sears to promote additional products and services. Sears shall have thirty (30) days to approve or reject Vila's proposal(s). Sears approval shall not be unreasonably withheld. If approved, such additional products and services shall be "approved products and services". Current approved products and services include:

1)   Home 1-2-3 Mortgage Company
2)   Department of Housing and Urban Development ("HUD")
3)   Presley Homes
4)   IMT Technology/Surge Plunge 2000
5)   Allergy Free

Products and services currently being reviewed for approval include:

1)   Bob Vila branded clothing.

Further, although Vila shall have the right to appear in any non-sponsored media without Sears prior approval, Vila shall submit a written proposal to Sears to appear in any sponsored media. Sears shall have thirty (30) days to approve or reject Vila's proposal(s) to appear in sponsored media. Sears approval shall not be unreasonably withheld.

7.   **CANCELLATION OF TELEVISION SHOW**

If the Bob Vila Home Again television show is canceled for any reason, Sears has the right to terminate this Agreement effective the 31st day of December following the notice of cancellation.

8.   **CONTINGENCY**

This Agreement is contingent upon the execution of Amendment No. 10 to the Bob Vila Syndicated Television Program Agreement dated September 28, 1989 ("BVTV Agreement").

Except for the foregoing, all of the terms and conditions of the Agreement and all amendments relating thereto which are not inconsistent with the foregoing are hereby ratified and affirmed.

Acceptance of and agreement to this Amendment is confirmed by signing your name in the place indicated below.

**BOB VILA**                          **SEARS, ROEBUCK AND CO.**

Date: Dec 21/98                       Date: Jan 4, 1999
By: _____                   By: _____

3

P 0000127

Exhibit 10

P 0000128

December 1, 2000

Mr. Bob Vila
c/o Ronald E. Feiner, Esq.
Kaufmann, Feiner, Yamin, Gildin & Robbins
777 Third Avenue
New York, NY 10017

      Re:    Amendment X to Bob Vila Spokesperson Agreement
               (Years 10 through and including 20)

Dear Bob:

    An Agreement dated September 29, 1989 has heretofore been entered into between you and Ogilvy & Mather, as advertising agency for Sears, Roebuck and Co. ("Sears") (the "Agreement"), whereby you agreed to render personal services as a spokesperson for Sears Home Improvement Groups. The Agreement was subsequently amended on June 8, 1990, (Amendment I), December 3, 1990 (Amendment II), December 3, 1991 (Amendment III), July 13, 1992 (Amendment IV), November 15, 1993 (Amendment V), October 21, 1994 (Amendment VI), November 17, 1995 (Amendment VII), December 18, 1996 (Amendment VIII), and January 5, 1999 (Amendment IX). We are all desirous at this time of extending the term of the Agreement, as well as modifying other terms and conditions contained therein. The following therefore constitutes Amendment X to the Agreement.

1.    **TERM**

    Paragraph I(A) of the Agreement shall be amended to extend the Term through December 31, 2009.

2.    **COMPENSATION**

    Paragraph III of the Agreement shall be amended such that the guaranteed compensation for the respective years shall be as follows:

| | |
|---|---|
| 1999 - $1,072,000.00 (original contract) | 2005 - $1,897,500.00 |
| 2000 - $1,180,000.00 | 2006 - $2,087,250.00 |
| 2001 - $1,300,000.00 | 2007 - $2,295,975.00 |
| 2002 - $1,430,000.00 | 2008 - $2,525,572.00 |
| 2003 - $1,575,000.00 | 2009 - $2,778,129.00 |
| 2004 - $1,725,000.00 | |

P 0000129

DEC.21.2000    1:06PM    SEARS STRATEGIC MKTG                    NO.756    P.4/4

Vila Spokesperson Agreement
Amendment X
Page Two

Each year, one half of the guaranteed sum for that year shall be paid on January 1 and the other half on July 1.

3.    Paragraph 4 of Amendment IX is deleted in its entirety subject to final accounting through December 31, 2000.

4.    Paragraph 7 of Amendment IX shall remain in effect during the current term and any extension of that certain Bob Vila Syndicated Television Program Agreement dated September 29, 1989, as amended, between Ogilvy & Mather, as agent for Sears, and B.V.T.V., Inc.

5.    This preamble to the Agreement is amended to delete the words "(Group 700-7)."

Except for the foregoing, all of the terms and conditions of the Agreement and all amendments relating thereto which are not inconsistent with the foregoing are hereby ratified and affirmed

Acceptance of and agreement to this Amendment is confirmed by signing your name in the place indicated below.

BOB VILA                         SEARS, ROEBUCK AND CO.

Date: _____           Date: _12/18/00____

By: _____             By: _____

P 0000130