UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT J. VILA and B.V.T.V., INC.,

      Plaintiffs,

v.

SEARS, ROEBUCK AND COMPANY,
SEARS HOLDINGS CORPORATION and
KMART HOLDING CORPORATION,

      Defendants.

Civil Action No. 05-11717-WGY

## **DEFENDANTS' MOTION FOR LEAVE TO FILE REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 7.1(B)(3), defendants Sears, Roebuck and Co. ("**Sears**"), Sears Holdings Corporation ("**SHC**") and Kmart Holding Corporation ("**Kmart**") (collectively "**Defendants**"), hereby move for leave to file its reply to Plaintiffs' Opposition To Defendants' Cross-Motion For Summary Judgment ("**Plaintiffs' Opposition**").  In support of this motion, Defendants state that a reply is necessary to respond to certain issues raised in Plaintiffs' Opposition related to the trademark HOME AGAIN and its entitlement to protection pursuant to 15 U.S.C. §1125(a).  A copy of the short reply brief Defendants seeks to file along with a supporting declaration is attached hereto as Exhibit A and B, respectively.

WHEREFORE, defendants Sears, Roebuck and Co., Sears Holdings Corporation, and Kmart Holding Corporation respectfully request that this Court grant it leave to file its Reply To Plaintiffs' Opposition To Defendants' Cross-Motion For Summary Judgment.

## <u>LOCAL RULE 7.1(A)(2) CERTIFICATE</u>

I, Annapoorni Sankaran, hereby certify that on July 26, 2006 I contacted counsel for plaintiff by electronic mail and attempted in good faith to resolve the issues regarding Defendants' Motion For Leave To File Reply To Plaintiffs' Opposition To Defendants' Cross-Motion For Summary Judgment.

/s/ Annapoorni R. Sankaran
Annapoorni R. Sankaran

**RESPECTFULLY SUBMITTED:**
SEARS HOLDINGS CORPORATION and
KMART HOLDING CORPORATION,
Defendants, and SEARS, ROEBUCK
AND CO.,  Defendant/Counterclaimant,
By their attorneys:

/s/ Annapoorni R. Sankaran
Gary R. Greenberg, BBO #209420
Annapoorni R. Sankaran, BBO #631065
GREENBERG TRAURIG, LLP
One International Place, 20th Floor
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (fax)

<u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 5.4, I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on July 27, 2006.

/s/ Annapoorni R. Sankaran
Annapoorni R. Sankaran

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT J. VILA and B.V.T.V., INC.,

     Plaintiffs,

v.

SEARS, ROEBUCK AND COMPANY,
SEARS HOLDINGS CORPORATION and
KMART HOLDING CORPORATION,

     Defendants.

Civil Action No. 05-11717-WGY

## DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Defendants Sears, Roebuck and Co. ("**Sears**"), Sears Holdings Corporation ("**Sears Holdings**"), and Kmart Holding Corporation ("**Kmart Holding**") (collectively "**Defendants**"), hereby submit Volume V of the Declaration of Annapoorni R. Sankaran (hereinafter "**Sankaran Declaration V**") and reply to Plaintiffs' Opposition to Defendants' Cross Motion For Summary Judgment ("**Plaintiffs' Opposition**") and state:

1.     As a preliminary matter, Defendants draw this Court's attention to the fact that in Plaintiffs' Opposition, plaintiffs Robert J. Vila ("**Vila**") and B.V.T.V., Inc. ("**BVTV**") (collectively "**Plaintiffs**"), failed to respond to paragraphs 1, 2, 3, 5, 7, 8, 9, 10, 11, 12, 14, 15, 17, 18, 21, 23, 25, 28, 29, 31, 34, 35, 36, 37, 38, 39, 42, 44, 45, 46, 47, 48, 49, 54, 62, 63, 64, 72, 73, and 74 contained in Defendants' Local Rule 56.1 Statement of Materials Facts Not In Dispute in their Opposition to Plaintiffs' Motion For Partial Summary Judgment and Cross-Motion for Summary Judgment. Accordingly, those facts are deemed admitted for the purposes of consideration of the cross motions for summary judgment. United States District Court for the

District of Massachusetts Local Rule 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for the purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties.").

2.    Contrary to Plaintiffs' argument in Plaintiffs' Opposition, "HOME AGAIN" is a trademark entitled to protection under 15 U.S.C. §1125(a).  Plaintiffs argue that HOME AGAIN is not entitled to protection because: the mark HOME AGAIN never acquired secondary meaning; the name of the home improvement television show was never "Home Again;" the words "Home Again" were never used in commerce by themselves (that is, separate from "Home Again with Bob Vila" or "Bob Vila's Home Again"); and Sears never used the mark HOME AGAIN in commerce.  These claims are simply untrue which leaves the irrefutable conclusion that HOME AGAIN is an unregistered trademark owned by Sears.

(a)    Protection of a trademark under the Lanham Act, "depends upon where the mark fits along a spectrum of categories that includes generic, descriptive, arbitrary and fanciful marks."  <u>Bay State Savings Bank v. Baystate Financial Services</u>, 338 F.Supp.2d 181, 187 (D. Mass. 2004), citing <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 768-69, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).

> Suggestive, arbitrary and fanciful marks are considered inherently distinctive, while descriptive marks are deemed distinctive only upon a showing that they have acquired secondary meaning. . . .
>
> To be classified as "fanciful," terms will usually have to have been "invented solely for their use as trademarks." Arbitrary marks are "common word[s] ... applied in an unfamiliar way." Suggestive marks "require imagination, thought and perception to reach a conclusion as to the nature of goods." Finally, "[a] term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods."

Beacon Mutual Insurance Company v. OneBeacon Insurance Corp., 376 F.Supp.2d 251, 255-56 (D. R.I. 2005) (citations omitted). There is no question that HOME AGAIN as associated with a home improvement television show is either an arbitrary mark or a fanciful mark which does not require proof of secondary meaning. See Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 11 (2d Cir. 1976).[1] The words HOME AGAIN do not automatically describe a home improvement television show. Under these circumstances, the mark is entitled to protection under the Lanham Act.

(b)    Plaintiffs' argument that the name of the television series was not "Home Again," and accordingly Sears cannot own the mark, is without merit. It is common for portions of the titles of television shows to be trademarked. For example, the title of "The Tonight Show with Jay Leno" is comprised of a mark "The Tonight Show" owned by the National Broadcasting Company, Inc. See Exhibit R to Sankaran Declaration V. In fact, when the show was called "The Tonight Show Starring Johnny Carson," the title was comprised of two trademarks: THE TONIGHT SHOW owned by NBC and JOHNNY CARSON owned by John W. Carson. See Exhibit R and S to Sankaran Declaration V. Other examples of partial names of televisions shows which have trademark protection include "The Daily Show with Jon Stewart," (only "The Daily Show" has registered trademark protection) and "The Late Late Show Craig Ferguson" (only "The Late Late Show" has registered trademark protection). See Exhibit T to Sankaran Declaration V. Accordingly, it is not axiomatic that just because the full title of the home improvement television series at issue was not HOME AGAIN, it therefore cannot constitute a mark. As demonstrated above and below, HOME AGAIN is an

---

[1] Indeed, although Plaintiffs argue that the Home Again mark has not acquired secondary meaning, but never allege that the mark is not inherently distinctive. See Plaintiffs' Opposition pp. 7-9, 19-20, 23-25.

inherently distinctive mark entitled to protection under Section 43(a) of the Lanham Act.

(c)  Again, Plaintiffs' argument that the mark HOME AGAIN was never used in commerce by itself (that is separate from "Home Again with Bob Vila" or "Bob Vila's Home Again") is simply untrue.  Indeed on the bobvila.com web site, BVTV and Vila sold hats bearing the HOME AGAIN mark without reference to Vila.  See Exhibit U to Sankaran Declaration V.  Furthermore, on the bobvila.com website, Bob had numerous clips where he states "Hi, I'm Bob Vila from Home Again" (not "Hi, I'm Bob Vila from Home Again with Bob Vila" or "Hi, I'm Bob Vila from Bob Vila's Home Again").  See e.g.,                    http://www.bobvila.com/HowTo_Library/Pliers_Types--T383.html; http://www.bobvila.com/HowTo_Library/Worn_Down_Screw--T611.html.
Additionally, the critical nature of HOME AGAIN to the title is evidenced by the fact that HOME AGAIN was retained as part of the series title following its name change (*Home Again with Bob Vila* to *Bob Vila's Home Again*).  Similarly, the public has come to identify the title of the television show as Home Again.  See Exhibit V to Sankaran Declaration V (articles making reference to the television show simply as *Home Again*).

(d)  Finally, Plaintiffs' argument that Sears' alleged failure to use the mark HOME AGAIN in commerce renders HOME AGAIN as an unprotectible mark is both factually and legally flawed.  First, Sears has used the mark in commerce.  From 1989 though 2005, Sears spent at least $29,402,500 in production costs for a television show with a title bearing the HOME AGAIN mark which was broadcast on a weekly basis nationally for 15 years.  See Syndication Agreement and amendments.  Furthermore, Sears, a co-owner of the Library of *Home Again* episodes, allowed those episodes to be advertised and clips to be shown on the bobvila.com internet website from 2002-2005.

See Exhibit W to Sankaran Declaration V.[2]    Additionally, Sears has used the HOME

AGAIN mark on its craftsman.com internet website when making reference to the *Home*

*Again* television show.  See Exhibit Y to Sankaran Declaration V.  Clearly, Sears has used

the HOME AGAIN mark in commerce.  Additionally, for trademark purposes, pursuant to

the terms of the Syndication Agreement, all uses by BVTV of the mark HOME AGAIN

inure to Sears' benefit.  The Syndication Agreement provides

> Except as set forth in this agreement Producer acknowledges that Sears may
> register any and all of the trademarks, service marks or trade names for the
> Program(s) under this Agreement in its own name, and that the Producer's
> use thereof shall inure to the benefit of Sears for such purposes, as well as for
> all other purposes.

Syndication Agreement, ¶18(b) (emphasis added).  Therefore, any use that BVTV has made

of the mark HOME AGAIN in commerce, including but not limited to the sale of hats,

mugs, and t-shirts inures to the benefit of Sears.  According to the facts, as well as the terms

of the Syndication Agreement, Sears used the HOME AGAIN mark in commerce, and

Plaintiffs arguments to the contrary are without merit.

(e)    Simply stated, HOME AGAIN is intellectual property and must be owned by

someone.  The terms of the Syndication Agreement make it clear that the owner is Sears.

Indeed, when Vila elected to register trademarks relating to the name of the television show,

he only sought protection for the portion of the title containing "BOB VILA" and "BOB

VILA'S" and not the HOME AGAIN portion, tacitly acknowledging that the HOME

AGAIN portion of the mark is owned by Sears.[3]    Based on the above, it is beyond dispute

---

[2] The License Agreement which permitted the *Home Again* episode clips to be shown on bobvila.com has expired.
Sears has demanded that BVTV, Vila and BV Webties LLC (the entity that operates bobvila.com) cease and desist
from displaying these clips in violation of the License Agreement.  See Exhibit X to Sankaran Declaration V.
[3] Indeed, if Sears wanted to register "Home Again with Bob Vila" or "Bob Vila's Home Again," the terms of the
Syndication Agreement would require that Vila cooperate in such efforts.  Syndication Agreement ¶18(b)
("Producer shall cooperate in any such registration by Sears or application therefor").  Furthermore, all uses BVTV

that HOME AGAIN is a protectible mark.    Consequently, as further supported in Defendants' summary judgment papers, only one conclusion may be reached: Sears properly terminated the Spokesperson Agreement and Defendants are entitled to judgment as a matter of law.

WHEREFORE, Sears, Roebuck and Co., Sears Holdings Corporation and Kmart Holding Corporation respectfully request that this Court deny the Plaintiff's Motion for Partial Summary Judgment and enter Judgment in their favor on all counts in Plaintiffs' Amended Complaint.

**RESPECTFULLY SUBMITTED:**
SEARS HOLDINGS CORPORATION and
KMART HOLDING CORPORATION,
Defendants, and SEARS, ROEBUCK
AND CO.,  Defendant/Counterclaimant,
By their attorneys:

/s/ Annapoorni R. Sankaran
Gary R. Greenberg, BBO #209420
Annapoorni R. Sankaran, BBO #631065
GREENBERG TRAURIG, LLP
One International Place, 20th Floor
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (fax)

CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.4, I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on July 27, 2006.

/s/ Annapoorni R. Sankaran
Annapoorni R. Sankaran

---

and Vila made of the marks "Home Again with Bob Vila" or "Bob Vila's Home Again"  which qualified BOB VILA and BOB VILA'S for trademark protection inure to the benefit of Sears. See Syndication Agreement ¶18(b).

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT J. VILA and B.V.T.V., INC.,

     Plaintiffs,

v.

SEARS, ROEBUCK AND COMPANY,
SEARS HOLDINGS CORPORATION and
KMART HOLDING CORPORATION,

     Defendants.

Civil Action No. 05-11717-REK

## DECLARATION OF ANNAPOORNI R. SANKARAN (VOLUME V)

I, Annapoorni R. Sankaran declare and say:

1.     I am a shareholder at Greenberg Traurig, LLP, a member of the bar of this Court and, along with Gary R. Greenberg, Esq., am counsel for defendants Sears, Roebuck and Company, Sears Holdings Corporation and Kmart Holding Corporation (collectively "Defendants").

2.     A true and accurate copy of filings made with the United States Patent and Trademark Office relating to the trademark "The Tonight Show" is attached to Volume V as Exhibit R.

2.     A true and accurate copy of filings made with the United States Patent and Trademark Office relating to the trademark "Johnny Carson" is attached to Volume V as Exhibit S.

3.     True and accurate copies of filings made with the United States Patent and Trademark Office relating to the trademarks "The Daily Show" and "The Late Late Show"

are attached to Volume V as Exhibit T.

4.    A true and accurate copy of an excerpt of Deposition Exhibit 163 is attached to Volume V as Exhibit U (a full copy of Deposition Exhibit 163 is attached to Sankaran Declaration, Volume III, filed with Defendants' Opposition To Plaintiffs' Motion For Partial Summary Judgment and Cross-Motion For Summary Judgment).

5.    True and accurate copies of an Associated Press article from November 20, 1998, a Richmond Times Dispatch editorial from May 24, 2002, a Business NH Magazine article from September 1, 2003 and a Providence Journal article from August 28, 2004 are attached to Volume V as Exhibit V.

6.    A true and accurate copy of the License Agreement between Sears, BVTV and BVWebTies LLC dated December 31, 2002, is attached to Volume V as Exhibit W.

7.    A true and accurate copy of a cease and desist letter, excluding attachments, relating to the License Agreement between Sears, BVTV and BVWebTies LLC which I sent to counsel for Plaintiffs on July 20, 2006 is attached to Volume V as Exhibit X.

9.    A true and accurate copy of excerpts from the deposition of Mary Tortorice is attached to Volume V as Exhibit Y.

**SIGNED UNDER THE PENALTIES OF PERJURY THIS 27TH DAY OF JULY, 2006.**

/s/ Annapoorni R. Sankaran
ANNAPOORNI R. SANKARAN

CERTIFICATE OF SERVICE

I Annapoorni R. Sankaran, hereby certify that, pursuant to Local Rule 5.4(c), on April 11, 2006 I served a copy of the foregoing electronically upon:

James F. O'Brien, Esq.
410 Park Avenue, Suite 1530
New York, NY 10022

/s/ Annapoorni R. Sankaran
Annapoorni R. Sankaran

# EXHIBIT R



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System(Tess)

*TESS was last updated on Sat Jul 22 04:19:20 EDT 2006*

| ESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout | Please logout when you are done to release system resources allocated for you.

## Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)* |

**Typed Drawing**

| | |
|---|---|
| Word Mark | THE **TONIGHT SHOW** |
| Goods and Services | IC 041. US 107. G & S: ENTERTAINMENT SERVICES RENDERED THROUGH THE MEDIUM OF TELEVISION-NAMELY, A TALK SHOW. FIRST USE: 19620402. FIRST USE IN COMMERCE: 19620402 |
| Mark Drawing Code | (1) TYPED DRAWING |
| Design Search Code | |
| Serial Number | 72458029 |
| Filing Date | May 21, 1973 |
| Current Filing Basis | 1A |
| Original Filing Basis | 1A |
| Registration Number | 1001905 |
| Registration Date | January 14, 1975 |
| Owner | (REGISTRANT) NATIONAL BROADCASTING COMPANY, INC. CORPORATION DELAWARE 30 ROCKEFELLER PLAZA NEW YORK NEW YORK 10112 |
| Attorney of Record | GILLIAN LUSINS |
| Disclaimer | WITHOUT WAIVER OF COMMON LAW RIGHTS, APPLICANT DISCLAIMS THE WORD "SHOW" APART FROM THE MARK AS SHOWN. |
| Type of Mark | SERVICE MARK |
| Register | PRINCIPAL |
| Affidavit Text | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20050209. |
| Renewal | 2ND RENEWAL 20050209 |
| Live/Dead Indicator | LIVE |

| ESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

| .HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

hank you for your request. Here are the latest results from the **TARR web server.**

his page was generated by the TARR system on 2006-07-23 12:53:24 ET

**erial Number:** 72458029 Assignment Information

**egistration Number:** 1001905

**lark (words only):** THE TONIGHT SHOW

**tandard Character claim:** No

**urrent Status:** This registration has been renewed.

**ate of Status:** 2005-02-09

**iling Date:** 1973-05-21

**ransformed into a National Application:** No

**egistration Date:** 1975-01-14

**egister:** Principal

**aw Office Assigned:** (NOT AVAILABLE)

**˙you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark ssistance Center at TrademarkAssistanceCenter@uspto.gov**

**urrent Location:** 834 -Post Registration

**ate In Location:** 2005-02-09

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

---

NATIONAL BROADCASTING COMPANY, INC.

**ddress:**
ATIONAL BROADCASTING COMPANY, INC.
) ROCKEFELLER PLAZA
EW YORK, NY 10112
nited States
**egal Entity Type:** Corporation
**tate or Country of Incorporation:** Delaware

---

## GOODS AND/OR SERVICES

---

**.S. Class:** 107 (International Class 041)
**lass Status:** Active
NTERTAINMENT SERVICES RENDERED THROUGH THE MEDIUM OF TELEVISION-NAMELY, A TALK HOW
**asis:** 1(a)
**irst Use Date:** 1962-04-02

irst Use in Commerce Date: 1962-04-02

---

## ADDITIONAL INFORMATION

isclaimer: WITHOUT WAIVER OF COMMON LAW RIGHTS, APPLICANT DISCLAIMS THE WORD "SHOW"
PART FROM THE MARK AS SHOWN.

---

## MADRID PROTOCOL INFORMATION

NOT AVAILABLE)

---

## PROSECUTION HISTORY

005-02-09 - Second renewal 10 year

005-02-09 - Section 8 (10-year) accepted/ Section 9 granted

005-01-04 - Combined Section 8 (10-year)/Section 9 filed

005-01-04 - TEAS Section 8 & 9 Received

995-03-29 - First renewal 10 year

994-01-06 - Section 9 filed/check record for Section 8

980-05-20 - Section 8 (6-year) accepted & Section 15 acknowledged

---

## CORRESPONDENCE INFORMATION

orrespondent
ILLIAN LUSINS (Attorney of record)

ILLIAN LUSINS
ATIONAL BROADCASTING COMPANY, INC.
) ROCKEFELLER PLAZA
08 1E
EW YORK, NY 10112

---

ocument Description: **Specimens**
Mail / Create Date: **09-Mar-2005**

Previous Page          Next Page          You are currently on page [1]  of [1]



the relative sc

effectiveness

"LIVE" vs. "FIL

commercials

THE TONIGHT SH(

his document may be displayed as a PDF file containing images without text. You may view online or save the entire ocument using the file download icon to the upper right. [required PDF viewer] FAQ: Are you seeing only the first age of this PDF document?

`you need help:

- *Call the Trademark Assistance Center at 571.272.9250 for help on trademark matters.*
- *Send questions about USPTO programs to the USPTO Contact Center (UCC).*

- *If you have technical difficulties or problems with this application, please e-mail them to Electronic Business Support <u>Electronic Applications</u> or call 1 800-786-9199.*

Combined Declaration of Use In Commerce & Application For Renewal of Registration of A Mark Under...    Page 1 of 5
Case 1:05-cv-11717-WGY    Document 47-3    Filed 07/27/2006    Page 11 of 44
Document Description: **PR-Section 8 and 9**
Mail / Create Date: **04-Jan-2005**

---



PTO Form 1963 (Rev 5/2006)
OMB No. 0651-0055 (Exp 10/31/2008)

# Combined Declaration of Use In Commerce & Application For Renewal of Registration of A Mark Under Sections 8 & 9

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **REGISTRATION NUMBER** | 1001905 |
| **REGISTRATION DATE** | 01/14/1975 |
| **SERIAL NUMBER** | 72458029 |
| **MARK SECTION** | |
| MARK | THE TONIGHT SHOW |
| **OWNER SECTION (current)** | |
| NAME | NATIONAL BROADCASTING COMPANY, INC. |
| STREET | 30 ROCKEFELLER PLAZA |
| CITY | NEW YORK |
| STATE | NY |
| ZIP/POSTAL CODE | 10112 |
| COUNTRY | US |
| **OWNER SECTION (proposed)** | |
| NAME | NATIONAL BROADCASTING COMPANY, INC. |
| STREET | 30 ROCKEFELLER PLAZA |
| CITY | NEW YORK |
| STATE | NY |
| ZIP/POSTAL CODE | 10112 |
| COUNTRY | US |
| PHONE | 212 664 4966 |
| FAX | 212 790 4703 |

| EMAIL | NYtrademark@nbcuni.com |
|---|---|
| **ATTORNEY SECTION** | |
| NAME | Gillian Lusins |
| INTERNAL ADDRESS | 1081E |
| STREET | 30 Rockefeller Plaza |
| CITY | New York |
| STATE | NY |
| ZIP/POSTAL CODE | 10112 |
| COUNTRY | USA |
| PHONE | 212 664 4966 |
| FAX | 212 790 4703 |
| EMAIL | NYtrademark@nbcuni.com |
| AUTHORIZED TO COMMUNICATE VIA E-MAIL | Yes |
| **GOODS AND/OR SERVICES SECTION** | |
| INTERNATIONAL CLASS | 041 |
| KEEP EXISTING GOODS AND/OR SERVICES | YES |
| SPECIMEN FILE NAME(S) | \\TICRS\EXPORT11\IMAGEOUT 11\724\580\72458029\xml1\ S890002.JPG |
| SPECIMEN DESCRIPTION | Web page which shows use of the mark for entertainment services rendered through the medium of television- namely a talk show |
| **PAYMENT SECTION** | |
| NUMBER OF CLASSES | 1 |
| NUMBER OF CLASSES PAID | 1 |
| SUBTOTAL AMOUNT | 500 |
| TOTAL AMOUNT | 500 |
| **SIGNATURE SECTION** | |
| SIGNATURE | /Gillian Lusins/ |
| SIGNATORY NAME | Gillian Lusins |
| SIGNATORY DATE | 01/04/2005 |
| **FILING INFORMATION** | |
| SUBMIT DATE | Tue Jan 04 14:48:42 EST 2005 |

| TEAS STAMP | USPTO/S08N09-631635720-20<br>050104144842818044-100190<br>5-2009dd5daa5262f77fc2f24<br>9ebf42b08866-CC-17-200501<br>04144255794335 |

TO Form 1963 (Rev 5/2006)
MB No. 0651-0055 (Exp 10/31/2008)

# Combined Declaration of Use In Commerce & Application For Renewal of Registration of A Mark Under Sections 8 & 9

**'o the Commissioner for Trademarks:**

**EGISTRATION NUMBER:** 1001905
**EGISTRATION DATE:** 01/14/1975

**1ARK:** THE TONIGHT SHOW

he owner, NATIONAL BROADCASTING COMPANY, INC., residing at 30 ROCKEFELLER PLAZA, NEW 'ORK, NY US 10112, is using the mark in commerce on or in connection with the goods and /or services as follows:

or International Class 041, the owner is using or is using through a related company or licensee the mark in commerce n or in connection with all goods and/or services listed in the existing registration.

he owner is submitting one specimen for each class showing the mark as used in commerce on or in connection with ny item in the class of listed goods and/or services , consisting of a(n) Web page which shows use of the mark for ntertainment services rendered through the medium of television- namely a talk show.
pecimen-1

he registrant hereby appoints Gillian Lusins, 1081E, 30 Rockefeller Plaza, New York, NY USA 10112 to submit this 'ombined Declaration of Use In Commerce & Application For Renewal of Registration of A Mark Under Sections 8 . 9 on behalf of the registrant.

. fee payment in the amount of $500 will be submitted with the form, representing payment for 1 class(es), plus any dditional grace period fee, if necessary.

## Declaration

### ection 8: Declaration of Use in Commerce
he owner is using or is using through a related company or licensee the mark in commerce on or in connection with 1e goods/services identified above, as evidenced by the attached specimen(s) showing the mark as used in commerce.

### ection 9: Application for Renewal
he registrant requests that the registration be renewed for the goods and/or services identified above.

he undersigned being hereby warned that willful false statements and the like are punishable by fine or imprisonment, r both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of iis document, declares that he/she is properly authorized to execute this document on behalf of the Owner; and all :atements made of his/her own knowledge are true and that all statements made on information and belief are believed ) be true.

ignature: /Gillian Lusins/    Date: 01/04/2005
ignatory's Name: Gillian Lusins

1ailing Address:

1081E
30 Rockefeller Plaza
New York, NY 10112

RAM Sale Number: 17
RAM Accounting Date: 01/05/2005

Serial Number: 72458029
Internet Transmission Date: Tue Jan 04 14:48:42 EST 2005
TEAS Stamp: USPTO/S08N09-631635720-20050104144842818
744-1001905-2009dd5daa5262f77fc2f249ebf4
b08866-CC-17-20050104144255794335

_____

his document may be displayed as a PDF file containing images without text. You may view online or save the entire ocument using the file download icon to the upper right. [required PDF viewer] FAQ: Are you seeing only the first age of this PDF document?

if you need help:

- Call the Trademark Assistance Center at 571.272.9250 for help on trademark matters.
- Send questions about USPTO programs to the USPTO Contact Center (UCC).
- If you have technical difficulties or problems with this application, please e-mail them to Electronic Business Support Electronic Applications or call 1 800-786-9199.

**U.S. DEPARTMENT OF COMMERCE**
**Patent Office**

In Reply Refer To The Following And The Filing Date:

| 1. SER. NO. | 2. APPLICANT | 3. MARK |
|---|---|---|
| 458 029 | NATIONAL BROADCASTING COMPANY, INC. | THE TONIGHT SHOW |

TOD A. ROBERTS
% NATIONAL BROADCASTING COMPANY
30 ROCKEFELLER PLAZA
NEW YORK, N.Y. 10020

ADDRESS ONLY
COMMISSIONER OF PATENTS
WASHINGTON, D.C. 20231
AND
FURNISH YOUR ZIP CODE
AND TELEPHONE NUMBER
IN ALL CORRESPONDENCE

| 4. PAPER NUMBER |
|---|
| 1 |

5. MAILING DATE

FEB 04 1974

The identification of goods and/or services should be rewritten
in its entirety.

The following recitation is suggested to the applicant:

    Entertainment services rendered through
    the medium of television, namely, a
    talk show, in Class 107.

Applicant is requested to submit a disclaimer of the
descriptive word(s) Show.

The specimens submitted by the applicant have been somehow
misplaced in the Office.  For this reason five additional
specimens, properly verified as to use before the filing
date of the application, must be submitted.

A search of the Office records fails to show that the mark,
when used with applicant's goods and/or services, is confusingly
similar to any registered mark.

RMFeeley:erw 703-557-3277

R. M. Feeley
Examiner Div. IV

A proper response to **THIS OFFICE** action must be received within 6 months from the date of this
action in order to avoid ABANDONMENT.

Form POL-89 (REV. 3-72)

1 — Trademark Application File Copy

$35.00 201-771

Mark:          THE TONIGHT SHOW

Class No.:   107   458029

MAIL ROOM

MAY 21 1973

U.S. PATENT OFFICE

T THE COMMISSIONER OF PATENTS

National Broadcasting Company, Inc., the applicant
corporation herein, was duly incorporated in the State of
Delaware and does business and is located at 30 Rockefeller
Plaza, New York, New York 10020.

The above identified applicant has adopted and is using
the service mark, THE TONIGHT SHOW, shown in the accompanying
drawing, for entertainment services through the medium of a
television program and requests that said mark be registered
in the United States Patent Office on the Principal Register
established by the act of July 5, 1946.

The service mark, THE TONIGHT SHOW, was first used in con-
nection with the services at least as early as April 2, 1962;
was first used in the sale or advertising of services rendered
in interstate commerce at least as early as April 2, 1962;
and is now in use in such commerce. The mark, TONIGHT, has
been used in connection with the services and in the sale or
advertising of such services in interstate commerce at least
as early as September 27, 1954.

The mark is used by broadcasting and advertising it as the
title of the television program, and five specimens showing the
mark as actually used in connection with the sale of commercial
time on the television program are presented herewith.

State of New York   )
                    )   ss.
County of New York  )

J. Marshall Wellborn, being sworn, states that:  he is
Assistant Secretary of applicant corporation and is authorized
to execute this affidavit on behalf of said corporation; he
believes said corporation to be the owner of the mark sought

05/23/73 TONIGHT SHOW      2 201     35.00CK

*107*

458029

Applicant:
Address:
Dates of First Use:
Service:

National Broadcasting Company, Inc.
30 Rockefeller Plaza, New York, New York 10020
At least as early as April 2, 1962.
Television program title.

THE TONIGHT SHOW

1001905

REGISTERED

JAN 14 1975

U.S. PATENT OFFICE

PUBLISHED

OCT 22 1974

U. S. PATENT OFFICE



*4*

A ~~585~~
*587*

| APPLICATION FOR RENEWAL OF REGISTRATION OF A MARK UNDER SECTION 9 OF THE TRADEMARK ACT OF 1946, AS AMENDED | MARK (Identify the mark) THE TONIGHT SHOW | |
|---|---|---|
| | REGISTRATION NO. 1,001,905 | DATE OF REGISTRATION: January 14, 1975 |

**TO THE ASSISTANT SECRETARY AND COMMISSIONER OF PATENTS AND TRADEMARKS:**

REGISTRANT'S NAME:[1]

NATIONAL BROADCASTING COMPANY, INC.

REGISTRANT'S CURRENT MAILING ADDRESS: Legal Dept.
30 Rockfeller Plaza
New York, NY  10112

**GOODS AND/OR SERVICES AND USE IN COMMERCE STATEMENT**

The mark shown in Registration No. 1,001,905 owned by the above-identified registrant is still in use

in interstate commerce on or in connection with all of the goods and/or services identified in the
   (type of)[2]

registration, (except for the following)[3] _____

_____ ;

as evidenced by the attached specimen(s)[4] showing the mark as currently used.

## DECLARATION

The undersigned being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and that such willful false statements may jeopardize the validity of this document, declares that he/she is properly authorized to execute this document on behalf of the registrant; he/she believes the registrant to be the owner of the above identified registration; the trademark/service mark is in use in commerce; and all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

Date  11/28/94

Signature  *Roberta Brackman*

Telephone Number  212-664-3379

Print or Type Name and Position [if applicable][5]  Roberta Brackman, Assistant Secretary

PTO Form 4.13a (Rev. 1/93)
OMB No. 0651-0009 (Exp. 6/30/95)            U.S. DEPARTMENT OF COMMERCE/Patent and Trademark Office

170 KJ 02/08/95 1001905            0 365    200.00 CK

 

UNITED STATES DEPARTMENT OF COMMERCE
**Patent and Trademark Office**
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

REGISTRATION NO.    1001905        SERIAL NO. 72/458029        PAPER NO.

MAILING DATE:  04/03/95

MARK: THE TONIGHT SHOW

REGISTRANT:  NATIONAL BROADCASTING COMPANY, INC.

CORRESPONDENCE ADDRESS:
  MITCHELL A. SALEM
  NATIONAL BROADCASTING COMPANY, INC.
  30 ROCKEFELLER PLAZA
  NEW YORK, NY  10112

Please furnish the following
in all correspondence:

1.  Your phone number and zip code.
2.  Mailing date of this action.
3.  Affidavit-Renewal Examiner's name.
4.  The address of all correspondence
    not containing fees should include
    the words "Box 5".
5.  Registration No.

RECEIPT IS ACKNOWLEDGED OF THE SUBMITTED REQUEST UNDER:

SECTION 9 OF THE TRADEMARK ACT AND 37 CFR SECS. 2.181-2.184.

YOUR REQUEST FULFILLS THE STATUTORY REQUIREMENTS AND RENEWAL HAS BEEN
GRANTED.

A. J. GORE
AFFIDAVIT-RENEWAL EXAMINER
TRADEMARK EXAMINING OPERATION
(703) 308-9500  EXT. 39

JUN - 5 1974 —18



IN THE UNITED STATES PATENT OFFICE

Applicant:    NATIONAL BROADCASTING COMPANY, INC.

Mark:        THE TONIGHT SHOW

Serial No.:  458029

Filed:       May 21, 1973

                                            June 3, 1974

Honorable Commissioner of Patents
Washington, D.C.   20231

Sir:

      The Office Action dated February 4, 1974, has been received and noted.

      As suggested, Applicant would like to substitute the following recitation for the identification of services contained in its original application:  Entertainment services rendered through the medium of television, namely, a talk show, in Class 107.

      Without waiver of common law rights, Applicant disclaims the word "SHOW" apart from the mark as shown.

      Furthermore, enclosed herewith you will find the five additional specimens requested in the aforesaid Office Action, together with a verification as to their use before the filing date of the application.

                                Respectfully submitted,

                                Tod A. Roberts
                                Tod A. Roberts
                                Attorney for Applicant

IN THE UNITED STATES PATENT OFFICE

Applicant:    NATIONAL BROADCASTING COMPANY, INC.

Mark:         THE TONIGHT SHOW

Serial No.:   458029

Filed:        May 21, 1973

### AFFIDAVIT

STATE OF NEW YORK   )
                    )  ss.:
COUNTY OF NEW YORK  )

J. Marshall Wellborn, being duly sworn, deposes and says:  that he is an Assistant Secretary of the National Broad-casting Company, Inc. and that, upon information he believes to be true, the five (5) additional specimens of the mark as used in commerce which are annexed hereto actually were used in com-merce prior to the aforesaid filing date of the application.

J. Marshall Wellborn

Sworn to before me this

3rd  day of June, 1974.

KATHERINE J. SIMON
NOTARY PUBLIC, State of New York
No. 31-3678335
Qualified in New York County
Commission Expires March 30, 1975

## NOTICE OF PUBLICATION UNDER SECTION 12(a)

If item "1" on the face of this paper has been checked, the mark of the application identified on the reverse side appears to be entitled to registration. The mark will, in accordance with Section 12(a) of the Trademark Act of 1946, be published in the Official Gazette on the date indicated below for the purpose of opposition by any person who believes he will be damaged by the registration of the mark. If no opposition is filed within the time specified by Section 13 of the Statute or by Rules 2.101 and 2.102 of the Trademark Rules, the Commissioner of Patents may issue a Certificate of Registration.

Copies of the Trademark portion of the Official Gazette containing the publication of the mark may be obtained from the Superintendent of Documents, Government Printing Office, Washington, D.C. 20402.

By direction of the Commissioner.

PUBLICATION DATE OCT 22 1974

## IDENTIFICATION OF GOODS AND/OR SERVICES (ITEM "6")

The identification of goods and/or services should be brief, clear and concise. It should set forth the commercial name(s) of the goods and/or particular recitation(s) of services.

The following excerpt from a Notice appearing in the Official Gazette of August 3, 1971 (889 O.G. TM 2) may be used as a guideline. The information contained therein is suggestive, and not mandatory.

### Identification of Goods and Services in Trademark Applications

Effective immediately, the Alphabetical List of Goods and Services which appears in the volume entitled "International Classification of Goods and Services to Which Trade Marks Are Applied" (published by the World Intellectual Property Organization (WIPO) is adopted as a general guideline for determining the degree of particularity of identification of goods and services required in trademark applications.

Terms which appear in the International Classification listing will generally be accepted as proper identifications of goods and services. The use in the listing of more specific identifications indented below the heading term does not necessarily preclude acceptability of that heading. For example, the International Classification lists, as: Item A407, *Ammunition*, followed by specific types of ammunition, as Items A408 and A409 and A410. "Ammunition" will be accepted as an identification in accordance with *In re Dynamit Nobel AG*, 169 USPQ 499 (TTAB, 1971). However, if the more specific term is used whenever appropriate, prosecution of the application may be shortened since the possibility of a requirement of greater particularity (see below) is reduced.

Greater particularity than is set forth by the terms in the International Classification listing may not be required by the Examiner in the absence of a clear need therefor. Typical illustrations of clear need can be found in the following situations:

(1) The broad term includes items which are classified in more than one class. (For example, "artists' materials.")

(2) The broad term is too indefinite for proper examination. (For example, "metallic parts.")

(3) (a) The identification is inconsistent with the goods or services disclosed by the specimens.

(b) The ordinary meaning of the identification is at variance with the goods or services disclosed by the specimens or the record. (For example, "decalcomanias" are not adequately identified by the term "publications." See also *Ex parte Consulting Publishing Co.*, 115, USPQ 240.)

(4) Wording included in the mark requires limitation of the identification. (For example, "beer" may not be included in the identification where the mark is "Newark 'Olde Town' Ale" (*Ex parte Consumers Brewing Co.*, 55 USPQ 426).)

On the other hand, some situations do not constitute clear need, as illustrated by the following:

(1) The existence of a decision holding that a likelihood of confusion exists in relation to items which are narrowly identified does not in itself constitute a clear need to require amendment of a broad identification to the more specific items mentioned in the decision.

(2) If the identification is understood when read in association with the title of the class in which it is placed and is otherwise satisfactory, further qualifying amendment should not be required. (For example, "mufflers" in the clothing class would not require further modification to indicate that articles of clothing are intended; similarly the term "house organ" in the class for printed publications would not need further qualification.)

In a few instances, the terminology in the International Classification of Goods and Services is not in common usage in the United States. Where this occurs, the term more commonly used in this country should be selected.

Any request as to the current prices of the English edition of the aforementioned Classification Manual, and supplements thereto, and where they can be purchased, should be directed to Trademark Examining Operations.



**U.S. DEPARTMENT OF COMMERCE**
**Patent Office**

In Reply Refer To The Following And The Filing Date:

| 1. SER. NO. | 2. APPLICANT | 3. MARK |
|---|---|---|
| 458 029 | NATIONAL BROADCASTING COMPANY, INC. | THE TONIGHT SHOW |

|  | 4. PAPER NUMBER |
|---|---|
| TOD A. ROBERTS <br> % NATIONAL BROADCASTING COMPANY <br> 30 ROCKEFELLER PLAZA <br> NEW YORK, N.Y. 10020 | ADDRESS ONLY <br> COMMISSIONER OF PATENTS <br> WASHINGTON, D.C. 20231 <br> AND <br> FURNISH YOUR ZIP CODE <br> AND TELEPHONE NUMBER <br> IN ALL CORRESPONDENCE |

4. PAPER NUMBER: 3

5. MAILING DATE: SEP 30 1974

1. ☒ **THE MARK OF THE APPLICATION ABOVE IDENTIFIED APPEARS TO BE ENTITLED TO REGISTRATION. SEE THE REVERSE SIDE OF THIS COMMUNICATION FOR FURTHER INFORMATION.**

2. ☐ A search of the Office records fails to show that the mark, when used with applicant's goods and/or services, is confusingly similar to any registered mark.

3. ☐ Upon examination, registration is refused because the mark, as used with the goods and/or services of the applicant, so resembles the mark(s) cited below as to be likely to cause confusion, or to cause mistake, or to deceive: (See attached copies) REG(S), NO(S).

4. ☐ Registration is refused on the Principal Register because the mark presented is primarily merely a surname. Section 2(e)(3) of the Statute.

5. ☐ Applicant's goods and/or services, as identified, are properly classified in Class(es) _____ , rather than in Class(es) _____ . Amendment is required.

6. ☐ The identification of goods or services is not clear and should be amended. See the reverse side of this communication for further information.

7. ☐ Applicant is requested to submit informative literature (e.g. advertisements, technical manuals and brochures) pertaining to its goods and/or services. Trademark Rule 2.61(b).

8. ☐ The specimens appear to indicate use of the mark by a party other than applicant. The relationship between said party and applicant must be explained; and it must also be explained how this use of the mark inures to applicant's benefit. See Section 5 of the Statute and Trademark Rule 2.38.

9. ☐ The color lining(s) on the drawing must be identified. Trademark Rule 2.35.

10. ☐ An English translation of all foreign words in the drawing should be furnished.

11. ☐ The typed drawing of record is objected to because the mark, as shown on the specimens submitted, is depicted in special form. An India ink drawing of the mark, agreeing with the display of the mark on the specimens, is required. Trademark Rule 2.51(d) and 2.52.

12. ☐ The typed drawing is not satisfactory because it is not typed entirely in capital letters as required by Trademark Rule 2.51(d). Upon applicant's request, the drawing will be retyped so that it conforms to the above rule.

13. ☐ If applicant is the owner of subsisting registrations for the same or similar marks for the identical or closely related goods and/or services, a claim to ownership thereof should be made. Trademark Rule 2.36.

14. ☐ A certification or certified copy of the Certificate of Registration (and, if necessary, an English translation thereof) in the country of origin of applicant is required. Trademark Rule 2.39(b).

15. ☐ Applicant must set forth its state or country of incorporation or, if an individual or partnership, the citizenship of the individual or members of the partnership. See Section 1(a)(1) of the Statute and Trademark Rule 2.33(a)(1)(ii).

16. ☐ A verified statement (affidavit) or declaration (Trademark Rule 2.20) of continued use of the mark must be submitted because the application was not filed within a reasonable time after the date of execution or signing of the application. Four weeks plus mailing time is considered a reasonable time. Trademark Rule 2.32(b).

17. ☐ The specimens show the United States registration notice used in connection with the mark sought to be registered when, in fact, such mark is not registered in the Patent Office. An explanation is required.

18. ☐ _____
_____
_____
_____

*R. M. Feeley*
EXAMINER

**UNLESS THIS IS A NOTICE OF PUBLICATION UNDER SECTION 12(a) (item "1" above), A PROPER RESPONSE TO THIS OFFICE ACTION MUST BE RECEIVED WITHIN 6 MONTHS FROM THE DATE OF THIS ACTION IN ORDER TO AVOID ABANDONMENT.**

Form POL–371 (3–72)

1 — Trademark Application File Copy



For details of movies on premium channels, see page 271.

# Monday

```
       ...orman ...............Ashley Crow          Julia: Neve Campbell. Charlie: Matthew Fox.
   ...nnovan ...............Tom Amandes             Claudia: Lacey Chabert. Bailey: Scott Wolf.
        Hernandez ...........Jenny Gago                         Guest Cast.
          ...............Michael Constantine        Mrs. Gideon ..........La Tanya Richardson
D...  ....ar Jamidar ...............Jan Triska      Morgan ...................Peter Dobson
�621️ MONDAY NIGHT LIVE 1:00 89131                   Professor ................Harry Johnson
🄉 NEWS 1:00                                         Terry ...................Nicole Sullivan
🄬 PARTY OF FIVE (CC)—Drama 1:00 30889               Dana ...................Lauren-Kenny O'Fallon
A social worker makes an unexpected visit—          🄭 STAR TREK: DEEP SPACE NINE (CC)
and Claudia's missing; Julia's job requires her     —Science Fiction 1:00 56841
to wear a revealing costume; and Charlie is         Riker (Jonathan Frakes) arrives on DS9 for
doing another nighttime disappearing act.           a brief shore leave, but after the Defiant
```



# EXHIBIT S

Int. Cl.: 41

Prior U.S. Cl.: 107

Registered May 16, 1978

## United States Patent and Trademark Office

Reg. No. 1,091,588

### SERVICE MARK
**Principal Register**

## JOHNNY CARSON

John W. Carson
720 5th Ave.
New York, N.Y.  10019

For: ENTERTAINMENT SERVICES—NAMELY, THE RENDERING OF ENTERTAINMENT TO THE GENERAL PUBLIC BY WAY OF PERSONAL PERFORMANCES AT SHOWS SUCH AS BY MONOLOGUES, COMEDY ROUTINES AND THE HOSTING OF GUEST APPEARANCES OF OTHERS—in CLASS 107 (INT. CL. 41).

First use 1952; in commerce 1952.

Ser. No. 423,171, filed May 3, 1972.

Int. Cl.: 41

Prior U.S. Cl.: 107

## United States Patent and Trademark Office

Registered May 16, 1978

Reg. No. 1,091,588

## SERVICE MARK
### Principal Register

# JOHNNY CARSON

John W. Carson
720 5th Ave.
New York, N.Y.   10019

For: ENTERTAINMENT SERVICES—NAMELY, THE RENDERING OF ENTERTAINMENT TO THE GENERAL PUBLIC BY WAY OF PERSONAL PERFORMANCES AT SHOWS SUCH AS BY MONOLOGUES, COMEDY ROUTINES AND THE HOSTING OF GUEST APPEARANCES OF OTHERS—in CLASS 107 (INT. CL. 41).

First use 1952; in commerce 1952.

Ser. No. 423,171, filed May 3, 1972.

Latest Status Info

Thank you for your request. Here are the latest results from the TARR web server.

This page was generated by the TARR system on 2006-07-26 13:11:36 ET

**Serial Number:** 72423171 Assignment Information

**Registration Number:** 1091588

**Mark (words only):** JOHNNY CARSON

**Standard Character claim:** No

**Current Status:** This registration was not renewed and is considered to be expired.

**Date of Status:** 1999-02-22

**Filing Date:** 1972-05-03

**Transformed into a National Application:** No

**Registration Date:** 1978-05-16

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov

**Current Location:** 900 -File Repository (Franconia)

**Date In Location:** 2002-01-16

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. CARSON, JOHN W.

**Address:**
CARSON, JOHN W.

http://tarr.uspto.gov/servlet/tarr?regser=serial&entry=72423171

720 5TH AVE.
NEW YORK, NY 10019
United States
**Legal Entity Type:** Individual
**Country of Citizenship:** United States

## GOODS AND/OR SERVICES

**U.S. Class:** 107 (International Class 041)
**Class Status:** Expired
ENTERTAINMENT SERVICES-NAMELY, THE RENDERING OF ENTERTAINMENT TO THE GENERAL PUBLIC BY WAY OF PERSONAL PERFORMANCES AT SHOWS SUCH AS BY MONOLOGUES, COMEDY ROUTINES AND THE HOSTING OF GUEST APPEARANCES OF OTHERS
**Basis:** 1(a)
**First Use Date:** 1952-00-00
**First Use in Commerce Date:** 1952-00-00

## ADDITIONAL INFORMATION

(NOT AVAILABLE)

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

## PROSECUTION HISTORY

1999-02-22 - Expired Section 9

1983-12-30 - Section 8 (6-year) accepted & Section 15 acknowledged

## CORRESPONDENCE INFORMATION

(NOT AVAILABLE)

# United States Patent Office

**979,710**
Registered Mar. 5, 1974

## PRINCIPAL REGISTER
### Trademark

Ser. No. 415,038, filed Feb. 9, 1972

## JOHNNY CARSON

Johnny Carson Apparel, Inc. (Delaware corporation)
P.O. Box 1121
Buffalo, N.Y.  14240

For: LEATHER GOODS—NAMELY, WALLETS—in CLASS 3 (INT. CL. 18).
First use Aug. 31, 1970; in commerce Aug. 31, 1970.

For: JEWELRY—NAMELY, CUFF LINKS, in CLASS 28 (INT. CL. 14).
First use July 24, 1970; in commerce July 24, 1970.

For: WEARING APPAREL—NAMELY, SUITS, SPORT COATS, JACKETS, SLACKS, FORMAL WEAR, BELTS, SWEATERS, SHIRTS, ALL WEATHER COATS, TOPCOATS, HEADWEAR, NECKWEAR, PAJAMAS, SWIMWEAR, HANDKERCHIEFS, SCARFS, ASCOTS, UNDERWEAR, HOSIERY AND SHOES—in CLASS 39 (INT. CL. 25).
First use Feb. 2, 1970; in commerce Feb. 2, 1970.

"Johnny Carson" is a living individual whose consent is of record.

Owner of Reg. No. 903,927.

Trademark Electronic Search System (TESS)

# United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System(Tess)

*TESS was last updated on Wed Jul 26 04:17:03 EDT 2006*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

| TARR Status | ASSIGN Status | TDR | TTAB Status |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At:                OR  Jump  to record:                **Record 3 out of 4**   *( Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| **Word Mark** | JOHNNY CARSON |
| **Goods and Services** | (EXPIRED) IC 018. US 003. G & S: LEATHER GOODS-NAMELY, WALLETS. FIRST USE: 19700831. FIRST USE IN COMMERCE: 19700831 |
| | (EXPIRED) IC 014. US 028. G & S: JEWELRY-NAMELY, CUFF LINKS. FIRST USE: 19700724. FIRST USE IN COMMERCE: 19700724 |
| | (EXPIRED) IC 025. US 039. G & S: WEARING APPAREL-NAMELY, SUITS, SPORT COATS, JACKETS, SLACKS, FORMAL WEAR, BELTS, SWEATERS SHIRTS, ALL WEATHER COATS, TOPCOATS, HEADWEAR, NECKWEAR, PAJAMAS, SWIMWEAR, HANDKERCHIEFS, SCARFS, ASCOTS, UNDERWEAR, HOSIERY AND SHOES. FIRST USE: 19700202. FIRST USE IN COMMERCE: 19700202 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Design Search Code** | |
| **Serial Number** | 72415038 |
| **Filing Date** | February 9, 1972 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Registration** | 0979710 |

Trademark Electronic Search System (TESS)

**Number**

**Registration Date**  March 5, 1974

**Owner**  (REGISTRANT) JOHNNY CARSON APPAREL, INC. CORPORATION DELAWARE P.O. BOX 1121 BUFFALO NEW YORK 14240

**Assignment Recorded**  ASSIGNMENT RECORDED

**Prior Registrations**  0903927

**Type of Mark**  TRADEMARK

**Register**  PRINCIPAL

**Affidavit Text**  SECT 15. SECT 8 (6-YR).

**Other Data**  "JOHNNY CARSON" IS A LIVING INDIVIDUAL WHOSE CONSENT IS OF RECORD.

**Live/Dead Indicator**  DEAD

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# EXHIBIT T



Trademark Electronic Search System (TESS)   Case 1:05-cv-11717-WGY   Document 47-3   Filed 07/27/2006   Page 36 of 44   Page 1 of 2

**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Trademarks > Trademark Electronic Search System(Tess)

*TESS was last updated on Wed Jul 26 04:17:03 EDT 2006*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

**Logout** | Please logout when you are done to release system resources allocated for you.

## Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)* |



| | |
|---|---|
| **Word Mark** | THE **DAILY SHOW** |
| **Goods and Services** | IC 041. US 100 101 107. G & S: television production services. FIRST USE: 19960722. FIRST USE IN COMMERCE: 19960722 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 26.11.01 - Rectangles as carriers or rectangles as single or multiple line borders |
| **Serial Number** | 75261358 |
| **Filing Date** | March 21, 1997 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | May 26, 1998 |
| **Registration Number** | 2182023 |
| **Registration Date** | August 18, 1998 |
| **Owner** | (REGISTRANT) Comedy Partners composed of Viacom HA! Holding Company, a Delaware corporation, and Time Warner Entertainment Company, L.P., a Delaware limited partnership PARTNERSHIP NEW YORK 1775 Broadway New York NEW YORK 10019 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "SHOW" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). |
| **Live/Dead Indicator** | LIVE |

ESS HOME    NEW USER    STRUCTURED    FREE FORM    BROWSE DICT    SEARCH OG    TOP    HELP

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Document Description: **Specimens**
Mail / Create Date: **10-Aug-2004**

| Previous Page | Next Page | You are currently on page 1 of 1 |



This document may be displayed as a PDF file containing images without text. You may view online or save the entire document using the file download icon to the upper right. [required PDF viewer] FAQ: Are you seeing only the first page of this PDF document?

*If you need help:*

- *Call the Trademark Assistance Center at 571.272.9250 for help on trademark matters.*
- *Send questions about USPTO programs to the USPTO Contact Center (UCC).*
- *If you have technical difficulties or problems with this application, please e-mail them to Electronic Business*

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System(Tess)

*TESS was last updated on Wed Jul 26 04:17:03 EDT 2006*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout | Please logout when you are done to release system resources allocated for you.

Start | List At: [        ]  OR  Jump | to record: [        ]  **Record 3 out of 7**

| TARR Status | ASSIGN Status | TDR | TTAB Status |     *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | THE LATE **LATE** SHOW |
| **Goods and Services** | IC 041. US 100 101 107. G & S: entertainment services in the nature of an on-going television news, commentary and interview show. FIRST USE: 19950109. FIRST USE IN COMMERCE: 19950109 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Design Search Code** | |
| **Serial Number** | 74623510 |
| **Filing Date** | January 20, 1995 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | February 27, 1996 |
| **Registration Number** | 1974754 |
| **Registration Date** | May 21, 1996 |
| **Owner** | (REGISTRANT) Worldwide Pants Incorporated CORPORATION NEW YORK Jackoway Tyerman &Wertheimer 1888 Century Park East, 18th Floor Los Angeles CALIFORNIA 90067 |
| **Attorney of Record** | LAWRENCE E. APOLZON |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE 'SHOW' APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |

Trademark Electronic Search System (TESS)

**Register**            PRINCIPAL
**Affidavit Text**      SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20051017.
**Renewal**             1ST RENEWAL 20051017
**Live/Dead Indicator** LIVE

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

United States Patent and Trademark Office

## Trademarks > Trademark Electronic Search System(Tess)

*TESS was last updated on Wed Jul 26 04:17:03 EDT 2006*

Logout | Please logout when you are done to release system resources allocated for you.

Start | List At: | | OR | Jump | to record: | |    **Record 1 out of 7**    ( *Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| **Word Mark** | THE LATE LATE SHOW |
| **Goods and Services** | IC 041. US 100 101 107. G & S: entertainment services in the nature of an ongoing television comedy variety and interview show. FIRST USE: 19990330. FIRST USE IN COMMERCE: 19990330 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Design Search Code** | |
| **Serial Number** | 76047694 |
| **Filing Date** | May 12, 2000 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | March 13, 2001 |
| **Registration Number** | 2457243 |
| **Registration Date** | June 5, 2001 |
| **Owner** | (REGISTRANT) Worldwide Pants Incorporated CORPORATION NEW YORK c/o James R. Jackoway, Esq. Armstrong Hirsch Jackoway Tyerman & Wertl1888 Century Park East Los Angeles CALIFORNIA 90067 |
| **Attorney of Record** | Lawrence E Apolzon |
| **Prior Registrations** | 1910147;1974754;1989647 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "SHOW" APART FROM THE MARK AS SHOWN |

**Type of Mark**     SERVICE MARK
**Register**         PRINCIPAL
**Live/Dead Indicator**  LIVE

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System(Tess)

*TESS was last updated on Wed Jul 26 04:17:03 EDT 2006*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start | List At: [        ]   OR   Jump | to record: [        ]    **Record 4 out of 7**

| TARR Status | ASSIGN Status | TDR | TTAB Status |   ( *Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | THE LATE LATE SHOW WITH TOM SNYDER |
| **Goods and Services** | (CANCELLED) IC 041. US 100 101 107. G & S: entertainment services in the nature of a on-going television news, commentary and interview show. FIRST USE: 19950109. FIRST USE IN COMMERCE: 19950109 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Design Search Code** | |
| **Serial Number** | 74630659 |
| **Filing Date** | February 6, 1995 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | May 7, 1996 |
| **Registration Number** | 1989647 |
| **Registration Date** | July 30, 1996 |
| **Owner** | (REGISTRANT) Worldwide Pants Incorporated CORPORATION NEW YORK c/o Armstrong Hirsch Jackoway Tyerman & Wertheimer 1888 Century Park East, 18th Floor Los Angeles CALIFORNIA 90067 |
| **Attorney of Record** | Lawrence E. Apolzon |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "SHOW" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |

| Register | PRINCIPAL |
| Other Data | "TOM SNYDER" is a living person whose consent is of record. |
| Live/Dead Indicator | DEAD |
| Cancellation Date | May 3, 2003 |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# EXHIBIT U

Fan Club - Bob Vila Merchandise - BobVila.com



# BOBVILA.COM
### The Ultimate Home Site

**Homeowner? GET CASH OUT!**
✓ Home Equity  ✓ Refinance  ✓ Debt Consolidation

LEARN MORE >>

SmartMortgage
USA.com

| Bob on TV | How To Library | Design Tools | Ask a Question |

Start by selecting a topic    Featured Channel: Bathrooms

| Product & Service Info | Real Estate | Home Finance |

CHANNELS | index

Select a topic

Go

Advertise on this site

BobVila.com > Shop > Bob Vila Merchandise > Fan Club > Clothing

## BobVila Merchandise

### Clothing



**Bob Vila FC004**

**Home Again T-Shirt**

Heavyweight 100% cotton with printed logo. Made in the USA.
Available in S, M, L, XL
$18.00 > View product details @ BobVila.com!



**Bob Vila FC005**

**Home Again Baseball Cap**

100% prewashed cotton with embroidered the Home Again logo.
Khaki with black brim. Made in the USA.
$20.00 > View product details @ BobVila.com!

Page 1 of 1.    1

Ads by Google

**Custom Embroidered Shirts**
Free Embroidery - Free Logo Setup 4-Piece Minimum - 10-Year Guarantee
www.Queensboro.com

**Baseball Shirts**
Low Prices on Baseball Shirts, T-Shirts, Undershirts, Quick Ship
www.baseballexpress.com

**Chicago White Socks Caps**
Official Chicago White Socks Caps Buy All Your White Socks Caps Here
www.WhiteSoxTeamStore.com

**Pedestrian/Bicycle Safety**
Apparel & accessories to maximize visibility in Hi-Viz Green Free S/H
pedigreen.com





EXHIBIT

³ Again Baseball Cap

- Home
- Home Again Videos
- Bob Vila Videos
- Books
- Fan Club
- Innovative Products
- Advertising

- Show Order
- Privacy Policy
- Terms of Sale
- Search
- Index

**BOB VILA'S**
**PRODUCTS & SERVICES**



BV-Fan-FC005   **$20.00**   Order

## Home Again Baseball Cap

100% prewashed cotton with embroidered the Home Again logo. Khaki with black brim. Made in the USA.

Page

ome to Bob Vila's Merchandise

Home Again Videos
Bob Vila Videos
Books
Fan Club
Innovative Products
Advertising

Show Order
Privacy Policy
Terms of Sale
Search
Index



**BOB VILA'S**
## PRODUCTS & SERVICES

Bob Vila's on-line store features your favorite Home Again shows, fan club items, home improvement books, innovative tools, and more.

Bob Vila's Web site is the place to find articles on Landscaping, Building, Repairing and Restoring your home.

As well as interactive forums on Home Security, Carpentry and Woodworking, Appliances, Electrical, Plumbing, Heating and Air Conditioning and General How-to Advice.

Plus Design Tools, Real Estate and Home Finance

Start your Remodel with BobVila.com



Pag

# EXHIBIT V

16 of 25 DOCUMENTS

Copyright 1998 Associated Press
All Rights Reserved

The Associated Press State & Local Wire

November 20, 1998, Friday, PM cycle

**SECTION:** State and Regional

**LENGTH:** 148 words

**HEADLINE:** Bob Vila denies charges made in lawsuit

**DATELINE:** EUGENE, Ore.

**BODY:**

Television personality Bob Villa said today that a lawsuit by a woman claiming he injured her when he kicked and punched the back of her airplane seat is a groundless attempt to get money from a celebrity.

Carol Berger of Leaburg is seeking nearly $127,000, alleging that the "Home Again" host injured her back and caused her lasting psychological trauma. Her lawsuit seeks $100,000 for pain, suffering and mental anguish, and $26,673 for medical care and lost earnings.

The incident occurred in the first-class section on a flight from Denver to Eugene on Nov. 16, 1997, according to the complaint filed this week in Lane County Circuit Court.

Vila said through a statement by his publicist that the suit "is a baseless claim by an individual whom I've never met."

"I guess she saw a celebrity and is trying to take advantage of the situation for her own gain," he said.

**LOAD-DATE:** November 20, 1998

7 of 25 DOCUMENTS

Copyright 2002 Richmond Newspapers, Inc.
Richmond Times Dispatch (Virginia)

May 24, 2002 Friday City Edition

**SECTION:** EDITORIAL; Pg. A–17

**LENGTH:** 828 words

**HEADLINE:** GOVERNOR'S MANSION SHOULD REMAIN OPEN TO PUBLIC

**BYLINE:** Bryan Slater, Bryan Slater was Secretary of Administration during the Gilmore administration.,

**BODY:**

As families throughout America begin to plan their summer vacations, one of Virginia's most historic and treasured landmarks will unfortunately be closed. In breaking with tradition, Governor Mark Warner has announced that the gates to the Executive Mansion will be locked and visitors will not be welcome. The Executive Mansion is a registered Historic Landmark and is a major tourist destination for people visiting Virginia.

I was fortunate to have the opportunity to oversee a $7.2–million renovation of the Executive Mansion. Under the chairmanship of former First Lady Roxane Gilmore, the Executive Mansion renovation committee took on a task that had never been done before – the complete renovation and restoration of the oldest continuously occupied governor's mansion in the country. Every Governor of Virginia since James Barbour, who first occupied the Mansion in 1813, has lived there.

From 1998 through 2000 the Mansion went through its first complete renovation. The house, as historical and priceless as it is, was in dire need of repair. Nearly 200 years of public service had taken its toll and the house was becoming unsafe for visitors and residents alike. Floors deflected enough to turn off power, the elevator filled with water when it rained, and two of the brick foundation walls were gone, deteriorating back into dirt.

The top-to-bottom structural, system, cosmetic, and decorative renovations restored the Mansion so that it can be enjoyed by people from all over the world. Virginia taxpayers paid for the structural renovations of this treasure, and private companies, individuals, and the Garden Club of Virginia paid to restore and update the furnishings and gardens.

PRIOR TO THE closing of the Mansion for renovations, it had been open for public tours ever since I can remember. As a lifelong Virginian, I can still recall my fifth–grade tour in 1972. When Governor Jim Gilmore reopened the Mansion to the public on New Year's Day, 2000, crowds stood in line for more than five hours to view the completed renovations.

Bob Villa, host of "This Old House" and "Home Again," believed the magnitude of the project was of such importance that he produced a 13-part series documenting the renovation process and some of the special techniques used in the restoration. In each show he also focused on other historic spots in Virginia. That series still is playing in syndication across America, encouraging people to visit Virginia's historic treasures.

The renovation of the Mansion also included the second–floor living quarters. This living area was redesigned with much thought given to future First Families. There are four bedrooms and the space to add a fifth if needed. The second floor also contains a state–of–the–art kitchen, and an elevator that goes to the basement, where access to a cottage is available through an enclosed walkway. In the cottage, which is also on the Mansion grounds, there are three bedrooms, with the potential for a fourth.

In addition to all the updates in the Mansion, the Carriage House was also renovated and has office spaces, exercise equipment, and storage facilities. Outside, the walled garden, designed by renowned landscape architect Charles Gillette, was painstakingly restored to its original plan at great expense to the Garden Club of Virginia. The Club took on the project and donated all the work to the people of the Commonwealth.

The main floor of the Mansion is its most historical feature. The renovation committee went to great lengths and expense to preserve the historical integrity and significance of the first floor. Moreover, even greater amounts of time and

6 of 25 DOCUMENTS

Copyright 2003 ProQuest Information and Learning Company
All Rights Reserved
Business NH Magazine

September 1, 2003

**SECTION:** Vol. 20, No. 9; Pg. 77

**B&H–ACC–NO:** 401512831

**LENGTH:** 157 words

**HEADLINE:** Profile: Classy Cabinets

**BODY:**

company: Crown Point Cabinetry

Principal address: 153 Charlestown Road, Claremont

Web site: www.crown-point.com

General description: Produces high quality, period-style custom cabinetry that is sold direct, nationwide.

Number of NH employees: 90

Top executive: Brian Stowell, president

Founded: In 1978 by father Norman Stowell in a one-car garage in Claremont. Customers: Homeowners with properties valued at $750,000 and above.

Annual sales: $11.25 million

Growth: The company will move to a new 85,000-square-foot facility in Claremont by March and has plans to grow by 15 percent each year for the next nine years, to $40 million.

Claim to fame: Bob Villa visited the factory in May 2001 to film an eight-minute segment for Home Again, which is now in syndication on TLC. He was so impressed with the operation that a set of milk-painted, early American cabinets now graces his Martha's Vineyard kitchen.

**LOAD–DATE:** September 24, 2003

3 of 25 DOCUMENTS

Copyright 2004 Providence Publications, LLC
The Providence Journal (Rhode Island)

August 28, 2004 Saturday
All Editions

**SECTION:** REAL ESTATE; Pg. E-04

**LENGTH:** 1167 words

**HEADLINE:** HOUSE OF THE WEEK – Affordable luxury: Hancock house is pretty grand at $499,900

**BYLINE:** GAIL CIAMPA, Journal Staff Writer

**BODY:**

The grand and gracious home at 239 Adelaide Ave. in the Elmwood section of Providence has been in the care of Berry-Jean Murray for a decade.

Now, she says, it's time to turn the Charles E. Hancock house over to a new owner. The house was built in 1892 by jewelry manufacturer Charles E. Hancock and designed by architect Howard Hilton, whose credits include the Roger Williams Park Casino. It is on the National Register.

"You know you only have these places on loan," said the woman who lovingly cared for the Georgian-style Queen Anne Victorian. "These houses are meant to be passed on."

"You have to do what the house needs," Murray said. "A house always needs something to make it ready for the next generation."

But because of all that Murray and the previous owner did to restore the house that fell into disrepair and was turned into a boarding house in the 1970s, the new owners can pick and choose their projects and take their time doing it.

The house is in pristine condition, the English-style garden flourishing, the period window treatments and wall coverings all hung with care.

Murray is nearing retirement age. She is a marketing director at Northrup Grumman Information Technologies. It was her energy that helped bring television builder Bob Villa to Adelaide Avenue in 2000 for a neighborhood project for his show Home Again. Villa helped 11 neighbors with improvement projects. Those episodes are rerun on the Learning Channel.

At the Hancock House, Villa restored the front porch to its original grandeur, removing old columns and putting down new mahogany decking. New columns and railings were installed. To replicate the rounded style of the porch, the railings were customized by Forester Moldings in Leominster, Mass. You can see the mill work done on the Web site Murray has set up for the sale of the house.

When she bought the house, the neighborhood was run down, and it took a lot of time coming back, Murray said. Now her block on the Elmwood side of Adelaide, features a row of renewed Victorians, restored by urban professionals.

The Hancock house is representative of many large single family houses built on Adelaide Avenue in Elmwood at the turn of the century, said Clark Schoettle, executive director of the Providence Preservation Society Revolving Fund.

But this house has received more attention than most, he added. PPS recently got a book of color plates from old Scientific American magazines. An Architects and Builders edition, published in March 1894, features a photo and plan of the Hancock house. He speculated that the architects of the day were eager to have their work featured, so Hilton probably submitted it to the magazine.

Schoettle said that Hilton also built a second home at 181 Adelaide Ave. that is identical to the Hancock house, save a prominent two story porch.

HOUSE OF THE WEEK - Affordable luxury: Hancock house is pretty grand at

A different House of the Week appears each Saturday in the Real Estate section of The Providence Journal. The feature tells the story of the house and the people who have lived in it. If you would like us to consider a house for sale as a subject of this news feature, send a photo, information about the house and why it is of interest, to Paula Constantine, real estate editor, 75 Fountain St., Providence, RI 02902; fax (401) 277–8175.

* The master bedroom has fabric on the ceiling that matches the draperies.

JOURNAL PHOTOS / BILL MURPHY

* The backyard deck at 239 Adelaide Ave. in Elmwood.

PHOTO

* The piano parlor, above, living room, below, and kitchen, bottom, of the Charles E. Hancock house on Adelaide Avenue in Elmwood.

PHOTO

**LOAD–DATE:** August 31, 2004

# EXHIBIT W

**<u>EXECUTION COPY</u>**

LICENSE AGREEMENT

This License Agreement is made and entered into as of December 31, 2002 (the "Effective Date"), by and between Sears, Roebuck and Co. ("Sears") and B.V.T.V., Inc. ("B.V.T.V.") as Licensors, and BVWebTies LLC ("WebTies"), as Licensee.

WHEREAS, Sears and B.V.T.V. are the joint owners of multiple episodes of the television program series entitled "Bob Vila's Home Again" (the "Program") and are continuing to produce additional episodes of the Program; and

WHEREAS, Sears and B.V.T.V. (through WebTies and with the consent of Sears and B.V.T.V.) have heretofore licensed or otherwise made available to BobVila.com LLC certain of their respective rights in relation to the use of the Program on the Internet (the "Oral Licenses"); and

WHEREAS, Sears and B.V.T.V. (through WebTies) terminated the respective Oral Licenses as of 11:59 p.m. on December 30, 2002; and

WHEREAS, as of 12:01 a.m. on December 31, 2002, WebTies will assume control over the operation of the "BobVila.com" Internet web site (the "Site"), which provides online solutions to meet customers' home improvements needs and offers related goods and services; and

WHEREAS, WebTies wishes to use segments of episodes of the Program on the Site, and to license others to use such segments on the Internet, and Licensors are agreeable thereto;

NOW, THEREFORE, the parties hereto agree as follows:

I.    <u>Grant of Rights</u>

1.    Subject to the terms and conditions of this agreement, Licensors hereby grant to WebTies a worldwide, royalty-free, exclusive license ("License"), for the term of this agreement, to use episode segments of the Program for Internet transmission on the Site. Each Licensor grants its respective rights contained in the foregoing License for itself and not for the other Licensor. For so long as this agreement remains in effect, and except as otherwise allowable pursuant hereto, neither Licensor shall grant to any other person or entity a license to use excerpts of the Program on the Internet; provided, however, that nothing in this agreement shall be construed to impair the rights and obligations of Licensors under any agreements with third parties with respect to television broadcasting of the Program (each a "TV Agreement"), and that any provision hereof which is found to be inconsistent with any such TV Agreement will be deemed void and severed from the remaining provisions.

-1-

2.    WebTies will have the right to use on the Site, and to license others to use on the Internet, excerpts from all episodes of the Program previously produced and to be produced hereafter, provided that in no event may the length of any excerpt exceed two (2:00) minutes. B.V.T.V. will furnish to WebTies specific episodes requested by WebTies and, following selection of specific episodes by WebTies, WebTies or its contractors will edit out excerpts from the specific episodes as may be requested by WebTies. Unless the parties agree otherwise, all editing and the production of excerpts will be performed by WebTies or its contractors. Such excerpts are referred to herein as "excerpts" irrespective of whether the editing work is performed by WebTies or other parties. All editing work will be at the expense of WebTies. If either Licensor performs any of the editing work, WebTies will pay such Licensor promptly upon submission of invoices by such Licensor. A Licensor that performs editing work will bill WebTies at Licensor's cost, which may include an allowance for overhead, but not for profit.

3.    Each excerpt must bear the title of the Program and carry the statement that it was produced in association with Sears. Each excerpt is subject to the approval of Licensors in all respects, including length and content.

4.    WebTies will have the right to use the excerpts on the Site and to license the use of excerpts on other Internet sites, provided that the licensing of excerpts by WebTies will be subject to the approval of both Sears and B.V.T.V. It is understood that Sears may withhold such approval if the site to be licensed is deemed by Sears to be a competitor. Either Licensor may withhold its approval if such Licensor, in its sole discretion, determines that such license may conflict with rights previously granted or diminish the value of the Program. If either Licensor disapproves of any proposed license, such Licensor shall notify WebTies in writing within fifteen (15) business days following submission of all relevant details to Licensors by WebTies, and if WebTies does not receive a timely notice of disapproval from either Licensor, such license shall be deemed approved.

5.    Following their use on the Site and on licensed sites, all excerpts created by or supplied to WebTies will be transmitted to Licensors or their designees, provided, however, that all such excerpts may be re-used by WebTies during the term if it so desires. All storage expenses for the excerpts will be paid by WebTies.

6.    WebTies will take, and cause to be taken, all proper care of excerpts as well as whole episodes which may at any time be in the possession of WebTies or its contractors, and will insure them against fire, theft or other casualty loss in favor of Licensors, with a value of not less than Five Hundred ($500) Dollars per episode and Two Hundred Fifty ($250) Dollars per excerpt.

7.    WebTies recognizes that Sears and B.V.T.V. have granted or may hereafter grant distribution rights to other parties (collectively referred to as "Distributors"), such as Eyemark Entertainment and The Learning Channel, with respect to the television distribution of the Program. Without limiting the generality of Section I.1 above regarding TV Agreements, WebTies recognizes and agrees that nothing herein contained shall be deemed in any manner to vest any rights in WebTies with respect to any television distribution of the Program or closed circuit exhibition thereof, or any other similar or dissimilar distribution of the Program, it being understood that the rights granted herein are limited to the use of excerpts on the Internet.

-2-

## II.    Ownership

1.    All right, title and ownership in the Program and in excerpts as between WebTies and Licensors shall at all times be vested in Licensors.

2.    All excerpts shall bear a copyright notice in the name of Sears and B.V.T.V.

3.    B.V.T.V. warrants and represents that the use of the excerpts on the Internet will not require any payments to the producers of the Program or any participants therein, except only as provided herein. B.V.T.V. further warrants and represents that Mr. Bob Vila will not be entitled to any compensation with respect to the use of the excerpts. In the event, however; that any episode utilized to prepare an excerpt includes the services of any other talent, Licensors will have the right to advise WebTies that it may not use such excerpt or that an additional specified payment must be made to the particular person or persons, together with other payments required by the applicable labor union or guild having jurisdiction over the production and use of the episode of the Program.

4.    Licensors will endeavor to supply to WebTies photographs and other materials in their possession to assist WebTies in the advertising or promotion of the Site and in licensing the excerpts. Any such materials will be supplied to WebTies at cost and will remain the property of the Licensors.

## III.    Sponsorships.

1.    In the event that WebTies or any licensee of WebTies, offers commercial sponsorships including, without limitation, banner ads, "framing" and links to other Web sites, on the Site (or another Internet web site) within the same Web page or adjacent to the excerpts, the following provisions shall apply:

(a)    No commercial sponsorship may be offered to any retailer deemed by Sears in good faith to be in competition with Sears. WebTies must advise Sears in writing of the proposed sponsorship by a retailer, and Sears will inform WebTies within ten (10) business days whether Sears considers such proposed advertiser to be in competition with Sears. If Sears does not respond within such ten day period, the proposed sponsorship will be deemed approved. The provisions hereof will similarly apply to any licensee of WebTies.

(b)    No commercial sponsorship may be offered to any company providing products or services listed in Schedule A attached hereto and made a part hereof; provided, however, that the products and services or categories of products and services listed in Schedule A shall not include any product or service that, at the time of the proposed commercial sponsorship, is not sold or provided by Sears or is not otherwise directly competitive with a product or service sold or provided by Sears. Sears may amend said Schedule from time to time on written notice to WebTies to add or delete specific products and services. In the event of any question whether a product or service is competitive, similarly to (a) above, WebTies will advise Sears of such proposed sponsorship and Sears will inform WebTies within five (5) business days whether Sears considers such product or service to be competitive. If Sears does not respond

-3-

within such five day period, the proposed sponsorship will be deemed approved. The provisions hereof will similarly apply to any licensee of WebTies.

    (c)    Licensors will inform WebTies from time to time of the principal advertisers sponsoring episodes of the Program on television. Subject to the provisions of (a) and (b) above, WebTies and its licensees may solicit sponsorship of the excerpts from such principal advertisers and Licensors agree to cooperate in such solicitations.

    (d)    WebTies and its licensees will not sell sponsorship in the excerpts or adjacent thereto or on the same Web page to advertise or promote products or services directly competitive to the products or services being advertised by the principal advertisers on the television transmissions of episodes of the Program.

    2.    Nothing herein shall be deemed to prevent the use by Sears of the Program or any versions or segments thereof at in-store exhibitions or other industrial exhibitions even if the method of delivery to such exhibitions is the Internet and irrespective of sponsorship of any such exhibitions.

IV.    <u>Promotion and Advertising</u>

    1.    WebTies and its licensees will have the right to advertise and promote on the Internet that it (they) will exhibit excerpts of the Program. WebTies and its licensees may use the title of the Program in such advertising and promotion, it being understood, however, that they may not use the Program title or any other reference to the Program in any advertising or promotion in any advertising media whatsoever except the Internet, without the specific written permission of Licensors.

    2.    Nothing herein contained shall be deemed to prevent or prohibit the advertising on the Internet of the transmission by television of the Program, by each of the Licensors or Distributors or advertisers on the Program or their respective licensees or assignees including, without limitation, the right to transmit over the Internet excerpts from episodes of the program solely for advertising and promotional purposes.

    3.    Nothing herein contained shall be deemed to prevent or prohibit Licensors, or either of them or any parent, subsidiary or affiliated company of WebTies, from advertising on the Internet the sale of home videos of the Program or of any articles of whatsoever nature bearing the title of the Program.

V.    <u>Production of Additional Materials</u>.

    In the event that WebTies wishes to produce additional materials to be shown as part of or in conjunction with the excerpts, Licensors must agree to such additional production. All scripts and other elements or materials must be approved by Licensors. Any such production must be performed by B.V.T.V. or Licensors' designee; B.V.T.V. will endeavor to make Mr. Bob Vila available if required. The costs of such additional production must be borne by WebTies and must be agreed upon by B.V.T.V. and WebTies. As between Licensors and

-4-

WebTies, all such newly produced materials shall be owned jointly by Licensors and must bear a copyright notice in the name of Sears and B.V.T.V. All such newly produced materials shall be subject to the terms and conditions of this agreement that apply to excerpts. The requirements of this Section V shall not apply to any materials produced by WebTies that are not shown as part of or in conjunction with an excerpt from the Program.

VI.    Term

1.    The term of this agreement will commence at 12:01 a.m. on the Effective Date and will continue until December 31, 2005, unless sooner terminated by either Licensor by written notice to WebTies upon: (a) the use of any excerpt by WebTies or its licensee(s) in a medium other than the Internet, (b) the failure of WebTies to cure a material breach (other than as described in Section VI.1(a)) within thirty (30) days after receipt of written notice from Licensors, (c) the liquidation or dissolution of WebTies, (d) the insolvency of WebTies, (e) the filing of a petition in bankruptcy by or against WebTies which, if involuntary, is not dismissed within thirty (30) days thereafter, or (f) the termination of the Bob Vila Spokesperson Agreement between Sears and Robert J. Vila dated as of September 29, 1989, as amended (each of the foregoing (a) through (f) being referred to herein as an "Early Termination Event").

2.    Upon the termination of this agreement, all right, title, and interest in the excerpts shall revert back to Licensors. WebTies shall thereafter have no further rights in any license granted under this agreement, shall be prohibited from using the excerpts, and shall promptly cease using the excerpts in all forms. WebTies shall remove or erase all excerpts and attributes thereof from the Site and any advertising and promotional materials related thereto, as soon as commercially and technically practicable, given customary Internet business practices, but in no event shall any such material be used by WebTies or otherwise remain on the Site or in any advertising or promotional materials more than thirty (30) days following termination of this agreement.

3.    The failure of any licensee of WebTies to comply with the terms of this agreement shall result in immediate termination of the rights of such licensee to use any excerpts. As long as any such licensee is in full compliance with the terms of this agreement at the time this agreement is terminated as to WebTies, Licensors may, but shall not be required to, enter into a direct licensing relationship with such licensee concerning excerpts of the Program. If Licensors do not enter into such direct licensing relationship with such licensee, such licensee shall be subject to all of the provisions of Section VI.2 above.

4.    The parties hereby acknowledge and agree that this agreement is not an executory contract within the meaning of 11 U.S.C. § 365; provided, however, that if this agreement is found to be an executory contract, the parties acknowledge and agree that it is a contract for which applicable law excuses Licensors from accepting performance from or rendering performance to a debtor-in-possession, or trustee in bankruptcy, or to an assignee of the licenses hereunder, other than a Permitted Assign.

5.    Except in the case of an Early Termination Event, WebTies shall have an exclusive option to negotiate with Licensors for the renewal, extension, or other continuation or

replacement of this agreement on such terms as the parties may agree. Such option shall be exercised by WebTies by written notice to Licensors on or before the date that is one hundred twenty (120) days prior to the expiration of the term (the "Option Commencement Date"). If WebTies exercises its option, Licensors and WebTies shall negotiate in good faith for up to ninety (90) days after the Option Commencement Date (the "Negotiation Period"). If the parties are unable to reach an agreement within the Negotiation Period despite good faith efforts, Licensors may either agree to extend the Negotiation Period for thirty (30) or more days, or allow the term to expire.

VII.   Program Exhibition Schedules

1.   WebTies agrees to display on the Site by use of the keyword "Bob Vila's Home Again" current and future broadcast exhibition schedules of the program on free TV, cable or any other method of television. Material for such information on the Site will be supplied by Licensors at Licensors' cost, on a monthly or other periodic basis. WebTies agrees that there will be no advertisements on the Web page displaying such information on behalf of any retailer or any product competitive to Sears' products and services listed in Schedule A or competitive to products or services of the principal advertisers on the television series.

2.   WebTies agrees to provide, as directed by Sears, a hot link from its Web site to the Web site(s) of the broadcasting and/or cable system companies that are licensed to broadcast the Program.

VIII.   Warranties and Representations.

1.   B.V.T.V. warrants and represents:

(a)   that it has secured all necessary rights such that Licensors are the owners of all necessary right, title and interest in and to the Program to enter into and perform this agreement and convey the rights granted by this agreement. To the extent that any parent, subsidiary or affiliated company of B.V.T.V. owns any relevant rights, B.V.T.V. warrants that it has secured all necessary grants of rights therefrom.

(b)   that the rights, licenses and privileges conveyed hereunder to WebTies will not in any way infringe upon any rights of any third party.

(c)   that the episodes of the Programs (and any excerpts thereof created by Licensors) made available to WebTies in accordance with the terms hereof will not constitute a copyright infringement or a libel or defamation or invasion of the rights of privacy of any third party.

(d)   that there are no claims or litigations pending or, to B.V.T.V.'s knowledge, threatened adversely affecting any of the rights, licenses and privileges herein conveyed.

(e)   that B.V.T.V. has full power and authority to enter into this agreement.

-6-

2.    Sears warrants and represents:

(a)    that, subject to the provisions regarding TV Agreements and Distributors described in Sections I.1 and I.7, respectively, the rights, licenses and privileges granted by Sears to WebTies hereunder have not been granted by Sears to any third party;

(b)    that there are no claims or litigations pending or, to Sears' knowledge, threatened adversely affecting any of the rights, licenses and privileges herein conveyed by Sears; and

(c)    that Sears has full power and authority to enter into this agreement.

OTHER THAN AS EXPRESSLY SET FORTH IN THIS SECTION VIII.2, WEBTIES ACKNOWLEDGES AND AGREES THAT SEARS HAS NOT MADE, DOES NOT MAKE, AND HEREBY DISCLAIMS, ANY REPRESENTATION, GUARANTY, CONDITION OR WARRANTIES OF ANY KIND WITH RESPECT TO THE EXCERPTS OR THE RIGHTS, LICENSES AND PRIVILEGES GRANTED BY SEARS HEREUNDER WITH RESPECT THERETO, WHETHER WRITTEN OR VERBAL, EXPRESS OR IMPLIED, IN FACT OR AT LAW, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF NON-INFRINGEMENT, MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR USE OR PURPOSE.

3.    WebTies warrants and represents:

(a)    that it has full power and authority to enter into this agreement; and

(b)    that all excerpts created by WebTies and its contractors (other than any Licensor) and all elements and materials to be used in the production of new materials pursuant to Article V hereof or otherwise used on the Site to the extent not produced by Licensors will not constitute a copyright infringement or libel or defamation or invasion of the rights of privacy of any third party.

4.    For clarity, WebTies shall not be responsible for any copyright infringement or libel or defamation or invasion of the rights of privacy of any third party arising from the display or other use of an excerpt in compliance with the terms and conditions of this agreement to the extent that such violation resulted not from the editing process of WebTies or its contractors (other than a Licensor) or any new materials produced pursuant to Article V, but from the content of the original episode from which the excerpt was created.

IX.    Prosecution of Infringement Claims

In the event that WebTies learns of any actual or threatened infringement or passing off of the Program or any excerpts thereof, or of any other violation of rights in or to the Program, or learns that any person claims or alleges that the Program or any excerpt thereof is liable to cause deception or confusion to the public, WebTies shall promptly notify Licensors thereof and, if either Licensor reasonably requests, cooperate in connection with any action brought or defended by such Licensor (at WebTies' expense), including without limitation by being a plaintiff or co-

-7-

plaintiff and by causing its officers, managers, and employees to execute documents and to testify.

X.    Indemnities

1.    Licensors shall protect, defend, indemnify and hold harmless WebTies and its successors, assignees and licensees and their respective directors, officers, managers, and employees, against any and all charges, damages, costs, expenses, including reasonable attorneys' fees and costs, judgments, penalties, liabilities and losses of any kind which may be sustained or suffered by, secured against or imposed on each or any of them by reason of any third party claim arising out of or claimed to arise out of the commission or omission of any act which constitutes a breach of any of the warranties, representations or other agreements made by Licensors herein.

2.    WebTies shall protect, defend, indemnify and hold harmless Licensors and their respective successors, assignees and licensees and their respective directors, officers and employees, against any and all charges, damages, costs, expenses including reasonable attorneys' fees and costs, judgments, penalties, liabilities and losses of any kind which may be sustained or suffered by, secured against or imposed upon each or any of them by reason of any third party claim arising out of or claimed to arise out of (a) the commission or omission of any act which constitutes a breach of any of the warranties, representations or other agreements made by WebTies herein or (b) the Site or any other licensee web site displaying any excerpt, including without limitation the materials contained therein and the products and services of WebTies, other licensees, or third parties sold or provided in connection therewith (other than the excerpts or the products or services of a Licensor that are offered on the Site or a licensee web site, as applicable).

3.    Indemnity Procedures.

(a)    Notice and Response.  Promptly after either party's receipt of notice of a claim or the commencement of any action which may result in a claim for indemnification pursuant to this agreement, such party (the "indemnified party") shall notify in writing the other party (the "indemnifying party") thereof; provided that the failure to give prompt notice shall not relieve the imdemnifying party of any liability hereunder except and then only to the extent it can demonstrate it was prejudiced thereby.  The indemnified party shall cooperate fully with the imdemnifying party's reasonable requests, at the indemnifying party's sole expense, to effectuate the terms of its indemnities in accordance with this agreement.  Should the indemnifying party refuse or fail to acknowledge its indemnity obligation hereunder within ten (10) days after its receipt of notice from the indemnified party as provided above, the indemnified party shall thereafter have the right, but not the obligation, to defend such action with counsel chosen by the indemnified party, including the right to settle or otherwise resolve any such dispute without the written consent of the indemnifying party, all without prejudice to the indemnified party's rights against the indemnifying party.

(b)    Participation by Indemnified Party.  An indemnified party which has received an acknowledgment of acceptance of indemnity shall have the right to employ separate counsel in any action as to which indemnification may be or has been sought under

-8-

any provision of this agreement and to participate in the defense thereof; provided that the fees and expenses of such and all other expenses resulting from the participation of the indemnified party shall be at the expense of such indemnified party unless the indemnifying party has agreed in writing to pay such fees and expenses. Except as set forth above, the indemnifying party shall not be liable for any settlement of any action effected without its written consent, which shall not be unreasonably withheld.

XI.    Insurance

1.    WebTies shall, at its own expense, obtain and maintain the following insurance: Commercial General Liability, with coverage including premises/operations, contractual, personal and advertising injury, and products/completed operations liabilities, with limits of not less than $1,000,000 per occurrence for bodily injury and property damage combined. Each Licensor shall be named as an additional insured. Limits of liability requirements may be satisfied by a combination of Commercial General Liability and Umbrella Excess Liability policies.

2.    Insurance shall be purchased from companies having a rating of A-VII or better in the current BEST'S INSURANCE REPORTS published by A.M. Best Company. Policies of insurance shall provide that they will not be canceled or materially changed without at least thirty (30) calendar days' prior written notice to each Licensor. WebTies shall deliver to each Licensor within thirty (30) days after the Effective Date a Certificate of Insurance evidencing the required coverage under this agreement, and shall update said Certificate on each insurance policy renewal thereafter. Failure to obtain and maintain required insurance shall constitute a material breach of this agreement. Additionally, any approval or acceptance by Licensors of any Certificate of Insurance shall not relieve WebTies of any obligation contained in this agreement, including, without limitation, liability under Section X.2 for claims in excess of the prescribed insurance limits.

XII.    Miscellaneous

1.    Any notice required or permitted to be given under this agreement shall be in writing and shall be deemed sufficiently given (i) the following business day after having been timely sent by reputable overnight courier services for priority, next day delivery, or (ii) upon confirmation of receipt by the recipient after having been sent by electronic mail or fax, in each case to the address set forth below or to such electronic mail address, fax number, or other mailing address as provided by the recipient to the other parties in accordance with this Section XII.1:

WebTies:    BVWebTies LLC
115 Kingston Street, 3rd Floor
Boston, MA 02111
Attn: George J. Hill, Manager
Fax: (617) 848-8401

GSDocs-1182068-6

With a copy to:

Thomas P. Bloch, Esq.
Goulston & Storrs, PC
400 Atlantic Avenue
Boston, MA 02110
Fax: (617) 574-7569

B.V.T.V.:    B.V.T.V., Inc.
115 Kingston Street, 3rd Floor
Boston, MA 02111
Attn: Robert J. Vila, President
Fax: (617) 848-8401

With a copy to:

Ronald E. Feiner, Esq.
Kaufmann, Feiner, Yamin, Gildin & Robbins
777 Third Avenue
New York, NY 10017
Fax: (212) 705-0859

Sears:    SEARS, ROEBUCK AND CO.
Attn: Andy Ginger, Vice President, Brand Marketing
Department 727X
3333 Beverly Road
Hoffman Estates, IL 60179
Fax: (847) 286-8800

With a copy to:

SEARS, ROEBUCK AND CO.
Law Department
Attn: Associate General Counsel
Corporate Services
3333 Beverly Road
Hoffman Estates, IL 60179
Fax: (847) 286-5421

2.    No waiver by any party hereto of any breach of this agreement shall be deemed to be a waiver of any prior or subsequent breach of the same or any other provision hereof, nor shall the exercise of, or failure to exercise, any right granted to any party hereunder be deemed to operate as a waiver unless confirmed in writing by the party waiving its rights.

3.    This agreement is being executed and delivered in, and shall be construed and enforced in accordance with the laws of, the state of New York without giving effect to that state's conflict of laws principles. If any provisions of the agreement shall be determined by a

-10-

court or other tribunal of competent jurisdiction to be void or unenforceable, all other provisions of this agreement shall nevertheless continue in force and effect.

4.    EXCEPT AS MAY ARISE PURSUANT TO SECTION X, NO PARTY SHALL UNDER ANY CIRCUMSTANCES BE LIABLE TO ANY OTHER PARTY FOR CONSEQUENTIAL, INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY OR PUNITIVE DAMAGES ARISING OUT OF THIS AGREEMENT, EVEN IF SUCH PARTY IS APPRISED OF THE LIKELIHOOD OF SUCH DAMAGES OCCURRING.

5.    This agreement constitutes the complete and final understanding and agreement of the parties hereto with respect to the subject matter hereof, and replaces any and all prior agreements or understandings, whether written or oral, relating in any way to the subject matter hereof. No modification amendment or supplement to this agreement shall be effective unless in writing executed by each of the parties hereto.

6.    Notwithstanding any other provision herein, this License Agreement is contingent upon the termination of the Oral Licenses, the execution and delivery of a Services and License Agreement between WebTies and Saratoga Web Assets LLC, and the closing of the Strict Foreclosure with respect to BobVila.com LLC, in each case prior to or as of the Effective Date, and will not otherwise have any force or effect.

7.    Either Licensor may assign this agreement, or any of its rights or obligations hereunder, in whole or in part, without the prior consent of WebTies. WebTies shall not assign this agreement, or any of WebTies' rights or obligations hereunder, in whole or in part, except to a Permitted Assign; provided, however, that in each case this agreement shall be binding upon the Permitted Assign. This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns (including any Permitted Assign). "Permitted Assign" shall mean (a) any corporate successor to WebTies and (b) any purchaser of substantially all of the assets of the business of the Site to which Licensors give their prior written consent, which consent shall not be unreasonably withheld; provided, that the parties acknowledge and agree that Sears' withholding of consent will be deemed reasonable if such purchaser is a competitor of Sears as determined with reference to Sections III.1(a) and (b) above.

[Remainder of page intentionally left blank]

-11-

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals on the date first above written.

SEARS, ROEBUCK AND CO.

By: _____
      Hereunto duly authorized

B.V.T.V., INC.

By: _____
      Hereunto duly authorized,
                              President

BVWEBTIES LLC

By: _____
      Hereunto duly authorized
                              Manager.

Schedule A

Sears Products and Services

Tools of all types

Power equipment including, without limitation, generators, welders, compressors, pressure washers, and garage door openers

Lighting equipment

Powered lawn and garden equipment

Non-powered lawn and garden equipment

Lawn and garden tools

Electrical testing equipment

Tool storage

Surveying equipment

Paint and painting accessories

Driveway sealer and coating

Installed home improvement products and services

Air conditioning and heating equipment and services

Water and air treatment equipment and services

Credit services

Appliances

-13-

# EXHIBIT X

# Greenberg Traurig

Annapoorni R. Sankaran
Tel. 617.310.6058
Fax 617.279.8458
SankaranA@gtlaw.com

July 20, 2006

BY ELECTRONIC & OVERNIGHT MAIL
James F. O'Brien, Esq.
410 park Avenue, Suite 1530
New York, NY 10022

            Re:    Robert J. Vila et al.  v. Sears, Roebuck and Co., et al.,
                    Dukes Superior Court Civil Action No. DUCV 2005-00041

Dear Counsel:

As you are well aware, plaintiffs in the above referenced action Robert J. Vila ("Vila"), and B.V.T.V., Inc. ("BVTV"), along with BVWebties LLC ("Webties"), have been using clips, excerpts, versions and/or segments of the *Home Again* television show on the bobvila.com web site in contravention of the terms of the License Agreement dated December 31, 2002 between Sears Roebuck and Co. ("Sears"), BVTV and Webties (the "License Agreement"), as Webties' rights to use the clips, versions and/or segments of the *Home Again* television show has now expired.

As you know the License Agreement permits Webties to show excerpts, clips, versions and/or segments of *Home Again* which are no longer than 2 minutes on the bobvila.com internet site.  Pursuant to the terms of the License Agreement, upon termination,

> all right title and interests in the excerpts shall revert back to Licensors [(BVTV and Sears)].  <u>WebTies shall thereafter have no further rights to any license granted under this agreement, shall be prohibited from using the excerpts, and shall promptly cease using the excerpts in all forms.  WebTies shall remove or erase all excerpts and attributes therefrom from the Site and any advertising and promotional materials related thereto</u>, as soon as commercially and technically practicable, given customary internet business practices, but in no event shall any such material be used by WebTies or otherwise remain on the Site or in any advertising or promotion materials more than thirty (30) days following termination of this agreement.

License Agreement VI (2) (emphasis added).  The License Agreement expired on December 31, 2005.  License Agreement VI(1).  As you know, Webties, BVTV and Vila have continued to display clips of the *Home Again* television show from December 31, 2005 to the present (see enclosures).  This is in direct contravention of the terms of the License Agreement as well as Amendment 10 of the Syndication Agreement between BVTV and Sears which requires that all uses of the Library "be mutually agreed upon between Producer and Sears and the income from

James F. O'Brien, Esq.
Thursday, July 20, 2006
Page 2

_____

such uses shall be divided equally between Producer and Sears." Syndication Agreement, Amendment 10, paragraph 4. Sears did not agree to use of the excerpts, clips, versions or segments after December 31, 2005.

Vila, BVTV, and Webties are not authorized to maintain clips, excerpts, versions and/or segments of the *Home Again* television show on the bobvila.com web site. Accordingly, Sears hereby demands that Vila, BVTV and/or Webties cease and desist from making any reference to the Home Again Library, including but not limited to, displaying clips, versions, excerpts and/or segments of *Home Again*, on the web site bobvila.com. Furthermore, Sears hereby demands an accounting of all income generated by Webties, BVTV and/or Vila attributable to references to the *Home Again* Library and/or clips, versions, excerpts and/or segments of *Home Again*, on the web site bobvila.com. Finally, Sears demands that Webties, BVTV and/or Vila remit 50% of any such profits to Sears immediately. If you wish to avoid further escalating this matter, we must receive written assurance from Vila, BVTV and Webties by 5:00 p.m. E.S.T. on July 21, 2006, that they will (1) cease and desist from making any reference to the Home Again Library, including but not limited to, displaying clips, versions, excerpts and/or segments of *Home Again*, on the web site bobvila.com, (2) provide the requested accounting and (3) remit 50% of all profits. Please return a signed copy of this letter *via* facsimile at (617) 279-8458. If we do not receive a timely response, we will take all necessary appropriate legal action to protect Sears' rights, including but not limited to commencing litigation.

You are also directed to retain all documents and materials of any kind, including all versions of content currently maintained on bobvila.com. The foregoing is not a complete or exhaustive statement of the facts or of Sears' position or potential claims or causes of action against Vila, BVT and Webties, and all of Sears' rights and remedies are expressly reserved.

Very truly yours,

Anna R. Sankaran

Enclosure
cc:    Gary R. Greenberg, Esq.

Agreed and Accepted this _____
day of _____ 2006.

By:    _____
       James F. O'Brien

# EXHIBIT Y

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
ROBERT J. VILA and          )
B.V.T.V., INC.,             )
                            )
        Plaintiffs,         )
                            )
    vs.                     )
                            )  Civil Action No.
SEARS, ROEBUCK AND CO.,     )      05-11717-REK
SEARS HOLDINGS CORPORATION, )
and KMART HOLDING           )
CORPORATION,                )
                            )
        Defendants.         )
```

COPY

        The deposition of MARY TORTORICE,

called by the Plaintiffs for examination, taken

pursuant to the Federal Rules of Civil Procedure

of the United States District Courts pertaining

to the taking of depositions, taken before ROBIN

M. CHIMNIAK, a Notary Public within and for the

County of DuPage, State of Illinois, and a

Certified Shorthand Reporter of said State, taken

at 77 West Wacker Drive, Suite 3000, Chicago,

Illinois, on the 5th day of July, 2006, at the

hour of 11:06 a.m.

# BRIDGES
## COURT REPORTING

*DOWNTOWN*
77. W. WASHINGTON, SUITE 1917
CHICAGO, ILLINOIS 60602
312/895-4974

*SUBURBS*
211 E. ILLINOIS STREET, SUITE L3
WHEATON, ILLINOIS 60187
630/690-6911

WWW.BRIDGESCOURTREPORTING.COM • FAX 312/528-9025

```
 1          PRESENT:

 2              MR. JAMES P. O'BRIEN
                    410 Park Avenue
 3                  Suite 1530
                    New York, New York 10022
 4
                        Appeared on behalf of the
 5                      Plaintiffs;

 6          GREENBERG TRAURIG,  LLP
            BY:  MS. ANNAPOORNI R. SANKARAN
 7               One International Place
                 Boston, Massachusetts 02110
 8
                        and
 9
            SEARS, ROEBUCK AND CO.
10          BY:  MR. FRANK CALABRESE
                 333 Beverly Road
11               Hoffman Estates, Illinois 60179

12                      Appeared on behalf of
                        Defendants.
13

14

15

16

17

18

19

20

21

22

23

24
```

1    co-counsel.

2    BY MR. O'BRIEN:

3        Q.   Well, let me ask you this --

4        MS. SANKARAN:   And work product as well.

5        MR. O'BRIEN:   Work product, okay.

6    BY MR. O'BRIEN:

7        Q.   Did anyone suggest to you what your

8    answers should be today in connection with this

9    deposition?

10       A.   No.

11       Q.   You've testified or you're here to

12   testify that "Home Again" is a trademark owned by

13   Sears; correct?

14       A.   Correct.

15       Q.   Has Sears used the words "Home Again"

16   in commerce?

17       A.   Yes, it has.

18       Q.   When did it first use the words "Home

19   Again" in commerce?

20       A.   I do not know when it was first used.

21       Q.   Well, how do you know it was?

22       A.   I know that the Craftsman.com Web site

23   referenced the "Home Again" show.

24       Q.   Do you have something -- a printout of

1    the Craftsman Web site that says that?  Strike

2    that.

3                Did you say in reference to the "Home

4    Again" show?

5        A.   The "Bob Vila Home Again" TV show had

6    been referenced on the Craftsman.com Web site.

7        Q.   Are you claiming, as Sears, that Sears

8    owns the name "Bob Vila's Home Again"?

9        A.   No.

10       Q.   My question, have the words "Home

11   Again" -- standing alone, just those words --

12   been used in commerce by Sears?

13       A.   Not to my knowledge.

14       Q.   Does Sears --

15       MS. SANKARAN:  I'm sorry.  I didn't mean to

16   interrupt your question.  I just wanted to take a

17   quick bathroom break, if you don't mind.

18       MR. O'BRIEN:  All right.

19                        (Brief pause.)

20   BY MR. O'BRIEN:

21       Q.   Ms. Tortorice, during the break did you

22   have any discussion with your counsel,

23   Mr. Calabrese, concerning your deposition

24   testimony?

```
 1    STATE OF ILLINOIS    )
                           )  SS:
 2    COUNTY OF DuPAGE     )

 3              I, ROBIN M. CHIMNIAK, a notary public

 4    within and for the County of DuPage and State of

 5    Illinois, do hereby certify that heretofore, to

 6    wit, on the 5th day of July, 2006, personally

 7    appeared before me MARY TORTORICE, a witness in a

 8    certain cause now pending and undetermined in the

 9    United States District Court, for the District of

10    Massachusetts, wherein ROBERT J. VILA, et al.,

11    are the Plaintiffs and SEARS, ROEBUCK AND CO., et

12    al., are the Defendants.

13              I further certify that the witness was

14    by me first duly sworn to testify the truth, the

15    whole truth and nothing but the truth in the

16    cause aforesaid; that the testimony then given by

17    the said witness was reported stenographically by

18    me in the presence of said witness and was

19    thereafter transcribed under the personal

20    direction, and the foregoing is a true and

21    complete transcript of the testimony so given by

22    the said witness as aforesaid.

23              The signature of the witness to the

24    foregoing deposition was not waived.
```

7/5/06      VILA v SEARS      Tortorice      110

1          I further certify that the taking of

2     this deposition was pursuant to notice and that

3     there were present at the taking of said

4     deposition the appearances as heretofore noted.

5          I further certify that I am not a

6     relative or employee or attorney or counsel, nor

7     a relative or employee of such attorney or

8     counsel for any of the parties hereto, nor

9     interested directly or indirectly in the outcome

10     of this action.

11          IN TESTIMONY WHEREOF, I have hereunto

12     set the hand and affixed the notarial seal this

13     __7th__ day of __July_____, 2006.

14

15

16

17     _____

18     ROBIN M. CHIMNIAK, CSR
       License No. 084-001999

19

20

21                    OFFICIAL SEAL
                     ROBIN M CHIMNIAK
22           NOTARY PUBLIC - STATE OF ILLINOIS
             MY COMMISSION EXPIRES:07/06/08

23

24