UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ROBERT J. VILA and B.V.T.V., INC., | |
| Plaintiffs, | Civil Action No. 05-11717-WGY |
| v. | |
| SEARS, ROEBUCK AND COMPANY, SEARS HOLDINGS CORPORATION and KMART HOLDING CORPORATION, | |
| Defendants. | |

## JOINT PRETRIAL MEMORANDUM

Plaintiffs Robert J. Vila ("Vila") and B.V.T.V., Inc. ("BVTV") (collectively "Plaintiffs") and Defendants, Sears, Roebuck and Co. ("Sears"), Sears' Holding Corporation ("SHC") and Kmart Holding Corporation ("Kmart") (collectively "Defendants"), hereby submit this joint pretrial memorandum pursuant to FED. R. CIV. P. 16, Local Rule 16.5(D) and the Court's Order dated July 17, 2006:

I.    PARTIES' SUMMARY OF EVIDENCE TO BE OFFERED.

A.    **Summary of Evidence to Be Offered by the Plaintiffs**

In their case in chief, Plaintiffs propose to offer the oral testimony of Robert J. Vila, Ronald E. Feiner, Esq. and Richard Perin  and to the extent that they do not otherwise appear to testify at trial, the transcripts of the depositions of  present and former employees of Defendants, Andy Ginger, Mark Rode, Drew Farkas, Esq., Mary Tortorice, Esq. William C. Crowley, Luis Padilla, Fred Ciba and Richard Anderson. Plaintiffs propose to offer documentary evidence of the contracts at issue, communications between plaintiffs and defendants and communications by, between and among defendants relating thereto.

The evidence will establish that Sears and BVTV reaced a full meeting of the minds as to Amendment 11 to the Syndication Agreement and that the January 14, 2005 email from Mark Rode, Sears Craftsman Brand Manager, and the contract attached thereto memorialized all terms and conditions of said Amendment 11. The evidence will show that, before sending that email and its enclosure to Mr. Feiner, BVTV's counsel, Mr. Rode had conferred with his superior, Andy Ginger,former Vice-President of Brand Management of Sears, and Mr. Farkas, Senior Counsel for Sears and the draftsman of the attached contract regarding the terms of the contract. The evidence will also show that, by email dated January 18, 2005, Mr. Feiner, counsel for BVTV, on behalf of BVTV, accepted all the terms and conditions set forth in the contract accompanying Mr. Rode's January 14, 2005 email. By Mr. Feiner' transmission of his January 18, 2005 email to Mr. Rode, a binding contract for Amendment 11 to the Syndication Agreement was formed between Sears and BVTV and such contract is enforceable against Sears in accordance with the General Obligations Law of the state of New York and the case law, thereunder.

The evidence will establish that Sears refused to pay Mr. Vila the amount due hi on July 1, 2005 under the Spokesperson Agreement, without any justification for its non-payment. Sears repudiated its obligation to make additional payments to become due to Mr. Vila under the Spokesperson Agreement from January 1, 2006 through July 1, 2009. It will further be shown that Sears continued to feature the name, likeness and images of Mr. Vila on its Craftsman website from August 19, 2005 to approximately March 1, 2006, without any compensation to Mr. Vila.

The evidence will further establish that Kmart and SHC tortiously interfered with Sears' performance of its obligations to BVTV under Amendment 11 to the  Syndication Agreement,

prior to the consummation of the acquisition of Sears by Kmart, causing Sears to breach that contract, to repudiate that contract and to breach the implied covenant of good faith and fair dealing inherent in that contract.

It will be shown that, beginning well before the consummation of the acquisition of Sears by Kmart, and continuing thereafter, Kmart and Sears tortiously interfered with the Spokesperson Agreement between Sears and Mr. Vila, causing Sears to breach that contract, to repudiate that contract and to breach the implied covenant of good faith and fair dealing inherent in that contract. The evidence will further show that the conduct of Kmart and SHC was knowing and intentional violations of M.G.L. c. 93A.

### B.    Summary of Evidence to be Offered by the Defendants

The evidence Defendants intend to present at trial will establish that (1) Vila is an individual residing in Chilmark, Massachusetts and is the president of his television production company and co-plaintiff BVTV, a Massachusetts company; (2) Defendant Sears is a New York corporation with a principal place of business in Hoffman Estates, Illinois, and is one of the most famous and long established retailers in the United States; (3) Defendant SHC is a Delaware corporation with a principal place of business in Hoffman Estates, Illinois; and (4)  Defendant Kmart is a Delaware corporation with a principal place of business in Troy, Michigan.  On or about November 16, 2004, Kmart and Sears announced their merger.  As of the date of the consummation of the merger on March 24, 2005, Sears and Kmart entered into a Reciprocal Services Agreement whereby Sears and Kmart performed work for each other, including corporate, administrative, financial and legal services.

The relationship between Sears and Vila began or about September 29, 1989 when Vila and Ogilvy & Mather ("Ogilvy"), as agent for Sears, entered into the Bob Vila Spokesperson

Agreement (the "Spokesperson Agreement") pursuant to which Vila was to act as a spokesperson for Sears and its products.    Between 1989 and 2000, the Spokesperson Agreement was amended ten times.  Also on or about September 29, 1989, BVTV and Ogilvy, as agent for Sears, entered into the Bob Vila Syndicated Television Programs Agreement (the "Syndication Agreement") pursuant to which  Sears made payments to BVTV to fund the production of a home improvement television show originally titled Home Again with Bob Vila and later titled Bob Vila's Home Again.  Between 1989 and 1998, the parties amended the Syndication Agreement ten times, the last of which expired upon the conclusion of the 2004-2005 season of Bob Vila's Home Again.

### TERMS OF THE SPOKESPERSON AGREEMENT AT ISSUE

The evidence presented by the parties at trial will establish that, pursuant to the Spokesperson Agreement, Vila was to be available for professional services in connection with the advertising of Sears' products including but not limited to performing in television and radio commercials, posing for photographs, and making personal appearances (such as at store openings). Payments were to be made in advance by Sears to Vila under the Spokesperson Agreement on January 1 and July 1 of each year the agreement was in effect.  The Spokesperson Agreement also provides that Vila, during the term of the Spokesperson Agreement and for a period of six months thereafter, was not permitted to render any services or make any public statements on behalf of, nor allow his name, likeness, photograph, voice or biography to be used in, advertising promoting any product other than Sears products.  Additionally, under the Spokesperson Agreement, Vila was required to submit a prior written proposal to Sears to obtain approval to appear in sponsored media.

Defendants will establish through evidence at trial that the Spokesperson Agreement contains a "Morals" clause which provides that if Vila committed, or became involved in any situation that would, among other things, reflect unfavorably upon Sears and its products, Sears had

the right to immediately terminate the Spokesperson Agreement.  Under the "Morals" clause, Sears' decision to terminate was to be conclusive, and based upon Sears' judgment whether the act committed by Vila harmed or may be harmful to Sears in a significant respect.

With respect to breach and termination, the Spokesperson Agreement provides that if Vila or Sears at anytime committed a material breached of the agreement, then Sears was entitled to terminate the agreement forthwith.  The Spokesperson Agreement also provides that if the Bob Vila Television Show is cancelled for any reason, Sears had the right to terminate the Spokesperson Agreement effective December 31 of the year of the cancellation.  Defendants will present evidence that neither Vila nor Ronald Feiner, Esq., counsel for Vila, testified during their depositions that this provision was ambiguous.

The Spokesperson Agreement is an integrated agreement and is governed by the law of Illinois.

### TERMS OF THE SYNDICATION AGREEMENT AT ISSUE

At trial, Defendants will establish that, pursuant to the Syndication Agreement, Sears is the owner of all trademarks associated with the Bob Vila's Home Again f/k/a Home Again with Bob Vila television program.  Specifically, the Syndication Agreement provides that BVTV will not use the name "Sears" or any of Sears trademarks, trade names or service marks without Sears' express written permission.   The Syndication Agreement further states that upon the expiration or termination of BVTV's right to use Sears marks for any cause, BVTV is required to immediately cease all use, and refrain from any future use, of Sears marks.   Additionally, the Syndication Agreement provides that BVTV acknowledges that Sears may register any and all of the marks pursuant to the agreement, and that all of BVTV's use of the marks inured to the benefit of Sears for the purpose, among others, of registration.   Each of the ten amendments to the Syndication

Agreement incorporated and applied the identical provision relating to Sears trademarks, trade names and services marks from the original September 29, 1989 Syndication Agreement. The evidence presented at trial by Defendants will establish indisputably that, pursuant to the terms of the Syndication Agreement, Sears owns all right, title and interest in the "HOME AGAIN" trademark. The Syndication Agreement is governed by the law of New York.

### NEGOTIATION OF AN ELEVENTH AMENDMENT TO THE SYNDICATION AGREEMENT

The evidence will show that Amendment No. 10 to the Syndication Agreement expired with the conclusion of the 2004-2005 television season of Bob Vila's Home Again. Starting on or about February 4, 2004, Mr. Feiner began discussions about a possible extension to the Syndication Agreement beyond the 2004-2005 television season with Andrew Ginger ("Ginger"), then Vice President of Brand Management at Sears, Drew Farkas, Esq., in-house counsel at Sears and Mark Rode ("Rode"), then Brand Manager at Sears. Those negotiations between BVTV and Sears continued throughout 2004.

During this time, on or about November 18, 2004, Sears announced its merger with Kmart which was to become final during the following year on or about March 24, 2005. In response to the announcement, Defendants will prove, Mr. Feiner requested that Sears representatives explain any consequences of the merger to Vila, including its effects on the negotiations about a possible extension of the Syndication Agreement. In response, Rode explained to Mr. Feiner that he had been instructed not to speak about the merger, and that there was uncertainty as to its impact. In fact, in early January 2005, Rode communicated to Sarah Monzon ("Monzon"), the line producer at BVTV and one of BVTV's FED. R. CIV. P. 30(b)(6) designees, that the contract approval process at Sears had been changed in light of the merger.

Defendants will present evidence at trial establishing that on or about January 14, 2005,

Rode, who did not have authority to sign any amendment to the Syndication Agreement, transmitted a redlined draft extension to Mr. Feiner. In his e-mail transmitting the redlined draft, Rode in no way indicated that the redline had been approved by Sears, and, in fact, it was just part of the negotiation process. This redlined draft of Amendment No. 11 of the Syndication Agreement has a proposed term of two years: September 1, 2005 through August 31, 2007. By its terms, the redlined draft of the extension to the Syndication Agreement would require BVTV to deliver 26 episodes for each of the two "Years" specified and require Sears to make payments which span a period of over two years. On or about January 18, 2005, Mr. Feiner asked Rode to send execution copies of Amendment No. 11 to the Syndication Agreement. However Sears never sent the copies, Sears never signed any draft of Amendment No. 11, Sears never told Mr. Feiner that it would send execution copies, and Vila never signed any draft of Amendment No. 11. Defendants will present undisputed evidence, including testimony from Vila and Feiner, establishing that there was no meeting of the minds on January 18, 2005, as Plaintiffs claim, or at any point in January 2005. Defendants will present evidence demonstrating that the parties continued to negotiate the terms of the amendment to the Syndication Agreement from January 2004 through June 15, 2005, clearly establishing that there was no meeting of the minds as to an extension to the Syndication Agreement in January 2005. Further, Defendants will present evidence that:

- On February 1, 2005, Mr. Feiner e-mailed Rode indicating his understanding that BVTV could not receive payment under the Syndication Agreement until there was a signed contract in place between the parties.
- Rode replied by explaining that he did not have authority to bind Sears to the contract and that in light of the merger between Sears and Kmart, issues were still unresolved.
- Indeed, Vila himself acknowledged that there was no agreed extension to the Syndication Agreement in an e-mail to Monzon dated February 3, 2005.
- Monzon, the producer at BVTV, knew that there was uncertainty as of February 2005 as to whether or not there would be funding for the new show.
- On March 11, 2005, Rode e-mailed Melissa Marchand ("Marchand") the Chief Operating Officer of BV Webties LLC, the company that runs the Bobvila.com web

site, indicating that there were issues on the Sears side relating to the extension of the Syndication Agreement.

- Marchand understood that Sears and BVTV had not come to an agreement with respect to an extension to the syndication agreement as of March 11, 2005.

- In her notes regarding March 2005, Monzon wrote that BVTV was awaiting word from Sears with respect to an extension.

- On April 28, 2005, Rode transmitted a proposal regarding an extension of the Syndication Agreement and a renegotiation of the Spokesperson Agreement to Mr. Feiner.

- Shortly thereafter, Mr. Feiner rejected that offer.

Defendants will present evidence at trial establishing that, during this time, Sears' new management team composed initially of Luis Padilla ("Padilla"), the President of Merchandising and Marketing and Chief Merchant at Sears, and later William Crowley ("Crowley"), the Chief Financial Officer of SHC, were reviewing the relationship between Sears and BVTV and Vila and assessing the financial benefits of the same. Specifically, Sears was considering whether an extension of the Syndication Agreement was in the best business interest of Sears.

The evidence will show that BVTV, knowing and acknowledging that it had no agreement with Sears as to a possible amendment to the Syndication Agreement, began negotiations directly with King World to see whether King World would fund the production of a home improvement television show starring Vila. On March 24, 2005, Vila confirmed with Monzon and Marchand that he had alternate funding for the production of a home improvement television show, and on May 16, 2005 entered into a production agreement with King World, whereby King World would fund the production of a home improvement television show starring Vila (the "KW Agreement"). Indeed, even though BVTV had entered into the KW Agreement and had received funds from King World for the production of the television show, BVTV continued to invoice Sears for the production costs of the Home Again show. In response to these invoices, and without knowledge of the KW Agreement, on June 15, 2006, Robert Rathke, Esq., in-house counsel for SHC, sent Mr. Feiner a letter notifying him that Sears had decided not to extend the Syndication Agreement,

specifically stating that Sears would not provide production funding and that BVTV was proceeding with production of the show at its own risk. The letter also invited Mr. Feiner to discuss an "amicable" resolution regarding Sears' desire to terminate the spokesperson relationship between Sears and Vila.

**CONCLUSION OF NEGOTIATIONS BETWEEN THE PARTIES**

Defendants will present evidence at trial establishing that Mr. Feiner replied to Sears' June 15, 2005 letter by letter dated June 28, 2005 in which he stated that BVTV's position is that the parties agreed to an extension of the Syndication Agreement and that Sears did not have a right to terminate the Spokesperson Agreement pursuant to the Home Again Cancellation Clause, as Sears did not have a right to cancel the show Home Again. June 28, 2005. He also invited Sears to engage in negotiations to resolve the situation.

Approximately twenty days later, on or about July 18, 2005, Vila and BVTV filed this action in the Dukes County Superior Court. In their original complaint, BVTV and Vila made public statements concerning Sears engaging in "bad faith" and "unfair and deceptive conduct."

Sears responded to Mr. Feiner's June 28, 2005 letter by letter dated July 22, 2005 in which Sears explained that it did not agree with Mr. Feiner's positions regarding the Syndication Agreement and the Spokesperson Agreement, and reminded Mr. Feiner that Sears did not renew the Home Again program, and had not authorized BVTV to continue to produce or air the program using the Home Again name or any other Sears trademark. In this same letter, Sears also made a proposal to Vila to resolve the dispute. Sears removed this case to this Court on or about August 17, 2005, and by letter dated August 19, 2005, without having made the July 1, 2005 payment, terminated the Spokesperson Agreement, based on, inter alia, (1) Vila's use of Sears' HOME AGAIN trademark without permission or authority, (2) Vila's public statements about Sears, i.e.,

that Sears had engaged in deceptive and unfair trade practices which Sears concluded in its sole discretion reflected unfavorably upon Sears' reputation, and (3) the cancellation of the Home Again television show.

## VILA'S NEW TELEVISION SERIES

At trial, Defendants will prove that the new Bob Vila show began airing nationally the week of September 5, 2005. Vila made the decision to change the show's name from Bob Vila's Home Again to Bob Vila on or about August 23, 2005, shortly after Defendants filed their counterclaim for trademark infringement regarding the Home Again name.

Defendants will prove that in Vila's printed biography, which is distributed to various media for the promotion of the Bob Vila show, Vila states "Bob Vila has appeared on television for over 25 years — first on 'This Old House' and, for 15 years, on 'Bob Vila's Home Again' and now with his new show, 'Bob Vila.'" Similarly, Vila's web site bobvila.com, consistent with Vila's testimony, references his show Bob Vila as beginning in 2005 and as "Season 1." Furthermore, several media outlets have printed stories regarding Vila's new show. As will be clear based upon evidence presented by Defendants at trial, under these circumstances, there is no question that Bob Vila is a new television show.

Further, despite the fact that the Spokesperson Agreement specifically required Vila to seek permission from Sears in writing to appear in "sponsored media," Vila never sought Sears' permission to appear in the Bob Vila show which was sponsored by numerous companies. The credits to the episodes specifically designate each show as sponsored media. Defendants will further present evidence at trial that, despite the fact that Vila agreed not to permit his name, likeness, photograph, voice or biography to be used in advertising, publicizing or promoting any product or service other than Sears' products, Vila did just that during the term of the Spokesperson

Agreement and during the six months after Sears terminated.  On the Bob Vila show, Vila's name, likeness, photograph, and voice were used to advertise, publicize and/or promote over 40 different products.  Filming and production for the Punta Gorda project began the end of May 2005 or beginning of June 2005 during the time the Spokesperson Agreement was in effect.  Defendants will establish through evidence that Vila was well aware of his obligations under the Competitive Protection provisions of the Spokesperson Agreement, as his counsel Mr. Feiner informed him and King World of the same.  Yet Vila never sought written permission from Sears to appear in these episodes pursuant to Competitive Protection provisions of the Spokesperson Agreement.

### VIOLATION OF SEARS' TRADEMARK RIGHTS IN THE HOME AGAIN MARK

From the beginning of March 2005 through March 28, 2006, as Defendants will prove that Vila used Sears' Home Again mark without permission or other authority.  First, since as early as March 7, 2005, despite the fact that BVTV and Vila were fully aware that Sears had not agreed to fund the production of another season of Bob Vila's Home Again and that Sears had all rights and interest in the Home Again mark, Monzon, Marchand and other Vila representatives, on repeated occasions, used the Home Again mark in attempts to solicit product donation for Bob Vila's Home Again (which Vila and King World separately, and without Sears' involvement, agreed to produce for the 2005-2006 season), and for advertising on the bobvila.com web site.

Further trademark violations appear in the May 16, 2005 KW Agreement which refers to the television show being produced as "Bob Vila's Home Again."  All of these trademark violations occurred prior to the time the July 1, 2005 payment was allegedly due under the Spokesperson Agreement.

Additionally, in producing Bob Vila's Home Again, BVTV continued to violate Sears' trademark by entering into license agreements with stock footage companies referring to the

program title as "Bob Vila's Home Again."

The releases used by BVTV to secure authority from people appearing on Bob Vila represented to the people executing them that the program was "Bob Vila's Home Again." These trademark violations occurred both before and after the July 1, 2005 payment was allegedly due under the Spokesperson Agreement and bear dates from June 5, 2005 through September 26, 2005.

Defendants will present evidence that in promoting his show, when interviewed on Fox News which aired on or about September 11, 2005, Vila referred to his new show as "Bob Vila's Home Again." Additionally, at the end of episode 10 of the Bob Vila show, which aired on November 14, 2005, in a quick tease for the following week's episode, Vila states "come home again next week . . . ."

Vila further continued to violate Sears' trademark on his web site bobvila.com. As late as the beginning of 2006, Vila advertised for sale caps, t-shirts and mugs bearing the Home Again mark on bobvila.com. Additionally, in the frequently asked questions section of his web site, Vila, from 2003 up to at least March 27, 2006, referred to his current television show as "Bob Vila's Home Again."

Based on these undisputed facts that Defendants will establish at trial, it is clear that Sears validly terminated the Spokesperson Agreement (a) under the Morals/Misconduct Clause because Vila (i) repeatedly violated Sears trademark and (ii) made public statements reflecting unfavorably on Sears' reputation; and (b) under the Home Again Cancellation Clause because the show has terminated. Furthermore, as Vila himself was in material breach of the terms of the Spokesperson Agreement prior to July 1, 2005 because of his unauthorized use of the Home Again mark, because of his appearance in sponsored media without permission, and the use of his name, likeness and voice in advertising, promoting and publicizing products other than Sears' products, he is not

entitled to any portion of the July 1, 2005 payment. Moreover, the undisputed facts show that there was no meeting of the minds between January 14-18, 2005 regarding any two-year extension of the Syndication Agreement, thus rendering any draft unenforceable.

Defendants will establish that Sears did not breach its obligations to Vila under the Spokesperson Agreement, by refusing to pay Vila $948,750 allegedly due on July 1, 2005. Sears did not repudiate the Spokesperson Agreement because it rightfully terminated the contract due to Vila's breaches of the Spokesperson Agreement. As there was no repudiation of the contract, Vila did not suffer any resulting damages.

Sears did not breach the implied covenant of good faith and fair dealing with respect to the Spokesperson Agreement. Sears properly terminated the contract, and therefore did not breach the implied covenant. Vila did not suffer any resulting damages.

Defendants will present evidence at trial establishing that Sears Holdings and Kmart did not intentionally or tortiously interfere with the Spokesperson Agreement with improper purpose or by improper means. Sears Holdings and Kmart did not cause Sears to breach its obligations to Vila under the Spokesperson Agreement, they did not cause Sears to breach the implied covenant of good faith and fair dealing with respect to the Spokesperson Agreement, and they did not cause Sears to repudiate its obligations to Vila under the Spokesperson Agreement. Sears Holdings and Kmart acted properly with respect to Sears and the Spokesperson Agreement, their conduct was privileged, and Vila was not damaged.

Sears Holdings and Kmart did not knowingly or intentionally engage in unfair and deceptive acts or practices in violation of MASS. GEN. L. ch. 93A, §§2 and 11. Sears Holdings and Kmart were privileged in their dealings with respect to Sears and the Spokesperson Agreement and Sears did not breach the Spokesperson Agreement. There was no violation of MASS. GEN. L. ch. 93A,

Vila did not suffer any resulting damages.

Defendants will present evidence at trial establishing that Sears did not breach its obligations to BVTV under the Syndication Agreement. There never was an agreement to Amendment 11 of the Syndication Agreement, so there was no contract to breach, and BVTV did not suffer any resulting damages.

Sears did not repudiate the Syndication Agreement because no agreement was ever reached as to Amendment 11 of the Syndication Agreement. There was no contract to repudiate and BVTV did not suffer any resulting damages.

Sears did not breach the implied covenant of good faith and fair dealing with respect to the Syndication Agreement because no agreement was ever reached between the parties as to Amendment 11 of the Syndication Agreement. There was no contract for the implied covenant of good faith and fair dealing to attach, and BVTV did not suffer any damages.

Defendants will present evidence at trial establishing that Sears Holdings and Kmart did not intentionally or tortiously interfere with the Syndication Agreement with improper purpose or by improper means. There was never an agreement reached on Amendment 11 to the Syndication Agreement. As a result, Sears Holdings and Kmart did not cause Sears to breach its obligations to Vila under the Syndication Agreement, they did not cause Sears to breach the implied covenant of good faith and fair dealing with respect to the Syndication Agreement, and they did not cause Sears to repudiate its obligations to Vila under the Syndication Agreement. Sears Holdings and Kmart acted properly with respect to Sears and the Syndication Agreement, their conduct was privileged, and Vila was not damaged.

Sears Holdings and Kmart did not knowingly and intentionally engage in unfair and deceptive trade acts or practices in violation of M.G.L. c. 93A, §§2 and 11. Sears Holdings and

Kmart acted properly and were privileged with respect to their dealings with Sears and the Syndication Agreement. Additionally, no agreement was ever reached between the parties as to terms of the Syndication Agreement. BVTV has not suffered any damages as a result of Sears Holdings and Kmarts' proper and privileged conduct.

### SEARS' COUNTERCLAIMS AGAINST VILA AND BVTV

As counterclaim plaintiff, Sears will prove that, pursuant to the Syndication Agreement, Vila and BVTV agreed not to use the name "Sears" and any of Sears Trademarks, trade names or service marks without the express written permission from Sears, that BVTV agreed that it had no proprietary rights to any of Sears' marks, that upon termination of BVTV's right to use the marks for any cause, BVTV was required to ceased such use immediately, and that BVTV agreed not to question, contest or challenge Sears' ownership of rights, title or interest in Sears' marks.

Further, pursuant to the Syndication Agreement, BVTV acknowledged that Sears was permitted to register any of the marks for the Program under its own name. Finally, BVTV agreed and acknowledged that its use of Sears' marks inurred to the benefit of Sears for the purpose of registering any of the marks, and that BVTV would cooperate in any such registration by Sears.

Sears will prove that for each year between 1989 and 2004, BVTV has been producing the home improvement television series starring Vila, which was originally entitled "Home Again with Bob Vila" and is now titled "Bob Vila's Home Again" ("HOME AGAIN") pursuant to the terms of the Syndication Agreement. The Syndication Agreement was amended 10 times. The first through ninth Amendments to the Syndication Agreement each covered one year seasons of the production of HOME AGAIN; the Tenth Amendment covered the period from 1999 through 2004 for the production of HOME AGAIN. Each of the ten amendments to the Syndication Agreement incorporated and applied the identical Section 18 "Sears Trademark, Trade

Names, Services Marks" from the original September 29, 1989 Syndication Agreement. Accordingly, Sears owns all right, title and interest in the "HOME AGAIN" trademark.

The home improvement television series bearing the HOME AGAIN mark has been broadcast since 1990. The HOME AGAIN series was syndicated on approximately 180 stations nationwide, covering over 92% of the United States. In addition to its association with the home improvement television show, the HOME AGAIN trademark also is used on videos and DVDs containing copies of past episodes. Sears has spent over $29 million over the past fifteen years promoting its HOME AGAIN trademark. Furthermore, Sears will prove that the trademark HOME AGAIN has been used in commerce. Indeed on the bobvila.com web site, BVTV and Vila sold hats, mugs and shirts bearing the HOME AGAIN mark. Furthermore, on the bobvila.com website, Bob had numerous clips where he states "Hi, I'm Bob Vila from Home Again" (not "Hi, I'm Bob Vila from Home Again with Bob Vila" or "Hi, I'm Bob Vila from Bob Vila's Home Again"). In addition, clips of Home Again air on the bobvila.com website and Sears has made reference to Home Again on its craftsman.com website in the past.

The last Amendment to the Syndication Agreement expired in 2004 and covered the 2004-2005 series of HOME AGAIN. Although Sears entered into negotiations with Vila and BVTV regarding a subsequent extension for another season, no agreement was ever reached and the parties never executed any amendment covering an subsequent season beyond the 2004-2005 season.

Sears will prove that Vila and BVTV began production of a 2005-2006 season of a new television series bearing and/or using Sears' HOME AGAIN trademark in or around June 2005, and which, upon information and belief began airing on September 12, 2005. Vila and BVTV were not given permission to use Sears' HOME AGAIN trademark and such use is improper and unlawful.

Sears will prove that Vila and BVTV's unauthorized use of Sears' HOME AGAIN trademark in commerce, in connection with the marketing, advertising, offering for sale and/or sale of their home improvement television series, is willful and intended to cause, and is likely to cause, confusion, mistake and/or deception as to the origin, source or sponsorship of their television show and in flagrant disregard to Sears' lawful rights. Such conduct by Vila and BVTV has and will continue to injure Sears by diminishing and destroying the good will Sears has squired in its HOME AGAIN trademark.

Sears will further prove that Vila and BVTV breached the Syndication Agreement by producing and advertising a 2005-2006 home improvement series bearing Sears' HOME AGAIN mark without Sears' permission. These breaches of contract by Vila and BVTV have directly and proximately caused Sears damages.

At all times alleged Sears was the sole owner of the trademark HOME AGAIN, and that it had possession, or the right to immediate possession of the trademark HOME AGAIN at the time of Vila and BVTV's unlawful conduct. Vila and BVTV interfered with Sears' right to possession or right to immediate possession by intentionally and willfully misappropriating and exercising dominion over Sears' HOME AGAIN trademark, and as a direct and proximate consequence of Counterclaim Defendants' unlawful and unjustified dominion over Sears' property, Sears has suffered damages.

Sears will prove that Vila and BVTV have adopted and used a trademark identical to that owned by Sears. Vila and BVTV's unauthorized and unlawful conduct in producing and airing a home improvement television series bearing Sears' HOME AGAIN trademark caused consumer confusion as to the source of the program. Vila and BVTV's conduct has and will continue to injure Sears by diminishing and destroying the good will Sears has squired in its HOME AGAIN

trademark.

Vila and BVTV are engaged in trade or commerce within the meaning of MASS. GEN. L. ch. 93A. Vila and BVTV's actions occurred primarily and substantially in Massachusetts. The conduct of Vila and BVTV described above constitutes one or more unfair, deceptive, and/or anti-competitive acts or practices in violation of MASS. GEN. L. ch. 93A, §§2, 11. Sears has and continues to suffer irreparable harm to its goodwill and image as a direct and proximate consequence of Vila and BVTV's several violations of MASS. GEN. L. ch. 93A as described above. Vila and BVTV's conduct constitutes a willful and/or knowing violation of MASS. GEN. L. ch. 93A, resulting in substantial and irreparable harm to Sears unless and until their conduct is enjoined. Accordingly, Sears is entitled to recover up to three but not less than two times the amount of its actual damages, together with interest, costs, and attorneys fees.

Sears will prove that Vila and BVTV are using and profiting from Sears' HOME AGAIN trademark but have not paid Sears for such use. As a direct and proximate result of Vila and BVTV's failure to compensate Sears for the use of its HOME AGAIN mark, Vila and BVTV have been unjustly enriched to the detriment of Sears. Sears is entitled to the disgorged benefits by which Vila and BVTV were unjustly enriched.

## II.    FACTS ESTABLISHED BY PLEADINGS, STIPULATIONS, OR ADMISSIONS

1.    Vila is an individual residing in Chilmark, Massachusetts.

2.    BVTV is a television production company and is a Massachusetts corporation.

3.    Vila is the president of BVTV.

4.    Defendant Sears is a New York corporation with a principal place of business in Hoffman Estates, Illinois, and is one of the most famous and long established retailers in the United States.

5.      Defendant SHC is a Delaware corporation with a principal place of business in Hoffman Estates, Illinois.

6.      Defendant Kmart is a Delaware corporation with a principal place of business in Troy, Michigan.

7.      On or about November 16, 2004, Kmart and Sears announced the proposed acquisition of Sears by Kmart and the merger of the two into SHC.

8.      The merger was completed on March 24, 2005 following affirmative shareholder votes of both companies.

9.      SHC is the holding company for both Sears and Kmart.

10.     Or about September 29, 1989, Vila and Ogilvy & Mather ("**Ogilvy**"), as agent for Sears, entered into the Bob Vila Spokesperson Agreement (the "**Spokesperson Agreement**").

11.     Between 1989 and 2000, the Spokesperson Agreement was amended ten times.

12.     Also on or about September 29, 1989, BVTV and Ogilvy, as agent for Sears, entered into the Bob Vila Syndicated Television Programs Agreement (the "**Syndication Agreement**") pursuant to which  Sears made payments to BVTV to fund the production of a home improvement television show which was untitled. It was subsequently titled *Home Again with Bob Vila* and later titled *Bob Vila's Home Again*.  Between 1989 and 1998, the parties amended the Syndication Agreement ten times.

13.     The Spokesperson Agreement is to be construed in accordance with  Illinois Law.

14.     The Syndication Agreement is to be construed in accordance with New York law.

## III.   CONTESTED ISSUES OF FACT

### A.   <u>Plaintiffs' Contested Issues of Fact</u>

A.  Mr. Vila was not in  material breach of the Spokesperson Agreement.

B.  Sears did not validly terminate the Spokesperson Agreement in August 2005.

C.  The words HOME AGAIN are not a trademark.

D.  Sears does not own all right title and interest in the words HOME AGAIN.

E.  Mr. Vila did not permit his name, likeness, photograph or biography to be used in advertising, publicizing or promoting any product or service other than Sears' Craftsman brand products without the knowledge and consent of Sears.

F.  Mr. Vila did not engage in any act bringing him into public disrepute or which reflected unfavorably upon Sears' reputation or Sears' products in any significant respect.

G.  The home improvement television series, hosted by Mr. Vila  has not been cancelled and is currently being broadcast nationwide in syndication.

H.  Sears cannot cancel the television Series.

I.  There was a complete meeting of the minds as to Amendment 11 to the Syndication Agreement no later than January 18, 2005.

J.  On January 18, 2005, the parties entered into a contract for the extension of the Syndication Agreement for the 2005-2006 and 2006- 2007 viewing seasons, enforceable in accordance with New York law.

K.  Negotiations between the parties after January 18, 2005 involved renegotiation of the Spokesperson Agreement and the Syndication Agreement.

L.  Sears has breached the Spokesperson Agreement with Mr. Vila.

M.  Sears has breached the Syndication Agreement with BVTV.

N.  Sears has breached the implied covenant of good faith and fair dealing in both the Spokesperson Agreement and the Syndication Agreement.

O.  Kmart and SHLD tortiously interfered with the Spokesperson and Syndication Agreements.

P.  Defendants are in violation of M.G.L. c. 93A.

Q.  Sears continued to use the name, image, likeness, registered trademarks and service marks of Mr. Vila on Sears' Craftsman website from August 19, 2005 to approximately March 1, 2006, without compensation to Mr.Vila and without right or authority to do so, except in connection with the terms of the Spokesperson Agreement requiring payments to Mr. Vila, as provided therein.

R.  Whether Sears has paid BVTV in full for all incentive bonus due him under the Syndication Agreement.

### B.  Defendants' Contested Issues of Fact

1.  Whether and to what extent HOME AGAIN is a mark entitled to protection under 15 U.S.C. §1125(a).

2.  Whether and to what extent Sears owns the mark HOME AGAIN.

3.  Whether Vila and/or BVTV impermissibly used the mark HOME AGAIN.

4.  Whether and to what extent Vila violated the Morals/Misconduct Clause of the Spokesperson Agreement by using the mark HOME AGAIN without permission.

5.  Whether and to what extent Vila violated the Morals/Misconduct Clause of the Spokesperson Agreement by filing a complaint containing allegations against Sears  that it acted in bad faith, deceptively and unfairly.

6.  Whether the television show Bob Vila's Home Again has been canceled.

7.  Whether Sears properly terminated the Spokesperson Agreement.

8.  The effective date of Sears' termination of the Spokesperson Agreement.

9.  Whether and to what extent Vila violated the Competitive Protection provisions of the Spokesperson Agreement by allowing his name, likeness, photograph, voice or biography to be used in advertising, publicizing or promoting any product or service other than Sears'

products.

10.     Whether episodes 9 - 14 of *Bob Vila* are sponsored media.

11.     Whether and to what extent Vila violated the Competitive Protection provisions of the Spokesperson Agreement by appearing in sponsored media without Sears' permission.

12.     Whether and to what extent Vila was in violation of material terms of the Spokesperson Agreement prior to July 1, 2006.

13.     Whether Sears repudiated the Spokesperson Agreement.

14.     Whether Sears breached the implied covenant of good faith in the Spokesperson Agreement.

15.     Whether SHC unjustifiably induced Sears to breach the Spokesperson Agreement.

16.     Whether SHC's conduct caused a substantial breach of the Spokesperson Agreement.

17.     Whether SHC tortiously interfered with the Spokesperson Agreement.

18.     Whether Kmart unjustifiably induced Sears to breach the Spokesperson Agreement.

19.     Whether Kmart's conduct caused a substantial breach of the Spokesperson Agreement.

20.     Whether Kmart tortiously interfered with the Spokesperson Agreement.

21.     Whether Sears violated MASS. GEN. L. ch. 93A.

22.     Whether Kmart violated MASS. GEN. L. ch. 93A.

23.     Whether SHC violated MASS. GEN. L. ch. 93A.

24.     Whether Sears made assertions to Vila regarding the interpretation, meaning and application of the Home Again Cancellation Clause in Amendments 9 and 10 to the

Spokesperson Agreement, intending to induce Vila to accept the amendments.

25.     Whether Vila reasonably relied upon Sears' representations relating to the interpretation, meaning and application of the Home Again Cancellation Clause, and therefore agreed to Amendments 9 and 10 of the Spokesperson Agreement.

26.     Whether Vila incurred a detriment as a result of his reasonable reliance upon Sears representations regarding the interpretation, meaning and application of the "cancellation clause" in Amendments 9 and 10 to the Spokesperson Agreement.

27.     Whether BVTV and Sears entered into an Amendment XI of the Syndication Agreement.

28.     Whether Sears ever agreed to the terms of the January 14, 2006 draft of Amendment XI to the Syndication Agreement.

29.     Whether the January 14, 2006 draft of Amendment XI was ever signed by Sears.

30.     Whether the January 14, 2006 draft of Amendment XI constitutes an offer.

31.     Whether Sears repudiated the Spokesperson Agreement.

32.     Whether Sears breached the implied covenant of good faith of the Syndication Agreement.

33.     Whether SHC unjustifiably induced Sears to breach the Syndication Agreement.

34.     Whether SHC's conduct caused a substantial breach of the Syndication Agreement.

35.     Whether SHC tortiously interfered with the Syndication Agreement.

36.     Whether Kmart unjustifiably induced Sears to breach the Syndication Agreement.

37.     Whether Kmart's conduct caused a substantial breach of the Syndication Agreement.

38.    Whether Kmart tortiously interfered with the Syndication Agreement.

39.    Whether and to what extent Sears owes BVTV any bonus payments for the 2004-2005 season of *Home Again.*

40.    Whether and to what extent Sears owes BVTV any bonus payments for the 2003-2004 season of *Home Again.*

41.    Whether Vila and BVTV interfered with Sears' right of possession, or right to immediate possession, by misappropriating Sears' HOME AGAIN trademark.

42.    Whether Vila and BVTV's unauthorized use of Sears' HOME AGAIN trademark caused consumer confusion as to the source of the television program.'

43.    Whether Vila and BVTV violated MASS. GEN. L. ch. 93A.

44.    Whether Vila and BVTV have been unjustly enriched by their unauthorized use of Sears' HOME AGAIN trademark.

## IV.    JURISDICTIONAL QUESTIONS

The parties state that there are no pending jurisdictional issues.

## V.    PENDING MOTIONS

The following motions are pending before the Court:

A.    Plaintiffs' Motion for Partial Summary Judgment (filed 2/22/2006, Docket No. 17, 18) (hearing held July 31, 2006)

B.    Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment and  Cross Motion for Summary Judgment (filed April 11, 2006, Docket No. 30-35) (hearing held July 31, 2006)

C.    Defendants' Motion for Leave to File Reply to Plaintiffs' Opposition to Defendants' Cross Motion for Summary Judgment (filed 7/25/06, Docket No. 47)

D.    Plaintiffs' Motion to Withdraw Motion For Leave to Amend Complaint (filed

7/28/2006, Docket No. 49)

VI.    **ISSUES OF LAW, INCLUDING EVIDENTIARY ISSUES**

A.    **PLAINTIFFS' ISSUES OF LAW**

1.    Whether the email of January 14, 2005 and the contract attached thereto sent by Mr.
Rode to Mr. Feiner and the January 18, 2005 email from Mr. Feiner to Mr. Rode
accepting the terms of the contract constituted a  binding contact that satisfied the
"writing " requirement of the New York Statute of Frauds. New York General
Obligations Law § 5-701(b)(4); Rosenfeld v. Zerneck, 776 N.Y. S. 2d 458 (2004):
Bazak International Corp. v. Tarrant Apparel Group, 378 F. Supp. 2d 377 (S.D.N.Y.
2005); 15 U.S.C. §§ 7001 (a) (1) and (2); N.Y.U.C.C. Law §§ 1-201(1) and (46);  2-
201(1) and (2).

2.    Whether SHC tortiously interfered with the Syndication Agreement and the
Spokesperson Agreement prior to March 24, 2005.

3    . Whether SHC' s tortious interference with the Syndication Agreement and the
Spokesperson Agreement was privileged. HPI Healthcare Servs., Inc. v. Mt. Vernon
Hosp., Inc. 545 N.E. 2d 672, 677 (Ill.); Williams v. B&K MJedical Systems, Inc., 49
Mass. App. Ct. 563, 573 (2000).

4.    Whether there are terms in the Spokesperson Agreement and the Syndication
Agreement, such as "cancelled", "make good", "sponsor", "sponsored media",
"spokesperson" that permit or require parol evidence and expert testimony as to their
meanings in the context of the Agreements when made. McAdams v. Massachusetts
Mutual Life Ins. Co., 391 F.3d 287, 298-299 (1st Cir. 2001); Davis v. G.N. Mortg.
Corp., 396 F. 3d 869, 876 (7th Cir. 2005).

5.    Whether defendants used non-payment under the Syndication Agreement and the
Spokesperson Agreement as a wedge to gain economic concessions from BVTV and
Mr. Vila. Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc., 754 F. 2d 10, 17-19
(1st Cir. 1985).

6.    Whether the breach by Sears of the covenant of good faith and fair dealing in the
Spokesperson Agreement and the Syndication Agreement, which breach was caused by
Kmart and SHC establishes as a matter of law that the actions of Kmart and SHC were
unfair and deceptive. Anthony's Pier 4, Inc. v HBC Associates, 411 Mass. 451, 476
(1991)

7.    Whether Sears' exercise of its discretion in terminating the Spokesperson Agreement
was a breach of the implied covenant of good faith and fair dealing. Resolution Trust
Corp. v. Holzman, 248 Ill. App. 3d 105, 112 618 N.E.2d 418, 424 (Ill. 1993); Dayan v.

McDonald's Corporation, 125 Ill. App. 3d 972, 991, 466 N.E. 2d 958 (Ill. 1978); Schwinder v. Austin Bank of Chicago, 348 Ill. App. 3d 461, 475, 809 N.E. 2d 180 (Ill. 2004).

8.    Whether Sears has any protectible interest in the words "Home Again"

**B.    DEFENDANTS' ISSUES OF LAW**

1.    Whether HOME AGAIN is an arbitrary or suggestive mark.

2.    Whether HOME AGAIN is entitled to protection under 15 U.S.C. §1125(a) without a showing of secondary meaning.

3.    Whether the Home Again Cancellation Clause in the Spokesperson Agreement is ambiguous.

4.    Whether parole evidence is admissible with respect to the Home Again Cancellation Clause in the Spokesperson Agreement.

5.    Whether statements made in complaints are protected by the judicial privilege from being the subject of a breach of contract action.  See Cummings v. Beaton & Association, Inc., 249 Ill. App. 3d 287, 306, 618 N.E.2d 292, 311 (1992); Patton v. Cox, 276 F.3d 493, 500 (9th Cir. 2002); Tulloch v. JPMorgan Chase & Co., 2006 WL 197009 (S.D. Tex. Jan. 24, 2006); Wentland v. Wass, 126 Cal. App. 4th 1484, 25 Cal. Rptr. 3d 109 (2005).

6.    Whether SHC, as the parent of Sears, had a privilege protecting it from liability for claims of tortious interference.

7.    Whether the choice of law provisions in the Syndication Agreement and the Spokesperson Agreement preclude the application of MASS. GEN. L. ch. 93A to Sears with respect to the conduct alleged in the First Amended Complaint.

8.    Whether a name at the end of an email transmitting a draft is sufficient to constitute a signature for purposes of the statute of frauds.  See Sheey v. Clifford Chance Rogers & Wells LLP, 3

N.Y.3d 554, 559-60, 822 N.E.2d 763 (2004) ("The statute of frauds, as incorporated into section 5-701(a)(1) of the General Obligations Law, provides that an agreement is void if it is not in writing and 'subscribed by the party to be charged therewith' when the agreement '[b]y its terms is not to be performed within one year from the making thereof.'").

## VII.    REQUESTED AMENDMENT TO THE PLEADINGS

The parties state that there are no further requested amendments to the pleadings.

## VIII.    ADDITIONAL MATTERS

The parties state that there are no additional matters to be addressed beyond those set forth in this pretrial memorandum.  The parties are awaiting a decision on the parties' respective motions for summary judgment.

## IX.    PROBABLE LENGTH OF TRIAL

Assuming that the case is tried in half-day sessions, the parties estimate that the trial will take approximately 15 - 20 days.

## X.    NAMES, ADDRESSES AND TELEPHONE NUMBERS OF POTENTIAL WITNESSES

### A.    <u>Plaintiffs' List of Potential Witnesses</u>

Ronald E. Feiner, 240 Eastt 27th Street, New York, NY

Robert J. Vila, State Road, Chilmark, MA

Richard Perin, 110 Greene Street, New York, NY

Jonathan Birkhahn, King World, New York, NY

Plaintiffs reserve the right to supplement their witness list and present rebuttal witnesses and any witnesses necessary for authentication.  Plaintiffs reserve the right to call any witnesses designated by any other party.

### B.    The Defendants' List of Potential Witnesses

| | | |
|---|---|---|
| Richard Anderson | Janine Bousquette | William C. Crowley |
| Sears Holding Company | 270 Locha Drive | Sears Holding Company |
| 3333 Beverly Rd. | Jupiter, FL 33458 | 3333 Beverly Rd. |
| Hoffman Estates, IL 60179 | | Hoffman Estates, IL 60179 |
| | | |
| Drew Farkas, Esq. | Ronald E. Feiner | Andy Ginger |
| Sears Holding Company | 240 East 27th Street | 419 Anthony St. |
| 3333 Beverly Rd. | New York, NY | Glen Ellyn, IL 60137 |
| Hoffman Estates, IL 60179 | | |
| | | |
| Leonard Kalcheim | Sarah Beasley Monzon | Sarah Beasley Monzon |
| 2686 Carmar Drive | 214 Lynn Fells Parkway | 214 Lynn Fells Parkway |
| Los Angeles, CA 90046 | Melrose, MA | Melrose, MA |
| | | |
| Luis Padilla | Mark Rode | Mary Tortorice |
| 19 Brinker Road | 419 North Merrill Street | Sears Holding Company |
| Barrington Hills, IL 60010 | Park Ridge, IL 60068 | 3333 Beverly Rd. |
| | | Hoffman Estates, IL 60179 |
| | | |
| Robert J. Vila | Jonathan Birkhahn | Jonathan Russo |
| 183 State Road | King World Productions, Inc./ | Artists Agency, Inc. |
| Chilmark, MA  02535 | CBS Enterprises | 230 W. 55th Street, #29D |
| | 1700 Broadway | New York, NY 10019 |
| | New York, NY 10019 | |
| | | |
| Eileen Campion | Eddie Ward | |
| Dera, Roslan & Campion Inc. | Dera, Roslan & Campion Inc. | |
| 584 Broadway, Suite 1001 | 584 Broadway, Suite 1001 | |
| New York, NY 10012 | New York, NY 10012 | |

Defendants reserve the right to supplement its witness list and present rebuttal witnesses and any witnesses necessary for authentication.  Defendants reserve the right to call any witnesses designated by any other party.

XI.    LIST OF PROPOSED EXHIBITS

## EXHIBITS WITHOUT OBJECTION

| TRIAL EXHIBIT | DATE | DOCUMENT |
|---|---|---|
| 1 | -- | Syndication Agreement and amendments |
| 2 | -- | Spokesperson Agreement and amendments |
| 3 | 1/5/1999 | Amendment IX to Spokesperson Agreement with "1999") date |
| 4 | 1/5/1999 | Amendment 10 to Syndication Agreement with "1999" date |
| 5 | 4/2/2004 | Letter to Sears from CBS enclosing executed amendment to Distribution and Media Agreement |
| 6 | 7/23/2004 | E-mails Farka, Feiner re draft agreement |
| 7 | 8/6/2004 | E-mail to Vila from Rode re new Craftsman liaison |
| 8 | 8/18/2004 | E-mails Russo, Feiner, Farka re draft agreement |
| 9 | 8/24/2004 | E-mail from Ferris to Rode re distribution of Home Again |
| 10 | 9/13/2004 | E-mail string Feiner and Russo re Rode new Craftsman Brand Manager |
| 11 | 10/14/2004 | E-mail Anderson to Ciba and Hoffman re Vila incentive payment #2 |
| 12 | 11/23/2004 | E-mail Feiner to Rode re delay receiving drafts of extension to Syndication Agreement |
| 13 | 11/24/2004 | E-mail Rode to Feiner re extension to Syndication Agreement and Kmart merger |
| 14 | 12/2/2004 | E-mail string Rode to Russo introducing himself |
| 15 | 12/2/2004 | E-mail Feiner to Rode re December 2004 payment on Syndication Agreement |
| 16 | 1/10/2005 | E-mail Rode to Monson requesting a summary of the objectives of the show, etc. |
| 17 | 1/26/2005 | E-mail Rode to Feiner attaching latest version of amendment to King World Agreement |
| 18 | 2/1/2005 | Redacted email Rode to Feiner re authorization to enter contract |
| 19 | 2/1/2005 | E-mail Rode to Feiner |
| 20 | 2/4/2005 | E-mail from Vila to Monzon re extension incomplete |
| 21 | 3/11/2005 | E-mail string Rode and Marchand re Crowley issues |
| 22 | 3/18/2005 | E-mail Farkas to Birkhahn re tied up with merger |
| 23 | 3/18/2005 | E-mail Feiner to Farka - re need to negotiate with King World if renewal not soon |
| 24 | 3/23/2005 | E-mail from Feiner to Vila re reduction in contract terms proposed by Sears |
| 25 | 3/23/2005 | E-mail from Monzon to Marchzon - "it's a go" to build Punta Gorda. |
| 26 | 5/16/05 | Agreement between B.V.T.V. and King World |

| TRIAL EXHIBIT | DATE | DOCUMENT |
|---|---|---|
| 27 | 5/17/2005 | Letter from Feiner to King World re King World Agreement |
| 28 | 6/14/2005 | Letter from Rathke to Feiner re no desire to continue to produce "Home Again" |
| 29 | 6/28/2005 | Letter from Feiner to Rathke |
| 30 | 7/22/2005 | Letter from Robert Rathke to Feiner re "Home Again" television program |
| 31 | 8/23/2005 | E-mail to BVTV crew from Jim re removing "Home Again" name from show |
| 32 | 8/23/2005 | letter from Sankaran to O'Brien re "Home Again" trademark |
| 33 | 8/24/2005 | Letter from O'Brien to Greenberg re use of "Home Again" |
| 34 | 8/26/2005 | E-mail from Marchand from Eddie Wand re change of name to Bob Vila |
| 35 | 8/24/2004 | E-mail from Marchand to Rode re not using products in direct competition with Craftsman products |
| 36 | 9/6/2005 | E-mail from Marchand to King World re removing Home Again name |
| 37 | 9/14/2005 | Letter from Sankaran to O'Brien re use of "Home Again" |
| 38 | 9/25/2005 | Amendment to King World Agreement |
| 39 | 1/30/2006 | Amendment to King World Agreement |
| 40 | 2/2006 | Amendment to King World Agreement |
| 41 | 2/22/2006 | Affidavit of Bob Vila with Exhibit C attached |
| 42 |  | Chronology of Preproduction to 4/18/2005 |
| 43 |  | Product Orders on Bob Vila |
| 44 | undated | Bob Vila Biography |
| 45 | -- | DVD's of Punta Gorda project |

## CONTESTED TRIAL EXHIBITS

| TRIAL EXHIBIT | DATE | DOCUMENT |
|---|---|---|
| A | 11/21/1989 | Letter to Olgilvy and Mather to Feiner re "Home Again" |
| B | 7/6/1995 | Letter from Feiner to Ginger re Presley Companies |
| C | 2/28/1997 | Letter from Feiner to Ginger re:  Mortgage Origination Assoc. |
| D | 2/25/1998 | Letter from Feiner to Ginger re  Bob Vila Apparel |
| E | 2/10/99 | Letter from Feiner to Ginger re Coors Brewing |
| F | 2/12/1999 | Letter from Feiner to Ginger re Coors |
| G | 2/23/1999 | Letter from Feiner to Ginger re Coors |
| H | 8/23/1999-9/30/1999 | Series of letters from IMT to Ginger re Plumber's Secret, Square Shooter, etc. |
| I | 2/13/2001 | Letter from Feiner to Ginger re American Express |

| TRIAL EXHIBIT | DATE | DOCUMENT |
|---|---|---|
| J | 4/16/2003 | Letter from King World to Anderson re net receipts from Home Again |
| K | 7/14/2003 | Letter from King World to Anderson re net receipts for Home Again |
| L | 10/16/2003 | Letter from King World to Anderson re net receipts from Home Again |
| M | 10/16/2003 | Letter from King World to Anderson re net receipts from Home Again |
| N | 11/7/2003 | E-mail from Ginger to Feiner attaching "Home Again" scenarios |
| O | 2/14/2004 | E-mails between Marchand and Feiner re telephone call with Andy Ginger re Canada promotion, Sears advertising and contract renewal |
| P | 2/26/2004 | Memo Ginger to Farkas re Home Again licensing agreement |
| Q | 3/29/2004 | E-mails Farkas and Feiner re draft of Amendment #11 |
| R | 3/29/2005 | E-mail from Ginger to Janine Bousquette re Vila's counterproposal |
| S | 4/13/2004 | E-mail Feiner to Farkas re draft of Amendment 11 |
| T | 4/15/2004 | Letter from King World to Anderson re net receipts from Home Again |
| U | 5/3/2004 | E-mails Feiner to Farkas re extension |
| V | 5/25/2004 5/28/2004 | E-mail chain between Feiner and Ginger/Ferris re Marsh Affinity Solutions |
| W | 6/1/04 | License Agreement by BVTV and Sears |
| X | 6/16/2004 | E-mail from Russo to Feiner re handling of renewal |
| Y | 6/24/2004 | E-mail Farkas to Feiner re draft amendment |
| Z | 7/8/2004 | E-mail Farkas to Fiener with revised draft |
| AA | 7/13/2004 | Letter from Feiner to Ginger re Home 1-2-3 |
| AB | 7/15/2004 | Letter from King World to Anderson re net receipts from Home Again |
| AC | 7/19/2004 | E-mails Russo, Feiner, Farka re draft agreement |
| AD | 7/21/2004 | E-mails Russo, Feiner, Farka re draft agreement |
| AE | 9/9/2004 | E-mails Feiner and Rode re New Century Mortgage |
| AF | 10/7/2004 | E-mail from Vila to Rode re Florida project and asking Farkas to send out extension |
| AG | 10/20/2004 | King World Letter to Anderson re net receipts re Home Again |
| AH | 11/1/2004 | E-mail Rode to Feiner re extension to syndication agreement |
| AI | 12/04/2004 | Vila invoice, Season 16, payment 1 |
| AJ | 12/7/2004 | Vila Invoice for Season 16, payment 1 |
| AK | 12/7/2004 | Ferrone Invoice for Season 16, payment 1 |
| AL | 12/8/2004 | E-mail from Ciba to Anderson re Vila invoices |

| TRIAL EXHIBIT | DATE | DOCUMENT |
|---|---|---|
| AM | 12/9/2004 | E-mail from Rode to Feiner re Vila invoice |
| AN | 12/13/2004 | E-mail from Monzon to Rode re Vila appearance on Jane Pauley show |
| AO | 12/15/2004 | E-mail from Anderson to Rode re Vila payments |
| AP | 12/22/2004 | E-mails between Rode and Feiner re bonus payment and contract extension |
| AQ | 1/03/2005 | E-mail from Feiner to Rode re review of 12/22 draft of extension |
| AR | 1/3/2005 | Redacted version of e-mail from Feiner to Rode re review of 12/22 draft of extension |
| AS | 1/3/2005 | E-mail Rode to Feiner re draft of extension agreement - mix library and syndication |
| AT | 1/14/2005 | E-mail Rode to Feiner attaching draft revisions |
| AU | 1/14/2005 | Letter from King World to Anderson re net receipts from Home Again |
| AV | 1/18/2005 | E-mail from Feiner to Rode - "the new Vila Syndication Agreement is fine." |
| AW | 1/21/2005 | E-mail from Feiner to Farka - when can expect execution copies |
| AX | 1/22/2005 | E-mail Rode to Russo, re Vila contract negotiations |
| AY | 1/27/2005 | E-mails Birkhahn, Farka, Ginger re draft extension |
| AZ | 2/4/2005 | "Intellectual property Portfolio" |
| BA | 2/7/2005 | Memo Ginger to Janine Bousquette re Bob Vila show contract |
| BB | 2/10/2005 | E-mail Rode to Ginger attached spreadsheet for Vila syndication agreement |
| BC | 2/14/2005 | E-mails Feiner and Marchand re status at Sears |
| BD | 2/15/2005 | Memo from Ginger to Janine Bousquette re pending Home Again contract |
| BE | 2/25/2005 | E-mails Ginger and Feiner re status of contract renewal |
| BF | 3/2/2005 | Email from M. Marchand to Feiner, Rode and Ginger re: Emmy Nominations |
| BG | 3/4/2005 | E-mails between Ginger and Crowley re Vila extension |
| BH | 3/7/2005 | E-mail from Ginger to Crowley re contract amendment summaries |
| BI | 3/7/2005 | E-mail to Marchand from Jason Sparks re sponsorship between Bob Vila's Home Again and the Wood Promotion Network |
| BJ | 3/9/2005 | E-mail from Sarah Monzon to Marchand, et al re shoot dates for March through June in Punta Gorda |
| BK | 3/10/2005 | E-mail Rode re how much paid to Vila |
| BL | 3/14/2005 | Memo from Andy Ginger to Janien Bousquette re Vila contract amendment |
| BM | 3/18/2005 | Ciba's appearance schedule for Vila |

| TRIAL EXHIBIT | DATE | DOCUMENT |
|---|---|---|
| BN | 3/21/2005 | E-mail Feiner and Farkas re contract extension |
| BO | 3/24/2005 | Reciprocal Services and Supply Agreement |
| BP | 3/29/2005 | E-mail to Rode, et al re conference call |
| BQ | 4/1/2005 | E-mails Crowley and Lampert re review of Vila deal |
| BR | 4/2/2005 | E-mails from Lampert and Crowley re contract proposals |
| BS | 4/2/2006 | Emails between Padilla, Crowley and Lampert re contract negotiations |
| BT | 4/4/2005 | E-mail to Padilla re economics of show |
| BU | 4/4/2006 | E-mail Ginger to Padilla re status of contract negotiations |
| BV | 4/4/2005 | memo from Ginger to Padilla re Vila negotiation |
| BW | 4/5/2005 | E-mail Birkhahn to Ginger re Vila |
| BX | 4/5/2005 | Email from Monzon re Plain & Fancy on Home Again |
| BY | 4/6/2005 | E-mail Padilla to Crowley re economics of show |
| BZ | 4/7/2005 | E-mail from Monzon to Marchand re building schedule for Punta Gorda |
| CA | 4/11/2005 | E-mail from Foley to Monzon re Gardner plans |
| CB | 4/14/2005 | E-mail from Monzon to Meyers, et al re contact information for Punta Gorda project |
| CC | 4/14/2005 | Fax cover page Birkhahn to Farkus |
| CD | 4/15/2005 | Birkhahn letter to Farkus re challenge under the accountings |
| CE | 4/15/2005 | Letter Birkhahn to Sears re monies owed King World |
| CF | 4/15/2005 | Letter Birkhahn to Farkus re King Worlds' challenge of the accounting |
| CG | 4/15/2005 | E-mail Rode to Crowley re negotiations on extension agreement |
| CH | 4/15/2005 | E-mails Padilla and Rode re waiting for answer from Crowley |
| CI | 4/16/2005 | E-mail Crowley to Rode requesting economics of contract |
| CJ | 4/18/2005 | E-mail between Crowley and Lampert re value of library |
| CK | 4/18/2005 | E-mail from Padilla to Rode - redacted |
| CL | 4/18/2005 | E-mail Rode to Crowley re negotiations re library |
| CM | 4/18/2005 | E-mail Rode to Crowley re contract values |
| CN | 4/19/2005 | E-mail Crowley and Lampert re library |
| CO | 4/25/2005 | E-mail Digman to Crowley re meeting |
| CP | 4/25/2005 | E-mail Purintun to Nickel, Farkas, et al - redacted |
| CQ | 4/26/2005 | Vila calendar |
| CR | 4/28/2005 | E-mail Rode to Crowley re Vila proposal |
| CS | 4/28/2005 | E-mail Feiner to Rode re Sears counterproposal |
| CT | 4/28/2005 | E-mails between Rode and Crowley re contract proposal |
| CU | 4/28/2005 | E-mail Rode to Feiner attaching proposal |
| CV | 4/29/2005 | E-mails between Crowley and Rode re contract proposal |
| CW | 4/29/2005 | E-mail Rode to Feiner re contract proposal |

| TRIAL EXHIBIT | DATE | DOCUMENT |
|---|---|---|
| CX | 4/29/2005 | E-mail Feiner to Rode re response to proposal |
| CY | 4/29/05 | E-mails between Crowley and Rode re contract proposals |
| CZ | 5/2005 | Amendment #1 to King World Agreement |
| DA | 5/5/2005 | E-mails Rode and Crowley re involving counsel |
| DB | 5/5/2005 | E-mails Rode and Crowley re involving counsel in negotiating agreement |
| DC | 5/5/2005 | "Vila Licensing proposal" |
| DD | 5/6/2005 | E-mail Rode to Padilla re cancellation clause |
| DE | 5/6/2005 | E-mails from Stacey Bashara to Rode re economics of Craftsman advertising |
| DF | 5/10/2005 | E-mail from Monzon to Marchand re Pella Windows |
| DG | 5/11/2005 | E-mail from Monzon to Kingworld re Whirlpool on Punta Gorda project |
| DH | 5/12/2005 | King World letter to Anderson re participation statements |
| DI | 5/18/2005 | E-mails Rode, Ciba and Anderson re Vila invoices |
| DJ | 5/18/2005 | E-mail Anderson to Rode re Vila invoices |
| DK | 5/18(?) | E-mails re Vila invoices |
| DL | 5/18/2005 | Ciba's appearance schedule for Vila |
| DM | 5/18/2005 | E-mail Rode to Anderson re Vila payments |
| DN | 5/25/2005 | E-mail from Monzon to Jon Pinson re DCS applicances on Home Again |
| DO | 5/31/2005 | E-mails with Monzon re Vermont Casting on Home Again |
| DP | 5/31/2005 | E-mail Ciba to Rode re cancellation of scheduled Vila appearance |
| DQ | 6/2/2005 | Vila invoice under spokesperson agreement |
| DR | 6/3/2005 | E-mail from Masher re DCS applicances at Rowley project |
| DS | 6/3/2005 | E-mail from Monzon re DCS on Home Again |
| DT | 6/6/2005 | E-mail Ciba to Rode re Vila invoice |
| DU | 6/6/2005 | E-mail Ciba to Rode re Vila invoice |
| DV | 6/7/2005 | E-mail from Ogilvy to Ciba re Vila payments |
| DW | 6/7/2005 | E-mails Ciba and Rode re Vila invoice |
| DX | 6/10/2005 | E-mail from Monzon to Wayne-Dalton Garage Doors |
| DY | 6/10/2005 | E-mail from Monzon to Marchand re WRCLA product donation on Home Again |
| DZ | 6/10/2005 | E-mail Monzon re Wayne-Dalton Garage Doors and Mercedes Homes on Home Again |
| EA | 6/13/2005 | Georgia Pacific Product Donation Request form |
| EB | 6/16/2005 | E-mail from Monzon re Hanson on Home Again |
| EC | 6/17/2005 | E-mail from Monzon re Sun Systems on Home Again |
| ED | 6/17/2005 | Georgia Pacific Product Donation Request Form |
| EE | 6/20/2005 | E-mails Ciba, Davis, Rode re payment to Vila |
| EF | 6/20/2005 | E-mails Ciba and Davis re payment to Vila |

| TRIAL EXHIBIT | DATE | DOCUMENT |
|---|---|---|
| EG | 6/20/2005 | Vila Invoice with approval |
| EH | 6/20/2005 | E-mail from Monzon re DuPont Corian on Home Again |
| EI | 6/21/2005 | E-mail from Monzon re Jeld-Wen on Home Again |
| EJ | 6/21/2005 | E-mail from Monzon re WarmZone on Home Again |
| EK | 6/21/2005 | E-mail from Monzon re Moen on Home Again |
| EL | 6/21/2005 | E-mail from Monzon re Moen on Home Again |
| EM | 6/21/2005 | E-mail from Monzon re Hanson on Home Again |
| EN | 6/22/2005 | E-mail from Monzon re E-Counters on Home Again |
| EO | 6/22/2005 | E-mail from Monzon re DuPont Corian on Home Again |
| EP | 6/22/2005 | E-mails from Monzon re Franke products on Home Again |
| EQ | 6/23/2005 | E-mails Ciba to Davis re Vila invoice |
| ER | 6/28/2005 | Letter from Feiner to Rathke |
| ES | 7/1/2006 | E-mail from Monzon re Nickerson-Remick on Home Again |
| ET | 7/8/2005 | Vila invoices for payments 2 and 3 |
| EU | 7/8/2005 | Vila Invoice, Season 16, payment 3 |
| EV | 7/15/2005 | E-mail from Monzon re Whirlpool product placement on Home Again |
| EW | 7/15/2005 | Complaint - Vila, et al vs. Sears, et al |
| EX | 7/21/2005 | E-mail from Monzon re Landscape Anchors on Home Again |
| EY | 7/28/2005 | E-mail from Monzon to Benjamin Moore Paint |
| EZ | 7/28/2005 | E-mail from Monzon re Benjamin Moore on Home Again |
| FA | 7/29/2005 | E-mails Ciba to Tan re Vila appearance in Canada |
| FB | 7/29/2005 | Greenberg letter to O'Brien re Vila appearances |
| FC | 8/2/2005 | E-mail from Monzon to Gardens Alive |
| FD | 8/2/2005 | E-mail from Monzon to DuPont Corian |
| FE | 8/2/2005 | E-mail from Monzon re Gardens Alive on Home Again |
| FF | 8/3/2005 | E-mail from Monzon re ATAS on "Home Again" |
| FG | 8/4/2005 | Agreement between B.V.T.V. and Ultimate Chase Stock Footage |
| FH | 8/4/2005 | E-mail Monzon to Benjamin Moore re appearance on "Home Again" |
| FI | 8/5/2005 | E-mail from King World to Anderson re participation statements |
| FJ | 8/5/2005 | E-mail Rode to Kubisztal re Vila ratings |
| FK | 8/9/2005 | E-mails Ciba, Rode, et al re Vila library |
| FL | 8/18/2005 | E-mail Ciba to Tan re Vila Canada event |
| FM | 8/18/2005 | E-mails Ciba and Rode re Canada appearance |
| FN | 8/18/2005 | E-mails Ciba, Catalyst Marketing and Rode re Vila appearances |
| FO | 8/19/2005 | Sears letter to Vila re termination of Spokesperson |

| TRIAL EXHIBIT | DATE | DOCUMENT |
|---|---|---|
| | | Agreement |
| FP | 8/26/05 | Email chain between M. Marchand and C. Roslan re: Fox News |
| FQ | 9/2005 | 3 news articles about building the storm ready home |
| FR | 9/8/2005 | E-mails Ciba and Rode re Vila library |
| FS | 9/14/05 | Email from Fox News to C. Roslan |
| FT | 9/15/2005 | O'Brien letter to Sankaran re use of "Home Again" |
| FU | 9/21/2005 | Redacted e-mails Ciba to Katz |
| FV | 10/27/2005 | King World letter to Anderson re participation statements |
| FW | 10/31/2005 | Defendants' answer and First Amended Counterclaim to First Amended Complaint |
| FX | 1/23/2006 | King World letter to Anderson re participation statements |
| FY | 2/8/2006 | Page from Bob.Vila.com - "How do I get my new home improvement invention on your show and/or web site |
| FZ | 2/9/06 | Pages from Vila Website re Bob Vila merchandise |
| GA | 2/9/2006 | Page from BobVila.com re "Why is Bob Vila no longer hosting 'This Old House.'" |
| GB | 2/12/2006 | Chicago Tribune article "Sears In Demolition Mode" |
| GC | 3/1/2006 | Craftsman Web Site |
| GD | 3/1/2006 | Kmart Web Pages |
| GE | 3/2/2006 | Chicago Tribune article _ "Vila Shows Sears' Harder Side" |
| GF | 3/8/2006 | Answers of Sears to First Set of Interrogatories Propounded by Plaintiff |
| GG | 3/10/06 | Pages from Vila Website - "Bob on TV" |
| GH | 3/10/06 | Pages from Vila Website - "Storm Ready Design |
| GI | 3/10/2006 | Page from BobVila.com - "Bob Vila show started in 2005" |
| GK | 3/15/2006 | Bob Vila notes taken at deposition |
| GL | 3/16/2006 | Pages from Vila Website re Showrooms |
| GM | 3/21/2006 | Notice of Taking 30(b)(6) Deposition of BVWebTies |
| GN | 3/26/2006 | Showroom page from BobVila.com |
| GO | 4/7/2006 | Notice of 30(b)(6) of Sears |
| GP | 4/7/2006 | Trademark search for "Home Again" |
| GQ | | Notice of 30(b)(6) Deposition |
| GR | undated | Bob Vila's Home Again: Product Donation Guidelines |
| GS | undated | B.V.T.V. Appearance Releases |
| GT | undated | Bob Vila Biography |
| GU | undated | Draft of Second Amendment to Distribution and Media Sales Agreement between CBS and Sears |
| GV | undated | Vila activities working on for 2005 |
| GW | undated | "Bob Vila Contract Analysis" |
| GX | undated | "Snap-On, Inc." |
| GY | undated | "Vila & Sears Relationship Structure" |

| TRIAL EXHIBIT | DATE | DOCUMENT |
|---|---|---|
| GZ | undated | "Proposal to Vila -- Discussion Draft" |
| HA | undated | "Proposal to Vila Currently In Play" |
| HB | undated | "Bob Vila & Sears Relationship Update" |
| HC | undated | "Bob Vila & Sears Inventory of Exports and Explorations" |
| HD | undated | revenue spreadsheet |
| HE | undated | revenue spreadsheet |
| HF | undated | analysis of assets sold versus rented |
| HG | undated | "Current Situation" |
| HH | undated | "Current Situation" |
| HI | undated | revenue analysis |
| HJ | undated | revenue analysis |
| HK | undated | revenue analysis |
| HL | undated | revenue analysis |
| HM | undated | "Proposal to Vila Currently in Play" |
| HN | undated | e-mail Rode to Crowley re Vila proposal |
| HO | undated | "Conversations:  With Ron/Bob (Andy)" |
| HP | undated | "'05 Expense Reduction" |
| HQ | undated | handwritten notes |
| HR | undated | handwritten notes |
| HS | undated | handwritten notes |
| HT | undated | handwritten notes |
| HU | undated | "Ron conversation points" |
| HV | undated | "Vila Proposal" |
| HW | undated | "Proposal to Vila" |
| HX | undated | "Proposal to Vila" |
| HY | undated | "Competitive Bid Policy Waiver Request Form" |
| HZ | undated | Email from Crowley re Vila extension |
| IA | undated | "Payment Summary" |
| IB | undated | "Dallas Accounts Payable" |
| IC | undated | spreadsheet - Vila invoicing |
| ID | undated | "Dollar Sales" |
| IE | undated | TESS records of registration of trademarks/service marks BOB VILA and BOB VILA'S |
| IF | undated | Excerpts from Advertising Media Planning |
| IG | undated | Excerpts from This Business of Television |

**RESPECTFULLY SUBMITTED:**
ROBERT J. VILA and B.V.T.V., INC.,
Plaintiffs/ Defendants-in-Counterclaim,
By their attorneys:


/s/ James F. O'Brien
James F. O'Brien, BBO #375765
410 Park Avenue, Suite 1530
New York, NY 10022
(212) 813-9300
(212) 813-1907 (fax)

**RESPECTFULLY SUBMITTED:**
SEARS HOLDINGS CORPORATION and
KMART HOLDING CORPORATION,
Defendants, and SEARS, ROEBUCK AND
CO., Defendant/Counterclaimant,
By their attorneys:


/s/ Annapoorni R. Sankaran
Gary R. Greenberg, BBO #209420
Annapoorni R. Sankaran, BBO #631065
Sebastian R. Colley, BBO #663842
GREENBERG TRAURIG, LLP
One International Place, 20th Floor
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (fax)